**FORM 5. Petition for Review/Notice of Appeal of an Order or Decision of an Agency, Board, Commission, Office, Bureau, or the US Court of Federal Claims (vaccine appeals only))**

**Form 5**
**March 2023**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## PETITION FOR REVIEW/NOTICE OF APPEAL

Notice is hereby given that the petitioner(s)/appellant(s) listed below hereby appeal(s) the below-noted case to the United States Court of Appeals for the Federal Circuit.

Originating Tribunal *(Name of Agency, Board, Commission, Office, Bureau, or Court whose decision is being appealed)*:     Trademark Trial and Appeal Board ☐

Case number being appealed:     90703327

Case title being appealed:     In re Matthew Amoss

Date of final decision or order being appealed:     01/26/2024

Date decision or order was received:     01/26/2024

☒ I have attached a copy of the decision or order being appealed.

**List all Petitioners/Appellants** (List each party filing this appeal. Do not use "et al." or other abbreviations. Attach continuation pages if necessary.)

| |
|---|
| Matthew Amoss |

Date: 03/25/2024

Signature: /s/Fabian M. Nehrbass

Name: Fabian M. Nehrbass, LA Bar # 35264

Address: Garvey, Smith & Nehrbass

701 Poydras Street, Suite 4310

New Orleans, LA 70139

Phone Number: 504-835-2000

Email Address: FabianNehrbass@patents.gs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Petition for Review / Notice of Appeal (with a copy of the decision being appealed from) was served this 25th day of March, 2024, on the Director of the United States Patent and Trademark Office by U.S. Postal Service Priority Mail Express addressed to:

> Office of the General Counsel
> United States Patent and Trademark Office
> P.O. Box 1450
> Alexandria, VA 22313-1450

I also hereby certify that a copy of this Notice of Appeal (with a copy of the decision being appealed from) was served this 25th day of March, 2024, on the Trademark Trial and Appeal Board by electronic filing via ESTTA.

> /s/ Fabian M. Nehrbass
> Fabian M. Nehrbass, LA Bar # 35264
> FabianNehrbass@patents.gs
> Julie R. Chauvin, LA Bar # 34265
> Vanessa M. D'Souza, LA Bar # 31708
> Garvey, Smith & Nehrbass, Patent Attorneys, L.L.C.
> 701 Poydras Street, Suite 4310
> New Orleans, LA 70139
> *Attorneys for Applicant, Matthew Amoss*

> This Opinion is not a
> Precedent of the TTAB

Mailed: January 26, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Matthew Amoss*

_____

Serial No. 90703327

_____

Fabian M. Nehrbass and Julie R. Chauvin of Garvey, Smith & Nehrbass, Patent
    Attorneys, L.L.C.,
     for Matthew Amoss.

Shaunia Carlyle, Trademark Examining Attorney, Law Office 110,
     Chris Pedersen, Managing Attorney.

_____

Before Greenbaum, Coggins, and Casagrande,
     Administrative Trademark Judges.

Opinion by Casagrande, Administrative Trademark Judge:

Matthew Amoss ("Applicant") seeks registration on the Principal Register of the

mark BASIN BEVERAGE CO. (in standard characters, with BEVERAGE CO.

disclaimed) for goods ultimately identified as:

> Tea-based beverages; Coffee based beverages; Kombucha tea, in International
> Class 30;
>
> Beverages, namely, beer, sparkling water, non-alcoholic water-based
> beverages, in International Class 32; and

Beverages, namely, wine, hard seltzer; Hard kombucha tea, in International Class 33.[1]

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

As to Applicant's Class 30 goods (for tea-based beverages; coffee based beverages; kombucha tea), the Examining Attorney ultimately refused registration based on two registrations: Registration No. 6760872 (the " '872 Registration") on the Principal Register for TAHOE BASIN for coffee and chai tea;[2] and Registration No. 5510241 (the " '241 Registration") on the Supplemental Register for GREAT BASIN COFFEE COMPANY for goods including coffee, tea, and coffee based beverages in Class 30.[3]

As to Applicant's Class 32 and 33 goods, the Examining Attorney refused registration in view of Registration No. 4890160 for NEW BASIN DISTILLING COMPANY ("Distilling Company" disclaimed) for liquor on the Principal Register in Class 33.[4]

---

[1]   Application Serial No. 90703327 was filed on May 11, 2021, based upon Applicant's allegation of a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). The application also identified certain services in International Class 43, but they are not part of this appeal because the Examining Attorney did not refuse registration as to those services.

[2]   Registered on June 14, 2022, to Java Detour NorCal LLC.

[3]   Registered on July 3, 2018, to Great Basin Coffee Company, LLC.

[4]   Registered on January 19, 2016, to New Basin Distilling Company LLC; Section 8 Declaration accepted, Section 15 Declaration acknowledged.

After the Trademark Examining Attorney made the refusal final,[5] Applicant appealed[6] and requested reconsideration.[7] Because of the reconsideration request, we suspended the appeal to allow the Examining Attorney to consider the request.[8] Upon denial of reconsideration,[9] the appeal resumed.[10] Applicant and the Examining Attorney then filed briefs, and Applicant also filed a reply.[11] We now affirm the refusal to register in each class on appeal for the reasons explained below.

I.     Section 2(d) refusals generally

Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), prohibits registration of a mark that "so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Because Section 2(d) simply says "a mark registered in the Patent and Trademark office," marks registered on either the Principal or the Supplemental Register may

---

[5]   *See* November 22, 2022, Final Office Action. Citations in this opinion to the application record are to pages in the Trademark Status and Document Retrieval ("TSDR") database of the United States Patent and Trademark Office ("USPTO").

[6]   *See* 1 TTABVUE. References to the briefs, other filings in the case, and the record cite the Board's TTABVUE docket system. The number preceding "TTABVUE" represents the docket number assigned to the cited filing in TTABVUE and any number immediately following "TTABVUE" identifies the specific page(s), if any, to which we refer.

[7]   *See* March 6, 2023, Request for Reconsideration.

[8]   *See* 2 TTABVUE.

[9]   *See* April 26, 2023, Denial of Reconsideration (also available at 4 TTABVUE).

[10]   *See* 5 TTABVUE.

[11]   *See* 6 TTABVUE (Applicant's principal brief); 8 TTABVUE (Examining Attorney's brief); 10 TTABVUE (Applicant's reply).

Serial No. 90703327

form the basis of a Section 2(d) refusal. *See, e.g.*, *In re Clorox Co.*, 578 F.2d 305, 198 USPQ 337, 340 (CCPA 1978).

We determine whether confusion is likely by analyzing all probative facts in evidence that are relevant to the factors set forth in *In re E.I. DuPont de Nemours & Co.* ("*DuPont*"), 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) (providing a nonexclusive list of 13 factors potentially relevant to likelihood of confusion). *See, e.g.*, *In re Charger Ventures LLC*, 64 F.4th 1375, 2023 USPQ2d 451, at *2 (Fed. Cir. 2023). In *Charger Ventures*, our primary reviewing court explained:

> In any given case, different *DuPont* factors may play a dominant role and some factors may not be relevant to the analysis. The Board is required to consider each factor for which it has evidence, but it can focus its analysis on dispositive factors. A single *DuPont* factor may, for example, be dispositive of the likelihood of confusion analysis. The weight given to each factor depends on the circumstances of each case.

*Id.* at *4 (citations omitted). We consider each *DuPont* factor for which there is evidence and argument. *See, e.g.*, *In re Guild Mortgage Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019). We weigh together the findings we have made on the relevant *DuPont* factors to determine if, on balance, they indicate that confusion is likely. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *7; *In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1207 (Fed. Cir. 2003). In most cases, the comparison of the marks and goods are key factors. *See, e.g.*, *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976); *In re Max Cap. Grp. Ltd.*, 93 USPQ2d 1243, 1244 (TTAB 2010).

Serial No. 90703327

## II.    Analysis

We start first with the refusal to register BASIN BEVERAGE CO. for "tea-based beverages; coffee based beverages; kombucha tea" in Class 30, and then we will analyze the refusal as to the goods in Classes 32 and 33.

### A.    Class 30

#### 1.    Similarity of the Goods

We begin with the second *DuPont* factor, which assesses "[t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration." 177 USPQ at 567. In assessing the second factor, we must consider "the applicant's goods as set forth in its application, and the [registrant's] goods as set forth in its registration. Likelihood of confusion must be resolved on the basis of the goods named in the registration …." *In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017) (citations omitted). Likelihood of confusion as to any of the goods in the class at issue in the application is sufficient to warrant refusal with respect to all the goods in that class. *See, e.g.*, *SquirtCo v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 939 (Fed. Cir. 1983); *Bond v. Taylor*, 119 USPQ2d 1049, 1052-53 (TTAB 2016).; *see also In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1912 (Fed. Cir. 2012).

The Examining Attorney points out that the registrants' goods and Applicant's goods are in part legally identical.[12] Applicant does not contend otherwise. We agree

---

[12]    *See* 8 TTABVUE 12, 15.

with the Examining Attorney. Applicant's goods include tea- and coffee-based beverages. The goods in the TAHOE BASIN registration are coffee and chai tea, and GREAT BASIN COFFEE COMPANY is registered for goods including coffee, tea, and coffee-based beverages. This factor thus weighs strongly in favor of a finding that confusion is likely as to the Class 30 goods in the application.

### 2.    Comparison of the Channels of Trade and Classes of Customers

The third *DuPont* factor considers "[t]he similarity or dissimilarity of established, likely-to-continue trade channels." *DuPont*, 177 USPQ at 567. This factor, like the comparison of the goods, looks to what is disclosed in the application and registrations. *See, e.g.*, *In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018). Here, neither the application nor either of the cited Class 30 registrations contains any limitation on trade channels. This lack of restrictions means, as the Examining Attorney points out,[13] that we presume that the goods in the application and both registrations are available in all the normal trade channels for such goods. *See, e.g.*, *Kangol Ltd. v. Kangaroos U.S.A., Inc.*, 974 F.2d 161, 23 USPQ2d 1945, 1946 (Fed. Cir. 1992); *CBS Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983). Moreover, where, as here, the goods recited in the application and registrations are in-part legally identical, there is a further presumption that the channels of trade (and the classes of purchasers) are the same. *See, e.g.*, *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 110

---

[13]    *See* 8 TTABVUE 13.

Serial No. 90703327

USPQ2d 1157, 1161-62 (Fed. Cir. 2014); *Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *In re Hitachi High-Techs. Corp.*, 109 USPQ2d 1769, 1772-73 (TTAB 2014). Applicant does not argue otherwise.

The fourth *DuPont* factor considers "[t]he conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing." *DuPont*, 177 USPQ at 567. Applicant does not make any argument or offer any evidence to counter the presumption that the classes of customers are the same.[14]

The identity of the trade channels and classes of customers strongly favors a conclusion that confusion is likely as to the Class 30 goods in the application.

> ### 3. The 5th and 6th *DuPont* factors (the strength of the registered marks and the number and nature of similar marks in use)

Applicant argues that the registered marks cited against him are weak.[15] *DuPont* lists two factors (the fifth and the sixth) that bear on the strength of the senior mark. The fifth factor is "[t]he fame of the prior mark (sales, advertising, length of use)." 177 USPQ at 567.[16] It is well-settled that, in the ex parte context, we generally treat the commercial strength of the cited registered mark as neutral because an

---

[14]  Although the fourth *DuPont* factor looks not only at who the relevant respective consumers are but how much care and sophistication they bring to bear in selecting the goods or services in question, neither the Examining Attorney nor Applicant addresses this subject. In the absence of evidence or argument, we will not consider it.

[15]  *See* 6 TTABVUE 15-23.

[16]  Although *DuPont*'s fifth factor is phrased in terms of the "fame" of the senior mark, the Federal Circuit has clarified that "fame for purposes of likelihood of confusion is a matter of degree that varies along a spectrum from very strong to very weak." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1720 (Fed. Cir. 2012) (cleaned up; citations omitted).

examining attorney is not expected to submit such marketplace evidence of the fame of the registered mark. *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1413 (TTAB 2015), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744, 1752 (Fed. Cir. 2017) (specifically affirming the Board's decision on this point). *DuPont* lists marketplace data such as "sales, advertising, length of use" as types of evidence to assess "fame," and we do not expect USPTO examining attorneys to be able to obtain this type of commercial—and in many instances, proprietary—marketplace data. *See, e.g.*, *In re Pacer Tech.*, 338 F.3d 1348, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003) (the USPTO "is an agency of limited resources" and "cannot be expected to shoulder the burden of conducting market research") (citations omitted).

Thus, the sixth factor is more important in this ex parte case. Under the sixth factor, an applicant may submit evidence of third parties' registration and/or use of similar marks to try to show the weakness of the registered mark in two respective ways: conceptually and commercially. "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015) (citing 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:90 (4th ed. 2015)). Third party registrations thus can function like a dictionary of sorts, shedding light on what the term at issue may mean to market participants. *See, e.g.*, *Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 198 USPQ 151,

153 (CCPA 1978) ("[W]e find no error in the citation of nine third-party registrations "primarily to show the meaning of * * * ('zing') in the same way that dictionaries are used.") (citation omitted).

And enough evidence of third-party **use** (as opposed to registrations) can show commercial (i.e., marketplace) weakness. *See, e.g., Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315, 128 USPQ2d 1686, 1693 (Fed. Cir. 2018) ("The purpose of introducing evidence of third-party **use** is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions. Third-party use is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.") (emphasis added; cleaned up; citations omitted); *id.* at 1694 ("[E]vidence of third-party use bears on the strength or weakness of [prior registered] mark. The weaker [the prior registered] mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection.") (citations omitted). To be able to find significant commercial weakness, we generally expect to see evidence of "ubiquitous" or "considerable" third-party use of the term or symbol at issue for similar goods. *See, e.g., i.am.symbolic*, 123 USPQ2d at 1751 ("Symbolic's evidence of third-party use of I AM for the same or similar goods falls short of the 'ubiquitous' or 'considerable' use of the mark components present in its cited cases.").

In assessing allegations that the mark in a cited registration is weak, however, we must always bear in mind that even "weak" registered marks are entitled to

protection from marks that that are likely to cause confusion. *See, e.g.*, *Conde Nast Publ'ns, Inc. v. Miss Quality, Inc.*, 507 F.2d 1404, 184 USPQ 422, 424 (CCPA 1975); *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 109 (CCPA 1974); *Max Cap. Grp.*, 93 USPQ2d at 1246.

Applicant points to no third-party registrations, but Applicant does provide evidence of four third parties who use the term BASIN in connection with coffee and coffee shops, listing them in a table[17]:

| Mark | Goods/Services |
|---|---|
| THUNDER BASIN COFFEE COMPANY | Coffee shop |
| THUNDER BASIN | Coffee shop |
| NILE BASIN COFFEE | coffee |
| SNOWBASIN | coffee |
| BEAR BASIN | coffee |

This is a meager showing. It falls far short of showing that third-party use of marks with BASIN in them is "ubiquitous" or "considerable" insofar as coffee and coffee shops are concerned. As to the Class 30 goods in the application, we find the fifth and sixth *DuPont* factors neutral.[18]

---

[17]  *See* 6 TTABVUE 15.

[18]  In addition, we note that each of these marks has a term that modifies the term BASIN, resulting in a specific "BASIN" identified in the marks that is different from the "BASIN" in the two cited registrations. In contrast, Applicant's mark has only the term BASIN, which could refer to any basin, including the basins in the cited registrations. As a general rule, to have much impact in demonstrating that any weakness in the cited registered marks inures to the benefit of the second comer (i.e., Applicant in this case), the third-party marks must be at least as similar to the cited registrations as the applicant's mark. *See, e.g.*, *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1284-85 (Fed. Cir. 1984); *Palisades Pageants, Inc. v. Miss Am. Pageant*, 442 F.2d 1385, 169 USPQ 790, 793

### 4.    Similarity of the Marks

Under the first *DuPont* factor, we assess "[t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 177 USPQ at 567. This is a "predominant inquiry" in the likelihood of confusion determination. *See, e.g.*, *Herbko Int'l*, 64 USPQ2d at 1380. It "requires consideration of the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *i.am.symbolic*, 123 USPQ2d at 1748 (cleaned up; citations omitted). We bear in mind that "marks must be considered in light of the fallibility of memory and not on the basis of side-by-side comparison." *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014) (cleaned up; citation omitted). The reference to "fallibility of memory" reflects the reality that, when encountering an Applicant's mark, the consuming public perceives it against the backdrop of "their past recollection of marks to which they were previously exposed." *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) (citation omitted).

"Exact identity is not necessary to generate confusion as to source of similarly-marked products." *Bridgestone Ams. Tire Ops., LLC v. Fed. Corp.*, 673 F.3d 1330, 102 USPQ2d 1061, 1064 (Fed. Cir. 2012) (citation omitted); *Phillips Petroleum Co. v. Knox Indus. Corp.*, 277 F.2d 945, 125 USPQ 576, 577 (CCPA 1960) ("This issue is whether the marks are confusingly similar, not whether they are identical.") (citation omitted).

---

(CCPA 1971). Here, the additional terms that modify "BASIN" in the cited third-party marks are further away from the registered marks than Applicant's mark.

The similarity-of-marks inquiry is usually a matter of degree. *See, e.g.*, *St. Helena Hosp.*, 113 USPQ2d at 1085 ("Similarity is not a binary factor but is a matter of degree.") (citation omitted); *Phillips Petroleum*, 125 USPQ at 577 ("The question of similarity is ordinarily one of degree."). Where, as here, the goods are legally identical in part, the degree of similarity between the marks needed to result in likely confusion declines. *See, e.g.*, *Skincode AG v. Skin Concept AG*, 109 USPQ2d 1325, 1328-29 (TTAB 2013); *In re La Peregrina Ltd.*, 86 USPQ2d 1645, 1647 (TTAB 2008); *see also Coach Servs.*, 101 USPQ2d at 1721 ("[I]f the parties' goods are closely related, a lesser degree of similarity between the marks may be sufficient to give rise to a likelihood of confusion.") (citations omitted).

In comparing marks, sometimes "one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark." *Coach Servs.*, 101 USPQ2d at 1721 (citations omitted); *see also In re Electrolyte Labs., Inc.*, 929 F.2d 645, 16 USPQ2d 1239, 1240 (Fed. Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark.") (citation omitted). Terms that are disclaimed in the application or registration at issue because of their lack of source-identifying significance are usually not considered dominant. *See, e.g.*, *Citigroup*, 98 USPQ2d at 1257; *In re Aquitaine Wine USA, LLC,* 126 USPQ2d 1181, 1186 (TTAB 2018). But while, as part of our analysis, we may assess individual terms (or other features) that together make up a given mark, the ultimate assessment must rest on the marks in their entireties. *See, e.g.*, *QuikTrip W., Inc. v. Weigel Stores,*

*Inc.*, 984 F.3d 1031, 2021 USPQ2d 35, at *3-4 (Fed. Cir. 2021); *Detroit Athletic*, 128 USPQ2d at 1050.

Here, Applicant reprises his argument that the two cited registrations are conceptually weak, but for definitional reasons: he argues that BASIN—which his mark BASIN BEVERAGE CO. and the two cited registrations, TAHOE BASIN and GREAT BASIN COFFEE COMPANY, have in common—is a geographically descriptive, and therefore relatively weak, term.[19] As to TAHOE BASIN, the argument that the mark is geographically descriptive of the goods does not fly. A mark registered on the Principal Register without a claim of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), is presumed to be inherently distinctive. *See, e.g., Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC*, 17 F.4th 129, 2021 USPQ2d 1069, at *12 (Fed. Cir. 2021). An argument that the mark is descriptive represents a collateral attack on the validity of the registration, and that may be accomplished only in an adversary proceeding brought against the registrant. *See, e.g., In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 752 & n.8 (Fed. Cir. 1985).[20] As to GREAT BASIN COFFEE COMPANY, the point of determining where the terms

---

[19]    *See* 6 TTABVUE 13 (citing Oct. 24, 2022, Response to Office Action, at pp. 32-34, 83-86). We note that the citation in Applicant's brief as to this evidence is incorrect. There are no pages 32-34 and 83-86 in his October 24, 2022, Response to Office action, which is only 27 pages long. These pages appear to be in Applicant's March 6, 2023, Request for Reconsideration.

[20]    The rule against collateral attacks in ex parte cases also precludes Applicant's argument (*see* 6 TTABVUE 16) that there can be no confusion between its mark and GREAT BASIN COFFEE COMPANY because "the mark appears to no longer be in use," which is essentially an abandonment argument. *See In re Dixie Rests., Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997); *In re Brockway Glass Co.*, 154 F.2d 673, 69 USPQ 324, 326 (CCPA 1946).

GREAT BASIN fit on the inherent distinctiveness scale is not to exclude them from protection. As we mentioned above, all registered marks, even those containing or comprising geographically descriptive or otherwise weak terms, are afforded protection from later users whose marks will likely cause confusion.[21] *See also Clorox Co.*, 198 USPQ at 340 (even marks on the Supplemental Register are afforded protection from later marks that are likely to cause confusion); *In re Morinaga Nyugyo K.K.*, 120 USPQ2d 1738, 1744 (TTAB 2016) (same).

In contrast, we are assessing the component terms of GREAT BASIN COFFEE COMPANY to determine which term or terms contribute relatively more heavily to the commercial impression consumers will perceive from the mark for purposes of comparing it to Applicant's mark. Here, in the '241 Registration, "COFFEE COMPANY" is generic for coffee and coffee-based beverages. And the "BEVERAGE CO." component of Applicant's mark is generic for an entity that makes beverages (of which coffee-based beverages and Kombucha tea are two such beverages). Indeed, Applicant has disclaimed exclusive rights in "BEVERAGE CO." presumably for this reason.[22] As mentioned, terms disclaimed because they lack source-identifying

---

[21] Applicant further argues that, during prosecution, the owner of the registration for GREAT BASIN COFFEE COMPANY offered to disclaim GREAT BASIN, telling the examining attorney that it believed the disclaimer was necessary because the term is geographically descriptive and "other companies must be able to use it." See 6 TTABVUE 13 (citing Mar. 6, 2023 Request for Reconsideration, at pp. 108-11). This is irrelevant. Because COFFEE COMPANY is generic for coffee and coffee-based beverages, such a disclaimer would have impermissibly resulted in the entire mark being disclaimed. *See In re Newport Fastener Co.*, 5 USPQ2d 1064, 1065 (TTAB 1987) ("an entire mark cannot be disclaimed and still be registered, even on the Supplemental Register"). In any event, GREAT BASIN—the non-generic and first part of the registered mark—is the mark's dominant component.

[22] *See* July 25, 2022, Response to Nonfinal Office Action. And in his brief, Applicant acknowledges that "BEVERAGE CO. is less dominant than BASIN." 6 TTABVUE 7.

significance usually aren't dominant in the context of creating the source-identifying impression of a mark. *See, e.g.*, *Citigroup*, 98 USPQ2d at 1257; *Aquitaine Wine,* 126 USPQ2d at 1186. Thus, the terms "BEVERAGE CO." and "COFFEE COMPANY" contribute little if any source-identifying significance in these marks as wholes. In addition, the terms "BASIN" and "GREAT BASIN" appear before "BEVERAGE CO." and "COFFEE COMPANY" in the respective marks. *See, e.g.*, *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992) (Board correctly found that "Century" is the "dominant element of CENTURY LIFE OF AMERICA due to applicant's disclaimer of the rest of its mark" and because "upon encountering each mark, consumers must first notice this identical lead word"); *Presto Prods. Inc. v. Nice-Pak Prods., Inc.,* 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered").

And as to TAHOE BASIN, there are no other words in the mark. Thus, the fact that "GREAT BASIN" and TAHOE BASIN may have a geographical connotation does not help Applicant in this regard, because there are no stronger source-distinguishing terms in either mark that would contribute more heavily to their respective commercial impressions.

Assessing the marks as wholes on the evidence before us, we find that TAHOE BASIN and GREAT BASIN COFFEE COMPANY are quite similar to Applicant's BASIN BEVERAGE CO. mark. While there are some differences visually and aurally, the presence of the shared term "BASIN," which is the dominant component of

Applicant's mark, renders it quite similar in terms of overall commercial impression to both registered marks. "BASIN" has a geographic connotation in the two cited marks, which refer to specific, but different, basins. Applicant's mark has no specific modifier for "BASIN" and thus could refer to the basin in either registered mark. Looking at the marks in their entireties, we find that the overall commercial impression of Applicant's mark is similar to the overall commercial impressions of both cited registered marks, notwithstanding the differences between them. This factor thus weighs in favor of a finding that confusion is likely.[23]

5.    Weighing the findings on the relevant *DuPont* factors together as to Applicant's Class 30 goods.

Having made findings on all the relevant *DuPont* factors, our final step is to assess these findings together to determine if, on balance, confusion is likely. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *7. Here, although there are visual and aural differences in the marks, Applicant's mark is similar in terms of overall commercial impression to each of the cited registered marks in Class 30. Applicant's goods are legally identical in part to goods in both of the cited Class 30 registrations, and the respective channels of trade and classes of customers are presumed identical. In those circumstances, the degree of similarity between Applicant's mark and each cited registered mark likely to lead to confusion declines. And the fifth and sixth *DuPont*

---

[23] Applicant cites several decisions in which non-identical marks have been found to be dissimilar enough to avoid a likelihood of confusion. *See* 6 TTABVUE 17-18. It is well-settled, however, that comparisons to other decisions, involving other marks and other evidence, are of little value, as each case must be decided on its own record. *See, e.g.*, *In re Quik-Print Copy Shops, Inc.*, 616 F.2d 523, 205 USPQ 505, 507 n.8 (CCPA 1980); *Curtice-Burns, Inc. v. Nw. Sanitation Prods., Inc.*, 530 F.2d 1396, 189 USPQ 138, 141 (CCPA 1976).

Serial No. 90703327

factors are neutral. With no factors weighing against likely confusion, we conclude that confusion is likely as between Applicant's mark as concerns the Class 30 goods and the marks of the '872 and '241 Registrations.

### B.    Classes 32 & 33

We now turn to the refusal to register Applicant's mark as to his Class 32 and 33 goods in view of Registration No. 4890160 for NEW BASIN DISTILLING COMPANY for goods in Class 33 identified as "liquor."

### 1.    Similarity of the Goods

As we did with the Class 30 goods, we will start here with the second *DuPont* factor. It is clear from the application and registration that Applicant's goods (beer, sparkling water, non-alcoholic water-based beverages, in Class 32; and wine, hard seltzer, and hard kombucha tea, in Class 33) are not identical to the goods (liquor) in the registered mark. But "[i]t is … not necessary that the goods of the parties be identical in order to sustain a finding of likelihood of confusion." *In re Rsch. & Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986) (citations omitted). Rather, "the relevant inquiry considers if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 2022 USPQ2d 513, at *8 (Fed. Cir. 2022) (cleaned up; citation omitted).

The Examining Attorney contends that the goods are "legally identical" or, in the alternative, that the evidence shows that they are related.[24] We agree with the latter contention. The record evidence shows that several companies sell both beer (and/or wine) and liquor under the same mark.[25] This constitutes evidence of relatedness in the sense that counts for our purposes. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *6 (affirming finding that residential and commercial real estate services are related and travel in overlapping trade channels "[b]ecause the record shows that companies are known to offer both residential and commercial services under the same mark and, often, on the same website"); *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002) (evidence that "a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis"). Applicant disagrees, but points to no evidence to the contrary. On the record before us, we find that the Class 32 & 33 goods in the application are related to liquor in the sense that matters. *See, e.g.*, *Tiger Lily Ventures*, 2022 USPQ2d 513, at *8.

## 2.   Comparison of the Channels of Trade and Classes of Customers

Turning to the channels of trade and classes of customers, we noted earlier in our discussion of the Class 30 goods that where neither the application nor the registration contain any restrictions on the channels of trade or classes of customers,

---

[24]   *See* 8 TTABVUE 9-10.

[25]   *See id.* (citing examples in the record from 3 Rivers Brewery Block, Little Toad Creek, Tumbleroot Brewery and Distillery, Old House Vineyards, and Gervasi Vineyard).

they are both presumed to be sold in all normal trade channels to all the normal classes of purchasers. *See, e.g.*, *Detroit Athletic*, 128 USPQ2d at 1052. What are the "normal channels" for beer, wine, and liquor? The Examining Attorney's third-party evidence, referenced in the preceding section shows that the goods are sold to the general public (of legal drinking age) at the establishments that make the beverages (e.g., breweries, wineries, distilleries), sometimes as part of the restaurant, bar, and event-hosting services these establishments provide. Applicant does not address these factors or offer evidence to the contrary. *See Majestic Distilling*, 65 USPQ2d at 1204 (malt liquor and tequila "similar by virtue of the fact that both are alcoholic beverages that are marketed in many of the same channels of trade to many of the same consumers"); *Anheuser-Busch, LLC v. Innvopak Sys. Pty Ltd.*, 115 USPQ2d 1816, 1827-28 (TTAB 2015) ("[I]t is clear that beer and other alcoholic beverages … are sold to consumers in many of the same channels of trade, including retail outlets such as liquor stores, supermarkets, convenience stores, restaurants, and bars … ."). On this record, we find that the trade channels and classes of customers overlap, which supports a conclusion that confusion is likely.

> 3. The 5th and 6th *DuPont* factors (the strength of the registered mark and the number and nature of similar marks in use)

The mark NEW BASIN DISTILLING COMPANY is registered, with "DISTILLING COMPANY" disclaimed, on the Principal Register without any showing of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f). That means it is presumed inherently distinctive. *See, e.g.*, *Brooklyn Brewery*, 2021

USPQ2d 1069, at *12. Applicant argues that the cited registration is weak, citing

third-party registrations containing BASIN for alcoholic beverages and drink mixes:

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) *Status* | Owner |
|---|---|---|---|---|
| WILD BASIN[2] | 6014406 | Beer | Mar. 17, 2020 | CANARCHY CRAFT BREWERY COLLECTIVE LLC |
| JEWEL BASIN[3] | 6429315 | Beer | Jul. 20, 2021 | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO.[4] | 5608888 | Non-alcoholic cocktail mixes | Nov. 13, 2018 | ACE Basin Cocktail Company |
| NEW BASIN DISTILLING COMPANY[5] | 4890160 | Liquor | Jan. 19, 2016 | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO.[6] | 5177835 | Beverages, namely, beer and soda pop | Apr. 4, 2017 | PHOENICIAN BREWING COMPANY, LLC |
| BASIN & RANGE[7] | 5022765 | Distilled Spirits | Aug. 16, 2016 | Congregation Spirits, LLC |
| TURNING BASIN[8] | 88-373488<br><br>97-498075 | Beer; Wine; alcoholic beverages except beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon | (Apr. 5, 2019) *Recently abandoned*<br><br>(July 11, 2022) *Notice of Allowance issued 24 January 2023[9]* | Buffalo Bayou Distilleries, LLC |
| WILD BASIN[10] | 88-614301 | Soda pops; Soft drinks | (Sep. 12, 2019) *Notice of Allowance Issued* | CANarchy Craft Brewery Collective LLC |
|  [11] | 4746735 | Beer, ale, lager, stout and porter | June 2, 2015 | KB Brewing, Inc. DBA Klamath Basin Brewing Company |
|  [12] | 5246096 | Headwear; shirts Beer | July 18, 2017 | Phoenician Brewing Company, LLC |
| BASIN OF ATTRACTION[13] | 6019694 | Beer; ale | March 24, 2020 | August Schell Brewing Company |
| RIVER BASIN[14] | 5429308 | Liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; | March 20, 2018 | River Basin Distillery |

(6 TTABVUE 8-9.)

Serial No. 90703327

This table shows that there are eight (8) existing third-party registrations that contain the term BASIN for the types of goods that fall within the range of goods appearing both in Applicant's Class 32 & 33 goods (e.g., beer and wine) and those identified in the cited registration (liquor).[26] Although Applicant does not mention it in his briefs, Applicant also placed in the record evidence of four third-party uses of BASIN in marks for beer: Loomis Basin Brewing Company;[27] Beehive Basin Brewery;[28] Great Basin Brewing Co.;[29] and Big Basin (as the name of a beer).[30]

While this is more evidence than Applicant could muster as to the Class 30 goods, we do not think it rises to the "ubiquitous" or considerable" level at which our primary reviewing court has found such evidence to tilt the sixth *DuPont* factor significantly enough to persuade us that, with respect to alcoholic beverages, the term BASIN has been weakened to the extent that would narrow the scope of protection afforded NEW BASIN DISTILLING COMPANY we otherwise would accord it. *See i.am.symbolic*, 123 USPQ2d at 1751. This is especially so where, as here, several of the third-party

---

[26] We exclude the cited registration (NEW BASIN DISTLILLING COMPANY) because it is not a third-party registration. We do not count HELIO BASIN BREWING CO. because it has been cancelled. *See, e.g., In re Embiid*, 2021 USPQ2d 577, at *35 n.48 (TTAB 2021) ("The existence of a cancelled registration—particularly one cancelled for failure to provide a declaration of continued use—does not tend to show that the cited mark is weak due to third-party use."). We also do not count TURNING BASIN and WILD BASIN because they are applications. *See, e.g., Edom Lab'ys, Inc. v. Llichter*, 102 USPQ2d 1546, 1550 (TTAB 2012) ("with respect to the applications, they are evidence of nothing more than that they were filed with the USPTO") (citations omitted).

[27] July 25, 2022, Response to Office Action, at 21-28.

[28] *Id.* at 29-33.

[29] *Id.* at 34-42.

[30] *Id.* at 43-56.

registrations and uses have additional terms or design elements (e.g., JEWEL BASIN, BASIN & RANGE, BASIN OF ATTRACTION, the design element in KLAMATH BASIN BREWING) that render them further from the cited registration than Applicant's mark, in which the word BASIN is the only term of source-identifying significance. *See, e.g.*, *Specialty Brands*, 223 USPQ at 1284-85; *Palisades Pageants*, 169 USPQ at 793. Accordingly, we find that the sixth factor, as to the goods in Classes 32 & 33, is neutral or, at best, tips only very slightly against a finding that confusion is likely.[31]

### 4.   Similarity of the Marks

Much of what we said as to the two marks that formed the basis of the Class 30 refusal applies here. BASIN is the dominant element of Applicant's mark. NEW BASIN, the first two terms in the registration, are dominant in the cited registration, in which the trailing terms "DISTILLING COMPANY" are disclaimed. The preceding adjective "NEW" in the cited registration serves only to direct attention to the term BASIN, which immediately follows. *See, e.g.*, *Palisades Pageants*, 169 USPQ at 793 (adjective "little" only directed attention to the words "Miss America" that followed). Thus, while the marks have some differences, their commercial impressions are similar overall. This weighs in favor of a finding that confusion is likely.

---

[31]   As with our discussion of the Class 30 goods, the fifth *DuPont* factor is neutral.

5.    Weighing the findings on the relevant *DuPont* factors
      together as to Applicant's Class 32 & 33 goods.

As concerns whether, with respect to Applicant's Class 32 & 33 goods, Applicant's mark is likely to result in consumer confusion, we conclude that the answer is yes. The marks are similar, the goods are related, and the classes or customers and trade channels overlap. While Applicant pointed to a few more third-party registrations and uses of marks that include the term BASIN as compared to his Class 30 evidence, we think it is not enough to tip this factor in Applicant's favor. This factor is neutral, and even if it were assumed to tip slightly in Applicant's favor, that would not be nearly enough to outweigh the other factors that weigh in favor of a conclusion that confusion is likely. On balance, we think it clear on this record that confusion is likely as to the goods in Classes 32 & 33.

**Decision**: The refusal to register Applicant's mark BASIN BEVERAGE CO. is affirmed as to Applicant's goods in Classes 30, 32, and 33. The application will proceed to publication as to the Class 43 services, as to which there was no refusal.