**24-1617**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

In re: Amoss
*Appellant*

---

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in
Serial No. 90703327

---

**BRIEF OF APPELLANT**

Fabian Nehrbass
Julie Rabalais Chauvin
Vanessa M. D'Souza
GARVEY, SMITH & NEHRBASS,
PATENT ATTORNEYS, L.L.C.
701 Poydras Street, Suite 4310
New Orleans, LA 70139
Telephone: (504) 835-2000
fnehrbass@patents.gs
jchauvin@patents.gs
vanessadsouza@patents.gs

*Counsel for Appellant, Matthew Amoss*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1617

**Short Case Caption** In re: Amoss

**Filing Party/Entity** Matthew Amoss

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/02/2024

Signature: /s/ Fabian Nehrbass

Name: Fabian Nehrbass

FORM 9. Certificate of Interest

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Matthew Amoss | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☑ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ……………………………………………....v

I.     STATEMENT OF RELATED CASES…………………………………1

II.    JURISICTIONAL STATEMENT……………………………………1

III.   STATEMENT OF THE ISSUES………………………………………2

IV.    STATEMENT OF THE CASE…………………………………………3

V.     SUMMARY OF THE ARGUMENT…………………………………8

VI.    ARGUMENT ………………………………………………….........9

     A.     Standard of Review……………………………………....……...9

     B.     The Board Erred In Finding a Likelihood of Confusion Between
             "BASIN BEVERAGE CO." and "NEW BASIN DISTILLING
             COMPANY" (Reg No. 4,890,160)…….……………………..…..10

         i.     The Board erred in Finding That the Marks were Similar,
             which Led to an Erroneous Conclusion that This Factor
             Weighed in Favor of a Likelihood of Confusion ………………..11

            1.  The Board failed to consider each mark in its entirety……….12

            2.  The marks are distinct in their appearance…………………...15

            3.  The marks are distinct in sound………………………………16

            4.  The marks have distinct connotations………………………...16

            5.  The marks give different commercial impressions……...……17

ii

6. The similarity of the marks weighs against a finding of a likelihood of confusion…………………………………………17

ii. The Board erred in finding that third party use of similar marks "is neutral or, at best, tips only very slightly against a finding that confusion is likely." (Appx022)……………………18

iii. The Board erred in finding that Applicant's goods were "related to liquor in the sense that counts"……………….26

iv. The *DuPont* factors support registration of Applicant's mark under Classes 32 and 33…………………………………..30

C. The Board Erred in Finding a Likelihood of Confusion Between BASIN BEVERAGE CO. and TAHOE BASIN and GREAT BASIN COFFEE COMPANY in Class 30……………………….31

i. The Board erred in failing to recognize that GREAT BASIN COFFEE COMPANY, as a mark on the supplemental register, is entitled to a narrower scope of protection than marks on the principal register……………………………………………………31

ii. The Board erred in Finding That GREAT BASIN COFFEE COMPANY and TAHOE BASIN were similar to BASIN BEVERAGE CO., which Led to an Erroneous Conclusion that this Factor Weighed in Favor of a Likelihood of Confusion..32

D. Prior Decisions of This Court and of The Board Support Reversal………..36

i. Without Dissection, The Marks are Dissimilar…………………..37

ii. Prior Decisions Demonstrate Why Third-Party Use Supports Registration……………………………………………39

E. Conclusion………………………………………………………………44

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cai v. Diamond Hong, Inc.*,
  901 F.3d 1367 (Fed. Cir. 2018)…………………………..……….....14

*E. & J. Gallo Winery v. Thunder Road Brands, LLC*,
  Opposition No. 91222284, (2018), (Not precedent)……………...........…43

*Hi Wines Ltd. V. Hi Degree Tequila, LLC*,
  Opposition No. 91251181, (2021) (not precedent)……………………38, 39

*In re E. I. DuPont DeNemours & Co.*,
  476 F.2d 1357, 1361 (C.C.P.A. 1973)………………………………………11

*In re Hunke and Jochheim*,
  185 USPQ 188, 189 (TTAB 1975)………………………………………32

*In re Hutchinson and Stengl*,
  Serial No. 86809909, (2019)(not precedent)…………………………...37, 38

*In re Nat'l Data Corp.*,
  753 F.2d 1056 (Fed. Cir. 1985)………………………………………...17

*In re Charger Ventures*,
  64 F.4th 1375 (Fed. Cir. 2023)………………………………………..28

*In re I.Am.Symbolic, LLC*,
  866 F.3d 1315 (Fed. Cir. 2017)……………………………...………34, 35

*In re White Rock Distilleries, Inc.*,
  Serial No. 77093221, TTAB, Oct. 5, 2009 (not precedent)…………..26, 27

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA*
  *v. New Millennium Sports, S.L.U.*,
  797 F.3d 1363, 1373 (Fed. Cir. 2015)………..…………………39, 40, 41

*Jackson Family Farms, LLC v. Littoral,*
No. 2023-1675, at *6 (Fed. Cir. Dec. 5, 2023)……………………………..11

*Juice Generation, Inc. v. GS Enterprises LLC,*
794 F.3d 1334, 1341 (Fed. Cir. 2015)………………………...14-15, 40, 41

*Palisades Pageants,*
442 F.2d 1385 (C.C.P. A. 1971)…………………………………...10, 12, 13, 14

*Pure & Simple Concepts, Inc. v. I H W Mgmt.,*
2020-1211 (Fed. Cir. May 24, 2021)………………………………..41, 42

*QuikTrip West, Inc. v. Weigel Stores, Inc.,*
984 F.3d 1031 (Fed. Cir. 2021)………………………….............9, 10

*Tiger Lily Ventures Ltd. v. Barclays Capital Inc.,*
35 F.4th 1352 (Fed. Cir. 2022)…………………………………...............9

**STATUTES**

15 U.S.C. §1052(d)………………………………..………………………..1, 9

15 U.S.C. §1070………………………………………………………………1

15 U.S.C. §1071(a)(2)………………………………………………………...2

28 U.S.C. §1295(a)(4)(B)……………………………………………………..1

**REGULATIONS**

37 C.F.R. §2.145(d)(1)…………………………..………………………….2

I.  **STATEMENT OF RELATED CASES**

There are no related cases.

II.  **JURISDICTIONAL STATEMENT**

Appellant/Applicant, Matthew Amoss ("Amoss"), is appealing the January 26, 2024 Final Decision of the Trademark Trial and Appeal Board, which affirmed the Patent and Trademark Office's refusal to register Applicant's mark, "BASIN BEVERAGE CO." (Serial No. 90703327), based on an alleged likelihood of confusion, under section 2(d) of the Trademark Act, 15 U.S.C. §1052(d). Specifically, the Board affirmed refusal as to Classes 32 and 33 in view of "NEW BASIN DISTILLING COMPANY" (Reg. No. 4,890,160) and affirmed refusal as to Class 30 goods based on two registrations: "TAHOE BASIN" (Reg. No. 6,760,872) (Principal Register) and "GREAT BASIN COFFEE COMPANY" (Reg. No. 5,510,241) (Supplemental Register).

Pursuant to §20 of the Lanham Act, 15 U.S.C. §1070, the Trademark Trial and Appeal Board had jurisdiction to hear Applicant's appeal from a final decision of the Trademark Examiner denying a request for reconsideration and maintaining the refusal to register Applicant's mark under Section 2(d) of the Trademark Act (15 U.S.C. §1052(d)). The Trademark Trial and Appeal Board's decision is a final order. This Court has jurisdiction pursuant to 28 U.S.C. §1295(a)(4)(B). Amoss'

Notice of Appeal was timely filed on March 25, 2024, under Section 21(a)(2) of

the Lanham Act, 15 U.S.C. §1071(a)(2) and 37 C.F.R. §2.145(d)(1).

**III.    STATEMENT OF THE ISSUES**

    **A.** The Trademark Trial and Appeal Board ("TTAB") erred in finding

        that BASIN BEVERAGE CO. and NEW BASIN DISTILLING

        COMPANY were similar in appearance, sound, connotation, and

        commercial impression, which led to the erroneous determination that

        this *DuPont* factor weighed in favor of a finding of likelihood of

        confusion between the marks.

    **B.** The TTAB erred in finding that the third-party marks did not weaken

        the scope of protection otherwise afforded to NEW BASIN

        DISTILLING COMPANY.

    **C.** The TTAB erred in finding that the relatedness of the goods of BASIN

        BEVERAGE CO. and NEW BASIN DISTILLING COMPANY

        weighed in favor of a finding of a likelihood of confusion.

    **D.** The TTAB erred in finding that the channels of trade and classes of

        consumers associated with BASIN BEVERAGE CO. and NEW

        BASIN DISTILLING COMPANY weighed in favor of a finding of a

        likelihood of confusion.

**E.** The TTAB erred in finding that BASIN BEVERAGE CO. and TAHOE BASIN and GREAT BASIN COFFEE COMPANY were similar in appearance, sound, connotation, and commercial impression, which led to the erroneous determination that this *DuPont* factor weighed in favor of a finding of likelihood of confusion between the marks.

**F.** The TTAB erred in failing to recognize that GREAT BASIN COFFEE COMPANY was entitled to a limited scope of protection, as compared to marks on the principal register.

**G.** The TTAB erred in weighing the *DuPont* factors when it determined that there was a likelihood of confusion between the marks.

## IV.    <u>STATEMENT OF THE CASE</u>

Appellant/Applicant, Matthew Amoss, seeks reversal of the Trademark Trial and Appeal Board's Final Decision dated January 26, 2024 (Appx001-Appx023). In that decision, the Board affirmed the refusal to register Applicant's mark, "BASIN BEVERAGE CO.," Serial No. 90/703,327, for the following services:

Tea-based beverages; Coffee based beverages; Kombucha tea, in International Class 30;

Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages, in International Class 32; and

Beverages, namely, wine, hard seltzer; Hard kombucha tea, in International Class 33.

3

Applicant filed its trademark application for "BASIN BEVERAGES" on May 11, 2021 (Appx029-Appx034).

The Trademark Office issued an Office Action on January 25, 2022, refusing registration under International Class 32 based on an alleged likelihood of confusion with the following registered and pending marks (Appx036-Appx063)[1]:

| Mark | Reg. No. / App. No. | Goods/Services | Owner |
|---|---|---|---|
| WILD BASIN | 6014406 | Beer | CANARCHY CRAFT BREWERY COLLECTIVE LLC |
| JEWEL BASIN | 6429315 | Beer | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO. | 5608888 | Non-alcoholic cocktail mixes | ACE Basin Cocktail Company |
| NEW BASIN DISTILLING COMPANY | 4890160 | Liquor | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO. | 5177835 | Beverages, namely, beer and soda pop | PHOENICIAN BREWING COMPANY, LLC |
| BASIN & RANGE | 5022765 | Distilled Spirits | Congregation Spirits, LLC |
| TURNING BASIN | 88-373488 | Beer; Wine; alcoholic beverages except beers; alcoholic | Buffalo Bayou Distilleries, LLC |

---

[1] The Board also deferred merits on the application until clarification as to the classes is sought and filing fees paid.

| Mark | Reg. No. / App. No. | Goods/Services | Owner |
|------|---------------------|----------------|-------|
| | | beverages, namely, spirits, vodka, whiskey, gin, bourbon | |
| Tahoe Basin | 6760872 /88-640188 | Chai tea; Coffee | Java Detour NorCal LLC |
| WILD BASIN | 88-614301 | Soda pops; Soft drinks | CANarchy Craft Brewery Collective LLC |

Applicant timely filed its Response to the Office Action on July 25, 2022, amending its mark to "BASIN BEVERAGE CO.", disclaiming "BEVERAGE CO.", arguing against the likelihood of confusion, and amending its goods and services to the following: (Appx065-Appx167):

Beverages, namely, wine, hard seltzer; Hard kombucha tea, in International Class 33;

Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages, in International Class 32;

Tea-based beverages; Coffee-based beverages; Kombucha tea, in International Class 30; and

Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck, in International Class 043.

In its response, Applicant argued that the marks were sufficiently dissimilar (Appx157-159), that there was extensive third party use of the term "BASIN" for beer (Appx159-166), and that customers for beer have to look to minute

differences in marks, in part due to the overwhelming number of marks for beer (Appx166-Appx167) (including over 40,000 applications for trademarks filed with "G & S: Beer" listed in the application (Appx152)).

On October 5, 2022, the Trademark Examining Attorney issued a Nonfinal Office Action, (1) withdrawing the refusal to register based on a likelihood of confusion with U.S. Registration Numbers 6429315 ("JEWEL BASIN" for beer), 6014406 ("WILD BASIN" for beer), 5608888 ("ACE BASIN COCKTAIL CO." for non-alcoholic cocktail mixes), 5177835 ("HELIO BASIN BREWING CO." for beverages, namely beer and soda pop), and 5022765 ("BASIN & RANGE" for distilled spirits); (2) finding that the following applications no longer served as possible bars to registration: 90-870224 ("JUICE BASIN" for goods including juices/non-alcoholic drinks), 88-373488 ("TURNING BASIN" for Beer; Wine; alcoholic beverages except beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon), and 88-614301 ("WILD BASIN" for soda pops; soft drinks); refusing registration as to International Classes 32 and 33, based on an alleged likelihood of confusion with: 4890160 ("NEW BASIN DISTILLING COMPANY" for liquor); and refusing registration as to International Class 30, based on an alleged likelihood of confusion with: 6760872 ("TAHOE BASIN" for coffee; chai tea); and 5510241 ("GREAT BASIN COFFEE COMPANY" for goods

6

including coffee; coffee and tea; tea; and coffee-based beverages). (Appx193-Appx205).

On October 24, 2022, Applicant timely filed a response to office action arguing against the likelihoods of confusion (Appx207-233).

On November 22, 2022, the Examining Attorney issued a Final Office Action, maintaining refusal based on the alleged likelihoods of confusion. (Appx238-266).

Applicant timely filed a Request for Reconsideration after Final Action and a concurrent Notice of Appeal to the Trademark Trial and Appeal Board on March 6, 2023 (Appx268-Appx379) which the Trademark Examining Attorney denied (Appx383-Appx489). Applicant timely filed its Appeal Brief on June 26, 2023 (Appx491-Appx514). The Examining Attorney filed her brief on August 15, 2023 (Appx517-Appx552). Applicant timely filed its Reply Brief on September 5, 2023 (Appx554-Appx580).

The Board issued its Final Decision on January 26, 2024. (Appx001-Appx023). In its decision, the Board affirmed the refusal to register BASIN BEVERAGE CO. under Class 30 due to an alleged likelihood of confusion with two marks: TAHOE BASIN (Reg. No. 6,760,872) and GREAT BASIN COFFEE COMPANY (Supp. Reg. No. 5,510,241) (Appx002-Appx003). The Board also affirmed the refusal to register BASIN BEVERAGE CO. under Class 32 and 33,

based on an alleged likelihood of confusion with NEW BASIN DISTILLING

COMPANY (Reg. No. 4,890,160) (Appx002-Appx003).

On March 25, 2024, Applicant timely filed its Notice of Appeal to this Court

(Appx581-582).

## V.    SUMMARY OF THE ARGUMENT

The Board erred in finding a likelihood of confusion between Applicant's

mark, BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY for

Classes 32 and 33 and between BASIN BEVERAGE CO. and TAHOE BASIN and

GREAT BASIN BEVERAGE COMPANY for Class 30. The Board did not meet

the substantial evidence standard in determining that the marks were similar in

appearance, sound, connotation, and commercial impression. In its analyses, the

Board erred by ignoring this Court's precedent that dictates that marks must be

compared in their entireties. The Board improperly dissected the marks, failing to

give weight to terms other than BASIN. These errors led the Board to the

erroneous conclusion that this *DuPont* factor weighed in favor of a finding of

likelihood of confusion between the marks. The Board also erred in finding that

third party use did not weigh heavily in favor of registration (for Classes 32 and

33) and was neutral for Class 30. Additionally, the Board erred with respect to

Classes 32 and 33 in finding that the relatedness of the goods was not neutral and

that the channels or trade and classes of customers was not neutral. As a result of

8

the Board's errors, the Board incorrectly determined that there was a likelihood of

confusion between the marks in affirming the refusal to register Applicant's mark.

## VI.  <u>ARGUMENT</u>

### A. Standard of Review

This Court reviews the Trademark Trial and Appeal Board's legal

conclusions *de novo* and its factual findings for substantial evidence. *Tiger Lily*

*Ventures Ltd. v. Barclays Capital Inc.*, 35 F.4th 1352, 1359 (Fed. Cir. 2022) (citing

*Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 (Fed. Cir. 2018). "Substantial

evidence is such relevant evidence as a reasonable mind would accept as adequate

'to support a conclusion.'" *Tiger Lily Ventures Ltd.* at 1359 (quoting *Stone Lion*

*Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1321 (Fed. Cir.

2014)(quoting *Consol. Edison Co. of N.Y. v. National Labor Relations Bd.*, 305

U.S. 197, 229 (1938))). In the instant case, the Board affirmed the refusal to

register Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C.

§1052(d), indicating that Applicant's mark, "BASIN BEVERAGE CO.," was

likely to cause confusion with the registered marks "NEW BASIN DISTILLING

COMPANY" (Registration No. 4,890,160), TAHOE BASIN (Reg. No. 6,760,872),

and GREAT BASIN COFFEE COMPANY (Supp. Reg. No. 5,510,241) (Appx002-

Appx003). Likelihood of confusion is a legal determination based on underlying

findings of fact related to the *DuPont* factors. *QuikTrip West, Inc. v. Weigel Stores,*

*Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021). This Court reviews the Board's factual findings on each relevant *DuPont* factor for substantial evidence and reviews the Board's weighing of the *DuPont* factors *de novo*. *Id.*

### B. The Board Erred In Finding A Likelihood of Confusion Between "BASIN BEVERAGE CO." and "NEW BASIN DISTILLING COMPANY" (Reg No. 4,890,160)

The Board erred when it affirmed the refusal to register Applicant's mark, BASIN BEVERAGE CO. for the following goods:

> Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages, in International Class 32; and

> Beverages, namely, wine, hard seltzer; Hard kombucha tea, in International Class 33,

based on an alleged likelihood of confusion with the mark NEW BASIN DISTILLING COMPANY (Registration No. 4,890,160) (for liquor). In its analysis, the Board, *inter alia*, (1) engaged in improper dissection of the marks, failing to consider all terms; (2) misapplied *Palisades Pageants,* 442 F.2d 1385 (C.C.P. A. 1971); (3) erred in discounting the impact of third-party uses of the term BASIN; (4) erred in finding that the goods were related "in the sense that counts"; (5) erred in finding that the evidence of customers and channels of trade weighed in favor of a finding of a likelihood of confusion; and (6) ignored prior decisions supporting a finding there was no likelihood of confusion. As a result, the Board erred when it

weighed the *DuPont* factors and found that there was a likelihood of confusion

between BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY.

> i. <u>The Board erred in Finding That the Marks were Similar, which Led to an Erroneous Conclusion that This Factor Weighed in Favor of a Likelihood of Confusion</u>

The first *DuPont* factor examines "[t]he similarity or dissimilarity of the

marks in their entireties as to appearance, sound, connotation and commercial

impression," *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A.

1973). This factor can be dispositive:

> "[O]ne DuPont factor may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks." *Champagne Louis Roederer, S.A. v. Delicato Vineyards*, 148 F.3d 1373, 1375 (Fed. Cir. 1998); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:79 (5th ed. 2023) ("It is possible that the first [DuPont] factor, the similarity or dissimilarity of the marks themselves, may be dispositive of the issue.").

*Jackson Family Farms, LLC v. Littoral,* No. 2023-1675, at *6 (Fed. Cir. Dec. 5,

2023).

Substantial evidence does not support the Board's finding that NEW BASIN

DISTILLING COMPANY and BASIN BEVERAGE CO. are similar *in their*

*entireties* as to appearance, sound, connotation and commercial impression. In

addressing the similarity of the marks at issue, the Board failed to consider the

marks "in their entireties" and engaged in improper dissection of the marks,

erroneously determining that the marks were similar. Additionally, the Board's

11

analysis, which is a mere nine lines inside a twenty three page opinion, fails to address the appearance of the marks, fails to address the sounds of the marks, and fails to address the connotations of the marks. (Appx022). Finally, the Board misapplies its single cited authority, *Palisades Pageants*, 442 F.2d 1385 (C.C.P. A. 1971).

### *1. The Board failed to consider each mark in its entirety*

The Board engaged in improper dissection of the two marks at issue, NEW BASIN DISTILLING COMPANY and BASIN BEVERAGE CO. (Appx022). The Board first erred in its comparison by disregarding the terms DISTILLING COMPANY in the registered mark. The Board made no note of the disclaimed terms BEVERAGE CO. in its similarity analysis. (Appx022). Although DISTILLING COMPANY is disclaimed in NEW BASIN DISTILLING COMPANY, such a disclaimer does not indicate the terms should be disregarded in evaluating the marks as a whole. The disclaimed terms in this case make clear that the company sells liquor, a good different than those of Applicant. Second, the Board erred when it found that "NEW" in NEW BASIN DISTILLING COMPANY "serves only to direct attention to the term BASIN, which immediately follows." (Appx022). In its analysis, the Board misinterpreted *Palisades Pageants*, a distinguishable case.

In *Palisades Pageants,* 442 F.2d 1385 (C.C.P. A. 1971), the Court affirmed the refusal to register the mark LITTLE MISS AMERICA due to a likelihood of confusion with the mark MISS AMERICA. The Court based its decision in part on two findings, neither which is applicable to the instant matter. First, the Court found that the mark LITTLE MISS AMERICA "bodily incorporates [the MISS AMERICA] mark, merely adding an adjective to the beginning thereof which, as the board observed, 'directs attention to the words which follow.'" *Id.* at 1388. Second, the Court noted that the MISS AMERICA mark was "exceedingly well known." *Id.* at 1389. In the instant matter, BASIN BEVERAGE CO. does not bodily incorporate the mark NEW BASIN DISTILLING COMPANY. Second, there has been no evidence that NEW BASIN DISTILLING COMPANY is exceedingly well known (or even well known, for that matter). In its reliance on *Palisades Pageants*, the Board makes a small but impactful addition when citing the *Palisades Pageants* decision. Namely, the Board alleges that in *Palisades Pageants,* the court found that the preceding adjective "little" in LITTLE MISS AMERICA "only" directed attention to the words that followed. Notably, the court in *Palisades Pageants* did not use the term "only". *Id.* at 1388. By adding "only" to the decision, the Board misinterprets the decision and thus errs when it attempts to disregard the term NEW. *Palisades Pageants* does not support the Board's conclusion. Rather, *Palisades Pageants* supports the position that an applicant may

13

not avoid confusion by adding an adjective before an exceedingly well known mark, when the applicant's mark bodily incorporates the existing mark. As the circumstances of the instant case are utterly distinct from *Palisades Pageants*, the Board erred in its reliance on same.

The Board thus erred in improperly dissecting the marks by failing to consider both the disclaimed terms of DISTILLING COMPANY and BEVERAGE CO. and the non-disclaimed term (and per the Board's own admission part of the dominant portion of the mark (Appx022)), NEW. As this Court has noted, although the Board can give more or less weight to particular components of a mark for appropriate reasons, "it must still view the mark as a whole." *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334, 1341 (Fed. Cir. 2015). As this Court has explained:

> With regard to the similarity of the marks themselves, we have stated the TTAB must examine "the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation[,] and commercial impression." *In re Viterra*, 671 F.3d at 1362 (internal quotation marks and citation omitted). "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs.*, 668 F.3d at 1368 (internal quotation marks and citation omitted).

*Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373 (Fed. Cir. 2018).

Moreover, failure to consider terms simply because they are disclaimed is improper. This Court examined a similar error in *Juice Generation, Inc.*:

14

…the Board did not set forth an analysis showing that it avoided the error of giving no significance to the term, which is impermissible notwithstanding that the term is generic and disclaimed. *See Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 851 (Fed.Cir.1992) (Board erred by giving no weight to generic term); *see also Shen Mfg. Co. v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1243 (Fed.Cir.2004) ("The disclaimed elements of a mark, however, are relevant to the assessment of similarity. This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases have been disclaimed." (citation omitted)); *Nat'l Data Corp.*, 753 F.2d at 1059 ("The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion. The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." (footnote omitted)).

*Id.* at 1341. In the instant matter, the Board engaged in improper dissection of the marks, improperly disregarded the term NEW, failed to give proper weight to the disclaimed terms, DISTILLING COMPANY, failed to address the appearance, sound, and connotation of the entire marks, and as a result, erroneously determined that the degree of similarity of the marks weighed in favor of a finding of a likelihood of confusion. As explained herein, a proper analysis further demonstrates why the Board's decision is not supported by substantial evidence.

## 2. The marks are distinct in their appearance

First, the appearances of BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY are sufficiently distinct to not render confusion likely. Applicant's mark consists of three words: BASIN BEVERAGE CO. The cited mark is four words: NEW BASIN DISTILLING COMPANY. Only one of the

15

seven[2] words, BASIN, is identical. In appearance, the marks share but a single term.

### 3. The marks are distinct in sound

Second, as to sound, there is but one word of the seven – BASIN – that sounds the same. The rest bear no resemblance in sound. And it is not as if the single shared word leads the overall marks to sound similar. Each mark is long – Applicant's three-word mark of BASIN BEVERAGE CO. and the four-word cited mark of NEW BASIN DISTILLING COMPANY are not alike in sound. For Applicant's mark, BASIN is the first term. For the cited mark, it follows NEW. Applicant's mark consists of six syllables. The cited mark consists of nine syllables. The emphasis of *NEW* in the cited registration cannot be ignored.

### 4. The marks have distinct connotations

In connotation, it is clear the cited mark refers specifically to a distilling company, or one that produces distilled spirits. After all, the mark itself specifies that it is a DISTILLING COMPANY. An ordinary consumer viewing the cited mark NEW BASIN DISTILLING COMPANY would assume that the company in question produces distilled beverages and only distilled beverages. Because the public is unaware of which terms are disclaimed, such terms are relevant to the analysis. In comparison, Applicant's mark does not imply that it offers distilled

---

[2] Applicant acknowledges that CO. is an abbreviation of COMPANY; however, in appearance the terms are distinct.

spirits, and in fact, the goods and services applied for do not include liquor (the good of the cited mark) or spirits. Applicant's mark is therefore sufficiently dissimilar in connotation to the cited mark.

### 5. *The marks give different commercial impressions*

Finally, as to overall commercial impression, Applicant respectfully submits that the single shared term of BASIN does not create a similar overall commercial impression. As this Court has stated, "likelihood of confusion[[,]] cannot be predicated on dissection of a mark, that is, on only part of a mark." *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985). The cited mark, NEW BASIN DISTILLING COMPANY, creates an overall commercial impression of a distilling company, or a company that sells liquor or spirits. Applicant's mark BASIN BEVERAGE CO. suggests Applicant is a company that sells various beverages. However, the general term beverage does not imply sale of liquor or spirits. Notably, with each mark including its entity status in the mark (COMPANY and CO.), each mark suggests it is the company which offers the relevant goods. This further supports the view the companies would be viewed as distinct and unrelated.

### 6. *The similarity of the marks weighs against a finding of a likelihood of confusion*

The Board broke with this Court's precedent and failed to properly evaluate the entire marks. As a result, the Board improperly found that the similarity of the marks weighed in favor of a finding of a likelihood of confusion. When proper

consideration is given to NEW BASIN DISTILLING COMPANY and BASIN

BEVERAGE CO., the marks are sufficiently dissimilar such that this factor alone

should be dispositive in supporting a finding of a lack of a likelihood of confusion.

    ii.  <u>The Board erred in finding that third party use of similar marks "is neutral or, at best, tips only very slightly against a finding that confusion is likely." (Appx022).</u>

The Board erred in failing to find that the sixth *Dupont* factor, the number

and nature of similar marks in use on similar goods, weighs heavily in favor of

Applicant and against a finding of a likelihood of confusion.

The evidence of record shows that BASIN is a widely used term for

trademarks both with the goods in Applicant's application (i.e. beer) and the goods

(liquor) of the cited mark. During prosecution, the following marks were cited by

the Examining Attorney and/or noted by Applicant.

| Mark | Reg. No. / App. No. | Goods/Services | Owner |
|---|---|---|---|
| WILD BASIN[3] | 6014406 | Beer | CANARCHY CRAFT BREWERY COLLECTIVE LLC |
| JEWEL BASIN[4] | 6429315 | Beer | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO.[5] | 5608888 | Non-alcoholic cocktail mixes | ACE Basin Cocktail Company |

[3] (Appx052-Appx053)
[4] (Appx060-Appx061)
[5] (Appx050-Appx051)

18

| Mark | Reg. No. / App. No. | Goods/Services | Owner |
|------|---------------------|----------------|-------|
| | | | |
| NEW BASIN DISTILLING COMPANY[6] | 4890160 | Liquor | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO.[7] | 5177835 | Beverages, namely, beer and soda pop | PHOENICIAN BREWING COMPANY, LLC |
| BASIN & RANGE[8] | 5022765 | Distilled Spirits | Congregation Spirits, LLC |
| TURNING BASIN | 88-373488[9] 97-498075[10] | Beer; Wine; alcoholic beverages except beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon | Buffalo Bayou Distilleries, LLC |
| WILD BASIN[11] | 88-614301 | Soda pops; Soft drinks | CANarchy Craft Brewery Collective LLC |
|  [12] | 4746735 | Beer, ale, lager, stout and porter | KB Brewing, Inc. DBA Klamath Basin Brewing Company |

---

[6] (Appx046-Appx047)
[7] (Appx048-Appx049) The Board indicated it did not consider HELIO BASIN mark because it has been cancelled. However, the mark was cancelled as of October 20, 2023, which is after all briefing was complete.
[8] (Appx044-Appx045)
[9] (Appx054-Appx055)
[10] (Appx372-Appx374)
[11] (Appx056-Appx057)
[12] (Appx077-Appx078)

| Mark | Reg. No. / App. No. | Goods/Services | Owner |
|------|------|------|------|
|  [13] | 5246096 | Headwear; shirts Beer | Phoenician Brewing Company, LLC |
| BASIN OF ATTRACTION[14] | 6019694 | Beer; ale | August Schell Brewing Company |
| RIVER BASIN[15] | 5429308 | Liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; whiskey spirits | River Basin Distillery |

Additional evidence of third-party use included four third-party uses of BASIN for beer: Loomis Basin Brewing Company; Beehive Basin Brewery; Great Basin Brewing Co.; and Big Basin. (Appx021, Appx085, Appx092-Appx097, Appx106-Appx107).[16]

Despite these third-party uses, the Board found that the term BASIN has not "been weakened to the extent that would narrow the scope of protection afforded NEW BASIN DISTILLING COMPANY we would otherwise accord it." (Appx021). The Board erred in this regard. The evidence of record included numerous examples of trademarks including the term BASIN for identical goods of Applicant (i.e. beer) and additional third-party uses of the term BASIN for the goods of the cited mark (liquor/spirits). It is the Board's position that the following

---

[13] (Appx079-Appx080)
[14] (Appx083-Appx084)
[15] (Appx224-Appx225)
[16] Applicant respectfully notes that it did in fact mention these in its brief (*see* footnote 16, Appx500).

marks do not weaken the term BASIN in NEW BASIN DISTILLING COMPANY

and that BASIN BEVERAGE CO., although not confusingly similar to any of the

following (many for *identical goods*), would be confusingly similar to NEW

BASIN DISTILLING COMPANY (for non-identical goods):

1. WILD BASIN

2. JEWEL BASIN

3. ACE BASIN COCKTAIL CO.

4. BASIN & RANGE

5. KLAMATH BASIN BREWING (stylized)

6. HELIO BASIN (stylized)

7. BASIN OF ATTRACTION

8. RIVER BASIN

9. LOOMIS BASIN BREWING COMPANY

10. BEEHIVE BASIN BREWERY

11. GREAT BASIN BREWING CO.

12. BIG BASIN

(Appx021). The Board disregarded TURNING BASIN and a WILD BASIN mark

because they are pending applications and HELIO BASIN BREWING

COMPANY[17] because it has since been cancelled (Appx021, fn. 26). Applicant submits that the pending marks, since they were allowed, if they themselves do not weaken the term BASIN, at least serve as evidence of the weakened nature of BASIN with alcoholic drinks (or they would not have been allowed) and why a single shared term of BASIN between two marks is unlikely to cause confusion. Nevertheless, even not considering such marks, the Board's decision lacks substantial evidence.

Of the cited marks, four of the marks list liquor or distilled spirits under their goods: NEW BASIN DISTILLING COMPANY, BASIN & RANGE, TURNING BASIN,[18] and RIVER BASIN. The term BASIN is thus not simply shared between Applicant's BASIN BEVERAGE CO. mark and NEW BASIN DISTILLING COMPANY for *different* goods, but BASIN is a term shared amongst sellers of liquor / spirits. Because there are multiple sellers of goods of liquor / spirits that utilize BASIN, Applicant respectfully submits the shared term BASIN in NEW BASIN DISTILLING COMPANY and BASIN BEVERAGE CO. cannot be the basis for a finding of a likelihood of confusion between Applicant's mark and the cited mark.

---

[17] The Board indicated it did not consider HELIO BASIN BREWING COMPANY because it has since been cancelled. However, the mark was cancelled as of October 20, 2023, which is after all briefing was complete and the evidence of record does not show that the mark is cancelled.

[18] Again, this mark was not considered by the Board. Applicant submits it is still relevant to show the weakened nature of BASIN, even if not weakening the term itself.

Perhaps even more importantly, if there is no likelihood of confusion between two marks sharing the term BASIN for the *same goods*, there likewise should be no confusion amongst two marks sharing the term BASIN for *different goods*. That is, it is undisputed that there is no likelihood of confusion between Applicant's mark of BASIN BEVERAGE CO. and the many separate trademarks for beer incorporating the term BASIN. How could there be confusion with another mark, no more similar than the other marks cited, which is not even for the same goods as Applicant? Although the Board alleges the cited registration is more similar than the other marks, such is only the case if NEW and DISTILLING COMPANY are ignored from the analysis. If consumers are not likely to be confused between the registered mark of WILD BASIN and BASIN BEVERAGE CO. or the registered mark of JEWEL BASIN and BASIN BEVERAGE CO., for *the same goods*, surely there can be no confusion between BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY, *for different goods.* There is no rationale or litmus test supporting this difference in analysis.

The weakness of specific terms is further impacted by the crowded field in which Applicant's trademark has been filed. As noted during prosecution, since 2010, there have been over 40,000 applications for trademarks with "G & S: Beer" listed in the application (Appx152). These are merely the applications for which beer is listed first in the G & S. Because beer is in such a crowded area for trademarks,

23

consumers are required to rely upon minute distinctions when certain terms are being used. The term "river" is another example of a term, much like "basin," associated with water, that is so commonly used with beer that consumers must rely on minute distinctions. As shown in the table below (registrations at Appx121-Appx151), registrations have issued, for different owners, for a number of marks which include the term "river", including RIVER BEER and RIO (Spanish for river). Each of the marks includes beer as a good.

| Mark | Reg. No. | Owner |
|------|----------|-------|
| RIVER RAINBOW | 6428997 | Wild West Spirits, LLC |
| HAZY RIVER | 6330168 | NEW HOLLAND IP, LLC |
| BIG RIVER | 5686065 | Big River Breweries, Inc. |
| FRENCH RIVER | 5965946 | Wooden Hill Brewing Company |
| DOWNRIVER | 5957350 | Banter's Craft Beverages LLC |
| RIVER TRIP | 5875622 | Allagash Brewing Company |
| RIVER PIG | 5680459 | zEco Holdings LLC |
| GOOD RIVER BEER | 5180929 | Good River Beer, LLC |
| BRAIDED RIVER | 6125006 | Nelson, David |
| RIVER BEER | 5478986 | EXACTLY NEAT VENTURES LLC |
| FORE RIVER | 5319089 | Fore River Brewing Company LLC |
| RIO | 6289532 | Cerveceria Centro Americana, S.A. |
| NEW RIVER | 4316862 | M.A. Hagerman Brewing Company, L.L.C. |
| GHOST RIVER | 3754607 | GHOST RIVER BREWING, LLC |
| RIO CLARO | 4577593 | G.K. Skaggs, Inc. |
| RIO BRAVO | 4998245 | CERVECERIA MODELO DE MEXICO |

Much like there is no likelihood of confusion between the various "RIVER" marks, and much like the registration of RIVER BEER and RIO did not prevent the subsequent registration of various RIVER marks, such as RIVER PIG, RIVER

TRIP, FRENCH RIVER, BIG RIVER, HAZY RIVER, RIO CLARO, RIO BRAVO, or RIVER RAINBOW, the various BASIN marks, for the same goods (beer), could not prevent registration of BASIN BEVERAGE CO.

It is illogical to find that BASIN is common enough for beer that BASIN BEVERAGE CO. is unlikely to result in confusion with the various BASIN marks (for an identical good, beer), but that somehow the term BASIN in the mark NEW BASIN DISTILLING COMPANY for a different good (liquor) prevents the registration of BASIN BEVERAGE CO. This is all the more perplexing when noting that there are other registrations that use the term BASIN for liquor/spirits.

Applicant submits the Board's decision is not supported by substantial evidence. Rather, the evidence indicates that BASIN is weak when used with beer and weakened when used with liquor. Thus, a mark such as NEW BASIN DISTILLING COMPANY cannot be likely to be confused with another mark, such as BASIN BEVERAGE CO., solely based on the shared term BASIN. The sixth *DuPont* factor weighs heavily in favor of Applicant and the Board's finding is not supported by substantial evidence.

As noted, there is no likelihood of confusion BASIN BEVERAGE CO. and WILD BASIN, JEWEL BASIN, HELIO BASIN BREWING CO., TURNING BASIN, and BASIN OF ATTRACTION, all of which use the trademarks for identical goods. Why then would there be confusion between BASIN BEVERAGE

25

CO. and NEW BASIN DISTILLING COMPANY, which do not even have identical goods? Applicant submits that this alone is enough to obviate the need for any further analysis.

    iii.  <u>The Board erred in finding that Applicant's goods were "related to liquor in the sense that counts"</u>

The question is not whether alcoholic beverages are related in a general sense, as undoubtedly, they are both beverages and alcoholic, but whether they are related such that Applicant's mark would likely cause confusion with the cited mark. Specifically, the question is whether the goods are related such that the single shared term BASIN renders consumers likely to be confused as to the source of the goods and/or services offered.

In a relevant decision by the Trademark Trial and Appeal Board finding the examining attorney had failed to establish on the record the relatedness of energy vodka infused with caffeine and wine, the Board explained:

> **There is no per se rule that holds that all alcoholic beverages are related**. *See G. H. Mumm & Cie v. Desnoes & Geddes Ltd.*, 917 F.2d 1292, 16 USPQ2d 1635 (Fed. Cir. 1990)[RED STRIPE and design for beer was not confusingly similar to a design of a red stripe for wines and sparkling wines]; *National Distillers and Chemical Corp. v. William Grant & Sons, Inc.*, 505 F.2d 719, 184 USPQ 34 (CCPA 1974) [DUET for prepared alcoholic cocktails, some of which contained brandy, and DUVET for French brandy and liqueurs not confusingly similar]. See also, TMEP §1207.01(a)(iv) ["there can be no rule that certain goods or services are per se related, such that there must be a likelihood of confusion from the use of similar marks in relation thereto"].

*In re White Rock Distilleries, Inc.*, Serial No. 77093221, TTAB, Oct. 5, 2009 (not precedent) (emphasis added). Applicant submits that the Board erred in finding that the evidence of record supported a finding that the goods were related.

In this matter, the Board relied upon five examples in the record to support its finding that the goods were related "in the sense that counts for our purposes" (Appx018). However, the evidence or record did not show that "several companies sell both beer (and/or wine) and liquor under the same mark" as found by the Board (Appx018). The Board relies upon evidence from 3 Rivers Brewery Block, Little Toad Creek, Tumbleroot Brewery and Distillery, Old House Vineyards, and Gervasi Vineyard (Appx018, fn. 25 (Appx387-431)). The evidence does not demonstrate that 3 Rivers Brewery Block sells both beer (and/or wine) and liquor under the same mark. The evidence demonstrates that the brewery sells beer, but the evidence does not show the trademark used on the beer sold. Moreover, the trademark used on the liquor is 3 Rivers Brewstillery, not 3 Rivers Brewery Block. (Appx392-Appx394). Similarly, the evidence does not show the *same* trademark used on the various alcoholic drinks offered by Little Toad Creek. (Appx398- Appx 401). The beers (Appx398) show Little Toad Creek on the can, the liquor features FIVE DUCKS as the prominent trademark, and the canned cocktails feature "MIXED UP" as the prominent trademark (with neither liquor nor canned cocktails appearing to show Little Toad Creek). (Appx398- Appx 401). Gervasi Vineyard

similarly sells its wine and spirits under different marks (Gervasi Vineyard and Gervasi Spirits) (Appx419-Appx431).

The evidence of record does not demonstrate that several companies sell both beer (and/or wine) and liquor under the same mark. The evidence of record demonstrates that two companies sell both beer (and/or wine) and liquor under the same mark. Moreover, one of the two companies that does appear to sell beer and liquor under the same mark (Tumbleroot Brewery and Distillery) has a name which specifies that it is both a brewery and a distillery. Thus, it would come as no surprise to consumers that it produces both types of products. In support of its finding, the Board relies upon *In re Charger Ventures,* 64 F.4th 1375 (Fed. Cir. 2023). However, in *Charger Ventures*, the record consisted of dozens of registrations offering both services, *Id.* at 1382, not five (at best).

Even if the examples relied upon by the Board did provide the evidence alleged (which Applicant disputes), Applicant submits they are not enough to sway this factor. After all, how many beer companies do not sell liquor? How many beer companies also sell liquor? How many wine companies do not sell liquor compared to how many wine companies sell liquor? These questions and evidence which relates to these questions would be much more indicative of how related the goods of Applicant and "liquor" are. Absent any such evidence, Applicant submits that the Board should have found this factor to be neutral.

There is no evidence in the record that the average consumer of Applicant's goods are necessarily the same consumers of the cited mark's goods, or that consumers of Applicant's goods would not properly distinguish companies selling different alcoholic beverages, even if such companies shared a single term in common. In fact, the evidence of record, namely the various trademarks which share the term BASIN for liquor / spirits, suggests that a shared term of BASIN alone is not likely to cause confusion between consumers, even for the same goods.

The evidence submitted by the Examiner only demonstrates that at least on a handful of occasions, the same company / establishment produced and sold both liquor and other alcoholic goods, such as beer or wine, under the same name (some of the examples are evidence of brewery services or distillery services but do not appear to be evidence of beer or liquor as products under the same mark). The evidence does not indicate that such overlap is so common so as to suggest that any differences between liquor and the goods set forth in Applicant's application should be ignored in examining any likelihood of confusion. Moreover, the evidence largely demonstrates that the companies / establishments which sell both liquor and another type of alcohol, often do so only at their facility, the brewery or distillery, and that their name suggests as much.

Again, Applicant does not submit that the goods are not related in any sense, as they are both alcoholic and beverages, but simply suggests that the evidence

does not support a finding that they are not related in the sense so that this factor weighs in favor of a finding of a likelihood of confusion. One cannot divorce the goods in question when relying upon authority. Thus, when the Board relies upon a decision regarding real estate services (*Charger Ventures*), Applicant asks if there have been more than 40,000 trademark applications including such services, as there have been for beer, since 2010? (Appx152). Applicant submits that for goods to be related for purposes of a likelihood of confusion, the Court should consider not simply whether a handful of trademarks are used for the two separate goods, but whether it is so common for two companies to use the same trademark for the different goods that consumers would be likely be think the two kinds of goods are likely to emanate from the same source.

With respect to channels of trade, Applicant submits that a few examples is not enough to determine that the trade channels and classes of customers overlap. Accordingly, the Board also erred in not finding the evidence neutral in this regard.

iv.  The *DuPont* factors support registration of Applicant's mark under Classes 32 and 33

Substantial evidence does not support the Board's *DuPont* findings in comparing NEW BASIN DISTILLING COMPANY and BASIN BEVERAGE CO. The marks are sufficiently dissimilar such that this finding alone should be dispositive; additionally, third-party use weighs heavily against confusion, and the relatedness of goods and channels of trade should have been found to have been

neutral. Accordingly, there should have been no finding of a likelihood of confusion between Applicant's BASIN BEVERAGE CO. mark and NEW BASIN DISTILLING COMPANY. The Board's decision should be reversed.

### C. The Board Erred in Finding a Likelihood of Confusion Between BASIN BEVERAGE CO. and TAHOE BASIN and GREAT BASIN COFFEE COMPANY in Class 30

The Board also erred in finding that Applicant's mark of BASIN BEVERAGE CO. was not entitled to registration in Class 30 due to an alleged likelihood of confusion with "TAHOE BASIN" (Reg. No. 6,760,872) (Principal Register) and "GREAT BASIN COFFEE COMPANY" (Reg. No. 5,510,241) (Supplemental Register).

  i. The Board erred in failing to recognize that GREAT BASIN COFFEE COMPANY, as a mark on the supplemental register, is entitled to a narrower scope of protection than marks on the principal register

First and foremost, the Board erred in failing to treat GREAT BASIN COFFEE COMPANY as a descriptive mark on the supplemental register. In doing so, the Board failed to appreciate that such marks are entitled to a narrower scope of protection. As the Board previously provided:

> it is well established that the scope of protection afforded a merely descriptive or even a highly suggestive term is less than that accorded an arbitrary or coined mark. That is, terms falling within the former category have been generally categorized as "weak" marks, and the scope of protection extended to these marks has been limited to the substantially identical notation and/or to the subsequent use and registration thereof for substantially similar goods.

*In re Hunke and Jochheim*, 185 USPQ 188, 189 (TTAB 1975). Because BASIN

BEVERAGE CO. is not "the substantially identical notation" provided by GREAT

BASIN COFFEE COMPANY, it should not be considered similar for likelihood of

confusion purposes. Furthermore, the Board gives GREAT BASIN COFFEE

COMPANY a broader scope of protection than even the owner asserts. During

prosecution, the owner of the GREAT BASIN COFFEE COMPANY mark noted

that "Great Basin Coffee Company does not and will not have exclusive rights to

'Great Basin' because it is geographically descriptive and other companies must be

able to use it…." (Appx375). If GREAT BASIN COFFEE COMPANY does not

have an exclusive right to GREAT BASIN, how could it preclude the registration

of another mark with only one of those words, BASIN? It should not. Applicant

respectfully submits that the Board erred in failing to treat GREAT BASIN

COFFEE COMPANY as a descriptive mark and failed to take into consideration its

own statements supporting a lack of confusion.

ii.   <u>The Board erred in Finding That GREAT BASIN COFFEE
COMPANY and TAHOE BASIN were similar to BASIN
BEVERAGE CO., which Led to an Erroneous Conclusion that
this Factor Weighed in Favor of a Likelihood of Confusion</u>

Substantial evidence does not support the Board's finding that GREAT

BASIN COFFEE COMPANY and TAHOE BASIN are similar to BASIN

BEVERAGE CO. *in their entireties* as to appearance, sound, connotation and

commercial impression, to support a finding of a likelihood of confusion. The

Board erred by engaging in improper dissection of the marks when it disregarded GREAT and TAHOE in the two cited marks, despite each term being entitled to as much importance as BASIN.

Although each of the trademarks include the term BASIN, each mark includes additional terms that serve to distinguish one trademark from another. BASIN BEVERAGE CO. consists of three words, GREAT BASIN COFFEE COMPANY consists of four words, and TAHOE BASIN consists of two words. The only word that is common to all of the trademarks is BASIN. It is also the only word that is common in terms of sound or appearance. While BASIN is the dominant portion of Applicant's mark, each of the cited marks has two dominant words (GREAT BASIN and TAHOE BASIN). In appearance, BASIN BEVERAGE CO. (15 letters) is visibly shorter than GREAT BASIN COFFEE COMPANY (23 letters) and visibly longer than TAHOE BASIN (10 letters). Only Co. and company have a similar connotation. GREAT BASIN COFFEE COMPANY consists of eight syllables; TAHOE BASIN consists of four; BASIN BEVERAGE CO. is six. When considering each mark in its entirety, the marks do not create a similar commercial impression such that consumers would likely assume a connection between the various trademark owners. Consumers would correctly assume that TAHOE BASIN may be geographically related to the Lake Tahoe Basin (even the Examiner recognized that TAHOE referred to a geographic

33

area)(Appx240) and that Great Basin is likewise descriptive (it is on the

supplemental register and per the owner's own admission) (Appx245, Appx375).

Moreover, additional third-party uses of unregistered trademarks demonstrates that

the consuming public will look beyond the word BASIN in determining the source

of a coffee or tea related drink. The table below shows additional, unregistered

marks noted during prosecution.

| Mark | Goods/Services |
|------|----------------|
| THUNDER BASIN COFFEE COMPANY | Coffee shop |
| THUNDER BASIN | Coffee shop |
| NILE BASIN COFFEE | coffee |
| SNOWBASIN | coffee |
| BEAR BASIN | coffee |

(Appx226, Appx231, Appx232, Appx294). The use of the term BASIN by a

number of third parties further supports Applicant's position that consumers would

not find that the Applicant's trademark of BASIN BEVERAGE CO. would likely

be confused with GREAT BASIN COFFEE COMPANY or TAHOE BASIN. In its

analysis, the Board disregards this third party showing, because it is not

"ubiquitous" or "considerable," (Appx009 citing *In re I.Am.Symbolic, LLC*, 866

F.3d 1315 (Fed. Cir. 2017)). However, *I.Am.Symbolic* does not state that ubiquitous

or considerable showings are necessary to show a term is weakened. *Id.* at 1329. In

fact, *I.Am.Symbolic* leaves open the possibility that the existence of merely two

third-party registrations could impact the strength of a mark. *Id.* (stating any failure

to evaluate potential weakness was harmless error and that the Board's findings

were supported as the marks were identical word marks for the same or related

goods with identical trade channels and purchasers). In this case, the marks are not

identical. One term is. Applicant submits these additional examples further support

Applicant's position of a lack of confusion between the marks and that the Board's

reliance on *I.Am.Symbolic* is misplaced.

In comparing BASIN BEVERAGE CO. to TAHOE BASIN and GREAT

BASIN COFFEE COMPANY, the Board erred in improper dissection of the marks.

Despite noting that it is often the first part of a mark which is of most importance

(*See* Appx015 "it is often the first part of the mark which is most likely to be

impressed upon the mind of a purchaser and remembered"), the Board disregards

TAHOE and GREAT in its comparisons. The Board justified its decision based on

finding that BASIN is the dominant part of Applicant's mark (which Applicant

does not dispute). The Board noted that GREAT BASIN was the dominant portion

of GREAT BASIN COFFEE COMPANY (Appx014, footnote21), and made no

mention of which term was dominant with respect to TAHOE BASIN. The Board's

decision, based on finding TAHOE BASIN and GREAT BASIN COFFEE

COMPANY "quite similar" to Applicant's BASIN BEVERAGE CO. mark due to

the shared BASIN term, (Appx015-Appx016) is not supported by substantial

evidence. In arriving at its decision, the Board improperly disregarded dominant

terms of each cited mark, TAHOE and GREAT. Additionally, the Board failed to

afford GREAT BASIN COFFEE COMPANY the narrower scope of protection to which it is entitled, as a descriptive mark (on the supplemental register).

As a result of the Board's error in failing to take into consideration the descriptiveness of GREAT BASIN COFFEE COMPANY and its error in failing to give proper weight to TAHOE in TAHOE BASIN and GREAT and COFFEE COMPANY in GREAT BASIN COFFEE COMPANY, the Board erred in finding that the marks were similar and that Applicant's mark of BASIN BEVERAGE CO. was not entitled to registration under Class 30. Applicant submits that the dissimilarity of the marks should be dispositive and the Board's decision reversed.

### D. Prior Decisions of This Court and of The Board Support Reversal

In its analyses, the Board relies upon the shared term "BASIN" and fails to give proper weight to the additional terms in the cited registrations and application. Additionally, the Board fails to recognize the impact that third party use of BASIN has on the strength of the cited marks and the likelihood that there would be confusion with Applicant's mark of BASIN BEVERAGE CO. and the cited marks, when the marks share but a single term and each mark contains additional non-generic terms. Both decisions of this Court and decisions of the Board stand in stark contrast to the Board's decision.

i.  Without Dissection, The Marks are Dissimilar

As noted in *In re Hutchinson and Stengl*, Serial No. 86809909, (2019) (not precedent), "[t]he Board has often held that it is the first part of a mark which is most likely to be impressed upon the mind of the consumer and remembered." Each of the cited marks has another word or term prior to BASIN (NEW, GREAT, TAHOE). Applicant submits that once proper consideration is given to the entirety of the marks, especially in light of the fact that the additional terms serve as the dominant portions or part of the dominant portions of such marks, there is sufficient dissimilarity between the marks to negate any likelihood of confusion.

In *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), (not precedent), the Trademark Trial and Appeal Board reversed the refusal to register Applicant's design  mark for CANNONBALL CREEK BREWING COMPANY GOLDEN COLORADO (BREWING COMPANY GOLDEN, COLORADO disclaimed) for "beer" under Section 2(d) based on an alleged likelihood of confusion with the mark CANNONBALL DOUBLE IPA (DOUBLE IPA disclaimed) for "ale; beer; brewed malt-based alcoholic beverage in the nature of beer." In explaining its decision, the TTAB emphasized the importance of the additional term, noting that it created a different commercial impression in the marks:

In view of the foregoing, we find that the dominant portion of Applicant's mark is the wording CANNONBALL CREEK and that the dominant element of the cited mark is the term CANNONBALL.

In terms of connotation and commercial impression, however, we find that dominant portions of the marks at issue to be quite dissimilar. The circumstances of this case are very similar, if not identical, to those in *Champagne Louis Roederer S.A. v. Delicato Vineyards*, 148 F.3d 1373, 47 USPQ2d 1459 (Fed. Cir. 1998). In that case, the Federal Circuit affirmed the Board's holding that the second word in applicant's mark CRYSTAL CREEK served to create a totally different commercial impression from the one created by opposer's mark CRISTAL when the marks were contemporaneously used on wine.

In the present case as in *Champagne Louis*, the dominant portion of Applicant's mark consists of two words, with the first word being identical to the dominant element of the cited mark. Put quite simply, we find that the presence of the word CREEK in Applicant's mark, like the presence of CREEK in the applicant's mark in *Champagne Louis*, causes the mark to be dissimilar from the cited mark in meaning and overall commercial impression.

*In re Hutchinson and Stengl* , Serial No. 86809909, (pp. 8-9)

Similarly, in *Hi Wines Ltd. V. Hi Degree Tequila, LLC*, Opposition No. 91251181, (2021) (not precedent) the TTAB found that the Applicant's HI DEGREE mark for distilled blue agave liquor was sufficiently dissimilar from the Opposer's mark HI! for alcoholic beverages except beer, such that confusion was unlikely. The Board found this even though the goods were "in part, legally identical, and the channels of trade and purchasers overlap[ped]." *Id.* at p. 34. In evaluating the similarity of the marks, the Board found that the marks differed significantly in

appearance and sound by virtue of the additional word DEGREE in Applicant's mark. *Id.* at p. 31.

Applicant's mark of BASIN BEVERAGE CO. shares the term BASIN with the third-party marks. However, it also has BEVERAGE CO. as part of its mark. Much like CANNONBALL and CANNONBALL CREEK, HI! and HI DEGREE, and CRYSTAL CREEK and CRISTAL, Applicant's mark of BASIN BEVERAGE CO. is sufficiently dissimilar from NEW BASIN DISTILLING COMPANY, TAHOE BASIN, and GREAT BASIN COFFEE COMPANY due to the additional words in the respective marks. Such additional words lead the marks to be significantly different in both appearance and sound, and thus, commercial impression.

    ii.  <u>Prior Decisions Demonstrate Why Third-Party Use Supports Registration</u>

Applicant submits that the Board erred in failing to give proper weight to third-party marks incorporating the term BASIN. As explained by this Court,

> "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation,*794 F.3d at 1338, 2015 WL 4400033, at *3. "The weaker an opposer's mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection." *Id.; see also Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,*396 F.3d 1369, 1373 (Fed.Cir.2005) ("Evidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.").

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1373 (Fed. Cir. 2015).

Also relevant, in *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334 (Fed. Cir. 2015), this Court addressed whether the mark "PEACE LOVE AND JUICE" and a design for use with juice bar services was likely to cause confusion with opposer's marks, all which contained the phrase "PEACE & LOVE" for restaurant services. *Id.* at 1336. In its analysis, this Court found that the applicant's evidence of third-party uses was "powerful on its face." *Id.* at 1339. The Court explained the Board's error in disregarding the disclaimed word "JUICE":

> The Board paid insufficient heed to that important principle in analyzing the three-word combination "PEACE LOVE AND JUICE." The Board declared that "PEACE LOVE" is the "dominant" portion of that combination, compared that portion to GS's "PEACE & LOVE" phrase, found that they are "virtually identical," and then simply added that "the additional disclaimed word 'JUICE' ... do[es] not serve to sufficiently distinguish" Juice Generation's mark from GS's marks. *GS Enters.*, 2014 WL 2997639, at *5–6. That analysis is inadequate. It does not display any consideration of how the three-word phrase in Juice Generation's mark may convey a distinct meaning—including by having different connotations in consumers' minds—from the two-word phrase used by GS.

*Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334, 1341 (Fed. Cir. 2015). This Court noted the Board could afford more or less weight to particular components of a mark for appropriate reasons, but it was still required to view the mark as a whole. *Id.* As this Court noted, confusion is evaluated from the purchasing public, the public is unaware of any disclaimed words or phrases, and the disclaimer

40

of a term has no legal effect on a likelihood of confusion analysis. *Id.* at 1341 (citations omitted).

Similarly, in *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363 (Fed. Cir. 2015), this Court reversed the Board's finding that there was a likelihood of confusion between applicant's mark of 🐾 and opposer's mark of **KELME** 🐾 (U.S. Trademark Application Serial No. 77/823,794 and U.S. Reg. No. 1,856,808). In arriving at this conclusion, this Court relied on the dissimilarity of the marks and the many third-party marks incorporating paw prints. This Court noted that evidence of third-party use of similar marks on similar goods can demonstrate that customers distinguish between different marks on the basis of minute distinctions. *Id.* at 1374.

In *Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211 (Fed. Cir. May 24, 2021), this Court found there was no likelihood of confusion between the opposer's various INDUSTRY marks and the applicant's BLUE INDUSTRY mark. Addressing the similarity or dissimilarity of the marks, this Court agreed with the Board that BLUE, the lead term in the applicant's mark BLUE INDUSTRY, made it so that the applicant's mark BLUE INDUSTRY did not bear a striking resemblance in appearance, sound, meaning or commercial impression to any of the pleaded (INDUSTRY) marks of opposer. *Id.* at *7-9. In its decision, this Court again emphasized the importance of third-party use, stating:

41

"[E]vidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation*, *Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015). This court has held that, "The purpose of a defendant introducing third-party uses is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions." *Omaha Steaks Int'l*, 908 F.3d at 1324 (quoting *Palm Bay Imps.*, 396 F.3d at 1374) (internal quotation marks omitted). "Third[-]party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation*, 794 F.3d at 1339. **"The weaker an opposer's mark, the closer an applicant's mark can come without causing likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection."** *Id*. at 1338 (quoting *Palm Bay Imps.*, 396 F.3d 1373). "[E]xtensive evidence of third-party use and registrations is 'powerful on its face,' even where the specific extent and impact of the usage has not been established." *JackWolfskin Ausrustung Fur Draussen GmbH & Co. KGaA v. New Millenium Sports*, *S.L.U.*, 797 F.3d 1363, 1374 (Fed. Cir. 2015) (quoting *Juice Generation*, 794 F.3d at 1339).

*Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211, at *9-10 (Fed. Cir. May 24, 2021) (emphasis added). The Board found that "numerous" third parties had registered or used INDUSTRY formative marks in connection with clothing and thus, INDUSTRY (or the plural thereof) is "'both conceptionally and commercially weak and therefore the scope of the marks' protection is limited." *Id.* at *10. The Board found that due to the third-party registrations and use "'consumers are conditioned to look for differences between INDUSTRY formative marks to determine the source of a given product and are therefore less likely to be confused.'"

*Id.* This Court likewise found that the extensive third-party registrations and use weighed against a finding of a likelihood of confusion.

In yet another decision, *E. & J. Gallo Winery v. Thunder Road Brands, LLC*, Opposition No. 91222284, (2018), (not precedent), the Board dismissed the opposition, finding that the mark THUNDER ROAD for "alcoholic beverages" was not likely to be confused with opposer's common law use of the mark THUNDERBIRD on wine, or its registered marks for THUNDERBIRD for "wines" or THUNDERBIRD for "alcoholic beverages except beers." The TTAB noted extensive third-party registrations and usage (*Id.* at pp. 17-19) and found that based on such usage, the term THUNDER was weak as a source indicator for alcoholic beverages. The TTAB stated that consumers had been exposed to "so many different THUNDER-formative marks in connection with alcoholic beverages that they likely have become alert to 'minute distinctions' among the various marks." (*Id.* at p. 20). According to the TTAB,

> A mark having the term THUNDER in connection with alcoholic beverages therefore should be given a restricted scope of protection, and the THUNDERBIRD mark is not entitled to such a broad scope of protection that it is a bar to the registration of any mark comprising in part, the word "thunder."

*Id.* at 20.

Each of these decisions supports the notion that each of the cited marks, TAHOE BASIN, GREAT BASIN COFFEE COMPANY, and NEW BASIN

43

DISTILLING COMPANY, are not likely to be confused with BASIN BEVERAGE CO. due to the additional terms in each mark and the weakness of the term BASIN. Thus, the Board's error in ignoring legal precedent by not comparing the marks in their entireties led it to an incorrect conclusion that the marks were similar in appearance, sound, connotation, and commercial impression.

### E. Conclusion

The Board erred when it determined that there was a likelihood of confusion between Applicant's mark of BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY with respect to Classes 32 and 33 and TAHOE BASIN AND GREAT BASIN COFFEE COMPANY with respect to Class 30. As explained, the Board erred in its *DuPont* analysis, by *inter alia*, failing to consider the marks *in their entireties* and failed to give proper weight to third party use. Giving proper consideration to the marks in their entireties and to third party use demonstrates why the Board's finding of likelihoods of confusion are without substantial evidence. Accordingly, the Board's Final Decision affirming the refusals to register Appellant's mark BASIN BEVERAGE CO. should be reversed.

Respectfully submitted,

/Fabian Nehrbass/_____

Fabian Nehrbass
USPTO Reg. No. 77,655
Louisiana Bar No. 35,264
GARVEY, SMITH & NEHRBASS,
PATENT ATTORNEYS, L.L.C.
701 Poydras Street, Suite 4310
New Orleans, LA  70139
Tel.: (504) 835-2000
e-mail: FNehrbass@patents.gs

*Counsel for Appellant, Matthew Amoss*

# **ADDENDUM**

# <u>TABLE OF CONTENTS</u>

<u>**Appendix Page**</u>

Decision of the

United States Patent and Trademark Office

Trademark Trial and Appeal Board

    January 26, 2024……………………………………….…Appx001-023

> This Opinion is not a
> Precedent of the TTAB

Mailed: January 26, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Matthew Amoss*

————

Serial No. 90703327

————

Fabian M. Nehrbass and Julie R. Chauvin of Garvey, Smith & Nehrbass, Patent
    Attorneys, L.L.C.,
    for Matthew Amoss.

Shaunia Carlyle, Trademark Examining Attorney, Law Office 110,
    Chris Pedersen, Managing Attorney.

————

Before Greenbaum, Coggins, and Casagrande,
    Administrative Trademark Judges.

Opinion by Casagrande, Administrative Trademark Judge:

Matthew Amoss ("Applicant") seeks registration on the Principal Register of the

mark BASIN BEVERAGE CO. (in standard characters, with BEVERAGE CO.

disclaimed) for goods ultimately identified as:

> Tea-based beverages; Coffee based beverages; Kombucha tea, in International
> Class 30;
>
> Beverages, namely, beer, sparkling water, non-alcoholic water-based
> beverages, in International Class 32; and

Beverages, namely, wine, hard seltzer; Hard kombucha tea, in International Class 33.[1]

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

As to Applicant's Class 30 goods (for tea-based beverages; coffee based beverages; kombucha tea), the Examining Attorney ultimately refused registration based on two registrations: Registration No. 6760872 (the " '872 Registration") on the Principal Register for TAHOE BASIN for coffee and chai tea;[2] and Registration No. 5510241 (the " '241 Registration") on the Supplemental Register for GREAT BASIN COFFEE COMPANY for goods including coffee, tea, and coffee based beverages in Class 30.[3]

As to Applicant's Class 32 and 33 goods, the Examining Attorney refused registration in view of Registration No. 4890160 for NEW BASIN DISTILLING COMPANY ("Distilling Company" disclaimed) for liquor on the Principal Register in Class 33.[4]

---

[1]    Application Serial No. 90703327 was filed on May 11, 2021, based upon Applicant's allegation of a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). The application also identified certain services in International Class 43, but they are not part of this appeal because the Examining Attorney did not refuse registration as to those services.

[2]    Registered on June 14, 2022, to Java Detour NorCal LLC.

[3]    Registered on July 3, 2018, to Great Basin Coffee Company, LLC.

[4]    Registered on January 19, 2016, to New Basin Distilling Company LLC; Section 8 Declaration accepted, Section 15 Declaration acknowledged.

Serial No. 90703327

After the Trademark Examining Attorney made the refusal final,[5] Applicant appealed[6] and requested reconsideration.[7] Because of the reconsideration request, we suspended the appeal to allow the Examining Attorney to consider the request.[8] Upon denial of reconsideration,[9] the appeal resumed.[10] Applicant and the Examining Attorney then filed briefs, and Applicant also filed a reply.[11] We now affirm the refusal to register in each class on appeal for the reasons explained below.

## I.    Section 2(d) refusals generally

Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), prohibits registration of a mark that "so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Because Section 2(d) simply says "a mark registered in the Patent and Trademark office," marks registered on either the Principal or the Supplemental Register may

---

[5]    *See* November 22, 2022, Final Office Action. Citations in this opinion to the application record are to pages in the Trademark Status and Document Retrieval ("TSDR") database of the United States Patent and Trademark Office ("USPTO").

[6]    *See* 1 TTABVUE. References to the briefs, other filings in the case, and the record cite the Board's TTABVUE docket system. The number preceding "TTABVUE" represents the docket number assigned to the cited filing in TTABVUE and any number immediately following "TTABVUE" identifies the specific page(s), if any, to which we refer.

[7]    *See* March 6, 2023, Request for Reconsideration.

[8]    *See* 2 TTABVUE.

[9]    *See* April 26, 2023, Denial of Reconsideration (also available at 4 TTABVUE).

[10]    *See* 5 TTABVUE.

[11]    *See* 6 TTABVUE (Applicant's principal brief); 8 TTABVUE (Examining Attorney's brief); 10 TTABVUE (Applicant's reply).

Serial No. 90703327

form the basis of a Section 2(d) refusal. *See, e.g.*, *In re Clorox Co.*, 578 F.2d 305, 198 USPQ 337, 340 (CCPA 1978).

We determine whether confusion is likely by analyzing all probative facts in evidence that are relevant to the factors set forth in *In re E.I. DuPont de Nemours & Co.* ("*DuPont*"), 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) (providing a nonexclusive list of 13 factors potentially relevant to likelihood of confusion). *See, e.g.*, *In re Charger Ventures LLC*, 64 F.4th 1375, 2023 USPQ2d 451, at *2 (Fed. Cir. 2023). In *Charger Ventures*, our primary reviewing court explained:

> In any given case, different *DuPont* factors may play a dominant role and some factors may not be relevant to the analysis. The Board is required to consider each factor for which it has evidence, but it can focus its analysis on dispositive factors. A single *DuPont* factor may, for example, be dispositive of the likelihood of confusion analysis. The weight given to each factor depends on the circumstances of each case.

*Id.* at *4 (citations omitted). We consider each *DuPont* factor for which there is evidence and argument. *See, e.g.*, *In re Guild Mortgage Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019). We weigh together the findings we have made on the relevant *DuPont* factors to determine if, on balance, they indicate that confusion is likely. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *7; *In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1207 (Fed. Cir. 2003). In most cases, the comparison of the marks and goods are key factors. *See, e.g.*, *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976); *In re Max Cap. Grp. Ltd.,* 93 USPQ2d 1243, 1244 (TTAB 2010).

## II.    Analysis

We start first with the refusal to register BASIN BEVERAGE CO. for "tea-based beverages; coffee based beverages; kombucha tea" in Class 30, and then we will analyze the refusal as to the goods in Classes 32 and 33.

### A.    Class 30

#### 1.    Similarity of the Goods

We begin with the second *DuPont* factor, which assesses "[t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration." 177 USPQ at 567. In assessing the second factor, we must consider "the applicant's goods as set forth in its application, and the [registrant's] goods as set forth in its registration. Likelihood of confusion must be resolved on the basis of the goods named in the registration …." *In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017) (citations omitted). Likelihood of confusion as to any of the goods in the class at issue in the application is sufficient to warrant refusal with respect to all the goods in that class. *See, e.g.*, *SquirtCo v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 939 (Fed. Cir. 1983); *Bond v. Taylor*, 119 USPQ2d 1049, 1052-53 (TTAB 2016).; *see also In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1912 (Fed. Cir. 2012).

The Examining Attorney points out that the registrants' goods and Applicant's goods are in part legally identical.[12] Applicant does not contend otherwise. We agree

---

[12]    *See* 8 TTABVUE 12, 15.

Serial No. 90703327

with the Examining Attorney. Applicant's goods include tea- and coffee-based beverages. The goods in the TAHOE BASIN registration are coffee and chai tea, and GREAT BASIN COFFEE COMPANY is registered for goods including coffee, tea, and coffee-based beverages. This factor thus weighs strongly in favor of a finding that confusion is likely as to the Class 30 goods in the application.

### 2.    Comparison of the Channels of Trade and Classes of Customers

The third *DuPont* factor considers "[t]he similarity or dissimilarity of established, likely-to-continue trade channels." *DuPont*, 177 USPQ at 567. This factor, like the comparison of the goods, looks to what is disclosed in the application and registrations. *See, e.g.*, *In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018). Here, neither the application nor either of the cited Class 30 registrations contains any limitation on trade channels. This lack of restrictions means, as the Examining Attorney points out,[13] that we presume that the goods in the application and both registrations are available in all the normal trade channels for such goods. *See, e.g.*, *Kangol Ltd. v. Kangaroos U.S.A., Inc.*, 974 F.2d 161, 23 USPQ2d 1945, 1946 (Fed. Cir. 1992); *CBS Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983). Moreover, where, as here, the goods recited in the application and registrations are in-part legally identical, there is a further presumption that the channels of trade (and the classes of purchasers) are the same. *See, e.g.*, *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 110

---

[13] *See* 8 TTABVUE 13.

Serial No. 90703327

USPQ2d 1157, 1161-62 (Fed. Cir. 2014); *Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *In re Hitachi High-Techs. Corp.*, 109 USPQ2d 1769, 1772-73 (TTAB 2014). Applicant does not argue otherwise.

The fourth *DuPont* factor considers "[t]he conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing." *DuPont*, 177 USPQ at 567. Applicant does not make any argument or offer any evidence to counter the presumption that the classes of customers are the same.[14]

The identity of the trade channels and classes of customers strongly favors a conclusion that confusion is likely as to the Class 30 goods in the application.

### 3.  The 5th and 6th *DuPont* factors (the strength of the registered marks and the number and nature of similar marks in use)

Applicant argues that the registered marks cited against him are weak.[15] *DuPont* lists two factors (the fifth and the sixth) that bear on the strength of the senior mark. The fifth factor is "[t]he fame of the prior mark (sales, advertising, length of use)." 177 USPQ at 567.[16] It is well-settled that, in the ex parte context, we generally treat the commercial strength of the cited registered mark as neutral because an

---

[14]  Although the fourth *DuPont* factor looks not only at who the relevant respective consumers are but how much care and sophistication they bring to bear in selecting the goods or services in question, neither the Examining Attorney nor Applicant addresses this subject. In the absence of evidence or argument, we will not consider it.

[15]  *See* 6 TTABVUE 15-23.

[16]  Although *DuPont*'s fifth factor is phrased in terms of the "fame" of the senior mark, the Federal Circuit has clarified that "fame for purposes of likelihood of confusion is a matter of degree that varies along a spectrum from very strong to very weak." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1720 (Fed. Cir. 2012) (cleaned up; citations omitted).

examining attorney is not expected to submit such marketplace evidence of the fame of the registered mark. *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1413 (TTAB 2015), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744, 1752 (Fed. Cir. 2017) (specifically affirming the Board's decision on this point). *DuPont* lists marketplace data such as "sales, advertising, length of use" as types of evidence to assess "fame," and we do not expect USPTO examining attorneys to be able to obtain this type of commercial—and in many instances, proprietary—marketplace data. *See, e.g.*, *In re Pacer Tech.*, 338 F.3d 1348, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003) (the USPTO "is an agency of limited resources" and "cannot be expected to shoulder the burden of conducting market research") (citations omitted).

Thus, the sixth factor is more important in this ex parte case. Under the sixth factor, an applicant may submit evidence of third parties' registration and/or use of similar marks to try to show the weakness of the registered mark in two respective ways: conceptually and commercially. "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015) (citing 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:90 (4th ed. 2015)). Third party registrations thus can function like a dictionary of sorts, shedding light on what the term at issue may mean to market participants. *See, e.g.*, *Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 198 USPQ 151,

Serial No. 90703327

153 (CCPA 1978) ("[W]e find no error in the citation of nine third-party registrations "primarily to show the meaning of * * * ('zing') in the same way that dictionaries are used.") (citation omitted).

And enough evidence of third-party **use** (as opposed to registrations) can show commercial (i.e., marketplace) weakness. *See, e.g.*, *Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315, 128 USPQ2d 1686, 1693 (Fed. Cir. 2018) ("The purpose of introducing evidence of third-party **use** is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions. Third-party use is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.") (emphasis added; cleaned up; citations omitted); *id.* at 1694 ("[E]vidence of third-party use bears on the strength or weakness of [prior registered] mark. The weaker [the prior registered] mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection.") (citations omitted). To be able to find significant commercial weakness, we generally expect to see evidence of "ubiquitous" or "considerable" third-party use of the term or symbol at issue for similar goods. *See, e.g.*, *i.am.symbolic*, 123 USPQ2d at 1751 ("Symbolic's evidence of third-party use of I AM for the same or similar goods falls short of the 'ubiquitous' or 'considerable' use of the mark components present in its cited cases.").

In assessing allegations that the mark in a cited registration is weak, however, we must always bear in mind that even "weak" registered marks are entitled to

protection from marks that that are likely to cause confusion. *See, e.g.*, *Conde Nast Publ'ns, Inc. v. Miss Quality, Inc.*, 507 F.2d 1404, 184 USPQ 422, 424 (CCPA 1975); *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 109 (CCPA 1974); *Max Cap. Grp.*, 93 USPQ2d at 1246.

Applicant points to no third-party registrations, but Applicant does provide evidence of four third parties who use the term BASIN in connection with coffee and coffee shops, listing them in a table[17]:

| Mark | Goods/Services |
|------|----------------|
| THUNDER BASIN COFFEE COMPANY | Coffee shop |
| THUNDER BASIN | Coffee shop |
| NILE BASIN COFFEE | coffee |
| SNOWBASIN | coffee |
| BEAR BASIN | coffee |

This is a meager showing. It falls far short of showing that third-party use of marks with BASIN in them is "ubiquitous" or "considerable" insofar as coffee and coffee shops are concerned. As to the Class 30 goods in the application, we find the fifth and sixth *DuPont* factors neutral.[18]

---

[17]    *See* 6 TTABVUE 15.

[18]    In addition, we note that each of these marks has a term that modifies the term BASIN, resulting in a specific "BASIN" identified in the marks that is different from the "BASIN" in the two cited registrations. In contrast, Applicant's mark has only the term BASIN, which could refer to any basin, including the basins in the cited registrations. As a general rule, to have much impact in demonstrating that any weakness in the cited registered marks inures to the benefit of the second comer (i.e., Applicant in this case), the third-party marks must be at least as similar to the cited registrations as the applicant's mark. *See, e.g.*, *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1284-85 (Fed. Cir. 1984); *Palisades Pageants, Inc. v. Miss Am. Pageant*, 442 F.2d 1385, 169 USPQ 790, 793

### 4.    Similarity of the Marks

Under the first *DuPont* factor, we assess "[t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 177 USPQ at 567. This is a "predominant inquiry" in the likelihood of confusion determination. *See, e.g.*, *Herbko Int'l*, 64 USPQ2d at 1380. It "requires consideration of the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *i.am.symbolic*, 123 USPQ2d at 1748 (cleaned up; citations omitted). We bear in mind that "marks must be considered in light of the fallibility of memory and not on the basis of side-by-side comparison." *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014) (cleaned up; citation omitted). The reference to "fallibility of memory" reflects the reality that, when encountering an Applicant's mark, the consuming public perceives it against the backdrop of "their past recollection of marks to which they were previously exposed." *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) (citation omitted).

"Exact identity is not necessary to generate confusion as to source of similarly-marked products." *Bridgestone Ams. Tire Ops., LLC v. Fed. Corp.*, 673 F.3d 1330, 102 USPQ2d 1061, 1064 (Fed. Cir. 2012) (citation omitted); *Phillips Petroleum Co. v. Knox Indus. Corp.*, 277 F.2d 945, 125 USPQ 576, 577 (CCPA 1960) ("This issue is whether the marks are confusingly similar, not whether they are identical.") (citation omitted).

---

(CCPA 1971). Here, the additional terms that modify "BASIN" in the cited third-party marks are further away from the registered marks than Applicant's mark.

The similarity-of-marks inquiry is usually a matter of degree. *See, e.g.*, *St. Helena Hosp.*, 113 USPQ2d at 1085 ("Similarity is not a binary factor but is a matter of degree.") (citation omitted); *Phillips Petroleum*, 125 USPQ at 577 ("The question of similarity is ordinarily one of degree."). Where, as here, the goods are legally identical in part, the degree of similarity between the marks needed to result in likely confusion declines. *See, e.g.*, *Skincode AG v. Skin Concept AG*, 109 USPQ2d 1325, 1328-29 (TTAB 2013); *In re La Peregrina Ltd.*, 86 USPQ2d 1645, 1647 (TTAB 2008); *see also Coach Servs.*, 101 USPQ2d at 1721 ("[I]f the parties' goods are closely related, a lesser degree of similarity between the marks may be sufficient to give rise to a likelihood of confusion.") (citations omitted).

In comparing marks, sometimes "one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark." *Coach Servs.*, 101 USPQ2d at 1721 (citations omitted); *see also In re Electrolyte Labs., Inc.*, 929 F.2d 645, 16 USPQ2d 1239, 1240 (Fed. Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark.") (citation omitted). Terms that are disclaimed in the application or registration at issue because of their lack of source-identifying significance are usually not considered dominant. *See, e.g.*, *Citigroup*, 98 USPQ2d at 1257; *In re Aquitaine Wine USA, LLC,* 126 USPQ2d 1181, 1186 (TTAB 2018). But while, as part of our analysis, we may assess individual terms (or other features) that together make up a given mark, the ultimate assessment must rest on the marks in their entireties. *See, e.g.*, *QuikTrip W., Inc. v. Weigel Stores,*

*Inc.*, 984 F.3d 1031, 2021 USPQ2d 35, at *3-4 (Fed. Cir. 2021); *Detroit Athletic*, 128 USPQ2d at 1050.

Here, Applicant reprises his argument that the two cited registrations are conceptually weak, but for definitional reasons: he argues that BASIN—which his mark BASIN BEVERAGE CO. and the two cited registrations, TAHOE BASIN and GREAT BASIN COFFEE COMPANY, have in common—is a geographically descriptive, and therefore relatively weak, term.[19] As to TAHOE BASIN, the argument that the mark is geographically descriptive of the goods does not fly. A mark registered on the Principal Register without a claim of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), is presumed to be inherently distinctive. *See, e.g.*, *Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC*, 17 F.4th 129, 2021 USPQ2d 1069, at *12 (Fed. Cir. 2021). An argument that the mark is descriptive represents a collateral attack on the validity of the registration, and that may be accomplished only in an adversary proceeding brought against the registrant. *See, e.g.*, *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 752 & n.8 (Fed. Cir. 1985).[20] As to GREAT BASIN COFFEE COMPANY, the point of determining where the terms

---

[19]  *See* 6 TTABVUE 13 (citing Oct. 24, 2022, Response to Office Action, at pp. 32-34, 83-86). We note that the citation in Applicant's brief as to this evidence is incorrect. There are no pages 32-34 and 83-86 in his October 24, 2022, Response to Office action, which is only 27 pages long. These pages appear to be in Applicant's March 6, 2023, Request for Reconsideration.

[20]  The rule against collateral attacks in ex parte cases also precludes Applicant's argument (*see* 6 TTABVUE 16) that there can be no confusion between its mark and GREAT BASIN COFFEE COMPANY because "the mark appears to no longer be in use," which is essentially an abandonment argument. *See In re Dixie Rests., Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997); *In re Brockway Glass Co.*, 154 F.2d 673, 69 USPQ 324, 326 (CCPA 1946).

GREAT BASIN fit on the inherent distinctiveness scale is not to exclude them from protection. As we mentioned above, all registered marks, even those containing or comprising geographically descriptive or otherwise weak terms, are afforded protection from later users whose marks will likely cause confusion.[21] *See also Clorox Co.*, 198 USPQ at 340 (even marks on the Supplemental Register are afforded protection from later marks that are likely to cause confusion); *In re Morinaga Nyugyo K.K.*, 120 USPQ2d 1738, 1744 (TTAB 2016) (same).

In contrast, we are assessing the component terms of GREAT BASIN COFFEE COMPANY to determine which term or terms contribute relatively more heavily to the commercial impression consumers will perceive from the mark for purposes of comparing it to Applicant's mark. Here, in the '241 Registration, "COFFEE COMPANY" is generic for coffee and coffee-based beverages. And the "BEVERAGE CO." component of Applicant's mark is generic for an entity that makes beverages (of which coffee-based beverages and Kombucha tea are two such beverages). Indeed, Applicant has disclaimed exclusive rights in "BEVERAGE CO." presumably for this reason.[22] As mentioned, terms disclaimed because they lack source-identifying

---

[21] Applicant further argues that, during prosecution, the owner of the registration for GREAT BASIN COFFEE COMPANY offered to disclaim GREAT BASIN, telling the examining attorney that it believed the disclaimer was necessary because the term is geographically descriptive and "other companies must be able to use it." See 6 TTABVUE 13 (citing Mar. 6, 2023 Request for Reconsideration, at pp. 108-11). This is irrelevant. Because COFFEE COMPANY is generic for coffee and coffee-based beverages, such a disclaimer would have impermissibly resulted in the entire mark being disclaimed. *See In re Newport Fastener Co.*, 5 USPQ2d 1064, 1065 (TTAB 1987) ("an entire mark cannot be disclaimed and still be registered, even on the Supplemental Register"). In any event, GREAT BASIN—the non-generic and first part of the registered mark—is the mark's dominant component.

[22] *See* July 25, 2022, Response to Nonfinal Office Action. And in his brief, Applicant acknowledges that "BEVERAGE CO. is less dominant than BASIN." 6 TTABVUE 7.

significance usually aren't dominant in the context of creating the source-identifying impression of a mark. *See, e.g.*, *Citigroup*, 98 USPQ2d at 1257; *Aquitaine Wine,* 126 USPQ2d at 1186. Thus, the terms "BEVERAGE CO." and "COFFEE COMPANY" contribute little if any source-identifying significance in these marks as wholes. In addition, the terms "BASIN" and "GREAT BASIN" appear before "BEVERAGE CO." and "COFFEE COMPANY" in the respective marks. *See, e.g.*, *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992) (Board correctly found that "Century" is the "dominant element of CENTURY LIFE OF AMERICA due to applicant's disclaimer of the rest of its mark" and because "upon encountering each mark, consumers must first notice this identical lead word"); *Presto Prods. Inc. v. Nice-Pak Prods., Inc.,* 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered").

And as to TAHOE BASIN, there are no other words in the mark. Thus, the fact that "GREAT BASIN" and TAHOE BASIN may have a geographical connotation does not help Applicant in this regard, because there are no stronger source-distinguishing terms in either mark that would contribute more heavily to their respective commercial impressions.

Assessing the marks as wholes on the evidence before us, we find that TAHOE BASIN and GREAT BASIN COFFEE COMPANY are quite similar to Applicant's BASIN BEVERAGE CO. mark. While there are some differences visually and aurally, the presence of the shared term "BASIN," which is the dominant component of

Serial No. 90703327

Applicant's mark, renders it quite similar in terms of overall commercial impression to both registered marks. "BASIN" has a geographic connotation in the two cited marks, which refer to specific, but different, basins. Applicant's mark has no specific modifier for "BASIN" and thus could refer to the basin in either registered mark. Looking at the marks in their entireties, we find that the overall commercial impression of Applicant's mark is similar to the overall commercial impressions of both cited registered marks, notwithstanding the differences between them. This factor thus weighs in favor of a finding that confusion is likely.[23]

5.   Weighing the findings on the relevant *DuPont* factors together as to Applicant's Class 30 goods.

Having made findings on all the relevant *DuPont* factors, our final step is to assess these findings together to determine if, on balance, confusion is likely. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *7. Here, although there are visual and aural differences in the marks, Applicant's mark is similar in terms of overall commercial impression to each of the cited registered marks in Class 30. Applicant's goods are legally identical in part to goods in both of the cited Class 30 registrations, and the respective channels of trade and classes of customers are presumed identical. In those circumstances, the degree of similarity between Applicant's mark and each cited registered mark likely to lead to confusion declines. And the fifth and sixth *DuPont*

---

[23]   Applicant cites several decisions in which non-identical marks have been found to be dissimilar enough to avoid a likelihood of confusion. *See* 6 TTABVUE 17-18. It is well-settled, however, that comparisons to other decisions, involving other marks and other evidence, are of little value, as each case must be decided on its own record. *See, e.g.*, *In re Quik-Print Copy Shops, Inc.*, 616 F.2d 523, 205 USPQ 505, 507 n.8 (CCPA 1980); *Curtice-Burns, Inc. v. Nw. Sanitation Prods., Inc.*, 530 F.2d 1396, 189 USPQ 138, 141 (CCPA 1976).

factors are neutral. With no factors weighing against likely confusion, we conclude that confusion is likely as between Applicant's mark as concerns the Class 30 goods and the marks of the '872 and '241 Registrations.

## B.   Classes 32 & 33

We now turn to the refusal to register Applicant's mark as to his Class 32 and 33 goods in view of Registration No. 4890160 for NEW BASIN DISTILLING COMPANY for goods in Class 33 identified as "liquor."

### 1.   Similarity of the Goods

As we did with the Class 30 goods, we will start here with the second *DuPont* factor. It is clear from the application and registration that Applicant's goods (beer, sparkling water, non-alcoholic water-based beverages, in Class 32; and wine, hard seltzer, and hard kombucha tea, in Class 33) are not identical to the goods (liquor) in the registered mark. But "[i]t is … not necessary that the goods of the parties be identical in order to sustain a finding of likelihood of confusion." *In re Rsch. & Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986) (citations omitted). Rather, "the relevant inquiry considers if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 2022 USPQ2d 513, at *8 (Fed. Cir. 2022) (cleaned up; citation omitted).

The Examining Attorney contends that the goods are "legally identical" or, in the alternative, that the evidence shows that they are related.[24] We agree with the latter contention. The record evidence shows that several companies sell both beer (and/or wine) and liquor under the same mark.[25] This constitutes evidence of relatedness in the sense that counts for our purposes. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *6 (affirming finding that residential and commercial real estate services are related and travel in overlapping trade channels "[b]ecause the record shows that companies are known to offer both residential and commercial services under the same mark and, often, on the same website"); *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002) (evidence that "a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis"). Applicant disagrees, but points to no evidence to the contrary. On the record before us, we find that the Class 32 & 33 goods in the application are related to liquor in the sense that matters. *See, e.g.*, *Tiger Lily Ventures*, 2022 USPQ2d 513, at *8.

## 2.  Comparison of the Channels of Trade and Classes of Customers

Turning to the channels of trade and classes of customers, we noted earlier in our discussion of the Class 30 goods that where neither the application nor the registration contain any restrictions on the channels of trade or classes of customers,

---

[24]  *See* 8 TTABVUE 9-10.

[25]  *See id.* (citing examples in the record from 3 Rivers Brewery Block, Little Toad Creek, Tumbleroot Brewery and Distillery, Old House Vineyards, and Gervasi Vineyard).

they are both presumed to be sold in all normal trade channels to all the normal classes of purchasers. *See, e.g.*, *Detroit Athletic*, 128 USPQ2d at 1052. What are the "normal channels" for beer, wine, and liquor? The Examining Attorney's third-party evidence, referenced in the preceding section shows that the goods are sold to the general public (of legal drinking age) at the establishments that make the beverages (e.g., breweries, wineries, distilleries), sometimes as part of the restaurant, bar, and event-hosting services these establishments provide. Applicant does not address these factors or offer evidence to the contrary. *See Majestic Distilling*, 65 USPQ2d at 1204 (malt liquor and tequila "similar by virtue of the fact that both are alcoholic beverages that are marketed in many of the same channels of trade to many of the same consumers"); *Anheuser-Busch, LLC v. Innvopak Sys. Pty Ltd.*, 115 USPQ2d 1816, 1827-28 (TTAB 2015) ("[I]t is clear that beer and other alcoholic beverages … are sold to consumers in many of the same channels of trade, including retail outlets such as liquor stores, supermarkets, convenience stores, restaurants, and bars … ."). On this record, we find that the trade channels and classes of customers overlap, which supports a conclusion that confusion is likely.

> 3.  The 5th and 6th *DuPont* factors (the strength of the registered mark and the number and nature of similar marks in use)

The mark NEW BASIN DISTILLING COMPANY is registered, with "DISTILLING COMPANY" disclaimed, on the Principal Register without any showing of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f). That means it is presumed inherently distinctive. *See, e.g.*, *Brooklyn Brewery*, 2021

Serial No. 90703327

USPQ2d 1069, at *12. Applicant argues that the cited registration is weak, citing

third-party registrations containing BASIN for alcoholic beverages and drink mixes:

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) Status | Owner |
|---|---|---|---|---|
| WILD BASIN[2] | 6014406 | Beer | Mar. 17, 2020 | CANARCHY CRAFT BREWERY COLLECTIVE LLC |
| JEWEL BASIN[3] | 6429315 | Beer | Jul. 20, 2021 | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO.[4] | 5608888 | Non-alcoholic cocktail mixes | Nov. 13, 2018 | ACE Basin Cocktail Company |
| NEW BASIN DISTILLING COMPANY[5] | 4890160 | Liquor | Jan. 19, 2016 | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO.[6] | 5177835 | Beverages, namely, beer and soda pop | Apr. 4, 2017 | PHOENICIAN BREWING COMPANY, LLC |
| BASIN & RANGE[7] | 5022765 | Distilled Spirits | Aug. 16, 2016 | Congregation Spirits, LLC |
| TURNING BASIN[8] | 88-373488 97-498075 | Beer; Wine; alcoholic beverages except beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon | (Apr. 5, 2019) *Recently abandoned* (July 11, 2022) *Notice of Allowance issued 24 January 2023[9]* | Buffalo Bayou Distilleries, LLC |
| WILD BASIN[10] | 88-614301 | Soda pops; Soft drinks | (Sep. 12, 2019) *Notice of Allowance Issued* | CANarchy Craft Brewery Collective LLC |
|  [11] | 4746735 | Beer, ale, lager, stout and porter | June 2, 2015 | KB Brewing, Inc. DBA Klamath Basin Brewing Company |
|  [12] | 5246096 | Headwear; shirts Beer | July 18, 2017 | Phoenician Brewing Company, LLC |
| BASIN OF ATTRACTION[13] | 6019694 | Beer; ale | March 24, 2020 | August Schell Brewing Company |
| RIVER BASIN[14] | 5429308 | Liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; | March 20, 2018 | River Basin Distillery |

(6 TTABVUE 8-9.)

Serial No. 90703327

This table shows that there are eight (8) existing third-party registrations that contain the term BASIN for the types of goods that fall within the range of goods appearing both in Applicant's Class 32 & 33 goods (e.g., beer and wine) and those identified in the cited registration (liquor).[26] Although Applicant does not mention it in his briefs, Applicant also placed in the record evidence of four third-party uses of BASIN in marks for beer: Loomis Basin Brewing Company;[27] Beehive Basin Brewery;[28] Great Basin Brewing Co.;[29] and Big Basin (as the name of a beer).[30]

While this is more evidence than Applicant could muster as to the Class 30 goods, we do not think it rises to the "ubiquitous" or considerable" level at which our primary reviewing court has found such evidence to tilt the sixth *DuPont* factor significantly enough to persuade us that, with respect to alcoholic beverages, the term BASIN has been weakened to the extent that would narrow the scope of protection afforded NEW BASIN DISTILLING COMPANY we otherwise would accord it. *See i.am.symbolic*, 123 USPQ2d at 1751. This is especially so where, as here, several of the third-party

---

[26] We exclude the cited registration (NEW BASIN DISTLILLING COMPANY) because it is not a third-party registration. We do not count HELIO BASIN BREWING CO. because it has been cancelled. *See, e.g.*, *In re Embiid*, 2021 USPQ2d 577, at *35 n.48 (TTAB 2021) ("The existence of a cancelled registration—particularly one cancelled for failure to provide a declaration of continued use—does not tend to show that the cited mark is weak due to third-party use."). We also do not count TURNING BASIN and WILD BASIN because they are applications. *See, e.g.*, *Edom Lab'ys, Inc. v. Llichter*, 102 USPQ2d 1546, 1550 (TTAB 2012) ("with respect to the applications, they are evidence of nothing more than that they were filed with the USPTO") (citations omitted).

[27] July 25, 2022, Response to Office Action, at 21-28.

[28] *Id.* at 29-33.

[29] *Id.* at 34-42.

[30] *Id.* at 43-56.

registrations and uses have additional terms or design elements (e.g., JEWEL BASIN, BASIN & RANGE, BASIN OF ATTRACTION, the design element in KLAMATH BASIN BREWING) that render them further from the cited registration than Applicant's mark, in which the word BASIN is the only term of source-identifying significance. *See, e.g.*, *Specialty Brands*, 223 USPQ at 1284-85; *Palisades Pageants*, 169 USPQ at 793. Accordingly, we find that the sixth factor, as to the goods in Classes 32 & 33, is neutral or, at best, tips only very slightly against a finding that confusion is likely.[31]

### 4.    Similarity of the Marks

Much of what we said as to the two marks that formed the basis of the Class 30 refusal applies here. BASIN is the dominant element of Applicant's mark. NEW BASIN, the first two terms in the registration, are dominant in the cited registration, in which the trailing terms "DISTILLING COMPANY" are disclaimed. The preceding adjective "NEW" in the cited registration serves only to direct attention to the term BASIN, which immediately follows. *See, e.g.*, *Palisades Pageants*, 169 USPQ at 793 (adjective "little" only directed attention to the words "Miss America" that followed). Thus, while the marks have some differences, their commercial impressions are similar overall. This weighs in favor of a finding that confusion is likely.

---

[31] As with our discussion of the Class 30 goods, the fifth *DuPont* factor is neutral.

5.    Weighing the findings on the relevant *DuPont* factors
together as to Applicant's Class 32 & 33 goods.

As concerns whether, with respect to Applicant's Class 32 & 33 goods, Applicant's mark is likely to result in consumer confusion, we conclude that the answer is yes. The marks are similar, the goods are related, and the classes or customers and trade channels overlap. While Applicant pointed to a few more third-party registrations and uses of marks that include the term BASIN as compared to his Class 30 evidence, we think it is not enough to tip this factor in Applicant's favor. This factor is neutral, and even if it were assumed to tip slightly in Applicant's favor, that would not be nearly enough to outweigh the other factors that weigh in favor of a conclusion that confusion is likely. On balance, we think it clear on this record that confusion is likely as to the goods in Classes 32 & 33.

**Decision**: The refusal to register Applicant's mark BASIN BEVERAGE CO. is affirmed as to Applicant's goods in Classes 30, 32, and 33. The application will proceed to publication as to the Class 43 services, as to which there was no refusal.

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 7th day of July, 2024, I caused this Brief of

Appellant to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

Erica Jeung Dickey
Christina J. Hieber
Farheena Yasmeen Rasheed
United States Patent and Trademark Office
Office of the Solicitor
PO Box 1450
Mail Stop 8
Alexandria, Virginia 22313
(571) 270-3514
erica.dickey@uspto.gov
christina.hieber@uspto.gov
farheena.rasheed@uspto.gov
*Counsel for Appellee*

/s/ Fabian Nehrbass_____
*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief has been prepared using a proportionally-spaced typeface and includes [*10,009*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: July 7, 2024                    /s/ Fabian Nehrbass_____
                                       *Counsel for Appellant*