2024-1617

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## IN RE: MATTHEW AMOSS,

*Appellant*

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board, Application No. 90/703,327

## BRIEF FOR APPELLEE—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

FARHEENA Y. RASHEED
Solicitor

CHRISTINA J. HIEBER
Senior Counsel for Trademark Policy and Litigation

DANIEL S. STRINGER
ERICA JEUNG DICKEY
Associate Solicitors

Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

*Attorneys for the Director of the
United States Patent and Trademark Office*

October 18, 2024

# **TABLE OF CONTENTS**

I.    STATEMENT OF THE ISSUE ........................................................ 1

II.   STATEMENT OF THE CASE WITH RELEVANT FACTS ................. 3

    A.   The Examining Attorney refused registration of BASIN BEVERAGE CO. for the coffee and tea goods in Class 30 based on likelihood of confusion with two previously registered marks for the same goods. ........ 4

    B.   The Examining Attorney refused registration of BASIN BEVERAGE CO. for the Class 32 beer and Class 33 wine goods based on likelihood of confusion with the registered mark NEW BASIN DISTILLING COMPANY for liquor. .................................................................. 6

    C.   The Board affirmed the refusals. ................................................ 7

         1.   The Board affirmed the likelihood of confusion refusal as to the coffee and tea goods in Class 30. ............................................ 7

         2.   The Board affirmed the likelihood of confusion refusal as to beer in Class 32 and wine in Class 33. ............................................ 11

III.  SUMMARY OF THE ARGUMENT ............................................... 13

IV.  ARGUMENT ......................................................................... 16

    A.   Standard of Review ................................................................. 16

    B.   Legal standard: Section 2(d) prohibits registration of marks that are likely to be confused with a registered mark. ........................................ 17

    C.   The Board properly concluded that BASIN BEVERAGE CO. for coffee and tea goods in Class 30 is likely to be confused with the marks in the cited registrations for the same goods sold through the same trade channels to the same classes of customers. ................................. 18

         1.   There is no dispute that the goods are in-part identical and the trade channels and classes of customers overlap. .......................... 19

         2.   Appellant's evidence falls short of showing the registered marks are commercially weak. .......................................................... 20

3.  The Board afforded the GREAT BASIN COFFEE COMPANY mark the proper scope of protection of a mark registered on the Supplemental Register. .......................................................... 23

4.  The marks are similar when compared in their entireties. .................. 25

5.  The Board properly weighed the relevant *DuPont* factors. ................. 30

D.  The Board properly concluded that BASIN BEVERAGE CO. for beer in Class 32 and wine in Class 33 is likely to be confused with the cited mark NEW BASIN DISTILLING COMPANY for liquor. .............................. 30

1.  The goods of the Appellant and Registrant are related. ..................... 31

2.  The trade channels and classes of consumers overlap. ........................ 35

3.  Appellant's evidence falls short of showing that the registered mark is weak. .................................................................................................. 36

4.  The marks are similar when compared in their entireties. .................. 39

5.  The Board properly weighed the relevant *DuPont* factors. ................. 42

V.   CONCLUSION ...................................................................................... 42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anheuser-Busch, LLC v. Innvopak Sys. Pty. Ltd.*,
  115 USPQ2d 1816, 2015 WL 5316485 (TTAB 2015) ............................................... 35

*In re Apparel, Inc.*,
  366 F.2d 1022 (CCPA 1966) ......................................................................... 18

*Century 21 Real Est. Corp. v. Century Life of Am.*,
  970 F.2d 874 (Fed. Cir. 1992) .......................................................... 19, 25, 26

*In re Charger Ventures LLC*,
  64 F.4th 1375 (Fed. Cir. 2023) ......................................................... 33, 41

*In re Chatam Int'l Inc.*,
  380 F.3d 1340 (Fed. Cir. 2004) ...................................................... 27, 33, 39

*In re Chatam Int'l Inc.*,
  2003 WL 2008773 (TTAB Apr. 25, 2003) ................................................. 33

*Application of Clorox Co.*,
  578 F.2d 305 (CCPA 1978) .......................................................... 23, 24

*Coach Servs., Inc. v. Triumph Learning LLC*,
  668 F.3d 1356 (Fed. Cir. 2012) ................................................... 31

*Conde Nast Publ'ns, Inc. v. Miss Quality, Inc.*,
  507 F.2d 1404 (CCPA 1975) ........................................................ 9

*In re Davia*,
  110 USPQ2d 1810, 2014 WL 2531200 (TTAB 2014)
  *aff'd mem.*, 777 F. App'x 516 (Fed. Cir. 2019) ............................ 25

*In re Detroit Athletic Co.*,
  903 F.3d 1297 (Fed. Cir. 2018) .............................................. 31, 32, 35

*In re Dixie Rests.*,
  105 F.3d 1405 (Fed. Cir. 1997) ............................................. 17, 18, 28

*In re E. I. du Pont DeNemours & Co.*,
    476 F.2d 1357 (CCPA 1973) ...................................................................*passim*

*E.&J. Gallo Winery v. Thunder Road Brands, LLC*,
    Opposition No. 91222284, 2018 WL 6422670 (TTAB, December 6, 2018) ......... 23

*Edom Lab'ys, Inc. v. Llichter*,
    102 USPQ2d 1546, 2012 WL 1267961 (TTAB 2012) ................................. 37

*In re Electrolyte Labs., Inc.*,
    929 F.2d 645 (Fed. Cir. 1990) ............................................................. 28

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
    424 F.3d 1276 (Fed. Cir. 2005) ........................................................... 34

*Estee Lauder, Inc. v. L'Oreal, S.A.*,
    129 F.3d 588 (Fed. Cir. 1997) ............................................................. 34

*Giant Food, Inc., v. Nation's Foodservice, Inc.*,
    710 F.2d 1565 (Fed. Cir. 1983) ...................................................... 39, 42

*Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co.*,
    128 U.S. 598 (1888) ............................................................................ 26

*In re Google Tech. Holdings LLC*,
    980 F.3d 858 (Fed. Cir. 2020) ............................................................. 32

*Han Beauty, Inc. v. Alberto-Culver Co.*,
    236 F.3d 1333 (Fed. Cir. 2001) ........................................................... 16

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
    308 F.3d 1156 (Fed. Cir. 2002) .................................................17, 25, 36

*Hewlett-Packard Co. v. Packard Press, Inc.*,
    281 F.3d 1261 (Fed. Cir. 2002) ................................. 17, 31, 32, 33, 41

*In re Hunke & Jochheim*,
    185 USPQ 188, 1975 WL 20781 (TTAB 1975) .................................. 23, 24

*In re I.Am.Symbolic, LLC*,
    116 USPQ2d 1406, 2015 WL 6746543 (TTAB 2015) .......................... 9, 36

*In re I.Am.Symbolic, LLC*,
    866 F.3d 1315 (Fed. Cir. 2017) ...................................................*passim*

iv

*Indus. Nucleonics Corp. v. Hinde,*
    475 F.2d 1197 (CCPA 1973) ..................................................... 29

*In re Inn at St. John's, LLC,*
    126 USPQ2d 1742, 2018 WL 2734893 (TTAB 2018) ............... 25

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New
    Millennium Sports, S.L.U.,*
    797 F.3d 1363 (Fed. Cir. 2015) .......................................... 22, 23

*Juice Generation, Inc. v. GS Enters. LLC,*
    794 F.3d 1334 (Fed. Cir. 2015) .................................... 20, 22, 23

*In re Loew's Theatres, Inc.,*
    769 F.2d 764 (Fed. Cir. 1985) ................................................ 33

*In re Majestic Distilling Co., Inc.,*
    315 F.3d 1311 (Fed Cir. 2003) .......................................... 33, 35

*In re Mighty Leaf Tea,*
    601 F.3d 1342 (Fed. Cir. 2010) ............................................. 40

*In re Morinaga Nyugyo K.K.,*
    120 USPQ2d 1738, 2016 WL 5219811 (TTAB 2016) ............... 24

*N. Face Apparel Corp. v. Sanyang Indus. Co.,*
    116 USPQ2d 1217, 2015 WL 6467820 (TTAB 2015) ............... 18

*In re Nat'l Data Corp.,*
    753 F.2d 1056 (Fed. Cir. 1985) ......................................... 28, 29

*In re Oppedahl & Larson LLP,*
    373 F.3d 1171 (Fed. Cir. 2004) ............................................. 26

*In re OSF Healthcare Sys.,*
    2023 USPQ2d 1089, 2023 WL 6140427 (TTAB 2023) ............. 18

*In re Pacer Tech.,*
    338 F.3d 1348 (Fed. Cir. 2003) ......................................... 33, 34

*Palisades Pageants, Inc. v. Miss Am. Pageant,*
    442 F.2d 1385 (CCPA 1971) ......................................... 21, 37, 39, 40

*Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*,
 396 F.3d 1369 (Fed. Cir. 2005) ......................................................... 20

*Pure & Simple Concepts, Inc. v. I H W Mgmt. Ltd.*,
 857 F. App'x 652 (Fed. Cir. 2021) .................................................... 23

*In re Quick-Print Copy Shops, Inc.*,
 616 F.2d 523 (CCPA 1980) ................................................................ 29

*In re Research & Trading Corp.*,
 793 F.2d 1276 (Fed. Cir. 1986) ........................................................ 24

*San Fernando Elec. Mfg. Co. v. JFD Elecs. Components Corp.*,
 565 F.2d 683 (CCPA 1977) ................................................................ 17

*Shen Mfg. Co. v. Ritz Hotel, Ltd.*,
 393 F.3d 1238 (Fed. Cir. 2004) ........................................................ 26

*Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*,
 748 F.2d 669 (Fed. Cir. 1984) .............................................20, 21, 36

*Spireon, Inc. v. Flex LTD*,
 71 F.4th 1355 (Fed. Cir. 2023) ........................................................ 38

*In re St. Helena Hosp.*,
 774 F.3d 747 (Fed. Cir. 2014) ..............................................17, 25, 41

*Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*,
 746 F.3d 1317 (Fed. Cir. 2014) ..................................................19, 24

*Stratus Networks, Inc. v. UBTA-UBET Communications Inc.*,
 955 F.3d 994 (Fed. Cir. 2020) .......................................................... 41

*Swiff-Train Co. v. United States*,
 793 F.3d 1355 (Fed. Cir. 2015) ........................................................ 29

*Towers v. Advent Software, Inc.*,
 913 F.2d 942 (Fed. Cir. 1990) .......................................................... 23

*In re Viterra Inc.*,
 671 F.3d 1358 (Fed. Cir. 2012) ..............................................16, 17, 29, 41

*Wella Corp. v. California Concept Corp.*,
 558 F.2d 1019 (CCPA 1977) ............................................................. 27

*Application of West Point-Pepperell, Inc.*,
    468 F.2d 200 (CCPA 1972) ........................................................................ 41

**Statutes**

15 U.SC. § 1051(b) .................................................................................... 3

15 U.S.C. § 1052(d).............................................................................*passim*

15 U.S.C. § 1057(b).................................................................................. 17

**Other Authorities**

Trademark Manual of Examining Procedure § 1403 (May 2024 version) ................... 18

3 McCarthy on Trademarks and Unfair Competition § 20:123 (5th ed.) ...................... 37

## STATEMENT OF RELATED CASES

The Director of the United States Patent and Trademark Office ("USPTO") is unaware of any other appeal from the Trademark Trial and Appeal Board ("Board") in connection with trademark application Serial No. 90/703,327 in this Court or any other appellate court. The Director is also unaware of any related cases pending in this or any other court that will directly affect or will be directly affected by this Court's decision in this appeal.

I.    STATEMENT OF THE ISSUE

This trademark registration case is about likelihood of confusion. Likelihood of confusion is determined on a case-by-case basis, applying the thirteen factors set forth in *In re E. I. du Pont DeNemours & Co.,* 476 F.2d 1357 (CCPA 1973) ("*Dupont*"). Appellant Matthew Amoss ("Appellant") filed a multiple-class application[1] to register the mark BASIN BEVERAGE CO. for goods falling in three classes: "Tea-based beverages; Coffee based beverages; Kombucha tea," in International Class 30, "Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages," in International Class 32, and "Beverages, namely, wine, hard seltzer; Hard kombucha tea," in International Class 33.[2]

Registration was refused for the coffee and tea goods in Class 30 based on likelihood of confusion with two previously registered marks for coffee and tea products: GREAT BASIN COFFEE COMPANY and TAHOE BASIN. The Board affirmed the refusal. The Board found the goods were identical in part, the channels of trade and consumers were identical, and the marks were similar in overall commercial impression when considered in their entireties. The Board determined the

---

[1] A multiple-class application is viewed as a group of applications for registration of one mark where the applicant is in the same position as if it had filed separate applications in each class.

[2] The application also identified services in International Class 43, which were not refused registration and are not part of this appeal.

factors bearing on the strength of the cited marks to be neutral factors in the likelihood-of-confusion analysis. Balancing the factors, all of which weighed in favor of likelihood of confusion, the Board concluded a likelihood of confusion existed with the cited registered marks.

Registration was refused for the beer and wine goods in Classes 32 and 33 based on likelihood of confusion with the registered mark NEW BASIN DISTILLING COMPANY for liquor. The Board affirmed. The Board found the goods related based on evidence that they are of a type that commonly emanate from a single source under the same mark, the trade channels and classes of customers overlap, and the marks are similar in terms of their overall commercial impression when considered in their entireties. The Board found the third-party registration and use evidence bearing on the strength of the registered mark to be neutral, and observed that even if the factor favored a finding that confusion was unlikely, it did so only slightly and did not outweigh the other factors that favored likelihood of confusion. Thus, the Board concluded a likelihood of confusion existed with the registered mark.

The issue on appeal is whether substantial evidence supports the Board's factual findings on the applicable *DuPont* factors and whether its likelihood-of-confusion conclusions are correct, where all relevant factors favor likelihood of confusion or are neutral. For the reasons provided below, this Court should affirm the Board's findings and conclusions.

## II.    STATEMENT OF THE CASE WITH RELEVANT FACTS

Appellant filed U.S. Trademark Application Serial No. 90/703,327 on May 11, 2021, for the standard character mark BASIN BEVERAGE CO. on the Principal Register based upon a bona fide intent to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). The goods were ultimately identified as: "Tea-based beverages; Coffee based beverages; Kombucha tea," in International Class 30, "Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages," in International Class 32, and "Beverages, namely, wine, hard seltzer; Hard kombucha tea," in International Class 33. Appx29-34, Appx68-69 (amending the mark from BASIN BEVERAGES to BASIN BEVERAGE CO., disclaiming "BEVERAGE CO.", and amending and reclassifying the goods), Appx155.

The Examining Attorney ultimately refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d) ("Section 2(d)"). For the Class 30 goods, the Examining Attorney determined that BASIN BEVERAGE CO. is likely to be confused with two previously registered marks: (1) TAHOE BASIN for "Chai tea; Coffee" (Reg. No. 6760872), and (2) GREAT BASIN COFFEE COMPANY for goods including "Coffee and tea; Coffee based beverages" (Reg. No. 5510241). Appx193-206, Appx238-267, Appx555-580. For the goods in Classes 32 and 33, the Examining Attorney determined that BASIN BEVERAGE CO. is likely to be confused with the previously registered mark NEW BASIN DISTILLING

COMPANY ("Distilling Company" disclaimed) for "Liquor" (Reg. No. 4890160). Appx36-63,[3] Appx193-206, Appx238-267, Appx555-580.

Appellant disputed the refusal, including evidence it asserted demonstrated the weakness of the cited marks. Appx207-233. However, the Examining Attorney was unpersuaded and issued a final Office action. Appx238-267. Appellant requested reconsideration of the final refusal and appealed to the Board. Appx268-378, Appx379-382. The Examining Attorney denied reconsideration. Appx383-489. Rather than request remand to address and rebut the evidence attached to the denial, Appellant proceeded with the appeal. After full briefing (Appx491-514, Appx555-580, Appx517-553), the Board affirmed the refusal. Appx1-Appx23. Appellant timely appealed to this Court. Appx581-582.

**A.    The Examining Attorney refused registration of BASIN BEVERAGE CO. for the coffee and tea goods in Class 30 based on likelihood of confusion with two previously registered marks for the same goods.**

Applying the *DuPont* framework, the Examining Attorney considered the identity of the goods, trade channels, classes of purchasers, and the similarity of the marks to refuse registration of BASIN BEVERAGE CO. for the goods in Class 30

---

[3] In this action, the Examining Attorney also refused registration based on additional prior registrations, Appx36-64, which were later withdrawn. Appellant responded on July 25, 2022 arguing against the likelihood of confusion refusal. Appx65-174. A non-final action issued on August 16, 2022 maintaining the likelihood of confusion refusal and requesting additional information about the goods. Appx175-177. Appellant responded on September 6, 2022 and provided the additional information requested. Appx178-188.

based on a likelihood of confusion with the registered marks GREAT BASIN
COFFEE COMPANY and TAHOE BASIN.

The Examining Attorney found the goods identified in the cited registrations
are legally identical to those identified in the application. Appx195, Appx240-241,
Appx531. The Examining Attorney also found that they are presumed to travel in the
same channels of trade to the same consumers because the goods are legally identical
and have no restrictions as to nature, type, channels of trade or classes of purchasers.
Appx529.

In comparing the marks, the Examining Attorney found BASIN BEVERAGE
CO. and GREAT BASIN COFFEE COMPANY to be similar. Appx194-195,
Appx240-241, Appx384-385, Appx529-531. The marks have a similar commercial
impression because (1) the marks share the identical term "BASIN," (2) registrant's
use of the term "GREAT" alongside "BASIN" did not alter the commercial
impression of the term "BASIN," (3) the marks contain similar entity designations
CO. and COMPANY, and (4) the phrases BEVERAGE CO. and COFFEE
COMPANY convey similar commercial impressions in relation to the goods.
Appx195, Appx241, Appx529-531. The Examining Attorney also noted that marks
registered on the Supplemental Register, like GREAT BASIN COFFEE COMPANY,
are entitled to protection under Section 2(d). Appx385.

In comparing BASIN BEVERAGE CO. and TAHOE BASIN, the Examining
Attorney also found the marks to be similar. Appx194-195, Appx240-241, Appx385,

Appx526-528. The Examining Attorney found the term "BASIN" to be the dominant

portion of Appellant's BASIN BEVERAGE CO. mark because the wording

BEVERAGE CO. merely described Appellant's goods. Appx194-195, Appx527. The

Examining Attorney also determined use of the identical term "BASIN" in each mark

resulted in the marks having a similar appearance and that the geographic term

TAHOE in registrant's mark did not differentiate its overall commercial impression

when compared with Appellant's BASIN BEVERAGE CO. mark. Appx195,

Appx240, Appx528-529.

### B.    The Examining Attorney refused registration of BASIN BEVERAGE CO. for the Class 32 beer and Class 33 wine goods based on likelihood of confusion with the registered mark NEW BASIN DISTILLING COMPANY for liquor.

The Examining Attorney found the marks BASIN BEVERAGE CO. and

NEW BASIN DISTILLING COMPANY similar in overall commercial impression.

Appx194, Appx240, Appx521-524. Both marks share the identical dominant term

"BASIN" and similar entity designations CO. and COMPANY. The wording

following "BASIN" in each mark was less dominant in forming the commercial

impression of the marks because it was descriptive and had been disclaimed, and the

term "NEW" in the registrant's mark did not differentiate the overall commercial

impressions of the marks. Appx194, Appx240, Appx521-524. The Examining

Attorney further explained that the level of similarity needed to establish a likelihood

of confusion between the marks decreases where the parties' products are related. Appx194, Appx240.

To demonstrate that liquor in the registration is related to the beer and wine goods in the application, the Examining Attorney supplied evidence showing that it is common for third parties to offer both beer and/or wine and liquor under the same mark. Appx387-431. This evidence includes:

- 3 Rivers Brewery Block, offering liquor and beer (Appx387-397);
- Little Toad Creek Brewery & Distillery offering liquor and beer (Appx398-401);
- Tumbleroot Brewery and Distillery; offering beer and liquor (Appx402-406);
- Old House Vineyards, offering wine, liquor, and beer (Appx407-418);
- Gervasi Vineyard, offering wine and liquor (Appx419-431).

## C.    The Board affirmed the refusals.

On appeal, the Board affirmed the refusals to register the proposed mark for both classes of goods based upon a likelihood of confusion under the relevant *DuPont* factors. Appx1-23.

### 1.    The Board affirmed the likelihood of confusion refusal as to the coffee and tea goods in Class 30.

The Board began by assessing the second *DuPont* factor: the similarity between the goods listed in the application and the registrations. Appx5-6. The Board determined that the parties' goods were in-part legally identical, a fact Appellant did not dispute. Appx5. In particular, the Board noted that Appellant's goods include tea and coffee-based beverages; the goods in the GREAT BASIN COFFEE COMPANY

registration include coffee, tea, and coffee-based beverages; and the goods in the TAHOE BASIN registration are chai tea and coffee. Appx6. Therefore, the Board found this factor weighed strongly in favor of likely confusion. Appx6.

The Board next considered the third and fourth *DuPont* factors comparing the channels of trade for the goods in the application and registrations, and the classes of purchasers and conditions of purchase. The Board noted neither the application nor registrations contain trade channel restrictions, which triggers the presumption that the respective goods would be marketed through all the normal channels of trade for those types of goods. Appx6. The Board further noted that because the goods in the application and registrations are in-part legally identical there is a "further presumption that the channels of trade (and classes of purchasers) are the same," (Appx6) which Appellant did not dispute. The Board thus determined that the "identity of the trade channels and classes of customers strongly favors a conclusion that confusion is likely." Appx7.[4]

The Board next considered the fifth and sixth *DuPont* factors relating to the strength of the registered marks. Appx7-10. The Board explained that the fifth factor ("[t]he fame of the prior mark (sales, advertising, length of use)") is generally treated as neutral in ex parte cases because an examining attorney is not expected to submit

---

[4] Because Appellant and the Examining Attorney did not address the conditions of purchase, the Board did not consider that portion of the fourth *DuPont* factor in its analysis. Appx7 n.14.

marketplace evidence concerning the fame of a registered mark. Appx7-8 (citing *In re i.am.symbolic, llc,* 116 USPQ2d 1406, 1413, 2015 WL 6746543, (TTAB 2015), *aff'd,* 866 F.3d 1315 (Fed. Cir. 2017)). On the sixth *DuPont* factor (the number and nature of similar marks in use), the Board noted that third-party registration evidence can be used in a manner similar to dictionary definitions to show that a term has a known meaning in the field, which can bear on the conceptual strength of the registered mark. Appx8. The Board also observed sufficient third-party marketplace evidence can show a mark's commercial weakness, noting that even weak marks are entitled to protection under Section 2(d). Appx9-10 (citing, *inter alia, Conde Nast Publ'ns, Inc. v. Miss Quality, Inc.,* 507 F.2d 1404, 1406 (CCPA 1975)).

The Board considered and rejected Appellant's argument that the cited marks were weak. Appx7-10. The Board noted Appellant submitted no third-party registrations and only four examples of third party uses of term "BASIN in connection with coffee and coffee shops." Appx10. The Board further observed that each third-party use "has a term that modifies the term BASIN, resulting in a specific 'BASIN' identified in the marks that is different from the 'BASIN' in the two cited registrations," which limits their impact in demonstrating weakness of the marks in the cited registrations. Appx10 n.18. Thus, the Board found Appellant's evidence of weakness scant, and treated the fifth and sixth *DuPont* factors as neutral. Appx10.

Finally, the Board assessed the similarity between the marks under the first *DuPont* factor, starting with the principle that although it may analyze individual terms

as part of its analysis, its ultimate conclusion must be based on a comparison of the marks in their entireties. Appx11. The Board also observed that a lesser degree of similarity between the marks is required to result in likely confusion when the goods are legally identical. Appx12. The Board noted that the term "BASIN" is the dominant portion of Appellant's mark (Appx15-16), with the disclaimed wording BEVERAGE CO. having "little if any source-identifying significance." Appx14-15. While there are some visual and aural dissimilarities between Appellant's BASIN BEVERAGE CO. mark and the marks TAHOE BASIN and GREAT BASIN BEVERAGE COMPANY, the Board found that the presence of the shared term "BASIN" resulted in the marks having a similar overall commercial impression. Appx15-16. The Board further found that without any term modifying "BASIN" in Appellant's mark, it could refer to either of the basins identified in the TAHOE BASIN or GREAT BASIN BEVERAGE COMPANY marks. Appx16. The Board thus determined that the similarity of the marks weighed in favor of a likelihood of confusion. Appx16.

Having found the goods, trade channels, classes of purchasers, and similarity of the marks to weigh in favor of a likelihood of confusion, and the strength of the registered marks and the number and nature of similar marks in use to be neutral, the Board concluded that Appellant's mark BASIN BEVERAGE CO. is likely to cause confusion with the marks in the cited registrations and affirmed the refusal to register. Appx16-17.

### 2. The Board affirmed the likelihood of confusion refusal as to beer in Class 32 and wine in Class 33.

Assessing the second *DuPont* factor first, the Board found the goods to be related based on evidence of companies offering beer and/or wine and liquor under the same mark. Appx18 (citing Appx387-431). The Board noted that Appellant's argument against the relatedness of the goods was not supported by any evidence. Appx18.

The Board next assessed the channels of trade for the goods in the application and registration under the third *DuPont* factor and the classes of purchasers under the fourth *DuPont* factor. Appx18. The Board once again found that neither the application nor registration restrict the channels of trade, and that the parties' goods are therefore presumed to flow through all normal trade channels, which the Examining Attorney's evidence demonstrated included businesses that make beer, wine, and liquor, and are sold to the general public of drinking age. Appx18-19. After noting that Appellant did not address these factors or submit evidence to the contrary, the Board determined the overlap in the trade channels and classes of purchasers weighed in favor of a likelihood of confusion. Appx19.

The Board next considered the *DuPont* factors relevant to the strength of the cited mark. The Board first deemed the fifth factor to be neutral for the same reasons it was neutral in the analysis for the Class 30 goods. Appx22 n.31. The Board focused its analysis on the sixth factor, the number and nature of similar marks in use on

similar goods (Appx19-22). In assessing Appellant's evidence, the Board considered Appellant's eight existing third-party registrations, and did not consider the cited registration, a cancelled registration, and two pending applications because they are not evidence of third-party registrations that could show weakness. Appx21 (citing Appx44-55, Appx60-61, Appx77-80, Appx83-84, Appx224-225). The Board also considered the four third-party uses of "BASIN" in marks for beer that Appellant had made of record. Appx21 (citing Appx85-120).

The Board determined that Appellant's evidence fell short of the "ubiquitous" or "considerable" third-party use of similar marks on similar goods necessary to narrow the scope of protection afforded NEW BASIN DISTILLING COMPANY. Appx21. The Board further observed that, unlike Appellant's mark in which "BASIN is the only term of source-identifying significance[,]" many of the third-party registrations contained additional terms or a design element that further differentiated them from the cited mark. Appx22. The Board therefore found the sixth factor "is neutral or, at best, tips only very slightly against a finding that confusion is likely." Appx22.

Assessing the similarity of the marks under the first *DuPont* factor, the Board noted that much of its analysis of Appellant's mark for its Class 30 goods applied to its assessment of Appellant's mark for its Classes 32 and 33 goods. Appx22. The term "BASIN" in Appellant's mark is the dominant portion of the mark. The Board also determined the term "NEW BASIN" in the cited registration was dominant. Appx22.

The Board also found that "[t]he preceding adjective 'NEW' in the cited registration serves only to direct attention to the term BASIN, which immediately follows." Appx22. The Board ultimately found that while the marks have some differences, their overall similarities in terms of their commercial impressions weighed in favor of finding likely confusion. Appx22.

The Board weighed the factors and concluded that the similarity of the marks, relatedness of the goods, and overlap in the trade channels and classes of customers weighed in favor of finding confusion likely, and that the third-party use and registration evidence—even if considered to tip slightly in Appellant's favor—was not "nearly enough to outweigh the other factors that weigh in favor of a confusion that confusion is likely." Appx23. Accordingly, the Board affirmed the refusal to register BASIN BEVERAGE CO. as to the goods in Classes 32 and 33.

## III.    SUMMARY OF THE ARGUMENT

The Board considered the evidence and arguments bearing on the relevant *DuPont* factors. The Board properly determined that Appellant's BASIN BEVERAGE CO. mark must be refused registration under Section 2(d) because it is likely to be confused with previously registered marks.

For coffee and tea in Class 30, substantial evidence supports the Board's findings underlying its conclusion that BASIN BEVERAGE CO. is likely to be confused with the registered marks GREAT BASIN COFFEE COMPANY and TAHOE BASIN. The Board correctly considered the marks in their entireties and

found that the cited marks each convey a similar commercial impression to BASIN
BEVERAGE CO. It is undisputed that the application and registrations identify
goods that are legally identical and travel in the same channels of trade to the same
customers. It is equally undisputed that the distinctive term "BASIN" is dominant in
Appellant's mark, and "GREAT BASIN" is dominant in the GREAT BASIN
COFFEE COMPANY mark. Appellant's claim that the Board improperly dissected
the marks and failed to compare them in their entireties is belied by the Board's
opinion, which states no less than six times that it must consider the marks in their
entireties or as whole; that it did so here is evidenced by the Board's thorough analysis
finding that the overall commercial impressions of the marks are similar.

The Board also correctly found that Appellant's evidence that four third-parties
use the term BASIN in connection with coffee and coffee shops is a meager showing
that falls far short of establishing that the cited marks are weak and should receive a
narrower scope of protection. The Board also correctly rejected Appellant's argument
that because GREAT BASIN COFFEE COMPANY is registered on the
Supplemental Register and is descriptive, it cannot bar registration of Appellant's
mark unless it is substantially identical to Appellant's mark. There is no such rule.

For beer in Class 32 and wine in Class 33, the Board properly determined that
BASIN BEVERAGE CO. is likely to be confused with the registered mark NEW
BASIN DISTILLING COMPANY for liquor. Substantial evidence in the record
supports the Board's findings that beer and wine are related to liquor because they are

goods that are regularly sold by a single entity under the same mark, and that the trade channels and classes of purchasers for the goods overlap. Appellant argues that the evidence is insufficient to show relatedness, but the evidence the Board pointed to is the type of evidence routinely accepted to show goods are related and Appellant offered no rebuttal evidence to counter this evidence. The Board also correctly compared the marks in their entireties to find that the overall commercial impressions of the marks are similar. Contrary to Appellant's argument that the Board improperly dissected the marks, the Board properly gave more weight to their shared dominant term "BASIN," discounted the trailing non-distinctive entity designations BEVERAGE CO. and DISTILLING COMPANY, and determined that "NEW" in the registered mark served to direct attention to "BASIN." The Board also properly assessed Appellant's third-party registration and use evidence bearing on the strength of the cited mark, correctly determining that it does not show such widespread use of the term "BASIN" that would narrow the scope of protection of the registered mark, in part because the third-party marks cited by Appellant are not as similar to the registered mark as Appellant's mark. The Board thus correctly treated the factor as neutral, or as very slightly favoring a finding of no likely confusion but not enough to outweigh the other factors that favored likely confusion.

The Board's findings on the relevant *DuPont* facts are reasonable and Appellant's disagreement with that fact-finding cannot demonstrate error. Appellant does not argue legal error in the likelihood of confusion determination based upon

the Board's fact-findings. Because the Board's underlying fact findings are supported by substantial evidence and its conclusion as to likelihood of confusion with the registered marks is correct, the Court should affirm.

## IV.  ARGUMENT

### A.    Standard of Review

Likelihood of confusion is a legal determination based on underlying findings of fact. *In re Viterra Inc.*, 671 F.3d 1358, 1361 (Fed. Cir. 2012). Factual findings on each relevant *DuPont* factor are reviewed for substantial evidence, and the ultimate weighing of those factors is reviewed *de novo. Id.* Findings concerning the relatedness of the goods and the similarity between the marks, including the connotation and commercial impression of the marks, are factual determinations. *Id.*; *see also Han Beauty, Inc. v. Alberto-Culver Co.,* 236 F.3d 1333, 1337 (Fed. Cir. 2001).

Substantial evidence is something less than the weight of the evidence but "more than a mere scintilla." *Viterra*, 671 F.3d at 1361. Evidence is substantial if a reasonable person might find that the evidentiary record supports the agency's conclusion. *i.am.symbolic,* 866 F.3d at 1322; *Viterra*, 671 F.3d at 1361. "[W]here two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained . . . as supported by substantial evidence." *Viterra*, 671 F.3d at 1361 (citations omitted).

**B.     Legal standard: Section 2(d) prohibits registration of marks that are likely to be confused with a registered mark.**

Under Section 2(d), a mark may not be registered if it "so resembles a mark registered in the Patent and Trademark Office, … as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). The Board determines likelihood of confusion on a case-by-case basis, assessing the relevant *DuPont* factors.

Not all of the factors may be relevant or of equal weight in a given case, and only those factors implicated by the evidence of record need be considered. *Viterra*, 671 F.3d at 1361; *In re Dixie Rests.,* 105 F.3d 1405, 1406 (Fed. Cir. 1997). The analysis "'may focus . . . on dispositive factors, such as similarity of the marks and relatedness of the goods.'" *i.am.symbolic,* 866 F.3d at 1322 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.,* 308 F.3d 1156, 1164-65 (Fed. Cir. 2002)). The comparison of the marks must be made "'in light of the fallibility of memory[.]'" *In re St. Helena Hosp.,* 774 F.3d 747, 751 (Fed. Cir. 2014) (citing *San Fernando Elec. Mfg. Co. v. JFD Elecs. Components Corp.,* 565 F.2d 683, 685 (CCPA 1977)).

Any doubt regarding likelihood of confusion must be resolved in favor of the registrant, who is entitled to all of the presumptions that registration provides (*see* 15 U.S.C. § 1057(b)), and against the newcomer, who "has the opportunity and obligation to avoid confusion with existing marks." *Hewlett-Packard Co. v. Packard Press, Inc.,* 281 F.3d 1261, 1265 (Fed. Cir. 2002); *see also i.am.symbolic,* 866 F.3d at 1322.

Beyond its benefit to consumers, this principle also serves to protect the rights of prior registrants by avoiding "constantly subjecting them to the financial and other burdens of opposition proceedings." *In re Apparel, Inc.,* 366 F.2d 1022, 1023 (CCPA 1966); *accord Dixie Rests.,* 105 F.3d at 1408.

When an applicant files an application for one mark in multiple classes, the applicant is in the same position as if they had filed separate applications for the mark in each class. Trademark Manual of Examining Procedure ("TMEP") § 1403 (May 2024 version). The Board "consider[s] each class separately, and determine[s] whether the Examining Attorney has shown a likelihood of confusion with respect to each." *In re OSF Healthcare Sys.,* 2023 USPQ2d 1089, at *9-10, 2023 WL 6140427 (TTAB 2023) (citing *N. Face Apparel Corp. v. Sanyang Indus. Co.,* 116 USPQ2d 1217, 1228, 2015 WL 6467820 (TTAB 2015).

### C. The Board properly concluded that BASIN BEVERAGE CO. for coffee and tea goods in Class 30 is likely to be confused with the marks in the cited registrations for the same goods sold through the same trade channels to the same classes of customers.

The Board properly determined that Appellant's mark BASIN BEVERAGE CO. is likely to cause consumer confusion with the registered marks GREAT BASIN COFFEE COMPANY and TAHOE BASIN for the coffee and tea goods in Class 30 because all of the *DuPont* factors for which there is evidence in the record all point in that direction or are neutral.

### 1.    There is no dispute that the goods are in-part identical and the trade channels and classes of customers overlap.

The second *DuPont* factor compares the goods in the application with the goods in the registrations. 476 F.2d at 1361. The Board found that the goods in Appellant's application—"Tea-based beverages; Coffee based beverages"—and the goods in both of the cited registrations—"Coffee and tea; Coffee based beverages" (GREAT BASIN COFFEE COMPANY) and "Chai tea; Coffee" (TAHOE BASIN)—are in part legally identical. Appx5, Appx81, Appx202. Appellant does not contest this finding. *See* Br. at 31-44. The Board properly concluded that this factor "weighs strongly in favor" of a likelihood of confusion. Appx6; *see Century 21 Real Est. Corp. v. Century Life of Am.,* 970 F.2d 874, 877 (Fed. Cir. 1992) ("[where] applicant['s] … services [are] identical to opposer's … [t]his second factor accentuates the likelihood of consumer confusion about the sources of services marketed under similar marks.").

The Board also correctly found that the identity of the trade channels and classes of customers under the third and fourth *DuPont* factors strongly favor a conclusion that confusion is likely. Appx6-7. "In the absence of meaningful limitations in either the application or the cited registrations," the goods are presumed to "travel through all usual channels of trade and are offered to all normal potential purchasers." *i.am.symbolic,* 866 F.3d at 1327; *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP,* 746 F.3d 1317, 1323 (Fed. Cir. 2014) (noting "[t]he Board thus properly found

[the] application and…registrations covered the same potential purchasers and channels of trade" where the "recited services were in part legally identical"). Appellant does not dispute these findings either. Br. at 30-36.

> ### 2. Appellant's evidence falls short of showing the registered marks are commercially weak.

The sixth *DuPont* factor bears on the strength of the cited marks and assesses "[t]he number and nature of similar marks in use on similar goods." 476 F.2d at 1361. Sufficient "[e]vidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,* 396 F.3d 1369, 1373 (Fed. Cir. 2005). The purpose of third-party use evidence is to show that customers have become conditioned by encountering so many similar marks that they distinguish between them based on minor distinctions. *Id.*; *see also Juice Generation, Inc. v. GS Enters. LLC,* 794 F.3d 1334, 1339 (Fed. Cir. 2015). Evidence of third-party registrations may also be considered to show, in the manner of a dictionary, "the sense in which . . . a mark is used in ordinary parlance" and that a term "has a normally understood and well-recognized descriptive or suggestive meaning." *Juice Generation,* 794 F.3d at 1339.

To demonstrate weakness, though, the allegedly similar marks must be at least as close to the registered mark as the Appellant's mark. *See, e.g., Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.,* 748 F.2d 669, 675 (Fed. Cir. 1984) (discounting third-party

marks alleged to show weakness of the senior mark: "these third-party registrations are of significantly greater difference from SPICE VALLEY and SPICE ISLANDS than either of these two marks from each other."); *Palisades Pageants, Inc. v. Miss Am. Pageant,* 442 F.2d 1385, 1388 (CCPA 1971) ("While we agree with the appellant that this does…seem to be a crowded field, we are of the opinion that appellant's mark is closer to appellee's than even the closest of the third-party registrations…").

Against this backdrop, the Board correctly found that Appellant's evidence consisting of only four examples of third party use of "BASIN" in association with coffee and coffee shops was "a meager showing…fall[ing] far short of showing that third-party use of marks with 'BASIN' in them is 'ubiquitous' or 'considerable' insofar as coffee and coffee shops are concerned." Appx10. The Board also explained that the third-party BASIN-formative marks are further away from the cited marks than Appellant's mark because they contain different prefatory terms which modify "BASIN" (e.g., THUNDER BASIN, NILE BASIN, SNOWBASIN, BEAR BASIN) and identify different basins than the cited marks, thus limiting their ability to demonstrate weakness of the cited marks. Appx10 n.18 (citing *Specialty Brands,* 748 F.2d. at 675). The Board, therefore, properly treated the sixth *DuPont* factor as neutral. Appx10.

Appellant argues that "the Board *disregards* this third party showing, because it is not 'ubiquitous' or 'considerable.'" Br. at 34 (emphasis added). To the contrary, the Board thoroughly reviewed Appellant's evidence consisting of four third parties using

the term "BASIN" in connection with coffee and coffee shops and found it insufficient to show weakness. This finding was correct under the Court's case law.

Although Appellant argues that the Board's reliance on this Court's opinion in *In re i.am.symbolic, LLC,* 866 F.3d 1315 (Fed. Cir. 2017), was misplaced because the Court "d[id] not state that ubiquitous or considerable showings are necessary to show a term is weakened…leav[ing] open the possibility that the existence of merely two third-party registrations could impact the strength of the mark" (Br. at 34), the Court's opinion does not support Appellant's theory. Rather, the Court determined that if the Board erred by not specifically addressing the weakness of the cited mark based on two third-party registrations, it was harmless error, and went on to find the appellant's evidence in that case "f[ell] short of the 'ubiquitous' or 'considerable' use of the mark components present in [*Jack Wolfskin* and *Juice Generation*]." *i.am.symbolic,* 866 F.3d at 1329 (citing *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.,* 797 F.3d 1363, 1374 (Fed. Cir. 2015) and *Juice Generation,* 794 F.3d at 1339). In *Jack Wolfskin,* there were 14 notable third-party marks within appellant's "voluminous evidence." 797 F.3d at 1373-74 n.2. In *Juice Generation,* there were at least 26 examples of third-party marks. 794 F.3d at 1337 n.1. By any measure, Appellant's four examples is not voluminous and falls short of what has been deemed

sufficient in other cases to show that third-party marks on their face demonstrate commercial weakness of a cited mark.[5]

### 3. The Board afforded the GREAT BASIN COFFEE COMPANY mark the proper scope of protection of a mark registered on the Supplemental Register.

Appellant alleges that the Board gave the GREAT BASIN COFFEE COMPANY mark a broader scope of protection than it deserved as a mark registered on the Supplemental Register, arguing that it should be treated as a descriptive mark and cannot preclude the registration of Appellant's mark because Appellant's mark is not the "substantially identical notation" as GREAT BASIN COFFEE COMPANY. Br. at 31-32, quoting *In re Hunke & Jochheim,* 185 USPQ 188, 1975 WL 20781 (TTAB 1975). Appellant is mistaken.

It is settled law that "[a] mark registered on the Supplemental Register can be used as a basis for refusing registration to another mark under § 2(d) of the Act." *Application of Clorox Co.,* 578 F.2d 305, 308 (CCPA 1978); *accord Towers v. Advent*

---

[5] Appellant's reliance on *Juice Generation, Jack Wolfskin,* as well as this Court's non-precedential decision in *Pure & Simple Concepts, Inc. v. I H W Mgmt. Ltd.,* 857 F. App'x 652 (Fed. Cir. 2021) and the Board's non-precedential decision in *E.&J. Gallo Winery v. Thunder Road Brands, LLC,* Opposition No. 91222284, 2018 WL 6422670 (TTAB, December 6, 2018) to challenge the Board's findings as to the sixth factor, *e.g.,* Br. at 39-44, is likewise misplaced. Appellant's evidence does not come close to the evidence considered in those proceedings. *See Pure & Simple Concepts,* 857 F. App'x at 656 ("at least 12 of the 74 certificates of registration or third-party marks presented by [appellee] included examples of advertised use") *and E.&J. Gallo,* Opposition No. 91222284 at *19 ("25 registrations and 13 internet uses, totaling almost 40 THUNDER-formative marks."). Here, Appellant offered no third-party registrations and only 4 examples of third-party use.

*Software, Inc.,* 913 F.2d 942, 946 (Fed. Cir. 1990); *In re Research & Trading Corp.,* 793 F.2d 1276, 1278 (Fed. Cir. 1986). Moreover, the Board has expressly rejected the restrictive interpretation of *Hunke & Jochheim* that Appellant urges, holding that "[t]here is no categorical rule that citation of registrations on the Supplemental Register is limited to registrations of substantially identical marks for substantially similar goods, or that a different test for likelihood of confusion should be applied in such cases." *In re Morinaga Nyugyo K.K.,* 120 USPQ2d 1738, 1743, 2016 WL 5219811 (TTAB 2016).

Appellant also argues that the Board failed to give weight to the fact that the owner of the GREAT BASIN COFFEE COMPANY mark offered to disclaim "GREAT BASIN" during prosecution because the term is geographically descriptive. Br. at 32 (citing Appx375). The Board properly found this to be irrelevant. *See Stone Lion,* 746 F.3d at 1322 (although a "party's prior arguments may be considered as illuminative of shade and tone in the total picture, [they] do not alter the Board's obligation to reach its own conclusion on the record."). As the Board correctly noted, "all registered marks, even those containing or comprising geographically descriptive or otherwise weak terms, are afforded protection from later users whose marks will likely cause confusion." Appx14 (citing *Clorox Co.,* 578 F.2d at 308).

The Board afforded GREAT BASIN COFFEE COMPANY the appropriate scope of protection of a mark registered on the Supplemental Register. As discussed

below, the Board correctly determined that the mark is sufficiently similar to BASIN

BEVERAGE CO. to render confusion likely when used for identical goods.

### 4.     The marks are similar when compared in their entireties.

The first *DuPont* factor assesses the similarities and dissimilarities between the

marks in appearance, sound, meaning, and overall commercial impression. "[T]he

'similarity or dissimilarity of the marks in their entireties' is a predominant inquiry."

*Herbko,* 308 F.3d at 1165 (citing *DuPont,* 476 F.2d at 1361). "Similarity in any one of

these elements may be sufficient to find the marks confusingly similar." *In re Inn at St.*

*John's, LLC,* 126 USPQ2d 1742, 1746, 2018 WL 2734893 (TTAB 2018) (quoting *In re*

*Davia,* 110 USPQ2d 1810, 1812, 2014 WL 2531200 (TTAB 2014), *aff'd mem.,* 777 F.

App'x 516 (Fed. Cir. 2019)). "The proper test is not a side-by-side comparison of the

marks, but instead whether the marks are sufficiently similar in terms of their

commercial impression such that persons who encounter the marks would be likely to

assume a connection between the parties." *i.am.symbolic,* 866 F.3d at 1323 (internal

quotation marks and citation omitted). The comparison of the marks must be made

"'in light of the fallibility of memory[.]'" *St. Helena Hosp.,* 774 F.3d at 751 (citations

omitted).

When comparing marks, a lesser degree of similarity between the marks may be

sufficient to give rise to a likelihood of confusion where the goods in the application

and cited registrations are identical or closely related. *Century 21,* 970 F.2d at 877

("When marks would appear on virtually identical goods or services, the degree of

similarity necessary to support a conclusion of likely confusion declines."); *Shen Mfg. Co. v. Ritz Hotel, Ltd.,* 393 F.3d 1238, 1242 (Fed. Cir. 2004).

Here, the Board properly assessed the marks, compared the marks in their entireties, and determined that they are similar in terms of their overall commercial impressions. Appx11-16. This finding is supported by substantial evidence and legally correct.

First, the Board properly identified "BASIN" as the dominant feature of Appellant's mark BASIN BEVERAGE CO. because it is the first term and the only distinctive term in the mark. Appx15-16. Appellant does not dispute this finding. *See* Br. at 33, 35. The Board properly found that the disclaimed wording "BEVERAGE CO." contributes little to the commercial impression of Appellant's mark as a whole because it is non-source identifying and appears after the term BASIN. Appx15, citing *Century 21*, 970 F.2d at 876 (the Board correctly found that "Century" is the "dominant element of CENTURY LIFE OF AMERICA due to applicant's disclaimer of the rest of its mark" and because "upon encountering each mark, consumers must first notice this identical lead word"); *see also In re Oppedahl & Larson LLP,* 373 F.3d 1171, 1175 (Fed. Cir. 2004) (discussing with approval the "per se" rule in *Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co.,* 128 U.S. 598, 602 (1888), that common terms like Co., Corp., and Inc., are perceived as conveying only organizational structure and have no source- identifying significance).

26

Next, in assessing the cited mark GREAT BASIN COFFEE COMPANY, the Board correctly identified "GREAT BASIN" as the dominant portion (Appx14 n.21), which Appellant does not dispute. Br. at 33. The Board explained that GREAT BASIN is non-generic and the first term in the mark, and the remaining term "COFFEE COMPANY" is disclaimed and generic for coffee. Appx15. Turning to the cited mark TAHOE BASIN, the Board found that with no other wording in the mark, there is nothing that contributes more to the commercial impression of that mark. Appx15.

In comparing the marks, the Board determined that BASIN BEVERAGE CO. and GREAT BASIN COFFEE COMPANY had similar structures, with the dominant wording "BASIN" and "GREAT BASIN" appearing before the non-dominant entity designators "BEVERAGE CO." and "COFFEE COMPANY." Appx15. The Board appropriately discounted these non-dominant features and found the marks in their entireties to be similar. *In re Chatam Int'l Inc.,* 380 F.3d 1340, 1343 (Fed. Cir. 2004) ("Viewed in their entireties with non-dominant features appropriately discounted, the marks [GASPAR'S ALE for beer and ale and JOSE GASPAR GOLD for tequila] become nearly identical."). The Board further found that although GREAT BASIN COFFEE COMPANY and TAHOE BASIN have some geographic connotation, without a term modifying "BASIN" in Appellant's mark, BASIN BEVERAGE CO. could refer to either basin in the registered marks. *Cf. Wella Corp. v. California Concept Corp.,* 558 F.2d 1019, 1022 (CCPA 1977) (CALIFORNIA

CONCEPT with surfer design held confusingly similar to CONCEPT). The Board ultimately determined that despite some aural and visual differences, the marks as a whole were quite similar in their overall commercial impressions due to the presence of the shared term "BASIN." The Board correctly weighed this factor in favor of likely confusion. Appx16.

Appellant insists that the Board ignored the requirement to compare the marks in their entireties and instead improperly dissected them, giving too much weight to the shared term "BASIN" and disregarding the terms "GREAT" and "TAHOE" in the cited registrations. *See, e.g.,* Br. at 8, 33, 35, 37-39. The Board, however, consistently stated it was comparing the marks in their entireties. *See, e.g.,* Appx12 ("But while…we may assess individual terms (or other features) that together make up a given mark, the ultimate assessment must rest on the marks in their entireties."); Appx15 ("Assessing the marks as wholes on the evidence before us…"); Appx16 ("Looking at the marks in their entireties…").

Moreover, the Board stated rational reasons for giving the dominant components of the marks—BASIN in Appellant's mark, and GREAT BASIN and TAHOE BASIN in the cited marks—more weight in forming the commercial impressions that the marks as a whole convey. *See In re Nat'l Data Corp.,* 753 F.2d 1056, 1058 (Fed. Cir. 1985) ("[T]here is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark[.]"); *see also Dixie Rests.,* 105 F.3d at 1407; *In re Electrolyte Labs., Inc.,* 929 F.2d 645, 647 (Fed.

Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark."). This analysis not only is proper, it is "unavoidable." *Nat'l Data,* 753 F.2d at 1058.

Appellant also argues that two non-precedential Board decisions and one decision of this Court where non-identical marks were found sufficiently dissimilar to avoid a likelihood of confusion support reversal of the Board. Br. at 37-39. As the Board stated in addressing the same argument, and the Court has often recognized, other decisions generally "are of little value, as each case must be decided on its own record." Appx16 n.23, citing *In re Quick-Print Copy Shops, Inc.*, 616 F.2d 523, 525 n.8 (CCPA 1980). *See also Indus. Nucleonics Corp. v. Hinde,* 475 F.2d 1197, 1199 (CCPA 1973) ("As we have said innumerable times, prior decisions on other marks for other goods are of very little help one way or the other in cases of this type. Each case must be decided on its own facts and the differences are often subtle ones.").

The Board conducted a legally correct evidence-based analysis to find the marks similar. Appellant disagrees with the Board's finding but has not demonstrated any reversible error. *See, e.g., Viterra,* 671 F.3d at 1361; *see also Swiff-Train Co. v. United States,* 793 F.3d 1355, 1367 (Fed. Cir. 2015) (explaining that even if a reviewing court "would have reached a different conclusion based on the same record" that disagreement is not grounds for reversal where the factfinder made a reasonable decision based on the evidence).

### 5.     The Board properly weighed the relevant *DuPont* factors.

Substantial evidence supports, and Appellant does not dispute, the Board's findings that the goods are identical in part, flow through the same channels of trade to the same consumers, and that these factors weigh strongly in favor of concluding that confusion is likely. Appellant's arguments fail to show any error in the Board's remaining findings that the marks in their entireties are similar, which favors a likelihood of confusion, and that the cited marks have not been shown to be commercially weak, which the Board treated as neutral in the analysis. Where, as here, the key *DuPont* factors weigh in favor of likely confusion and the strength of the cited marks is a neutral factor, the only conclusion to be reached upon balancing the factors is that confusion is likely. The Court should affirm the Board's conclusion.

### D.     The Board properly concluded that BASIN BEVERAGE CO. for beer in Class 32 and wine in Class 33 is likely to be confused with the cited mark NEW BASIN DISTILLING COMPANY for liquor.

The Board properly determined that Appellant's mark BASIN BEVERAGE CO. for beer and wine is likely to cause confusion with the registered mark NEW BASIN DISTILLING COMPANY for liquor. On balance, the *DuPont* factors tilt in that direction. While Appellant focuses heavily on the number and nature of similar marks in use on similar goods (the sixth factor) the Board correctly reasoned that the evidence there was neutral and even if it tipped "very slightly against" finding confusion likely, it would be insufficient to outweigh the factors establishing that confusion is likely. Appx22-23.

### 1.     The goods of the Appellant and Registrant are related.

To support a likelihood-of-confusion, the goods need only be "related in some manner," or the "circumstances surrounding their marketing [needs to be] such that they could give rise to the mistaken belief that they emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 1369 (Fed. Cir. 2012) (internal quotation marks omitted). The law does not require that goods be identical, directly competitive, or used together to find a likelihood of confusion. *See, e.g., Hewlett-Packard,* 281 F.3d at 1267 ("Even if the goods and services in question are not identical, the consuming public may perceive them as related enough to cause confusion about the source or origin."). Evidence showing that the goods at issue commonly come from the same sources under the same mark demonstrates that the goods are related. *See, e.g.*, *In re Detroit Athletic Co.,* 903 F.3d 1297, 1306 (Fed. Cir. 2018) ("[t]his evidence suggests that consumers are accustomed to seeing a single mark associated with a source that sells both"). Evidence that "a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis." *Hewlett-Packard,* 281 at 1267 (Fed. Cir. 2002).

The Board correctly found that the beer and wine goods in the application are related to the liquor goods in the cited registration. Appx17-18. The record evidence shows that the goods identified in both the application and registration are made and sold by the same entities under a single mark. *Id.* n.25 (citing Appx525-526, which cited 3 Rivers Brewery Block (liquor and beer) (Appx387-397), Little Toad Creek

Brewery & Distillery (liquor and beer) (Appx398-401), Tumbleroot Brewery and Distillery (liquor and beer) (Appx402-406), Old House Vineyards (liquor, wine, and beer) (Appx407-418), and Gervasi Vineyard (wine and liquor) (Appx419-431)). Appellant challenges this evidence on appeal with a new argument that the evidence does not show the same mark used on the packaging for the beer or wine and liquor sold by the entities. Br. at 27. Because Appellant did not make this argument to the Board (Appx501-503), Appellant forfeited the argument. *See, e.g.*, *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862-63 (Fed. Cir. 2020). Even if considered, the argument fails because even Appellant concedes that the evidence "demonstrates that at least on a handful of occasions, the same company / establishment produced and sold both liquor and other alcoholic goods, such as beer or wine, under the same name" (Br. at 29) and even under the same mark. *See* Br. at 28. The Board explained that this evidence thus "shows that several companies sell both beer (and/or wine) and liquor under the same mark." Appx18 (emphasis added). This is the type of relatedness evidence that counts for likelihood of confusion purposes because it shows beer and wine in the application "are related to liquor in the sense that matters." *Id. See Hewlett-Packard,* 281 F.3d at 1267; *see also Detroit Athletic,* 903 F.3d at 1306.

Appellant also contends that the examples in the record cannot support relatedness because they are too few in number to show that "several companies sell both beer (and/or wine) and liquor under the same mark." Br. at 27, 28. There is no

minimum number of examples required to support a relatedness finding. That
relatedness findings in other cases may have been supported by more evidence does
not mean there is not substantial evidence in this record to support the Board's
finding here. Br. at 28 (arguing that the record in the case cited by the Board—*In re
Charger Ventures LLC,* 64 F.4th 1375 (Fed. Cir. 2023)—contained dozens of examples
of companies offering both services compared to the five in the record here). Indeed,
the Court has admonished the Board for requiring examples of parties selling both
goods when the identifications of goods would support finding them related. *Hewlett-
Packard,* 281 F.3d at 1267. And the Court has affirmed a relatedness finding based on
a record containing fewer examples than the number here. *See In re Chatam Int'l Inc.,*
Serial No. 76/138,531, 2003 WL 2008773, at *1 (TTAB Apr. 25, 2003), *aff'd,* 380 F.3d
1340, 1345 (Fed. Cir. 2004) (three third-party registrations showed "substantial
evidence supports the Board's finding of a close relationship between tequila and beer
or ale."); *see also In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 1316 (Fed Cir. 2003)
(agreeing with the Board "that malt liquor and tequila are similar by virtue of the fact
that both are alcoholic beverages that are marketed in many of the same channels of
trade to many of the same consumers," and that the applicant failed to show it was
relevant that the record lacked evidence of any manufacturer that made both).

Moreover, this Court has long recognized "the reality that the PTO is an
agency of limited resources." *See In re Pacer Tech.,* 338 F.3d 1348, 1352 (Fed. Cir. 2003);
*In re Loew's Theatres, Inc.,* 769 F.2d 764, 768 (Fed. Cir. 1985). Examining attorneys

provide representative examples of relevant evidence in making a *prima facie* case, rather than an exhaustive listing of every example they identify. Once the USPTO sets forth a *prima facia* case, the burden shifts to the applicant to rebut the Office's evidence. *See, e.g., Pacer Tech,* 338 F.3d at 1350. Appellant provided no evidence of its own to show the goods are not related.

Next, Appellant poses a series of questions concerning the beer, wine, and liquor market. Br. at 28 (e.g., "how many beer companies do not sell liquor?"). Although Appellant asserts that evidence addressing his questions "would be much more indicative of how related the goods of Applicant and 'liquor' are" (*Id.*), Appellant presented no such evidence, as the Board noted. Appx18 ("Applicant disagrees, but points to no evidence to the contrary."). "Attorney argument is no substitute for evidence." *Enzo Biochem, Inc. v. Gen-Probe, Inc.,* 424 F.3d 1276, 1284 (Fed. Cir. 2005); *Estee Lauder, Inc. v. L'Oreal, S.A.,* 129 F.3d 588, 595 (Fed. Cir. 1997) ("arguments of counsel cannot take the place of evidence lacking in the record.") (internal citations and quotation marks omitted).

The Board's finding that the goods are related is supported by substantial evidence showing that the goods in the application and registration are of the type that emanate from the same source under a single mark. Appellant has failed to demonstrate any error in this finding.

2.    **The trade channels and classes of consumers overlap.**

There are no restrictions in the application or registration as to trade channels or prospective purchasers. Absent such restrictions, it is proper for the Board to presume that the goods travel in all the usual channels of trade to all the normal classes of purchasers. *See, e.g., Detroit Athletic*, 903 F.3d at 1308. The Board did not just rely on the presumption, however. It found the evidence that showed relatedness of the goods also showed that "the goods are sold to the general public (of legal drinking age) at the establishments that make the beverages (e.g., breweries, wineries, distilleries), sometimes as part of the restaurant, bar, and event-hosting services these establishments provide." Appx19. The Board also cited cases stating that beer and other types of alcoholic beverages are marketed in many of the same trade channels, including retail outlets such as liquor stores, supermarkets, restaurants and bars. *Id.*, citing *In re Majestic*, 315 F.3d at 1316, and *Anheuser-Busch, LLC v. Innvopak Sys. Pty. Ltd.*, 115 USPQ2d 1816, 1827-28, 2015 WL 5316485 (TTAB 2015).

At the Board, Appellant did not offer any evidence to the contrary. Although Appellant now argues that "[t]here is no evidence in the record that the average consumer of Applicant's goods are necessarily the same consumers of the cited mark's goods," Br. at 29, this argument is irrelevant given the unrestricted nature of the application and registration.[6] The Board properly found that that the trade channels

---

[6] Within the same paragraph, Appellant attempts to minimize the evidence of record showing an overlap in trade channels. However, in doing so, Appellant concedes the

and classes of consumers overlap and that these factors weigh in favor of a finding that confusion is likely. *See Herbko,* 308 F.3d at 1166 ("[O]verlap in trade channels and class of purchasers bolsters the likelihood of confusion.").

### 3. Appellant's evidence falls short of showing that the registered mark is weak.

The Board also considered the third-party registration and use evidence that Appellant offered bearing on the conceptual and commercial strength of the cited mark under the sixth *DuPont* factor. Appellant submitted eight third-party registrations containing the term "BASIN" used with beer and liquor and four third-party uses of "BASIN" marks for use with beer. Appx20-21. Consistent with this Court's precedents, the Board found that Appellant's evidence of weakness was not so "ubiquitous" or "considerable" that "with respect to alcoholic beverages, the term 'BASIN' has been weakened to the extent that would narrow the scope of protection afforded NEW BASIN DISTILLING COMPANY we otherwise would accord it." Appx21 (citing *In re i.am.symbolic, llc,* 116 USPQ2d 1406, 1413, 2015 WL 6746543 (TTAB 2015), *aff'd,* 866 F.3d 1315, 1329 (Fed. Cir. 2017)).

The Board further noted that the third-party marks were not as close to the registered mark as Appellant's mark, undercutting Appellant's claim that NEW BASIN DISTILLING COMPANY is weak. Appx21-22 (citing *Specialty Brands,* 748

---

parties' trade channels overlap, alleging "the evidence largely demonstrates that the companies / establishments which sell both liquor and another type of alcohol, often do so only at their facility, the brewery or distillery[.]" Br. at 29.

F.2d at 675; *Palisades Pageants,* 442 F.2d at 1388). Here, unlike Appellant's mark in which "BASIN is the only term of source-identifying significance[,]" several of the third-party registrations and uses contain additional wording or a design element (e.g. JEWEL BASIN, BASIN & RANGE, BASIN OF ATTRACTION, the design element in KLAMATH BASIN BREWING), resulting in these marks appearing more different from the cited mark than the Appellant's BASIN BEVERAGE CO. mark. Appx22. The Board therefore found the sixth *DuPont* factor "is neutral, or at best, tips only very slightly against a finding that confusion is likely." Appx22.

Appellant advances several challenges to the Board's finding (Br. at 20-24), none of which demonstrate that the Board erred but instead inappropriately asks this Court to reweigh the evidence to reach a different conclusion on this *DuPont* factor. As discussed above, the Board's analysis of the relevant evidence comports with governing precedent and is supported by the record. Toward that end, Appellant's argument faulting the Board for not counting the marks in two pending applications fails because, as the Board correctly explained, a pending application is only evidence that the application was filed on a certain date. Appx21, citing *Edom Lab'ys, Inc. v. Llichter*, 102 USPQ2d 1546, 1550, 2012 WL 1267961 (TTAB 2012); *see also* 3 McCarthy on Trademarks and Unfair Competition § 20:123 (5th ed.).

Appellant also presents a new argument that beer is a crowded area for trademarks, alleging that because over 40,000 applications have been filed with the USPTO since 2010 for marks used in association with beer, this means that

consumers must rely on minute distinctions in marks used with beer. Br. at 23-24. Similarly, Appellant argues that because several registrations for "RIVER" formative marks for beer co-exist, and "river" is a term like "basin" associated with water, that means other "BASIN" marks could not prevent registration of Appellant's mark. Br. at 24-25. Apart from being forfeited because Appellant never made them to the Board (Appx491-514, Appx554-580), these arguments are irrelevant to evaluating whether the Board correctly found that Appellant's evidence of eight third-party registrations and four uses of BASIN for beer and/or liquor falls short of showing that "the term BASIN has been weakened to the extent that would narrow the scope of protection afforded NEW BASIN DISTILLING COMPANY." Appx21. The focus of the analysis under the sixth *DuPont* factor is on the term common to both marks—in this case "BASIN" —and whether that term has been shown to be weakened for the goods at issue. *Spireon, Inc. v. Flex LTD,* 71 F.4th 1355, 1364 (Fed. Cir. 2023). That there are lots of marks for beer and lots of marks containing a completely different term for alcoholic beverages says nothing about the strength of the term "BASIN."

The Board properly treated the strength of the registered mark in the likelihood of confusion analysis as neutral or as tilting slightly in favor Appellant, but not enough to be dispositive. The Board's determination is reasonable based on the record and controlling precedent.

4.    **The marks are similar when compared in their entireties.**

As with the Class 30 refusal, the Board's analysis of the similarity of Appellant's mark BASIN BEVERAGE CO. and the cited mark NEW BASIN DISTILLING COMPANY is supported by substantial evidence and legally sound. The Board compared the marks in their entireties and provided rational reasons for giving more weight to their dominant features—"BASIN" in Appellant's mark and "NEW BASIN" in the registered mark—and discounting the entity designations in the marks. Appx22. *See, e.g.*, *Chatam*, 380 F.3d at 1342-1344 (Board correctly discounted the term "ALE" in GASPAR'S ALE for beer, and the terms "JOSE" and "GOLD" in JOSE GASPAR GOLD for tequila because those terms do not alter the commercial impressions of the marks); *Giant Food, Inc., v. Nation's Foodservice, Inc.*, 710 F.2d 1565 (Fed. Cir. 1983) (permissible to give greater force and effect to a dominant feature of a mark in finding the similarities in marks outweigh the dissimilarities). The Board also found that the "adjective 'NEW' in the cited registration serves only to direct attention to the term BASIN, which immediately follows." Appx22 (citing *Palisades Pageants,* 442 F.2d at 1388 ("merely adding [the] adjective [LITTLE] to the beginning [of MISS AMERICA]… directs attention to the words which follow.") (internal quotation marks omitted).[7] The Board correctly found that "while the marks have

_____

[7] Appellant argues "[b]y adding 'only' to the decision, the Board misinterprets [*Palisades Pageants*] and thus errs when it attempts to disregard the term NEW." Br. at 13. Appellant's argument is meritless. First, as detailed above, the Board's analysis did not ignore the term "NEW" in its assessment. Second, the Board's use of the term

some differences, their commercial impressions are similar overall," and that this weighs in favor of likely confusion. Appx22.

Appellant once again argues that the Board improperly dissected the marks, including by failing to consider the impact of the disclaimed matter in the marks on their commercial impressions. *See* Br. at 8, 10-12, 14-15, 17. Specifically, Appellant argues that the commercial impression of NEW BASIN DISTILLING COMPANY is "of a distilling company, or a company that sells liquor or spirits," while its BASIN BEVERAGE CO. mark "suggests [Appellant] is a company that sells various beverages" but "does not imply sale of liquor or spirits," and the company entity designator in each mark "suggests it is the company which offers the relevant goods," so that consumers would view the companies as unrelated. Br. at 17. According to Appellant, when properly evaluated "the marks are sufficiently dissimilar such that this factor alone should be dispositive" of the likelihood of confusion issue. Br. at 17-18.

Apart from there being no evidence to support Appellant's contention that consumers would not understand the broad term BEVERAGE CO. to include the

---

"only" in interpreting *Palisades Pageants* is accurate as this Court's predecessor did not indicate the mere addition of the adjective "LITTLE" served any other purpose in distinguishing the marks. Lastly, "the presence of an additional term in [a] mark does not necessarily eliminate the likelihood of confusion if some terms are identical." *In re Mighty Leaf Tea,* 601 F.3d 1342, 1347–48 (Fed. Cir. 2010). In any event, any misreliance on *Palisades Pageants* does not affect the Board's proper determination that the marks' "commercial impressions are similar overall." Appx22.

sale of the beverage, liquor, Appellant's argument misunderstands the issue here. "The issue under § 2(d) is not whether people will confuse the marks but whether the marks will confuse people." *Application of West Point-Pepperell, Inc.*, 468 F.2d 200, 201 (CCPA 1972). The analysis takes into account that consumers do not necessarily encounter the marks together and the fallibility of memory. *See, e.g., St. Helena Hosp.,* 774 F.3d at 751. Moreover, "while the Board must consider the disclaimed term, an additional word or component may technically differentiate a mark but do little to alleviate confusion." *Charger Ventures, LLC*, 64 F.4th at 1382; *Hewlett-Packard,* 281 F.3d at 1266 (Board correctly found that the non-disclaimed wording is the dominant element of a mark). That is the case here.

The Board reasonably determined that certain elements in the marks are dominant and the similarities in the marks outweigh their differences. Appellant attempts to reargue the evidence on appeal and have the Court make a different finding than the Board made based on the record evidence. However, that is not the role of the Court when reviewing a fact finding for substantial evidence. *See, e.g., Charger Ventures, LLC,* 64 F.4th at 1381; *Stratus Networks, Inc. v. UBTA-UBET Communications Inc.,* 955 F.3d 994, 999 (Fed. Cir. 2020) ("Even if Stratus were correct that different conclusions may reasonably be drawn from the evidence in record, we must sustain the Board's decision. . . ."); *Viterra,* 671 F.3d at 1361.

5. **The Board properly weighed the relevant *DuPont* factors.**

Appellant argues that the Board should have made different fact findings on certain *DuPont* factors (i.e., that the marks are dissimilar and third-party use of BASIN demonstrates weakness of the cited mark) and weighed those factors heavily against finding a likelihood of confusion. Br. at 18, 25. But as discussed above, the Board reasonably found that the marks are similar, Appellant's evidence did not demonstrate the cited mark is so weak as to alter the normal scope of protection it is entitled to as a mark registered on the Principal Register, the goods are related, and the trade channels and consumers overlap. The Board explained that even if it weighed the factor bearing on the strength of the registered mark in favor of Appellant, it did not outweigh the other factors. The Board correctly concluded that the balance of the factors was "clear on this record" and "confusion is likely" to result. Appx23. Appellant has demonstrated no error with this conclusion. "And if there is any doubt as to the likelihood of confusion, that doubt must be resolved against the newcomer." *Giant Food*, 710 F.2d at 1571 (Fed. Cir. 1983).

## V.   CONCLUSION

The Board's conclusion that confusion is likely to result from the registration of Appellant's mark for the goods in Classes 30, 32, and 33 is well-supported and correct. The Court should affirm the Board's decision.

October 18, 2024

Respectfully submitted,

/s/ Daniel S. Stringer

FARHEENA Y. RASHEED
Solicitor

CHRISTINA J. HIEBER
Senior Counsel for Trademark Policy and
Litigation

DANIEL S. STRINGER
ERICA JEUNG DICKEY
Associate Solicitors

Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450

*Attorneys for the Director of the*
*United States Patent and Trademark Office*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. Proc. 32(a)(7), I certify that the forgoing BRIEF FOR APPELLEE—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type-volume limitation required by the Court's rule. The total number of words in the foregoing brief, excluding table of contents and table of authorities, is 10,668 words as calculated using the Microsoft Word® software program.

/s/ Daniel S. Stringer
Daniel S. Stringer
Associate Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450