**24-1617**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

**In re: MATTHEW AMOSS,**

*Appellant*

---

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in
Serial No. 90703327

---

**JOINT APPENDIX**

Fabian Nehrbass
Julie Rabalais Chauvin
Vanessa M. D'Souza
GARVEY, SMITH & NEHRBASS,
PATENT ATTORNEYS, L.L.C.
701 Poydras Street, Suite 4310
New Orleans, LA 70139
Telephone: (504) 835-2000
fnehrbass@patents.gs
jchauvin@patents.gs
vanessadsouza@patents.gs

*Counsel for Appellant, Matthew
Amoss*

Farheena Y. Rasheed
Christina J. Hieber
Daniel S. Stringer
Erica Jeung Dickey
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035
farheena.rasheed@uspto.gov
christina.hieber@uspto.gov
daniel.stringer@uspto.gov
erica.dickey@uspto.gov

*Counsel for Appellee, Director of
the United States Patent and
Trademark Office*

# **TABLE OF CONTENTS**

**Appendix Page**

Decision of the
United States Patent and Trademark Office
Trademark Trial and Appeal Board
January 26, 2024………..………………………………………...Appx001

Certified List
Filed May 10, 2024…………………………………………….Appx024

Application
Filed May 11, 2021…………………………………………….Appx029

Drawing
Filed May 11, 2021…………………………………………….Appx034

Nonfinal Office Action
January 25, 2022……………………………………………….Appx036

Response to Office Action
July 25, 2022………………………………………………..Appx065

Drawing
July 25, 2022…..……………………………………………….Appx169

Amended Drawing
July 25, 2022…..……………………………………………….Appx170

Trademark Snap Shot Amendment & Mail Processing Stylesheet
July 26, 2022…..……………………………………………….Appx171

Nonfinal Office Action
August 16, 2022……………………………………………….Appx175

Response to Office Action
September 6, 2022..…………………………………………….Appx178

Nonfinal Office Action
    October 5, 2022……………………………………………………..Appx193

Response to Office Action
    October 24, 2022…...…………………………………………….Appx207

Final Office Action
    November 11, 2022…...…………………………………….…..Appx238

Request for Reconsideration after Final Action
    March 6, 2022………………………………………………….Appx268

Notice of Appeal to TTAB
    March 6, 2022………………………………………………….Appx379

Order: Appeal Acknowledged; Case Remanded
    March 6, 2022………………………………………………….Appx380

Request for Reconsideration after Final Office Action Denied
    April 26, 2023………………………………………………….Appx383

Applicant's Appeal Brief
    June 26, 2023………………………………………………...Appx491

Examining Attorney's Appeal Brief
    August 15, 2023…………………………………….…………Appx517

Applicant's Reply Brief
    September 5, 2023.…………………………………………..Appx554

Notice of Appeal to the Federal Circuit
    March 25, 2024..………………………………………………Appx581

This Opinion is not a
Precedent of the TTAB

Mailed: January 26, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Matthew Amoss*

_____

Serial No. 90703327

_____

Fabian M. Nehrbass and Julie R. Chauvin of Garvey, Smith & Nehrbass, Patent
 Attorneys, L.L.C.,
  for Matthew Amoss.

Shaunia Carlyle, Trademark Examining Attorney, Law Office 110,
  Chris Pedersen, Managing Attorney.

_____

Before Greenbaum, Coggins, and Casagrande,
  Administrative Trademark Judges.

Opinion by Casagrande, Administrative Trademark Judge:

 Matthew Amoss ("Applicant") seeks registration on the Principal Register of the

mark BASIN BEVERAGE CO. (in standard characters, with BEVERAGE CO.

disclaimed) for goods ultimately identified as:

> Tea-based beverages; Coffee based beverages; Kombucha tea, in International
> Class 30;
>
> Beverages, namely, beer, sparkling water, non-alcoholic water-based
> beverages, in International Class 32; and

Beverages, namely, wine, hard seltzer; Hard kombucha tea, in International Class 33.[1]

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

As to Applicant's Class 30 goods (for tea-based beverages; coffee based beverages; kombucha tea), the Examining Attorney ultimately refused registration based on two registrations: Registration No. 6760872 (the " '872 Registration") on the Principal Register for TAHOE BASIN for coffee and chai tea;[2] and Registration No. 5510241 (the " '241 Registration") on the Supplemental Register for GREAT BASIN COFFEE COMPANY for goods including coffee, tea, and coffee based beverages in Class 30.[3]

As to Applicant's Class 32 and 33 goods, the Examining Attorney refused registration in view of Registration No. 4890160 for NEW BASIN DISTILLING COMPANY ("Distilling Company" disclaimed) for liquor on the Principal Register in Class 33.[4]

---

[1]    Application Serial No. 90703327 was filed on May 11, 2021, based upon Applicant's allegation of a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). The application also identified certain services in International Class 43, but they are not part of this appeal because the Examining Attorney did not refuse registration as to those services.

[2]    Registered on June 14, 2022, to Java Detour NorCal LLC.

[3]    Registered on July 3, 2018, to Great Basin Coffee Company, LLC.

[4]    Registered on January 19, 2016, to New Basin Distilling Company LLC; Section 8 Declaration accepted, Section 15 Declaration acknowledged.

Serial No. 90703327

After the Trademark Examining Attorney made the refusal final,[5] Applicant appealed[6] and requested reconsideration.[7] Because of the reconsideration request, we suspended the appeal to allow the Examining Attorney to consider the request.[8] Upon denial of reconsideration,[9] the appeal resumed.[10] Applicant and the Examining Attorney then filed briefs, and Applicant also filed a reply.[11] We now affirm the refusal to register in each class on appeal for the reasons explained below.

## I.    Section 2(d) refusals generally

Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), prohibits registration of a mark that "so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Because Section 2(d) simply says "a mark registered in the Patent and Trademark office," marks registered on either the Principal or the Supplemental Register may

---

[5]  *See* November 22, 2022, Final Office Action. Citations in this opinion to the application record are to pages in the Trademark Status and Document Retrieval ("TSDR") database of the United States Patent and Trademark Office ("USPTO").

[6]  *See* 1 TTABVUE. References to the briefs, other filings in the case, and the record cite the Board's TTABVUE docket system. The number preceding "TTABVUE" represents the docket number assigned to the cited filing in TTABVUE and any number immediately following "TTABVUE" identifies the specific page(s), if any, to which we refer.

[7]  *See* March 6, 2023, Request for Reconsideration.

[8]  *See* 2 TTABVUE.

[9]  *See* April 26, 2023, Denial of Reconsideration (also available at 4 TTABVUE).

[10]  *See* 5 TTABVUE.

[11]  *See* 6 TTABVUE (Applicant's principal brief); 8 TTABVUE (Examining Attorney's brief); 10 TTABVUE (Applicant's reply).

form the basis of a Section 2(d) refusal. *See, e.g.*, *In re Clorox Co.*, 578 F.2d 305, 198 USPQ 337, 340 (CCPA 1978).

We determine whether confusion is likely by analyzing all probative facts in evidence that are relevant to the factors set forth in *In re E.I. DuPont de Nemours & Co.* ("*DuPont*"), 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) (providing a nonexclusive list of 13 factors potentially relevant to likelihood of confusion). *See, e.g.*, *In re Charger Ventures LLC*, 64 F.4th 1375, 2023 USPQ2d 451, at *2 (Fed. Cir. 2023). In *Charger Ventures*, our primary reviewing court explained:

> In any given case, different *DuPont* factors may play a dominant role and some factors may not be relevant to the analysis. The Board is required to consider each factor for which it has evidence, but it can focus its analysis on dispositive factors. A single *DuPont* factor may, for example, be dispositive of the likelihood of confusion analysis. The weight given to each factor depends on the circumstances of each case.

*Id.* at *4 (citations omitted). We consider each *DuPont* factor for which there is evidence and argument. *See, e.g.*, *In re Guild Mortgage Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019). We weigh together the findings we have made on the relevant *DuPont* factors to determine if, on balance, they indicate that confusion is likely. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *7; *In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1207 (Fed. Cir. 2003). In most cases, the comparison of the marks and goods are key factors. *See, e.g.*, *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976); *In re Max Cap. Grp. Ltd.,* 93 USPQ2d 1243, 1244 (TTAB 2010).

Serial No. 90703327

## II.    Analysis

We start first with the refusal to register BASIN BEVERAGE CO. for "tea-based beverages; coffee based beverages; kombucha tea" in Class 30, and then we will analyze the refusal as to the goods in Classes 32 and 33.

### A.    Class 30

#### 1.    Similarity of the Goods

We begin with the second *DuPont* factor, which assesses "[t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration." 177 USPQ at 567. In assessing the second factor, we must consider "the applicant's goods as set forth in its application, and the [registrant's] goods as set forth in its registration. Likelihood of confusion must be resolved on the basis of the goods named in the registration …." *In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017) (citations omitted). Likelihood of confusion as to any of the goods in the class at issue in the application is sufficient to warrant refusal with respect to all the goods in that class. *See, e.g.*, *SquirtCo v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 939 (Fed. Cir. 1983); *Bond v. Taylor*, 119 USPQ2d 1049, 1052-53 (TTAB 2016).; *see also In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1912 (Fed. Cir. 2012).

The Examining Attorney points out that the registrants' goods and Applicant's goods are in part legally identical.[12] Applicant does not contend otherwise. We agree

---

[12]  *See* 8 TTABVUE 12, 15.

Serial No. 90703327

with the Examining Attorney. Applicant's goods include tea- and coffee-based beverages. The goods in the TAHOE BASIN registration are coffee and chai tea, and GREAT BASIN COFFEE COMPANY is registered for goods including coffee, tea, and coffee-based beverages. This factor thus weighs strongly in favor of a finding that confusion is likely as to the Class 30 goods in the application.

### 2.    Comparison of the Channels of Trade and Classes of Customers

The third *DuPont* factor considers "[t]he similarity or dissimilarity of established, likely-to-continue trade channels." *DuPont*, 177 USPQ at 567. This factor, like the comparison of the goods, looks to what is disclosed in the application and registrations. *See, e.g.*, *In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018). Here, neither the application nor either of the cited Class 30 registrations contains any limitation on trade channels. This lack of restrictions means, as the Examining Attorney points out,[13] that we presume that the goods in the application and both registrations are available in all the normal trade channels for such goods. *See, e.g.*, *Kangol Ltd. v. Kangaroos U.S.A., Inc.*, 974 F.2d 161, 23 USPQ2d 1945, 1946 (Fed. Cir. 1992); *CBS Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983). Moreover, where, as here, the goods recited in the application and registrations are in-part legally identical, there is a further presumption that the channels of trade (and the classes of purchasers) are the same. *See, e.g.*, *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 110

---

[13] *See* 8 TTABVUE 13.

Serial No. 90703327

USPQ2d 1157, 1161-62 (Fed. Cir. 2014); *Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *In re Hitachi High-Techs. Corp.*, 109 USPQ2d 1769, 1772-73 (TTAB 2014). Applicant does not argue otherwise.

The fourth *DuPont* factor considers "[t]he conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing." *DuPont*, 177 USPQ at 567. Applicant does not make any argument or offer any evidence to counter the presumption that the classes of customers are the same.[14]

The identity of the trade channels and classes of customers strongly favors a conclusion that confusion is likely as to the Class 30 goods in the application.

3. The 5th and 6th *DuPont* factors (the strength of the registered marks and the number and nature of similar marks in use)

Applicant argues that the registered marks cited against him are weak.[15] *DuPont* lists two factors (the fifth and the sixth) that bear on the strength of the senior mark. The fifth factor is "[t]he fame of the prior mark (sales, advertising, length of use)." 177 USPQ at 567.[16] It is well-settled that, in the ex parte context, we generally treat the commercial strength of the cited registered mark as neutral because an

---

[14] Although the fourth *DuPont* factor looks not only at who the relevant respective consumers are but how much care and sophistication they bring to bear in selecting the goods or services in question, neither the Examining Attorney nor Applicant addresses this subject. In the absence of evidence or argument, we will not consider it.

[15] *See* 6 TTABVUE 15-23.

[16] Although *DuPont*'s fifth factor is phrased in terms of the "fame" of the senior mark, the Federal Circuit has clarified that "fame for purposes of likelihood of confusion is a matter of degree that varies along a spectrum from very strong to very weak." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1720 (Fed. Cir. 2012) (cleaned up; citations omitted).

Serial No. 90703327

examining attorney is not expected to submit such marketplace evidence of the fame of the registered mark. *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1413 (TTAB 2015), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744, 1752 (Fed. Cir. 2017) (specifically affirming the Board's decision on this point). *DuPont* lists marketplace data such as "sales, advertising, length of use" as types of evidence to assess "fame," and we do not expect USPTO examining attorneys to be able to obtain this type of commercial—and in many instances, proprietary—marketplace data. *See, e.g.*, *In re Pacer Tech.*, 338 F.3d 1348, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003) (the USPTO "is an agency of limited resources" and "cannot be expected to shoulder the burden of conducting market research") (citations omitted).

Thus, the sixth factor is more important in this ex parte case. Under the sixth factor, an applicant may submit evidence of third parties' registration and/or use of similar marks to try to show the weakness of the registered mark in two respective ways: conceptually and commercially. "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015) (citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:90 (4th ed. 2015)). Third party registrations thus can function like a dictionary of sorts, shedding light on what the term at issue may mean to market participants. *See, e.g.*, *Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 198 USPQ 151,

Serial No. 90703327

153 (CCPA 1978) ("[W]e find no error in the citation of nine third-party registrations "primarily to show the meaning of * * * ('zing') in the same way that dictionaries are used.") (citation omitted).

And enough evidence of third-party **use** (as opposed to registrations) can show commercial (i.e., marketplace) weakness. *See, e.g., Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315, 128 USPQ2d 1686, 1693 (Fed. Cir. 2018) ("The purpose of introducing evidence of third-party **use** is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions. Third-party use is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.") (emphasis added; cleaned up; citations omitted); *id.* at 1694 ("[E]vidence of third-party use bears on the strength or weakness of [prior registered] mark. The weaker [the prior registered] mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection.") (citations omitted). To be able to find significant commercial weakness, we generally expect to see evidence of "ubiquitous" or "considerable" third-party use of the term or symbol at issue for similar goods. *See, e.g., i.am.symbolic*, 123 USPQ2d at 1751 ("Symbolic's evidence of third-party use of I AM for the same or similar goods falls short of the 'ubiquitous' or 'considerable' use of the mark components present in its cited cases.").

In assessing allegations that the mark in a cited registration is weak, however, we must always bear in mind that even "weak" registered marks are entitled to

protection from marks that that are likely to cause confusion. *See, e.g.*, *Conde Nast Publ'ns, Inc. v. Miss Quality, Inc.*, 507 F.2d 1404, 184 USPQ 422, 424 (CCPA 1975); *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 109 (CCPA 1974); *Max Cap. Grp.*, 93 USPQ2d at 1246.

Applicant points to no third-party registrations, but Applicant does provide evidence of four third parties who use the term BASIN in connection with coffee and coffee shops, listing them in a table[17]:

| Mark | Goods/Services |
|---|---|
| THUNDER BASIN COFFEE COMPANY | Coffee shop |
| THUNDER BASIN | Coffee shop |
| NILE BASIN COFFEE | coffee |
| SNOWBASIN | coffee |
| BEAR BASIN | coffee |

This is a meager showing. It falls far short of showing that third-party use of marks with BASIN in them is "ubiquitous" or "considerable" insofar as coffee and coffee shops are concerned. As to the Class 30 goods in the application, we find the fifth and sixth *DuPont* factors neutral.[18]

---

[17]   *See* 6 TTABVUE 15.

[18]   In addition, we note that each of these marks has a term that modifies the term BASIN, resulting in a specific "BASIN" identified in the marks that is different from the "BASIN" in the two cited registrations. In contrast, Applicant's mark has only the term BASIN, which could refer to any basin, including the basins in the cited registrations. As a general rule, to have much impact in demonstrating that any weakness in the cited registered marks inures to the benefit of the second comer (i.e., Applicant in this case), the third-party marks must be at least as similar to the cited registrations as the applicant's mark. *See, e.g.*, *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1284-85 (Fed. Cir. 1984); *Palisades Pageants, Inc. v. Miss Am. Pageant*, 442 F.2d 1385, 169 USPQ 790, 793

### 4.    Similarity of the Marks

Under the first *DuPont* factor, we assess "[t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 177 USPQ at 567. This is a "predominant inquiry" in the likelihood of confusion determination. *See, e.g.*, *Herbko Int'l*, 64 USPQ2d at 1380. It "requires consideration of the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *i.am.symbolic*, 123 USPQ2d at 1748 (cleaned up; citations omitted). We bear in mind that "marks must be considered in light of the fallibility of memory and not on the basis of side-by-side comparison." *In re St. Helena Hosp.*, 774 F.3d 747, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014) (cleaned up; citation omitted). The reference to "fallibility of memory" reflects the reality that, when encountering an Applicant's mark, the consuming public perceives it against the backdrop of "their past recollection of marks to which they were previously exposed." *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) (citation omitted).

"Exact identity is not necessary to generate confusion as to source of similarly-marked products." *Bridgestone Ams. Tire Ops., LLC v. Fed. Corp.*, 673 F.3d 1330, 102 USPQ2d 1061, 1064 (Fed. Cir. 2012) (citation omitted); *Phillips Petroleum Co. v. Knox Indus. Corp.*, 277 F.2d 945, 125 USPQ 576, 577 (CCPA 1960) ("This issue is whether the marks are confusingly similar, not whether they are identical.") (citation omitted).

---

(CCPA 1971). Here, the additional terms that modify "BASIN" in the cited third-party marks are further away from the registered marks than Applicant's mark.

The similarity-of-marks inquiry is usually a matter of degree. *See, e.g.*, *St. Helena Hosp.*, 113 USPQ2d at 1085 ("Similarity is not a binary factor but is a matter of degree.") (citation omitted); *Phillips Petroleum*, 125 USPQ at 577 ("The question of similarity is ordinarily one of degree."). Where, as here, the goods are legally identical in part, the degree of similarity between the marks needed to result in likely confusion declines. *See, e.g.*, *Skincode AG v. Skin Concept AG*, 109 USPQ2d 1325, 1328-29 (TTAB 2013); *In re La Peregrina Ltd.*, 86 USPQ2d 1645, 1647 (TTAB 2008); *see also Coach Servs.*, 101 USPQ2d at 1721 ("[I]f the parties' goods are closely related, a lesser degree of similarity between the marks may be sufficient to give rise to a likelihood of confusion.") (citations omitted).

In comparing marks, sometimes "one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark." *Coach Servs.*, 101 USPQ2d at 1721 (citations omitted); *see also In re Electrolyte Labs., Inc.*, 929 F.2d 645, 16 USPQ2d 1239, 1240 (Fed. Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark.") (citation omitted). Terms that are disclaimed in the application or registration at issue because of their lack of source-identifying significance are usually not considered dominant. *See, e.g.*, *Citigroup*, 98 USPQ2d at 1257; *In re Aquitaine Wine USA, LLC,* 126 USPQ2d 1181, 1186 (TTAB 2018). But while, as part of our analysis, we may assess individual terms (or other features) that together make up a given mark, the ultimate assessment must rest on the marks in their entireties. *See, e.g.*, *QuikTrip W., Inc. v. Weigel Stores,*

*Inc.*, 984 F.3d 1031, 2021 USPQ2d 35, at *3-4 (Fed. Cir. 2021); *Detroit Athletic*, 128 USPQ2d at 1050.

Here, Applicant reprises his argument that the two cited registrations are conceptually weak, but for definitional reasons: he argues that BASIN—which his mark BASIN BEVERAGE CO. and the two cited registrations, TAHOE BASIN and GREAT BASIN COFFEE COMPANY, have in common—is a geographically descriptive, and therefore relatively weak, term.[19] As to TAHOE BASIN, the argument that the mark is geographically descriptive of the goods does not fly. A mark registered on the Principal Register without a claim of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), is presumed to be inherently distinctive. *See, e.g.*, *Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC*, 17 F.4th 129, 2021 USPQ2d 1069, at *12 (Fed. Cir. 2021). An argument that the mark is descriptive represents a collateral attack on the validity of the registration, and that may be accomplished only in an adversary proceeding brought against the registrant. *See, e.g.*, *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 752 & n.8 (Fed. Cir. 1985).[20] As to GREAT BASIN COFFEE COMPANY, the point of determining where the terms

---

[19]   *See* 6 TTABVUE 13 (citing Oct. 24, 2022, Response to Office Action, at pp. 32-34, 83-86). We note that the citation in Applicant's brief as to this evidence is incorrect. There are no pages 32-34 and 83-86 in his October 24, 2022, Response to Office action, which is only 27 pages long. These pages appear to be in Applicant's March 6, 2023, Request for Reconsideration.

[20]   The rule against collateral attacks in ex parte cases also precludes Applicant's argument (*see* 6 TTABVUE 16) that there can be no confusion between its mark and GREAT BASIN COFFEE COMPANY because "the mark appears to no longer be in use," which is essentially an abandonment argument. *See In re Dixie Rests., Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997); *In re Brockway Glass Co.*, 154 F.2d 673, 69 USPQ 324, 326 (CCPA 1946).

GREAT BASIN fit on the inherent distinctiveness scale is not to exclude them from protection. As we mentioned above, all registered marks, even those containing or comprising geographically descriptive or otherwise weak terms, are afforded protection from later users whose marks will likely cause confusion.[21] *See also Clorox Co.*, 198 USPQ at 340 (even marks on the Supplemental Register are afforded protection from later marks that are likely to cause confusion); *In re Morinaga Nyugyo K.K.*, 120 USPQ2d 1738, 1744 (TTAB 2016) (same).

In contrast, we are assessing the component terms of GREAT BASIN COFFEE COMPANY to determine which term or terms contribute relatively more heavily to the commercial impression consumers will perceive from the mark for purposes of comparing it to Applicant's mark. Here, in the '241 Registration, "COFFEE COMPANY" is generic for coffee and coffee-based beverages. And the "BEVERAGE CO." component of Applicant's mark is generic for an entity that makes beverages (of which coffee-based beverages and Kombucha tea are two such beverages). Indeed, Applicant has disclaimed exclusive rights in "BEVERAGE CO." presumably for this reason.[22] As mentioned, terms disclaimed because they lack source-identifying

---

[21] Applicant further argues that, during prosecution, the owner of the registration for GREAT BASIN COFFEE COMPANY offered to disclaim GREAT BASIN, telling the examining attorney that it believed the disclaimer was necessary because the term is geographically descriptive and "other companies must be able to use it." See 6 TTABVUE 13 (citing Mar. 6, 2023 Request for Reconsideration, at pp. 108-11). This is irrelevant. Because COFFEE COMPANY is generic for coffee and coffee-based beverages, such a disclaimer would have impermissibly resulted in the entire mark being disclaimed. *See In re Newport Fastener Co.*, 5 USPQ2d 1064, 1065 (TTAB 1987) ("an entire mark cannot be disclaimed and still be registered, even on the Supplemental Register"). In any event, GREAT BASIN—the non-generic and first part of the registered mark—is the mark's dominant component.

[22] *See* July 25, 2022, Response to Nonfinal Office Action. And in his brief, Applicant acknowledges that "BEVERAGE CO. is less dominant than BASIN." 6 TTABVUE 7.

significance usually aren't dominant in the context of creating the source-identifying impression of a mark. *See, e.g.*, *Citigroup*, 98 USPQ2d at 1257; *Aquitaine Wine,* 126 USPQ2d at 1186. Thus, the terms "BEVERAGE CO." and "COFFEE COMPANY" contribute little if any source-identifying significance in these marks as wholes. In addition, the terms "BASIN" and "GREAT BASIN" appear before "BEVERAGE CO." and "COFFEE COMPANY" in the respective marks. *See, e.g.*, *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992) (Board correctly found that "Century" is the "dominant element of CENTURY LIFE OF AMERICA due to applicant's disclaimer of the rest of its mark" and because "upon encountering each mark, consumers must first notice this identical lead word"); *Presto Prods. Inc. v. Nice-Pak Prods., Inc.,* 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered").

And as to TAHOE BASIN, there are no other words in the mark. Thus, the fact that "GREAT BASIN" and TAHOE BASIN may have a geographical connotation does not help Applicant in this regard, because there are no stronger source-distinguishing terms in either mark that would contribute more heavily to their respective commercial impressions.

Assessing the marks as wholes on the evidence before us, we find that TAHOE BASIN and GREAT BASIN COFFEE COMPANY are quite similar to Applicant's BASIN BEVERAGE CO. mark. While there are some differences visually and aurally, the presence of the shared term "BASIN," which is the dominant component of

Applicant's mark, renders it quite similar in terms of overall commercial impression to both registered marks. "BASIN" has a geographic connotation in the two cited marks, which refer to specific, but different, basins. Applicant's mark has no specific modifier for "BASIN" and thus could refer to the basin in either registered mark. Looking at the marks in their entireties, we find that the overall commercial impression of Applicant's mark is similar to the overall commercial impressions of both cited registered marks, notwithstanding the differences between them. This factor thus weighs in favor of a finding that confusion is likely.[23]

5.   Weighing the findings on the relevant *DuPont* factors together as to Applicant's Class 30 goods.

Having made findings on all the relevant *DuPont* factors, our final step is to assess these findings together to determine if, on balance, confusion is likely. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *7. Here, although there are visual and aural differences in the marks, Applicant's mark is similar in terms of overall commercial impression to each of the cited registered marks in Class 30. Applicant's goods are legally identical in part to goods in both of the cited Class 30 registrations, and the respective channels of trade and classes of customers are presumed identical. In those circumstances, the degree of similarity between Applicant's mark and each cited registered mark likely to lead to confusion declines. And the fifth and sixth *DuPont*

---

[23] Applicant cites several decisions in which non-identical marks have been found to be dissimilar enough to avoid a likelihood of confusion. *See* 6 TTABVUE 17-18. It is well-settled, however, that comparisons to other decisions, involving other marks and other evidence, are of little value, as each case must be decided on its own record. *See, e.g.*, *In re Quik-Print Copy Shops, Inc.*, 616 F.2d 523, 205 USPQ 505, 507 n.8 (CCPA 1980); *Curtice-Burns, Inc. v. Nw. Sanitation Prods., Inc.*, 530 F.2d 1396, 189 USPQ 138, 141 (CCPA 1976).

factors are neutral. With no factors weighing against likely confusion, we conclude that confusion is likely as between Applicant's mark as concerns the Class 30 goods and the marks of the '872 and '241 Registrations.

### B.   Classes 32 & 33

We now turn to the refusal to register Applicant's mark as to his Class 32 and 33 goods in view of Registration No. 4890160 for NEW BASIN DISTILLING COMPANY for goods in Class 33 identified as "liquor."

### 1.   Similarity of the Goods

As we did with the Class 30 goods, we will start here with the second *DuPont* factor. It is clear from the application and registration that Applicant's goods (beer, sparkling water, non-alcoholic water-based beverages, in Class 32; and wine, hard seltzer, and hard kombucha tea, in Class 33) are not identical to the goods (liquor) in the registered mark. But "[i]t is … not necessary that the goods of the parties be identical in order to sustain a finding of likelihood of confusion." *In re Rsch. & Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986) (citations omitted). Rather, "the relevant inquiry considers if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 2022 USPQ2d 513, at *8 (Fed. Cir. 2022) (cleaned up; citation omitted).

The Examining Attorney contends that the goods are "legally identical" or, in the alternative, that the evidence shows that they are related.[24] We agree with the latter contention. The record evidence shows that several companies sell both beer (and/or wine) and liquor under the same mark.[25] This constitutes evidence of relatedness in the sense that counts for our purposes. *See, e.g.*, *Charger Ventures*, 2023 USPQ2d 451, at *6 (affirming finding that residential and commercial real estate services are related and travel in overlapping trade channels "[b]ecause the record shows that companies are known to offer both residential and commercial services under the same mark and, often, on the same website"); *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002) (evidence that "a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis"). Applicant disagrees, but points to no evidence to the contrary. On the record before us, we find that the Class 32 & 33 goods in the application are related to liquor in the sense that matters. *See, e.g.*, *Tiger Lily Ventures*, 2022 USPQ2d 513, at *8.

## 2. Comparison of the Channels of Trade and Classes of Customers

Turning to the channels of trade and classes of customers, we noted earlier in our discussion of the Class 30 goods that where neither the application nor the registration contain any restrictions on the channels of trade or classes of customers,

---

[24] *See* 8 TTABVUE 9-10.

[25] *See id.* (citing examples in the record from 3 Rivers Brewery Block, Little Toad Creek, Tumbleroot Brewery and Distillery, Old House Vineyards, and Gervasi Vineyard).

they are both presumed to be sold in all normal trade channels to all the normal classes of purchasers. *See, e.g., Detroit Athletic*, 128 USPQ2d at 1052. What are the "normal channels" for beer, wine, and liquor? The Examining Attorney's third-party evidence, referenced in the preceding section shows that the goods are sold to the general public (of legal drinking age) at the establishments that make the beverages (e.g., breweries, wineries, distilleries), sometimes as part of the restaurant, bar, and event-hosting services these establishments provide. Applicant does not address these factors or offer evidence to the contrary. *See Majestic Distilling*, 65 USPQ2d at 1204 (malt liquor and tequila "similar by virtue of the fact that both are alcoholic beverages that are marketed in many of the same channels of trade to many of the same consumers"); *Anheuser-Busch, LLC v. Innvopak Sys. Pty Ltd.*, 115 USPQ2d 1816, 1827-28 (TTAB 2015) ("[I]t is clear that beer and other alcoholic beverages … are sold to consumers in many of the same channels of trade, including retail outlets such as liquor stores, supermarkets, convenience stores, restaurants, and bars … ."). On this record, we find that the trade channels and classes of customers overlap, which supports a conclusion that confusion is likely.

3.   The 5th and 6th *DuPont* factors (the strength of the registered mark and the number and nature of similar marks in use)

The mark NEW BASIN DISTILLING COMPANY is registered, with "DISTILLING COMPANY" disclaimed, on the Principal Register without any showing of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f). That means it is presumed inherently distinctive. *See, e.g., Brooklyn Brewery*, 2021

Serial No. 90703327

USPQ2d 1069, at *12. Applicant argues that the cited registration is weak, citing

third-party registrations containing BASIN for alcoholic beverages and drink mixes:

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) Status | Owner |
|---|---|---|---|---|
| WILD BASIN[2] | 6014406 | Beer | Mar. 17, 2020 | CANARCHY CRAFT BREWERY COLLECTIVE LLC |
| JEWEL BASIN[3] | 6429315 | Beer | Jul. 20, 2021 | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO.[4] | 5608888 | Non-alcoholic cocktail mixes | Nov. 13, 2018 | ACE Basin Cocktail Company |
| NEW BASIN DISTILLING COMPANY[5] | 4890160 | Liquor | Jan. 19, 2016 | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO.[6] | 5177835 | Beverages, namely, beer and soda pop | Apr. 4, 2017 | PHOENICIAN BREWING COMPANY, LLC |
| BASIN & RANGE[7] | 5022765 | Distilled Spirits | Aug. 16, 2016 | Congregation Spirits, LLC |
| TURNING BASIN[8] | 88-373488 97-498075 | Beer; Wine; alcoholic beverages except beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon | (Apr. 5, 2019) Recently abandoned (July 11, 2022) Notice of Allowance issued 24 January 2023[9] | Buffalo Bayou Distilleries, LLC |
| WILD BASIN[10] | 88-614301 | Soda pops; Soft drinks | (Sep. 12, 2019) Notice of Allowance Issued | CANarchy Craft Brewery Collective LLC |
| [11] | 4746735 | Beer, ale, lager, stout and porter | June 2, 2015 | KB Brewing, Inc. DBA Klamath Basin Brewing Company |
| [12] | 5246096 | Headwear; shirts Beer | July 18, 2017 | Phoenician Brewing Company, LLC |
| BASIN OF ATTRACTION[13] | 6019694 | Beer; ale | March 24, 2020 | August Schell Brewing Company |
| RIVER BASIN[14] | 5429308 | Liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; | March 20, 2018 | River Basin Distillery |

(6 TTABVUE 8-9.)

Serial No. 90703327

This table shows that there are eight (8) existing third-party registrations that contain the term BASIN for the types of goods that fall within the range of goods appearing both in Applicant's Class 32 & 33 goods (e.g., beer and wine) and those identified in the cited registration (liquor).[26] Although Applicant does not mention it in his briefs, Applicant also placed in the record evidence of four third-party uses of BASIN in marks for beer: Loomis Basin Brewing Company;[27] Beehive Basin Brewery;[28] Great Basin Brewing Co.;[29] and Big Basin (as the name of a beer).[30]

While this is more evidence than Applicant could muster as to the Class 30 goods, we do not think it rises to the "ubiquitous" or considerable" level at which our primary reviewing court has found such evidence to tilt the sixth *DuPont* factor significantly enough to persuade us that, with respect to alcoholic beverages, the term BASIN has been weakened to the extent that would narrow the scope of protection afforded NEW BASIN DISTILLING COMPANY we otherwise would accord it. *See i.am.symbolic*, 123 USPQ2d at 1751. This is especially so where, as here, several of the third-party

---

[26] We exclude the cited registration (NEW BASIN DISTLILLING COMPANY) because it is not a third-party registration. We do not count HELIO BASIN BREWING CO. because it has been cancelled. *See, e.g.*, *In re Embiid*, 2021 USPQ2d 577, at *35 n.48 (TTAB 2021) ("The existence of a cancelled registration—particularly one cancelled for failure to provide a declaration of continued use—does not tend to show that the cited mark is weak due to third-party use."). We also do not count TURNING BASIN and WILD BASIN because they are applications. *See, e.g.*, *Edom Lab'ys, Inc. v. Llichter*, 102 USPQ2d 1546, 1550 (TTAB 2012) ("with respect to the applications, they are evidence of nothing more than that they were filed with the USPTO") (citations omitted).

[27] July 25, 2022, Response to Office Action, at 21-28.

[28] *Id.* at 29-33.

[29] *Id.* at 34-42.

[30] *Id.* at 43-56.

registrations and uses have additional terms or design elements (e.g., JEWEL BASIN, BASIN & RANGE, BASIN OF ATTRACTION, the design element in KLAMATH BASIN BREWING) that render them further from the cited registration than Applicant's mark, in which the word BASIN is the only term of source-identifying significance. *See, e.g.*, *Specialty Brands*, 223 USPQ at 1284-85; *Palisades Pageants*, 169 USPQ at 793. Accordingly, we find that the sixth factor, as to the goods in Classes 32 & 33, is neutral or, at best, tips only very slightly against a finding that confusion is likely.[31]

### 4.    Similarity of the Marks

Much of what we said as to the two marks that formed the basis of the Class 30 refusal applies here. BASIN is the dominant element of Applicant's mark. NEW BASIN, the first two terms in the registration, are dominant in the cited registration, in which the trailing terms "DISTILLING COMPANY" are disclaimed. The preceding adjective "NEW" in the cited registration serves only to direct attention to the term BASIN, which immediately follows. *See, e.g.*, *Palisades Pageants*, 169 USPQ at 793 (adjective "little" only directed attention to the words "Miss America" that followed). Thus, while the marks have some differences, their commercial impressions are similar overall. This weighs in favor of a finding that confusion is likely.

---

[31] As with our discussion of the Class 30 goods, the fifth *DuPont* factor is neutral.

> 5.   Weighing the findings on the relevant *DuPont* factors together as to Applicant's Class 32 & 33 goods.

As concerns whether, with respect to Applicant's Class 32 & 33 goods, Applicant's mark is likely to result in consumer confusion, we conclude that the answer is yes. The marks are similar, the goods are related, and the classes or customers and trade channels overlap. While Applicant pointed to a few more third-party registrations and uses of marks that include the term BASIN as compared to his Class 30 evidence, we think it is not enough to tip this factor in Applicant's favor. This factor is neutral, and even if it were assumed to tip slightly in Applicant's favor, that would not be nearly enough to outweigh the other factors that weigh in favor of a conclusion that confusion is likely. On balance, we think it clear on this record that confusion is likely as to the goods in Classes 32 & 33.

**Decision**: The refusal to register Applicant's mark BASIN BEVERAGE CO. is affirmed as to Applicant's goods in Classes 30, 32, and 33. The application will proceed to publication as to the Class 43 services, as to which there was no refusal.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

In re: MATTHEW AMOSS,

    Appellant.

Appeal No. 2024-1617

## <u>NOTICE FORWARDING CERTIFIED LIST</u>

A Notice of Appeal to the United States Court of Appeals for the Federal

Circuit was timely filed on March 25, 2024, in the United States Patent and Trademark

Office (USPTO), in connection with the following trademark application:

**Mark: BASIN BEVERAGE CO.**
**Serial No.: 90/703,327**
**Filed: May 11, 2021**

Pursuant to 15 U.S.C. § 1071(a)(3) and Federal Circuit Rule 17(b)(1), the

Director is today forwarding, to counsel for Appellant, a certified list of documents

comprising the record in the USPTO. Erica Jeung Dickey, Associate Solicitor, and

Christina J. Hieber, Senior Counsel for Trademark Policy and Litigation, will represent

the Director in this appeal. Counsel for Appellant may contact Ms. Erica Jeung

Dickey at (571) 272-9035 to arrange for designating the appendix. *See generally* Fed.

Cir. Rule 30(b).

Respectfully submitted,

KATHERINE K. VIDAL
Under Secretary of Commerce for Intellectual
Property and Director of the United States Patent
and Trademark Office

Date:  May 8, 2024                By:  /s/ *Orchideh Rushenas*
                                       Orchideh Rushenas
                                       Paralegal Specialist
                                       Mail Stop 8, P.O. Box 1450
                                       Alexandria, Virginia 22313-1450
                                       571-272-9035

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and

foregoing NOTICE FORWARDING CERTIFIED LIST has been served, via

electronic mail, on counsel for Appellant this 8th day of May, 2024 as follows:

> Fabian Nehrbass
> Julie Rabalais Chauvin
> Vanessa M. D'Souza
> GARVEY, SMITH & NEHRBASS,
>     PATENT ATTORNEYS, LLC
> Emails: fnehrbass@patents.gs; Jchauvin@patents.gs;
> VanessaDSouza@patents.gs

> By: /s/ *Orchideh Rushenas*
>     Orchideh Rushenas
>     Paralegal Specialist

Form PTO 55 (12-80)

## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

May 8, 2024
_____
(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the

content entries in the file of the trademark application identified below. The

list was taken from the TSDR and TTABVUE electronic databases of the

United States Patent and Trademark Office and comprises the record before

this Office.

**The Trademark Application of:**

**Applicant: Matthew Amoss**

**Application No.: 90/703,327**

**Date Filed: May 11, 2021**

**Mark: BASIN BEVERAGE CO.**



By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

_Orchideh Rushenas_
_____
*Certifying Officer*

# HISTORY OF SERIAL NO. 90/703,327
## Mark: BASIN BEVERAGE CO.

| DATE | DESCRIPTION |
|------|-------------|
| 05/11/2021 | Application |
| 05/11/2021 | Drawing |
| 01/20/2022 | XSearch Search Summary |
| 01/25/2022 | Non-Final Office Action |
| 07/25/2022 | Response to Non-Final Office Action |
| 07/25/2022 | Drawing |
| 07/25/2022 | Amended Drawing |
| 07/26/2022 | Trademark Snap Shot Amendment & Mail Processing Stylesheet |
| 08/16/2022 | Non-Final Office Action |
| 09/06/2022 | Response to Non-Final Office Action |
| 09/08/2022 | Trademark Snap Shot Amendment & Mail Processing Stylesheet |
| 10/05/2022 | Non-Final Office Action |
| 10/24/2022 | Response to Non-Final Office Action |
| 10/25/2022 | Trademark Snap Shot Amendment & Mail Processing Stylesheet |
| 11/22/2022 | Final Office Action |
| 03/06/2023 | Request for Reconsideration After Final Office Action |
| 03/06/2023 | Notice of Appeal to TTAB |
| 03/06/2023 | Order: Appeal Acknowledged; Case Remanded |
| 04/26/2023 | Request for Reconsideration After Final Office Action Denied |
| 04/26/2023 | Order: Proceedings Resumed |
| 06/26/2023 | Applicant's Appeal Brief |
| 06/29/2023 | Appeal Forwarded to Examiner for Brief |
| 08/15/2023 | Examining Attorney's Appeal Brief |
| 09/05/2023 | Applicant's Reply Brief |
| 01/26/2024 | Board Decision: Affirmed as to Classes 30, 32, and 33 |
| 03/25/2024 | Notice of Appeal to the Federal Circuit |

# Trademark/Service Mark Application, Principal Register

**Serial Number: 90703327**
**Filing Date: 05/11/2021**

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 90703327 |
| **MARK INFORMATION** | |
| *MARK | basin beverages |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | basin beverages |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Amoss, Matthew |
| *MAILING ADDRESS | 1600 Tchoupitoulas Street |
| *CITY | New Orleans |
| *STATE<br>(Required for U.S. applicants) | Louisiana |
| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| *ZIP/POSTAL CODE<br>(Required for U.S. and certain international addresses) | 70130 |
| *DOMICILE | XXXX |
| *EMAIL ADDRESS | XXXX |
| **LEGAL ENTITY INFORMATION** | |
| TYPE | individual |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF CITIZENSHIP | United States |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| INTERNATIONAL CLASS | |
| *IDENTIFICATION | Beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location |

| | |
|---|---|
| **FILING BASIS** | SECTION 1(b) |
| **ATTORNEY INFORMATION** | |
| **NAME** | Fabian Nehrbass |
| **ATTORNEY DOCKET NUMBER** | T21144US (3) |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C. |
| **INTERNAL ADDRESS** | Suite 3290 |
| **STREET** | 3838 N. Causeway Blvd. |
| **CITY** | Metairie |
| **STATE** | Louisiana |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **ZIP/POSTAL CODE** | 70002 |
| **EMAIL ADDRESS** | FabianNehrbass@patents.gs |
| **OTHER APPOINTED ATTORNEY** | Gregory C. Smith, Charles C. Garvey, Seth M. Nehrbass, Vanessa M. D'Souza, Julia M. Fitzpatrick, Mackenzie D. Rodriguez, Julie R. Chauvin |
| **CORRESPONDENCE INFORMATION** | |
| **NAME** | Fabian Nehrbass |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | FabianNehrbass@patents.gs |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | SNehrbass@gmail.com; Sford@patents.gs; jchauvin@patents.gs |
| **FEE INFORMATION** | |
| **APPLICATION FILING OPTION** | TEAS Standard |
| **NUMBER OF CLASSES** | 1 |
| **APPLICATION FOR REGISTRATION PER CLASS** | 350 |
| ***TOTAL FEES DUE** | 350 |
| ***TOTAL FEES PAID** | 350 |
| **SIGNATURE INFORMATION** | |
| **SIGNATURE** | /Fabian M. Nehrbass, LA Bar #35264/ |
| **SIGNATORY'S NAME** | Fabian M. Nehrbass |
| **SIGNATORY'S POSITION** | Attorney of Record, Louisiana Bar Member |
| **SIGNATORY'S PHONE NUMBER** | 504-835-2000 |
| **DATE SIGNED** | 05/11/2021 |
| **SIGNATURE METHOD** | Signed directly within the form |

### Trademark/Service Mark Application, Principal Register

**Serial Number: 90703327**
**Filing Date: 05/11/2021**

## To the Commissioner for Trademarks:

**MARK:** basin beverages (Standard Characters, see mark)
The literal element of the mark consists of basin beverages. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Matthew Amoss, a citizen of United States, having an address of
    1600 Tchoupitoulas Street
    New Orleans, Louisiana 70130
    United States
    XXXX
**Domiciled at:** XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class _____: Beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location
Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

The owner's/holder's proposed attorney information: Fabian Nehrbass. Other appointed attorneys are Gregory C. Smith, Charles C. Garvey, Seth M. Nehrbass, Vanessa M. D'Souza, Julia M. Fitzpatrick, Mackenzie D. Rodriguez, Julie R. Chauvin. Fabian Nehrbass of GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C., is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, and the attorney(s) is located at
    Suite 3290
    3838 N. Causeway Blvd.
    Metairie, Louisiana 70002
    United States
    FabianNehrbass@patents.gs
The docket/reference number is T21144US (3).
Fabian Nehrbass submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.
The applicant's current Correspondence Information:
    Fabian Nehrbass
    PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): SNehrbass@gmail.com; Sford@patents.gs; jchauvin@patents.gs

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $350 has been submitted with the application, representing payment for 1 class(es).

### Declaration

☑ **Basis:**
    **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Fabian M. Nehrbass, LA Bar #35264/   Date: 05/11/2021
Signatory's Name: Fabian M. Nehrbass
Signatory's Position: Attorney of Record, Louisiana Bar Member
Signatory's Phone Number: 504-835-2000
Signature method: Signed directly within the form
Payment Sale Number: 90703327
Payment Accounting Date: 05/11/2021

Serial Number: 90703327
Internet Transmission Date: Tue May 11 15:02:59 ET 2021
TEAS Stamp: USPTO/BAS-XXX.XXX.XXX.XXX-20210511150259
912037-90703327-780f773247a2191233d54a9a
3f2c7ec43a524d9f4e3ab127ca572b269eeeef76
717-DA-02594130-20210511150019984793

basin beverages

| **To:** | Amoss, Matthew (FabianNehrbass@patents.gs) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGES - T21144US (3) |
| **Sent:** | January 25, 2022 12:36:26 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90703327

**Mark:** BASIN BEVERAGES

**Correspondence Address:**
FABIAN NEHRBASS
GARVEY, SMITH &
NEHRBASS, PATENT
ATTORNE
3838 N. CAUSEWAY
BLVD.
SUITE 3290
METAIRIE, LA 70002

**Applicant:** Amoss, Matthew

**Reference/Docket No.** T21144US (3)

**Correspondence Email Address:**

FabianNehrbass@patents.gs

# NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**. Respond using the Trademark Electronic Application System (TEAS).  A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:  January 25, 2022**

SUMMARY OF ISSUES:
- Likelihood of Confusion
- Prior Pending Applications
- Identification of Goods and Services
- Disclaimer

 The trademark examining attorney will defer a review of the merits of the application, and a search of the USPTO database of registered and pending marks in part, until applicant clarifies the number of classes for which registration is sought and ensures the required filing fees for all specified classes have been paid.  *See* TMEP §§810.01, 1401.04; *see also* 15 U.S.C. §1112; 37 C.F.R. §2.86(a)(2), (b)(2).

The application identifies goods and/or services in at least eleven classes; however, applicant submitted the fee(s) sufficient for only one class.

Applicant may respond to this issue by satisfying one of the following:

    (1)      Specifying the number of classes for which registration is sought and provide the filing fees for all such classes.

    (2)      Deleting class(es) from the application not covered by the fee(s) already submitted.

*See* TMEP §§810.01, 1401.04.

## LIKELIHOOD OF CONFUSION – International Class 32

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 6429315, 6014406, 5608888, 4890160, 5177835, and 5022765.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the attached registrations.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties.  *See* 15 U.S.C. §1052(d).  Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors").  *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).  Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case."  *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis:  (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services.  *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

### U.S. Registration Number 6429315

*Similarity of the Marks*

The applicant has applied for the mark BASIN BEVERAGES.  The registrant's mark is JEWEL BASIN.  Here, both marks contain the word

BASIN.

Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce* , 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii). Matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant in relation to other wording in a mark. *See Anheuser-Busch, LLC v. Innvopak Sys. Pty Ltd.*, 115 USPQ2d 1816, 1824-25 (TTAB 2015) (citing *In re Chatam Int'l Inc.* , 380 F.3d 1340, 1342-43, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004)). Here, BEVERAGES is descriptive of a feature of the goods and services and is therefore the less dominant wording in the applicant's mark.

*Similarity of the Goods*

The applicant's mark is for beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location. The registrant's mark is for beer. Here, both marks are for beer.

Where the goods and/or services of an applicant and registrant are identical or virtually identical, the degree of similarity between the marks required to support a finding that confusion is likely declines. *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(b).

**U.S. Registration Number 6014406**

*Similarity of the Marks*

The applicant has applied for the mark BASIN BEVERAGES.  The registrant's mark is WILD BASIN.   Here, both marks contain the word BASIN.

Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce* , 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression.  See In re Detroit Athletic Co., 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing In re Dixie Rests., 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii).  Matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant in relation to other wording in a mark.  See Anheuser-Busch, LLC v. Innvopak Sys. Pty Ltd., 115 USPQ2d 1816, 1824-25 (TTAB 2015) (citing In re Chatam Int'l Inc., 380 F.3d 1340, 1342-43, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004)). Here, BEVERAGES is descriptive of a feature of the goods and services and is therefore the less dominant wording in the applicant's mark.

*Similarity of the Goods*

The applicant's mark is for beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location.  The registrant's mark is for

beer.  Here, both marks are for beer.

Where the goods and/or services of an applicant and registrant are identical or virtually identical, the degree of similarity between the marks required to support a finding that confusion is likely declines.  *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(b).

### U.S. Registration Number 5608888

#### Similarity of the Marks

The applicant's mark is for BASIN BEVERAGES.   The registrant's mark is for ACE BASIN COCKTAIL CO.   Here, both marks contain the word BASIN.

Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression.  *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce* , 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom.  Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties."  *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b).  The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks.  *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014); *Geigy Chem. Corp. v. Atlas Chem. Indus., Inc.*, 438 F.2d 1005, 1007, 169 USPQ 39, 40 (C.C.P.A. 1971)), *aff'd per curiam* , 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

#### Similarity of the Goods

The applicant's marks is for beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location.  The registrant's mark is for non-alcoholic cocktail mixes.

Determining likelihood of confusion is based on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use.  *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

In this case, the application uses broad wording to describe the beverages, which presumably encompasses all goods of the type described, including registrant's more narrow non-alcoholic cocktail mixes.  *See, e.g.*, *In re Solid State Design Inc.*, 125 USPQ2d 1409, 1412-15 (TTAB 2018); *Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015).  Thus, applicant's and registrant's goods are legally identical.  *See, e.g.*, *In re i.am.symbolic, llc*, 127 USPQ2d 1627, 1629 (TTAB 2018) (citing *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336, 209 USPQ 986, 988 (C.C.P.A. 1981); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014); *Baseball Am. Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d 1844, 1847 n.9 (TTAB 2004)).

### U.S. Registration Number 4890160

#### Similarity of the Marks

The applicant has applied for the mark BASIN BEVERAGES.  The registrant's mark is NEW BASIN DISTILLING COMPANY.   Here, both marks contain the word BASIN.  Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression.  *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom.  Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning*

*Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876, 23 USPQ2d 1698, 1700 (Fed Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because "consumers must first notice th[e] identical lead word"); *see also In re Detroit Athletic Co.*, 903 F.3d 1297, 1303, 128 USPQ2d 1047, 1049 (Fed. Cir. 2018) (finding "the identity of the marks' two initial words is particularly significant because consumers typically notice those words first").

In the registrant's mark the wording DISTILLING COMPANY is the less dominant wording because it describes a feature of the goods. Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks. *In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii).

*Similarity of the Goods*

The applicant's marks is for beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location. The registrant's mark is for liquor. The applicant's goods and services include liquor and therefore, the goods are legally the same.

**U.S. Registration Number 5177835**

*Similarity of the Marks*

The applicant has applied for the mark BASIN BEVERAGES. The registrant's mark is HELIO BASIN BREWING CO. Here, both marks contain the word BASIN.

Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n*, 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

In the registrant's mark the wording BREWING CO is the less dominant wording because it describes a feature of the goods. Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks. *In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii).

*Similarity of the Goods*

The applicant's marks is for beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location. The registrant's mark is for beverages, namely, beer and soda pop. Here, both marks are for beverages.

**U.S. Registration Number 5022765**

*Similarity of the Marks*

The applicant has applied for the mark BASIN BEVERAGES. The registrant's mark is BASIN & RANGE. Here, both marks contain the word BASIN.

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014); *Geigy Chem. Corp. v. Atlas Chem. Indus., Inc.*, 438 F.2d 1005, 1007, 169 USPQ 39, 40 (C.C.P.A. 1971)), *aff'd per curiam* , 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

*Similarity of the Goods*

The applicant's marks is for beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location. The registrant's mark is for distilled spirits. Here, both marks are for beverages that contain alcohol.

Various alcoholic beverages have been shown to be related goods for purposes of a Trademark Act Section 2(d) analysis. *In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004) (holding GASPAR'S ALE for beer and ale likely to be confused with JOSE GASPAR GOLD for tequila); *In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003) (holding RED BULL for tequila likely to be confused with RED BULL for malt liquor); *In re Kysela Pere et Fils Ltd.*, 98 USPQ2d 1261 (TTAB 2011) (holding HB for wine likely to be confused with HB and design for beer); *Somerset Distilling, Inc. v. Speymalt Whiskey Distribs. Ltd.*, 14 USPQ2d 1539 (TTAB 1989) (holding JAS. GORDON and design for scotch whiskey likely to be confused with GORDON'S for distilled gin and vodka); *Schieffelin & Co. v. Molson Cos.*, 9 USPQ2d 2069 (TTAB 1989) (holding BRAS D'OR for brandy likely to be confused with BRADOR for beer); *Bureau Nat'l Interprofessionnel Du Cognac v. Int'l Better Drinks Corp* ., 6 USPQ2d 1610 (TTAB 1988) (holding trademark COLAGNAC for cola flavored liqueur likely to be confused with certification mark COGNAC for brandy).

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

For the above stated reasons the mark is refused due to a likelihood of confusion.

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

**PRIOR PENDING APPLICATIONS – International Class 32**

The filing dates of pending U.S. Application Serial Nos. 90-870224, 88-373488, 88-640188, and 88-614301 precede applicant's filing date. See attached referenced applications. If one or more of the marks in the referenced applications register, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion with the registered mark(s). *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.* Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced applications.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the marks in the referenced applications. Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

If the applicant chooses to respond to the refusal to register, the applicant must also respond to the following issues.

**IDENTIFICATION OF GOODS AND SERVICES**

The wording "including" in the identification of goods is indefinite and must be deleted and replaced with a definite term, such as "namely," "consisting of," "particularly," or "in particular."    *See* 37 C.F.R. §2.32(a)(6); TMEP §§1402.01, 1402.03(a).  The identification must be specific and all-inclusive.  This wording is an open-ended term (e.g., "including" and "such as") that is not acceptable because it fails to identify specific goods.  *See* TMEP §1402.03(a).

Also, the application identifies goods and/or services that are classified in at least eleven classes; however, applicant submitted a fee(s) sufficient for only one class.  In a multiple-class application, a fee for each class is required.  37 C.F.R. §2.86(a)(2), (b)(2); TMEP §§810.01, 1403.01.  For more information about adding classes to an application, see the Multiple-class Application webpage.

Therefore, applicant must either (1) restrict the application to the number of classes covered by the fees already paid, or (2) submit the fees for each additional class.

The following identifications and classifications are suggested:

   Key chains in International Class 14.

   Beverage glassware; mugs in International Class 21.

   Apparel, namely, (specify, e.g., shirts, t-shirts, hats) in International Class 25.

   Tea-based beverages; Coffee based beverages; Kombucha tea in International Class 30.

   Beverages, **namely,** beer, sparkling water, non-alcoholic water-based beverages also containing **(indicate other ingredients included in the water-based beverages, e.g., herbal extracts, flavored syrup, etc.)** in International Class 32.

   Retail store services featuring bicycles in International Class 35.

   Beverages, **namely**, wine, hard seltzer; Hard kombucha tea in International Class 33.

   Rental of offices for co-working in International Class 36.

   Bicycle repair services in International Class 37.

   Beer brewing classes in International Class 41.

   Beverage manufacturing services; bre**wing** services for others in International Class 40

   Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck in International Class 43.

The application identifies goods and/or services in more than one international class; therefore, applicant must satisfy all the requirements below for each international class based on Trademark Act Section 1(b):

   (1)    **List the goods and/or services by their international class number** in consecutive numerical order, starting with the lowest numbered class.

   (2)    **Submit a filing fee for each international class** not covered by the fee(s) already paid (view the USPTO's current fee schedule ). The application identifies goods and/or services that are classified in at least eleven classes; however, applicant submitted a fee(s) sufficient for only one class.  Applicant must either submit the filing fees for the classes not covered by the submitted fees or restrict the application to the number of classes covered by the fees already paid.

*See* 37 C.F.R. §2.86(a); TMEP §§1403.01, 1403.02(c).

For an overview of the requirements for a Section 1(b) multiple-class application and how to satisfy the requirements online using the Trademark

Electronic Application System (TEAS) form, see the Multiple-class Application webpage.


**DISCLAIMER**

Applicant must disclaim the wording "BEVERAGES" because it is merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services. *See* 15 U.S.C. §1052(e)(1); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012); TMEP §§1213, 1213.03(a).

According to the identification of goods and services the mark is for various types of BEVERAGES. Therefore, the wording is descriptive of a feature of the goods and services.

Applicant may respond to this issue by submitting a disclaimer in the following format:

**No claim is made to the exclusive right to use "BEVERAGES" apart from the mark as shown.**

For an overview of disclaimers and instructions on how to provide one using the Trademark Electronic Application System (TEAS), see the Disclaimer webpage.


**How to respond.  Click to file a response to this nonfinal Office action.**


/Shaunia Carlyle/
Examining Attorney
Law Office 110
United States Patent and Trademark Office
571-272-9374
shaunia.carlyle@uspto.gov


## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.**  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.**  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

**Print: Jan 20, 2022**                              **85787580**

**DESIGN MARK**

**Serial Number**
85787580

**Status**
REGISTERED

**Word Mark**
BASIN & RANGE

**Standard Character Mark**
Yes

**Registration Number**
5022765

**Date Registered**
2016/08/16

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Congregation Spirits, LLC LIMITED LIABILITY COMPANY UTAH 530 Colorado
Street Salt Lake City UTAH 84116

**Goods/Services**
Class Status -- ACTIVE.  IC 033.  US  047 049.  G & S: Distilled
Spirits.  First Use: 2016/06/24.  First Use In Commerce: 2016/06/24.

**Filing Date**
2012/11/26

**Examining Attorney**
HARDY, TARAH

**Attorney of Record**
Barry Strike

-1-

Appx044

# BASIN & RANGE

**DESIGN MARK**

**Serial Number**
86304088

**Status**
SECTION 8 & 15-ACCEPTED AND ACKNOWLEDGED

**Word Mark**
NEW BASIN DISTILLING COMPANY

**Standard Character Mark**
Yes

**Registration Number**
4890160

**Date Registered**
2016/01/19

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
New Basin Distilling Company LLC LIMITED LIABILITY COMPANY OREGON 2063
NW Andrews Drive Madras OREGON 97741

**Goods/Services**
Class Status -- ACTIVE.  IC 033.  US  047 049.  G & S: Liquor.  First
Use: 2014/05/25.  First Use In Commerce: 2015/08/25.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DISTILLING COMPANY"
APART FROM THE MARK AS SHOWN.

**Filing Date**
2014/06/09

**Examining Attorney**
FENNESSY, EDWARD

**Attorney of Record**
Alison Hohengarten

-1-

# New Basin Distilling Company

**Print: Jan 20, 2022**                    **86904886**

**DESIGN MARK**

**Serial Number**
86904886

**Status**
REGISTERED

**Word Mark**
HELIO BASIN BREWING CO

**Standard Character Mark**
Yes

**Registration Number**
5177835

**Date Registered**
2017/04/04

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
PHOENICIAN BREWING COMPANY, LLC LIMITED LIABILITY COMPANY ARIZONA 3935
E Thomas Rd Phoenix ARIZONA 85018

**Goods/Services**
Class Status -- ACTIVE.  IC 032.  US  045 046 048.  G & S: Beverages,
namely, beer and soda pop.  First Use: 2016/07/13.  First Use In
Commerce: 2016/07/13.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BREWING CO" APART FROM
THE MARK AS SHOWN.

**Filing Date**
2016/02/11

**Examining Attorney**
MAYES, LAURIE

-1-

# HELIO BASIN BREWING CO

**Print: Jan 20, 2022**                    **87877964**

**DESIGN MARK**

**Serial Number**
87877964

**Status**
REGISTERED

**Word Mark**
ACE BASIN COCKTAIL CO.

**Standard Character Mark**
Yes

**Registration Number**
5608888

**Date Registered**
2018/11/13

**Type of Mark**
TRADEMARK

**Register**
SUPPLEMENTAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
ACE Basin Cocktail Company LIMITED LIABILITY COMPANY SOUTH CAROLINA
352 Twelve Oak Drive Charleston SOUTH CAROLINA 29414

**Goods/Services**
Class Status -- ACTIVE.  IC 032.  US  045 046 048.  G & S:
Non-alcoholic cocktail mixes.  First Use: 2016/10/10.  First Use In
Commerce: 2017/10/09.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COCKTAIL CO." APART
FROM THE MARK AS SHOWN.

**Filing Date**
2018/04/16

**Amended Register Date**
2018/08/17

**Examining Attorney**
FAIRBANKS, RON

-1-

# ACE Basin Cocktail Co.

**Print: Jan 20, 2022**                    **88062450**

**DESIGN MARK**

**Serial Number**
88062450

**Status**
REGISTERED

**Word Mark**
WILD BASIN

**Standard Character Mark**
Yes

**Registration Number**
6014406

**Date Registered**
2020/03/17

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
CANARCHY CRAFT BREWERY COLLECTIVE LLC LIMITED LIABILITY COMPANY
COLORADO 1800 PIKE ROAD LONGMONT COLORADO 80501

**Goods/Services**
Class Status -- ACTIVE.  IC 032.  US  045 046 048.  G & S: Beer.
First Use: 2018/12/00.  First Use In Commerce: 2018/12/00.

**Filing Date**
2018/08/02

**Examining Attorney**
SMITH, CYNTHIA

**Attorney of Record**
Richard Y. Kim

# WILD BASIN

**Print: Jan 20, 2022**                    **88373488**

**DESIGN MARK**

**Serial Number**
88373488

**Status**
FOURTH EXTENSION - GRANTED

**Word Mark**
TURNING BASIN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Buffalo Bayou Distilleries, LLC LIMITED LIABILITY COMPANY TEXAS 5610
Clinton Drive, Building B Houston TEXAS 77020

**Goods/Services**
Class Status -- ACTIVE.  IC 032.  US  045 046 048.  G & S: Beer.

**Goods/Services**
Class Status -- ACTIVE.  IC 033.  US  047 049.  G & S: Wine; alcoholic
beverages except beers; alcoholic beverages, namely, spirits, vodka,
whiskey, gin, bourbon.

**Filing Date**
2019/04/05

**Examining Attorney**
OESTREICHER,SALIMA

**Attorney of Record**
John S. Egbert

# TURNING BASIN

**Print: Jan 20, 2022**                    **88614301**

**DESIGN MARK**

**Serial Number**
88614301

**Status**
THIRD EXTENSION - GRANTED

**Word Mark**
WILD BASIN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
CANarchy Craft Brewery Collective LLC LIMITED LIABILITY COMPANY
COLORADO 1800 Pike Road Longmont COLORADO 80501

**Goods/Services**
Class Status -- ACTIVE.  IC 032.  US  045 046 048.  G & S: Soda pops;
Soft drinks.

**Filing Date**
2019/09/12

**Examining Attorney**
HILLIARD, JESSICA L

**Attorney of Record**
Richard Y. Kim

-1-

# WILD BASIN

**Print: Jan 20, 2022**                    **88640188**

**DESIGN MARK**

**Serial Number**
88640188

**Status**
THIRD EXTENSION - GRANTED

**Word Mark**
TAHOE BASIN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Java Detour NorCal LLC LIMITED LIABILITY COMPANY CALIFORNIA 635
Lakeridge Drive Auburn CALIFORNIA 95603

**Goods/Services**
Class Status -- ACTIVE.   IC 030.   US  046.   G & S: Chai tea; Coffee.

**Filing Date**
2019/10/03

**Examining Attorney**
SALCIDO,JOHN

**Attorney of Record**
Sean Ploen

-1-

# Tahoe Basin

**DESIGN MARK**

**Serial Number**
88805695

**Status**
REGISTERED

**Word Mark**
JEWEL BASIN

**Standard Character Mark**
Yes

**Registration Number**
6429315

**Date Registered**
2021/07/20

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Copperwood Brewing, LLC LIMITED LIABILITY COMPANY MONTANA 409 1st Ave.
E, Ste. B Kalispell MONTANA 59901

**Goods/Services**
Class Status -- ACTIVE.  IC 032.  US  045 046 048.  G & S: Beer.
First Use: 2021/03/15.  First Use In Commerce: 2021/03/15.

**Filing Date**
2020/02/21

**Examining Attorney**
COGAN, BRITTNEY

**Attorney of Record**
Antoinette M. Tease

# JEWEL BASIN

**Print: Jan 20, 2022**                                **90870224**

**DESIGN MARK**

**Serial Number**
90870224

**Status**
NEW APPLICATION - RECORD INITIALIZED NOT ASSIGNED TO EXAMINER

**Word Mark**
JUICE BASIN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
juice basin AKA Basin Bar LLC LIMITED LIABILITY COMPANY NEW JERSEY 805
4th Avenue Asbury Park NEW JERSEY 07712

**Goods/Services**
Class Status -- ACTIVE.  IC 032.  US  045 046 048.  G & S: Aloe vera
juices; Beauty beverages, namely, fruit juices and energy drinks
containing nutritional supplements; Fruit juice beverages; Fruit
juices and fruit drinks; Green vegetable juice beverages; Herbal
juices; Mixed fruit juices; Non-alcoholic beverages containing fruit
juices; Non-alcoholic fruit juice beverages; Vegetable juices;
Vegetable-fruit juices.  First Use: 2010/05/15.  First Use In
Commerce: 2012/05/30.

**Filing Date**
2021/08/06

**Examining Attorney**
UNKNOWN

**-1-**

juice basin

| | |
|---|---|
| **To:** | Amoss, Matthew (FabianNehrbass@patents.gs) |
| **Subject:** | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGES - T21144US (3) |
| **Sent:** | January 25, 2022 12:36:28 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | |

### United States Patent and Trademark Office (USPTO)

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **January 25, 2022** for
### U.S. Trademark Application Serial No. 90703327

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action in order to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action HERE.**  This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS).  Your response must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response period.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

·   **Check the status** of your application **periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

·   **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

·   **Beware of misleading notices sent by private companies about your application.**  Private companies not associated with the USPTO may mail or email you trademark-related offers and notices – most of which require fees.  The USPTO will only email **official USPTO correspondence from the domain "@uspto.gov."**

·   **Hiring a U.S.-licensed attorney.**  If you do not have an attorney and are not required to have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney identified above is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.

PTO- 1957
Approved for use through 11/30/2023. OMB 0651-0050
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Response to Office Action

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 90703327 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 110 |
| **MARK SECTION (current)** | |
| **MARK** | mark |
| **LITERAL ELEMENT** | BASIN BEVERAGES |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **MARK SECTION (proposed)** | |
| **MARK** | BASIN BEVERAGE CO. |
| **LITERAL ELEMENT** | BASIN BEVERAGE CO. |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **ARGUMENT(S)** | |
| Please see attached argument in evidence. | |
| **EVIDENCE SECTION** | |
| **EVIDENCE FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | evi_45309233-202207241800 17124114_._Exhibit_A.pdf |
| **CONVERTED PDF FILE(S) (8 pages)** | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0003.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0004.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0005.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0006.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0007.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0008.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0009.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0010.JPG |
| **ORIGINAL PDF FILE** | evi_45309233-202207241800 17124114_._ExhibitB.pdf |
| **CONVERTED PDF FILE(S)** | |

| | |
|---|---|
| **(36 pages)** | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0011.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0012.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0013.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0014.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0015.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0016.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0017.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0018.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0019.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0020.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0021.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0022.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0023.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0024.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0025.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0026.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0027.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0028.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0029.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0030.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0031.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0032.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0033.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0034.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0035.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0036.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0037.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0038.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0039.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0040.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0041.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0042.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0043.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0044.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0045.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0046.JPG |

| ORIGINAL PDF FILE | evi_45309233-202207241800 17124114_. Exhibit_C.pdf |
|---|---|
| CONVERTED PDF FILE(S)<br>(31 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0047.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0048.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0049.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0050.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0051.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0052.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0053.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0054.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0055.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0056.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0057.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0058.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0059.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0060.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0061.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0062.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0063.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0064.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0065.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0066.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0067.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0068.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0069.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0070.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0071.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0072.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0073.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0074.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0075.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0076.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0077.JPG |
| ORIGINAL PDF FILE | evi_45309233-202207241800 17124114_. Exhibit_D.pdf |
| CONVERTED PDF FILE(S)<br>(3 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0078.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0079.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0080.JPG |

| ORIGINAL PDF FILE | evi_45309233-202207251202 39288280_._Response_to_Office_Action_BASIN_BEVERAG E_CO._2022.07.25-2.pdf |
|---|---|
| CONVERTED PDF FILE(S) (13 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0081.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0082.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0083.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0084.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0085.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0086.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0087.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0088.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0089.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0090.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0091.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0092.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml4\ ROA0093.JPG |
| DESCRIPTION OF EVIDENCE FILE | Argument Exhibit A - Additional registrations with BASIN in name Exhibit B - Unregistered Third party use of trademarks with BASIN in name Exhibit C - Registrations with RIVER in name for G&S: Beer Exhibit D - Search results for applications with G&S: Beer filed since 2010 |

**GOODS AND/OR SERVICES SECTION (033) (current)**

| INTERNATIONAL CLASS | 033 |
|---|---|

| DESCRIPTION |
|---|
| Beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location |

| FILING BASIS | Section 1(b) |
|---|---|

**GOODS AND/OR SERVICES SECTION (033) (proposed)**

| INTERNATIONAL CLASS | 033 |
|---|---|

| TRACKED TEXT DESCRIPTION |
|---|
| ~~Beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha;~~ Beverages, namely, wine, hard seltzer; ~~beverage manufacturing services;~~ Hard kombucha tea; ~~restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location~~ |

| FINAL DESCRIPTION | Beverages, namely, wine, hard seltzer; Hard kombucha tea |
|---|---|
| WEBPAGE URL | None Provided |
| WEBPAGE DATE OF ACCESS | None Provided |
| FILING BASIS | Section 1(b) |

**GOODS AND/OR SERVICES SECTION (032)(class added)**

| INTERNATIONAL CLASS | 032 |
|---|---|
| DESCRIPTION | |
| Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages | |
| WEBPAGE URL | None Provided |
| WEBPAGE DATE OF ACCESS | None Provided |
| FILING BASIS | Section 1(b) |

### GOODS AND/OR SERVICES SECTION (043)(class added)

| INTERNATIONAL CLASS | 043 |
|---|---|
| DESCRIPTION | |
| Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck | |
| WEBPAGE URL | None Provided |
| WEBPAGE DATE OF ACCESS | None Provided |
| FILING BASIS | Section 1(b) |

### GOODS AND/OR SERVICES SECTION (030)(class added)

| INTERNATIONAL CLASS | 030 |
|---|---|
| DESCRIPTION | Tea-based beverages; Coffee based beverages; Kombucha tea |
| WEBPAGE URL | None Provided |
| WEBPAGE DATE OF ACCESS | None Provided |
| FILING BASIS | Section 1(b) |

### ADDITIONAL STATEMENTS SECTION

| DISCLAIMER | No claim is made to the exclusive right to use BEVERAGE CO. apart from the mark as shown. |
|---|---|

### ATTORNEY INFORMATION (current)

| NAME | Fabian Nehrbass |
|---|---|
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C. |
| INTERNAL ADDRESS | SUITE 3290 |
| STREET | 3838 N. CAUSEWAY BLVD. |
| CITY | METAIRIE |
| STATE | Louisiana |
| POSTAL CODE | 70002 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| EMAIL | FabianNehrbass@patents.gs |
| DOCKET/REFERENCE NUMBER | T21144US (3) |

### ATTORNEY INFORMATION (proposed)

| NAME | |
|---|---|

| NAME | Fabian Nehrbass |
|---|---|
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C. |
| INTERNAL ADDRESS | Suite 4310 |
| STREET | 701 Poydras Street |
| CITY | New Orleans |
| STATE | Louisiana |
| POSTAL CODE | 70139 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| PHONE | 504-835-2000 |
| FAX | 504-835-2070 |
| EMAIL | FabianNehrbass@patents.gs |
| DOCKET/REFERENCE NUMBER | T21144US (3) |
| OTHER APPOINTED ATTORNEY | Charles C. Garvey, Gregory C. Smith, Seth M. Nehrbass, Vanessa M. D'Souza, Julia M. FitzPatrick, Mackenzie D. Rodriguez, and Julie R. Chauvin |
| **CORRESPONDENCE INFORMATION (current)** | |
| NAME | FABIAN NEHRBASS |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | FabianNehrbass@patents.gs |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | SNehrbass@gmail.com; Sford@patents.gs; jchauvin@patents.gs |
| DOCKET/REFERENCE NUMBER | T21144US (3) |
| **CORRESPONDENCE INFORMATION (proposed)** | |
| NAME | Fabian Nehrbass |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | FabianNehrbass@patents.gs |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | SNehrbass@gmail.com; Sford@patents.gs; mrodriguez@patents.gs |
| DOCKET/REFERENCE NUMBER | T21144US (3) |
| **PAYMENT SECTION** | |
| APPLICATION FOR REGISTRATION PER CLASS | 350 |
| NUMBER OF CLASSES | 3 |
| TOTAL FEES DUE | 1050 |
| **SIGNATURE SECTION** | |
| DECLARATION SIGNATURE | The undersigned has elected not to submit the signed declaration, believing no supporting declaration is required under the *Trademark Rules of Practice*. The undersigned acknowledges that the USPTO may, upon later review, require a signed declaration. |
| RESPONSE SIGNATURE | /Fabian M. Nehrbass, LA Bar #35264/ |
| SIGNATORY'S NAME | Fabian M. Nehrbass |
| SIGNATORY'S POSITION | Attorney of Record, Louisiana Bar Member |

| | |
|---|---|
| **SIGNATORY'S PHONE NUMBER** | 504-828-6014 |
| **DATE SIGNED** | 07/25/2022 |
| **ROLE OF AUTHORIZED SIGNATORY** | Authorized U.S.-Licensed Attorney |
| **SIGNATURE METHOD** | Signed directly within the form |
| **FILING INFORMATION SECTION** | |
| **SUBMIT DATE** | Mon Jul 25 12:14:42 ET 2022 |
| **TEAS STAMP** | USPTO/ROA-XX.XX.X.XXX-202 20725121442595841-9070332 7-800a295f75fe5fe8131d0fe 9740fa2160e9a7f36f98f142f e9f577e3659ef194-DA-14404 378-20220725120239288280 |

PTO- 1957
Approved for use through 11/30/2023. OMB 0651-0050
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## Response to Office Action

### To the Commissioner for Trademarks:

Application serial no. **90703327** BASIN BEVERAGES(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/90703327/large) has been amended as follows:

#### MARK
**Applicant proposes to amend the mark as follows:**
**Current:** BASIN BEVERAGES(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/90703327/large)
**Proposed (USPTO generated image):** BASIN BEVERAGE CO. (Standard Characters, see mark)
The mark consists of standard characters, without claim to any particular font style, size, or color.

#### ARGUMENT(S)
**In response to the substantive refusal(s), please note the following:**

Please see attached argument in evidence.

#### EVIDENCE
Evidence has been attached: Argument Exhibit A - Additional registrations with BASIN in name Exhibit B - Unregistered Third party use of trademarks with BASIN in name Exhibit C - Registrations with RIVER in name for G&S: Beer Exhibit D - Search results for applications with G&S: Beer filed since 2010
**Original PDF file:**
evi_45309233-202207241800 17124114_._Exhibit_A.pdf
**Converted PDF file(s)** ( 8 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6Evidence-7Evidence-8
**Original PDF file:**
evi_45309233-202207241800 17124114_._ExhibitB.pdf
**Converted PDF file(s)** ( 36 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6
Evidence-7Evidence-8Evidence-9Evidence-10Evidence-11Evidence-12Evidence-13Evidence-14
Evidence-15Evidence-16Evidence-17Evidence-18Evidence-19Evidence-20Evidence-21Evidence-22
Evidence-23Evidence-24Evidence-25Evidence-26Evidence-27Evidence-28Evidence-29Evidence-30
Evidence-31Evidence-32Evidence-33Evidence-34Evidence-35Evidence-36
**Original PDF file:**
evi_45309233-202207241800 17124114_._Exhibit_C.pdf
**Converted PDF file(s)** ( 31 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6
Evidence-7Evidence-8Evidence-9Evidence-10Evidence-11Evidence-12Evidence-13Evidence-14
Evidence-15Evidence-16Evidence-17Evidence-18Evidence-19Evidence-20Evidence-21Evidence-22

Evidence-23Evidence-24Evidence-25Evidence-26Evidence-27Evidence-28Evidence-29Evidence-30Evidence-31
**Original PDF file:**
evi_45309233-202207241800 17124114_._Exhibit_D.pdf
**Converted PDF file(s)** ( 3 pages) Evidence-1Evidence-2Evidence-3
**Original PDF file:**
evi_45309233-202207251202 39288280_._Response_to_Office_Action_BASIN_BEVERAGE_CO._2022.07.25-2.pdf
**Converted PDF file(s)** ( 13 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6
Evidence-7Evidence-8Evidence-9Evidence-10Evidence-11Evidence-12Evidence-13

## CLASSIFICATION AND LISTING OF GOODS/SERVICES

**Applicant proposes to amend the following:**

**Current:**
Class 033 for Beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, keychains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location
**Filing Basis: Section 1(b), Intent to Use:** ***For a trademark or service mark application:*** The applicant believes the applicant is entitled to use the mark in commerce on or in connection with the goods or services specified in the application; the applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date. ***For a collective trademark, collective service mark, collective membership mark, or certification mark application:*** The applicant has a bona fide intention, and is entitled, to exercise legitimate control over the use of the mark in commerce and had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce as of the application filing date. ***For a certification mark application:*** The applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant.

**Proposed:**

**Tracked Text Description:** ~~Beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha~~; Beverages, namely, wine, hard seltzer; beverage manufacturing services; Hard kombucha tea; ~~restaurant and bar services~~; ~~restaurant services~~; ~~bar services~~; ~~wine bar services~~; ~~brewery services, including brewpub taproom services, brewing classes~~; ~~merchandise, including apparel, glassware, mugs, keychains~~; ~~clothing, including shirts~~; ~~t-shirts~~; ~~hats~~; ~~café~~; ~~co-working space services~~; ~~co-working space~~; ~~event venue~~; ~~event services~~; ~~festival services~~; ~~bicycle shop~~; ~~bicycle repair services~~; ~~pop-up restaurant services~~; ~~pop-up restaurants~~; ~~food truck services~~; ~~food truck location~~

Class 033 for Beverages, namely, wine, hard seltzer; Hard kombucha tea
**Filing Basis: Section 1(b), Intent to Use:** ***For a trademark or service mark application:*** The applicant believes the applicant is entitled to use the mark in commerce on or in connection with the goods or services specified in the application; the applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date. ***For a collective trademark, collective service mark, collective membership mark, or certification mark application:*** The applicant has a bona fide intention, and is entitled, to exercise legitimate control over the use of the mark in commerce and had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce as of the application filing date. ***For a certification mark application:*** The applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant.

Webpage URL: None Provided
Webpage Date of Access: None Provided

**Applicant hereby adds the following class of goods/services to the application:**
**New:** Class 032 for Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages
**Filing Basis: Section 1(b), Intent to Use:** ***For a trademark or service mark application:*** The applicant believes the applicant is entitled to use the mark in commerce on or in connection with the goods or services specified in the application; the applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date. ***For a collective trademark, collective service mark, collective membership mark, or certification mark application:*** The applicant has a bona fide intention, and is entitled, to exercise legitimate control over the use of the mark in commerce and had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce as of the application filing date. ***For a certification mark application:*** The applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification

program or of the goods/services that meet the certification standards of the applicant.

Webpage URL: None Provided
Webpage Date of Access: None Provided

**Applicant hereby adds the following class of goods/services to the application:**
**New:** Class 043 for Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck
**Filing Basis: Section 1(b), Intent to Use:** ***For a trademark or service mark application:*** The applicant believes the applicant is entitled to use the mark in commerce on or in connection with the goods or services specified in the application; the applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date. ***For a collective trademark, collective service mark, collective membership mark, or certification mark application:*** The applicant has a bona fide intention, and is entitled, to exercise legitimate control over the use of the mark in commerce and had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce as of the application filing date. ***For a certification mark application:*** The applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant.

Webpage URL: None Provided
Webpage Date of Access: None Provided

**Applicant hereby adds the following class of goods/services to the application:**
**New:** Class 030 for Tea-based beverages; Coffee based beverages; Kombucha tea
**Filing Basis: Section 1(b), Intent to Use:** ***For a trademark or service mark application:*** The applicant believes the applicant is entitled to use the mark in commerce on or in connection with the goods or services specified in the application; the applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date. ***For a collective trademark, collective service mark, collective membership mark, or certification mark application:*** The applicant has a bona fide intention, and is entitled, to exercise legitimate control over the use of the mark in commerce and had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce as of the application filing date. ***For a certification mark application:*** The applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant.

Webpage URL: None Provided
Webpage Date of Access: None Provided

**ADDITIONAL STATEMENTS**
**Disclaimer**
No claim is made to the exclusive right to use BEVERAGE CO. apart from the mark as shown.

The owner's/holder's current attorney information: Fabian Nehrbass. Fabian Nehrbass of GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C., is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

SUITE 3290
3838 N. CAUSEWAY BLVD.
METAIRIE, Louisiana 70002
United States
The docket/reference number is T21144US (3).
    The email address is FabianNehrbass@patents.gs

The owner's/holder's proposed attorney information: Fabian Nehrbass. Other appointed attorneys are Charles C. Garvey, Gregory C. Smith, Seth M. Nehrbass, Vanessa M. D'Souza, Julia M. FitzPatrick, Mackenzie D. Rodriguez, and Julie R. Chauvin. Fabian Nehrbass of GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C., is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, and the attorney(s) is located at

Suite 4310
701 Poydras Street
New Orleans, Louisiana 70139
United States

The docket/reference number is T21144US (3).
    The phone number is 504-835-2000.
    The fax number is 504-835-2070.
    The email address is FabianNehrbass@patents.gs

Fabian Nehrbass submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

**Correspondence Information (current):**
    FABIAN NEHRBASS
    PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): SNehrbass@gmail.com; Sford@patents.gs; jchauvin@patents.gs

The docket/reference number is T21144US (3).

**Correspondence Information (proposed):**
    Fabian Nehrbass
    PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): SNehrbass@gmail.com; Sford@patents.gs; mrodriguez@patents.gs

The docket/reference number is T21144US (3).

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the owner/holder and the owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

**FEE(S)**
Fee(s) in the amount of $1050 is being submitted.

**SIGNATURE(S)**
**Declaration Signature**
The filing Attorney has elected not to submit the signed declaration, believing no supporting declaration is required under the *Trademark Rules of Practice.*
**Response Signature**
Signature: /Fabian M. Nehrbass, LA Bar #35264/     Date: 07/25/2022
Signatory's Name: Fabian M. Nehrbass
Signatory's Position: Attorney of Record, Louisiana Bar Member

Signatory's Phone Number: 504-828-6014 Signature method: Signed directly within the form

The signatory has confirmed that he/she is a U.S.-licensed attorney who is an active member in good standing of the bar of the highest court of a U.S. state (including the District of Columbia and any U.S. Commonwealth or territory); and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S.-licensed attorney not currently associated with his/her company/firm previously represented the owner/holder in this matter: the owner/holder has revoked their power of attorney by a signed revocation or substitute power of attorney with the USPTO; the USPTO has granted that attorney's withdrawal request; the owner/holder has filed a power of attorney appointing him/her in this matter; or the owner's/holder's appointed U.S.-licensed attorney has filed a power of attorney appointing him/her as an associate attorney in this matter.

Mailing Address:   FABIAN NEHRBASS
   GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
   SUITE 3290
   3838 N. CAUSEWAY BLVD.
   METAIRIE, Louisiana 70002
Mailing Address:   Fabian Nehrbass
   GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
   Suite 4310
   701 Poydras Street
   New Orleans, Louisiana 70139

PAYMENT: 90703327
PAYMENT DATE: 07/25/2022

Serial Number: 90703327
Internet Transmission Date: Mon Jul 25 12:14:42 ET 2022
TEAS Stamp: USPTO/ROA-XX.XX.X.XXX-202207251214425958
41-90703327-800a295f75fe5fe8131d0fe9740f
a2160e9a7f36f98f142fe9f577e3659ef194-DA-
14404378-20220725120239288280

# BASIN BEVERAGE CO.

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,746,735**

**Registered June 2, 2015**

**Int. Cl.: 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

KB BREWING, INC. (OREGON CORPORATION), DBA KLAMATH BASIN BREWING COMPANY
1320 MAIN STREET
KLAMATH FALLS, OR 97601

FOR: BEER, ALE, LAGER, STOUT AND PORTER; ROOT BEER, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 2-6-2014; IN COMMERCE 2-6-2014.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "KLAMATH BASIN BREWING EST. 2001", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A CIRCULAR EMBLEM WITH A BOLD INNER CIRCLE AND AN OUTER CIRCLE CONSISTING OF A SERIES OF HASHES WRAPPING AROUND THE BOLD INNER CIRCLE, CONTAINING TWO CROSSED TOOLS, NAMELY AN AXE AND CROSS PEIN HAMMER, THE ENTIRETY OF WHICH IS SURROUNDED BY THE WORDS "KLAMATH BASIN BREWING EST. 2001".

SER. NO. 86-366,012, FILED 8-13-2014.

KRISTIN CARLSON, EXAMINING ATTORNEY



*Michelle K. Lee*
Director of the United States
Patent and Trademark Office

**Exhibit A**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Page: 2 / RN # 4,746,735

**Exhibit A**

# United States of America

## United States Patent and Trademark Office



**Reg. No. 5,246,096**

**Registered Jul. 18, 2017**

**Int. Cl.: 25, 32, 43**

**Service Mark**

**Trademark**

**Principal Register**

Phoenician Brewing Company, LLC (ARIZONA LIMITED LIABILITY COMPANY)
3935 E Thomas Rd
Phoenix, AZ 85018

CLASS 25: Headwear; Shirts

FIRST USE 7-13-2016; IN COMMERCE 7-13-2016

CLASS 32: Beer

FIRST USE 7-13-2016; IN COMMERCE 7-13-2016

CLASS 43: Restaurant and bar services, including restaurant carryout services

FIRST USE 7-13-2016; IN COMMERCE 7-13-2016

The mark consists of a shield with the image of a phoenix with wings extended in the center.
On each side of the wings is the image of a barley branch. Below the image of the phoenix is
the outline of mountains with an outline of building beneath the mountains and has the words
"BREWING CO" beneath along with stylized lines. At the bottom of the shield is the image
of a hop flower. Above the image of the phoenix is the words "HELIO BASIN".

No claim is made to the exclusive right to use the following apart from the mark as shown:
"BREWING CO"

SER. NO. 87-280,089, FILED 12-23-2016
WILLIAM G BRECKENFELD, EXAMINING ATTORNEY

*Joseph Matol*

Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

**Exhibit A**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit A**

# United States of America

## United States Patent and Trademark Office

## Great Basin Coffee Company

**Reg. No. 5,510,241**

**Registered Jul. 03, 2018**

**Int. Cl.: 30**

**Trademark**

**Supplemental Register**

GREAT BASIN COFFEE COMPANY, LLC. (UTAH LIMITED LIABILITY COMPANY)
151 S. Main St.
Springville, UTAH 84663

CLASS 30: Coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee

FIRST USE 4-14-2017; IN COMMERCE 1-1-2018

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-764,676, FILED P.R. 01-22-2018; AM. S.R. 05-17-2018

Director of the United States
Patent and Trademark Office

**Exhibit A**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit A**

# United States of America

## United States Patent and Trademark Office

## BASIN OF ATTRACTION

**Reg. No. 6,019,694**

**Registered Mar. 24, 2020**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

August Schell Brewing Company (MINNESOTA CORPORATION)
1860 Schell Road
New Ulm, MINNESOTA 56073

CLASS 32: Beer; ale

FIRST USE 7-1-2018; IN COMMERCE 7-1-2018

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-046,411, FILED 07-20-2018



Director of the United States
Patent and Trademark Office



**Exhibit A**

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit A**

EXHIBIT B



# CHECK OUT OUR Instagram

**EXHIBIT B**

Follow on Instagram (https://www.instagram.com/loomisbasinbrewingco/)

**Stop in for a pint!**

Friday 3:00-9:00PM



**Find us on tap and in bottle shops throughout California!**

**EXHIBIT B**

3277 Swetzer Road

Loomis, CA 95650

916-259-2739 (tel:9162592739)

CLICK TO VIEW OUR

CALENDAR OF EVENTS (https://loomisbasinbrewing.com/calendar/)

## FOLLOW US

EXHIBIT B

**EXHIBIT B**









ABOUT (/#HOM... ...ION )

CONTACT (/#C...

STORE ... S (/NEW-EVENTS)

# BIG SKY'S CRAFT BREWERY

Beehive Basin Brewery is a new microbrewery located in the Town Center of Big Sky MT, right next to Roxy's Market. We operate a 7 barrel brewing system that has been created specifically for us by our friends at Portland Kettle Works in Portland, Oregon. We also run a small tap room where we invite you to come and taste some of our hand crafted brews. At this time we do not have any food service, but you are welcome to order in from one of Big Sky's many restaurants.

Our small brewing system allows our brewmaster Andy Liedberg to constantly change up the beers we have on tap. Andy has been refining his skill at several different breweries across the country for over a decade. We are excited to finally let Andy realize his dream and start brewing the recipes he has been designing over the years.

Stop by the brewery after a day of fun in Big Sky and grab a pint or fill up a growler. Enjoy the mountain views from our tasting room or watch the brewmaster at work through our brewery viewing window. You can also find our beer on tap at several locations around Big Sky. Hope to see you soon.

**EXHIBIT B**

Cheers.

# OUR BEERS

**Our Staple Beers**

Working Guys Cream Ale 4.8% abv

Green Bridge IPA 6.4% abv

"The Big" Baltic Porter 8.3% abv

50 Caliber Coffee Porter 8% abv

Single hopped Pale Ale 5.4% abv (Check brewery to see what hop we used this time)

Pig and Rooster Imperial IPA Series (Imperial IPA's over 100 ibu's and over 9% abv)

**Rotating Beers**

We have brewed more one off beers than we can remember, but if you stop by the tap room you can expect to find beers such as, Scotch Ale, Saison, Barrel aged beers, session IPA's, Rye beers, ESB, Nitro stouts, Belgian Strong ale and many more.

# WE'RE IN BIG SKY, MT



(https://maps.google.com/maps?ll=45.259842,-111.304971&z=12&t=m&hl=en&gl=US&mapclient=apiv3)

2 of 4                                                                               7/24/2022, 2:18 PM

Beehive Basin Brewery                                     http://www.beehivebasinbrewery.com/

**Beehive Basin Brewery**
245 Towncenter Ave
Big Sky, MT 59716
United States

**Mon - Sun** 12PM - 8pm(Growlers filled till 9pm)

**Phone** (406) 995 7444 (tel:(406) 995 7444)
**Email** casey.folley@beehivebasinbrewery.com
(mailto:casey.folley@beehivebasinbrewery.com)







**EXHIBIT B**

Appx095



We are partnering with Montana Brewery Shop to sell some of our gear online. Follow this link to see what Beehive gear they have available. https://www.mtbreweryshop.com/beehive-basin-brewery (https://www.mtbreweryshop.com/beehive-basin-brewery)

**EXHIBIT B**





Appx098













# On Tap Exclusives in Reno







## Get Brewed with Great Basin

Sign up to receive our newsletter and be the first to know about upcoming events, new

EXHIBIT B





Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Appx107

Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949





EXHIBIT B

Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949





12 Apr 21   View Detailed Check-in

Wade A. is drinking a Big Basin by New Bohemia Brewing Co.

6 Apr 21   View Detailed Check-in

Our Cookie Policy, Terms of Service, and Privacy Policy have been updated. By continuing to browse our site you agree to these updates. For additonal information or feedback, visit help.untappd.com

I AGREE

**EXHIBIT B**

Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Appx118

Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



Big Basin - New Bohemia Brewing Co. - Untappd                    https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949



7/24/2022, 2:20 PM

**Appx120**

# United States of America
## United States Patent and Trademark Office

# RIVER RAINBOW

**Reg. No. 6,428,997**

**Registered Jul. 20, 2021**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Wild West Spirits, LLC  (DELAWARE LIMITED LIABILITY COMPANY)
6065 Hwy 130
Saratoga, WYOMING 82331

CLASS 32: Beer

FIRST USE 7-1-2020; IN COMMERCE 7-1-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-621,051, FILED 09-18-2019



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



**Exhibit C**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America

## United States Patent and Trademark Office

# HAZY RIVER

**Reg. No. 6,330,168**

**Registered Apr. 20, 2021**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

NEW HOLLAND IP, LLC  (MICHIGAN LIMITED LIABILITY COMPANY)
200 Ottawa Avenue, Nw
Grand Rapids, MICHIGAN 49503

CLASS 32: Beer

FIRST USE 1-3-2021; IN COMMERCE 1-3-2021

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "HAZY"

SER. NO. 88-826,645, FILED 03-09-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



**Exhibit C**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America

## United States Patent and Trademark Office

# BIG RIVER

**Reg. No. 5,686,065**

**Registered Feb. 26, 2019**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Big River Breweries, Inc.  (TENNESSEE CORPORATION)
8001 Arista Place
Broomfield, COLORADO 80021

CLASS 32: Beer

FIRST USE 9-6-1993; IN COMMERCE 9-30-2007

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 3581083, 2039664

SER. NO. 88-036,757, FILED 07-13-2018

Director of the United States
Patent and Trademark Office

**Exhibit C**

<div style="border: 1px solid black; padding: 10px;">

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

</div>

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**



# United States of America
## United States Patent and Trademark Office

# FRENCH RIVER

**Reg. No. 5,965,946**

**Registered Jan. 21, 2020**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Wooden Hill Brewing Company, LLC (MINNESOTA LIMITED LIABILITY COMPANY)
7421 Bush Lake Rd.
Edina, MINNESOTA 55439

CLASS 32: Beer

FIRST USE 11-1-2018; IN COMMERCE 11-1-2018

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-502,576, FILED 07-06-2019



Director of the United States
Patent and Trademark Office



**Exhibit C**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**



# United States of America
## United States Patent and Trademark Office

# DOWNRIVER

**Reg. No. 5,957,350**

**Registered Jan. 07, 2020**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Banter's Craft Beverages LLC  (PENNSYLVANIA LIMITED LIABILITY COMPANY)
Po Box 325
Stroudsburg, PENNSYLVANIA 18360

CLASS 32: Beer

FIRST USE 1-2-2019; IN COMMERCE 11-1-2019

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-242,676, FILED 12-27-2018



Director of the United States
Patent and Trademark Office



**Exhibit C**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America

## United States Patent and Trademark Office

# RIVER TRIP

**Reg. No. 5,875,622**

**Registered Oct. 01, 2019**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Allagash Brewing Company  (MAINE CORPORATION)
50 Industrial Way
Portland, MAINE 04103

CLASS 32: Beer

FIRST USE 2-11-2019; IN COMMERCE 2-11-2019

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-125,689, FILED 09-20-2018

Director of the United States
Patent and Trademark Office

**Exhibit C**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America
## United States Patent and Trademark Office

# River Pig

**Reg. No. 5,680,459**

**Registered Feb. 19, 2019**

**Int. Cl.: 21, 25, 32, 43**

**Service Mark**

**Trademark**

**Principal Register**

zEco Holdings LLC  (OREGON LIMITED LIABILITY COMPANY)
529 Nw 13th Ave
Portland, OREGON 97209

CLASS 21: Beer glasses; Drinking glasses

FIRST USE 8-1-2013; IN COMMERCE 3-1-2014

CLASS 25: Caps being headwear; Hats; Hoodies; Sweatshirts; T-shirts; Baseball caps and hats; Graphic T-shirts; Hooded sweatshirts; Sports caps and hats

FIRST USE 8-1-2013; IN COMMERCE 3-1-2014

CLASS 32: Beer

FIRST USE 8-1-2013; IN COMMERCE 3-1-2014

CLASS 43: Bar and restaurant services; Restaurant and bar services

FIRST USE 8-1-2013; IN COMMERCE 3-1-2014

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-026,903, FILED 07-05-2018

Director of the United States
Patent and Trademark Office

**Exhibit C**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America

### United States Patent and Trademark Office

## GOOD RIVER BEER

**Reg. No. 5,180,929**

**Registered Apr. 11, 2017**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Good River Beer, LLC (COLORADO LIMITED LIABILITY COMPANY)
2346 Williams Street
Denver, CO 80205

CLASS 32: Craft beers

FIRST USE 9-11-2015; IN COMMERCE 9-11-2015

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "BEER"

SER. NO. 87-151,921, FILED 08-26-2016
MARY JO ROSSMAN, EXAMINING ATTORNEY

*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

**Exhibit C**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America
## United States Patent and Trademark Office

### BRAIDED RIVER

**Reg. No. 6,125,006**

**Registered Aug. 11, 2020**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Nelson, David (UNITED STATES INDIVIDUAL)
56 Demouy Ave
Mobile, ALABAMA 36606

CLASS 32: Beer

FIRST USE 1-22-2020; IN COMMERCE 1-22-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-717,085, FILED 12-12-2017



Director of the United States
Patent and Trademark Office



**Exhibit C**

---

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America

## United States Patent and Trademark Office

# RIVER BEER

**Reg. No. 5,478,986**

**Registered May 29, 2018**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Josh Hare (UNITED STATES INDIVIDUAL)
P. O. Box 12593
Austin, TEXAS 78711

CLASS 32: Beer

FIRST USE 2-15-2017; IN COMMERCE 2-15-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "BEER"

SER. NO. 87-458,955, FILED 05-22-2017

Director of the United States
Patent and Trademark Office

**Exhibit C**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America

## United States Patent and Trademark Office

# FORE RIVER

**Reg. No. 5,319,089**

**Registered Oct. 24, 2017**

**Int. Cl.: 32**

**Trademark**

**Supplemental Register**

Fore River Brewing Company LLC (MAINE LIMITED LIABILITY COMPANY)
45 Huntress Avenue
South Portland, MAINE 04106

CLASS 32: Beer, ale, lager, stout, porter, shandy

FIRST USE 1-14-2016; IN COMMERCE 1-14-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 87-462,471, FILED P.R. 05-24-2017; AM. S.R. 08-29-2017



Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

**Exhibit C**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America
## United States Patent and Trademark Office

# RIO

**Reg. No. 6,289,532**

**Registered Mar. 09, 2021**

**Int. Cl.: 32**

**Trademark**

**Principal Register**

Cervecería Centro Americana, S.A. (GUATEMALA CORPORATION)
3a. Avenida Norte Final
Finca El Zapote Zona 2
Guatemala City, GUATEMALA 01002

CLASS 32: Beer

FIRST USE 10-22-2020; IN COMMERCE 10-22-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

The English translation of "RIO" in the mark is "river".

SER. NO. 85-473,028, FILED 11-15-2011



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



**Exhibit C**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

**Exhibit C**

# United States of America
### United States Patent and Trademark Office

# NEW RIVER

**Reg. No. 4,316,862**
**Registered Apr. 9, 2013**
**Int. Cl.: 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

M.A. HAGERMAN BREWING COMPANY, L.L.C. (VIRGINIA LIMITED LIABILITY COMPANY)
21730 RED RUM DRIVE, SUITE 142
ASHBURN, VA 20147

FOR: BEER, ALE AND LAGER, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 10-25-1999; IN COMMERCE 10-25-1999.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-703,175, FILED 8-14-2012.

MARIA-VICTORIA SUAREZ, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

**Exhibit C**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

Page: 2 / RN # 4,316,862

**Exhibit C**

# United States of America

### United States Patent and Trademark Office

# GHOST RIVER

**Reg. No. 3,754,607**   ROMA POMODORI, INC. (TENNESSEE CORPORATION)
Registered Mar. 2, 2010   827 SOUTH MAIN
MEMPHIS, TN 38106

**Int. Cl.: 32**   FOR: BEER, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 7-22-2008; IN COMMERCE 7-22-2008.

**TRADEMARK**
**PRINCIPAL REGISTER**   THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-789,059, FILED 7-24-2009.

MARK SPARACINO, EXAMINING ATTORNEY



*Director of the United States Patent and Trademark Office*

**Exhibit C**

# United States of America

### United States Patent and Trademark Office

# RIO CLARO

**Reg. No. 4,577,593**

**Registered July 29, 2014**

**Int. Cl.: 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

G.K. SKAGGS, INC. (NEVADA CORPORATION)
218 ELKS POINT RD., SUITE 207
ZEPHYR COVE, NV 89448

FOR: BEER; BEER, ALE AND LAGER; BEERS; BREWED MALT-BASED ALCOHOLIC BEVERAGE IN THE NATURE OF A BEER; PALE BEER, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 2-6-2000; IN COMMERCE 5-15-2000.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

THE ENGLISH TRANSLATION OF "RIO CLARO" IN THE MARK IS "RIVER CLEAR".

SN 86-081,053, FILED 10-2-2013.

DAYNA BROWNE, EXAMINING ATTORNEY



*Michelle K. Lee*
**Deputy Director of the United States
Patent and Trademark Office**

**Exhibit C**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

Page: 2 / RN # 4,577,593

**Exhibit C**

# United States of America

### United States Patent and Trademark Office

# RIO BRAVO

**Reg. No. 4,998,245**

**Registered July 12, 2016**

**Int. Cl.: 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

MODELO MKT DE MÉXICO, S. DE R.L. DE C.V. (MEXICO LIMITED LIABILITY COMPANY)
LAGO ALBERTO NO. 156
COLONIA ANÁHUAC
DISTRITO FEDERAL, MEXICO 11320

FOR: BEER, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 9-6-2013; IN COMMERCE 9-6-2013.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

THE ENGLISH TRANSLATION OF "RIO BRAVO" IN THE MARK IS "COURAGEOUS RIVER," "ROUGH RIVER," OR "DAUNTLESS RIVER".

SER. NO. 86-848,162, FILED 12-14-2015.

IRA J. GOODSAID, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

**Exhibit C**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office
(USPTO). The time periods for filing are based on the U.S. registration date (not the international registration
date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to
those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international
registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the
underlying international registration at the International Bureau of the World Intellectual Property Organization,
under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated
from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal
forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark
owners/holders who authorize e-mail communication and maintain a current e-mail address with the
USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark
Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms
available at** http://www.uspto.gov.

Page: 2 / RN # 4,998,245

**Exhibit C**

2/3/22, 4:16 PM                                    Record List Display


**United States Patent and Trademark Office**
Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Thu Feb 3 03:47:21 EST 2022*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | PREV LIST | NEXT LIST | IMAGE LIST | BOTTOM | HELP

Logout *Please logout when you are done to release system resources allocated for you.*

Start | List At: [         ] OR Jump to record: [         ]     **43583 Records(s) found (This page: 1 ~ 100)**

Refine Search ("G & S: Beer")[GS] and `FD > "20100000"    Submit
Current Search: S14: **("G & S: Beer")[GS] and `FD > "20100000"** docs: 43583 occ: 87622

Export displayed results (1 ~ 100) .csv

| | Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead | Class(es) |
|---|---|---|---|---|---|---|
| 1 | 97245585 | | BARN BREW CO. EST. 2021 | TSDR | LIVE | |
| 2 | 97244382 | | TROV | TSDR | LIVE | |
| 3 | 97244365 | | TORNTL | TSDR | LIVE | |
| 4 | 97243920 | | 1% FOR OUR HOME | TSDR | LIVE | |
| 5 | 97236718 | | | TSDR | LIVE | |
| 6 | 97224554 | | PATRIA Y VIDA | TSDR | LIVE | |
| 7 | 97161616 | | SOUTHERN PINES SPIRITS | TSDR | LIVE | |
| 8 | 97119074 | | NATURE CLEAR | TSDR | LIVE | |
| 9 | 97118959 | | DMX | TSDR | LIVE | |
| 10 | 97057907 | | | TSDR | LIVE | |
| 11 | 97244919 | | BEACHCREST BREWING COMPANY | TSDR | LIVE | |
| 12 | 97244711 | | CUTLER'S | TSDR | LIVE | |
| 13 | 97244643 | | DUR PIG | TSDR | LIVE | |
| 14 | 97244010 | | COLORFUL BEVERAGE | TSDR | LIVE | |
| 15 | 97244006 | | BROKEN CLOCK BREWING COOPERATIVE | TSDR | LIVE | |
| 16 | 97243470 | | BUD LIGHT NEXT | TSDR | LIVE | |
| 17 | 97242658 | | FRACTURE BREWING | TSDR | LIVE | |
| 18 | 97242516 | | | TSDR | LIVE | |
| 19 | 97242282 | | HARDYWOOD PARK CRAFT BREWERY BREW WITH PURPOSE EST. 2011 RICHMOND, VIRGINIA | TSDR | LIVE | |
| 20 | 97241524 | | TESLYAR | TSDR | LIVE | |
| 21 | 97240970 | | PLANTAG | TSDR | LIVE | |
| 22 | 97240966 | | # | TSDR | LIVE | |
| 23 | 97240961 | | | TSDR | LIVE | |
| 24 | 97159265 | | MOTTO: THIS WE'LL DEFEND | TSDR | LIVE | |
| 25 | 97151268 | | TRUE LIME LYTE | TSDR | LIVE | |

**Exhibit D**

Record List Display

| 26 | 97086735 | | HELLES YEAH | TSDR | LIVE | |
| 27 | 97047649 | | BELLA AMARI | TSDR | LIVE | |
| 28 | 97015142 | | | TSDR | LIVE | |
| 29 | 97008333 | | ALTA | TSDR | LIVE | |
| 30 | 97240881 | | FARMERS LAGER | TSDR | LIVE | |
| 31 | 97240878 | | HAZE FOR HORSES | TSDR | LIVE | |
| 32 | 97240277 | | PETER'S BIERGARTEN | TSDR | LIVE | |
| 33 | 97239425 | | FRESH STICKY NUGS | TSDR | LIVE | |
| 34 | 97019478 | | KIRIN LIGHT | TSDR | LIVE | |
| 35 | 97237659 | | HECK | TSDR | LIVE | |
| 36 | 97237404 | | TWIN LIGHTS BREWING EST. 2020 | TSDR | LIVE | |
| 37 | 97237267 | | GSNOWLOTUS | TSDR | LIVE | |
| 38 | 97237052 | | ARROWSMITH | TSDR | LIVE | |
| 39 | 97237033 | | SMASH FACTOR | TSDR | LIVE | |
| 40 | 97236642 | | MANACAS | TSDR | LIVE | |
| 41 | 97235522 | | THE BRIGHT SIDE OF 13 | TSDR | LIVE | |
| 42 | 97235433 | | MAGIC 13 BREWING CO. | TSDR | LIVE | |
| 43 | 97234961 | | VEDITZ AND COMPANY BREWING | TSDR | LIVE | |
| 44 | 97233289 | | IRISH MEXICAN BREWING COMPANY | TSDR | LIVE | |
| 45 | 97229642 | | KATRINA BREWING CO. | TSDR | LIVE | |
| 46 | 97228974 | | CERVECERÍA CIELITO LINDO CERVEZA MEXICANA INDEPENDIENTE BOURBON BARREL IMPERIAL STOUT | TSDR | LIVE | |
| 47 | 97235129 | | BRUBEL | TSDR | LIVE | |
| 48 | 97234312 | | BEERSONA | TSDR | LIVE | |
| 49 | 97234209 | | DISCOVERY IPA | TSDR | LIVE | |
| 50 | 97232345 | | PISTO P | TSDR | LIVE | |
| 51 | 97232318 | | SOUNDSCAPE BREWING COMPANY | TSDR | LIVE | |
| 52 | 97231571 | | COLER | TSDR | LIVE | |
| 53 | 97230786 | | STARTER FLUID | TSDR | LIVE | |
| 54 | 97229299 | | CERVECERÍA CIELITO LINDO CERVEZA MEXICANA INDEPENDIENTE VAINILLA CAFÉ FUGAZ IMPERIAL STOUT | TSDR | LIVE | |
| 55 | 97227806 | | JAILBREAK | TSDR | LIVE | |
| 56 | 97220764 | | AMON AMARTH | TSDR | LIVE | |
| 57 | 97220631 | | KOKO'S BAVARIAN | TSDR | LIVE | |
| 58 | 97191225 | | BUMBLE BREW TAKE THE FIRST BITE BAR BISTRO NYC | TSDR | LIVE | |
| 59 | 97191223 | | | TSDR | LIVE | |
| 60 | 97191213 | | BUMBLE BREW TAKE THE FIRST BITE CAFE WINE BAR NYC | TSDR | LIVE | |
| 61 | 97234037 | | | TSDR | LIVE | |
| 62 | 97232920 | | MOMOGROW | TSDR | LIVE | |
| 63 | 97232279 | | FUNKY JUDA | TSDR | LIVE | |
| 64 | 97231753 | | LOUD AS HOPE | TSDR | LIVE | |
| 65 | 97231719 | | SUN FOR MILES | TSDR | LIVE | |
| 66 | 97231481 | | 6-4-3 | TSDR | LIVE | |
| 67 | 97231476 | | HAZE AT THE PARK | TSDR | LIVE | |
| 68 | 97231473 | | COLER | TSDR | LIVE | |
| 69 | 97231426 | | MAHUANG | TSDR | LIVE | |
| 70 | 97231383 | | GERTRUDE | TSDR | LIVE | |

**Exhibit D**

2/3

2/3/22, 4:16 PM                                    Record List Display

| 71 | 97231374 | | SCHLACHTFEST | TSDR | LIVE | |
|---|---|---|---|---|---|---|
| 72 | 97231373 | | COLER MOUNTAIN BIKE PRESERVE | TSDR | LIVE | |
| 73 | 97231370 | | LILLY EBERHARD | TSDR | LIVE | |
| 74 | 97230988 | | SAD GIRLS BAR | TSDR | LIVE | |
| 75 | 97229068 | | CERVECERÍA CIELITO LINDO CERVEZA MEXICANA INDEPENDIENTE DIRTY CHAI LATTE IMPERIAL STOUT | TSDR | LIVE | |
| 76 | 97227416 | | CERVEZA MASTER PRIME | TSDR | LIVE | |
| 77 | 97008449 | | AMERICAN ACE | TSDR | LIVE | |
| 78 | 97229270 | | CERVECERÍA CIELITO LINDO CERVEZA MEXICANA INDEPENDIENTE JERICALLA IMPERIAL STOUT | TSDR | LIVE | |
| 79 | 97228990 | | PARROTPHRASE | TSDR | LIVE | |
| 80 | 97228966 | | DANK DUST | TSDR | LIVE | |
| 81 | 97228903 | | BB | TSDR | LIVE | |
| 82 | 97227502 | | CERVEZA MASTER PRIME | TSDR | LIVE | |
| 83 | 97227138 | | ALWAYS | TSDR | LIVE | |
| 84 | 97227062 | | FRIOLIMA | TSDR | LIVE | |
| 85 | 97227032 | | RAD AF | TSDR | LIVE | |
| 86 | 97227022 | | NHKRTE | TSDR | LIVE | |
| 87 | 97226716 | | FOUNDERS MAS AGAVE | TSDR | LIVE | |
| 88 | 97226659 | | FRIDAY BEERS | TSDR | LIVE | |
| 89 | 97209090 | | KINDERHILL | TSDR | LIVE | |
| 90 | 97151738 | | DESERT TRIP | TSDR | LIVE | |
| 91 | 97148881 | | CALICOPIA | TSDR | LIVE | |
| 92 | 97125275 | | ZACCATECAS | TSDR | LIVE | |
| 93 | 97021483 | | LONGLINER | TSDR | LIVE | |
| 94 | 97018654 | | PBC PERRIN BREWING COMPANY | TSDR | LIVE | |
| 95 | 97018653 | | PERRIN BREWING COMPANY | TSDR | LIVE | |
| 96 | 97017257 | | BEER THAT WORKS | TSDR | LIVE | |
| 97 | 97226128 | | DRAYHORSE | TSDR | LIVE | |
| 98 | 97225869 | | STRAWBERRY SHORES | TSDR | LIVE | |
| 99 | 97225866 | | CORONADO BEVERAGE COMPANY | TSDR | LIVE | |
| 100 | 97225827 | | OLLIGEY | TSDR | LIVE | |

Export displayed results (1 ~ 100)  [ .CSV ]

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | PREV LIST | NEXT LIST | IMAGE LIST | TOP | HELP |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY |

**Exhibit D**

3/3

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

**LIKELIHOOD OF CONFUSION RESPONSE**

**A. Introduction - the Refusal**

Applicant's applied for mark is "BASIN BEVERAGE CO.". Applicant has amended its originally filed mark of BASIN BEVERAGES to BASIN BEVERAGE CO. and respectfully submits that such a change does not constitute a material alteration of the mark. As set forth in TMEP 1213.03(d), words or abbreviations which designate the legal character of an entity (e.g., Corporation, Corp, Co., Inc., Ltd., etc.) must be disclaimed because an entity designation has no source-indicating capacity.

Applicant has amended its goods and services to claim those set forth as suggested in classes 30, 32, 33, and 43 (Applicant did however not indicate other ingredients included in the non-alcoholic water-based beverages in class 32 as Applicant respectfully submits that such a description (non-alcoholic water-based beverages) is sufficient as set forth in the ID manual - *see* Term ID 032-365).

The Nonfinal Office Action refused registration due to an alleged likelihood of confusion with the marks in U.S. Registration Nos. 6429315 (JEWEL BASIN), 6014406 (WILD BASIN), 5608888 (ACE BASIN COCKTAIL CO.), 4890160 (NEW BASIN DISTILLING COMPANY), 5177835 (HELIO BASIN BREWING CO.), and 5022765 (BASIN & RANGE). The Nonfinal Office Action also asserts that pending U.S. Application Serial Nos. 90-870224 (JUICE BASIN), 88-373488 (TURNING BASIN), 88-640188 (Tahoe Basin) (now registered), and 88-614301 (WILD BASIN) may serve as a basis to refuse registration should any of those marks register. Each of the aforementioned marks are set forth below (and their registrations are submitted with this response).

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) *Status* | Owner |
|------|------|------|------|------|
| WILD BASIN | 6014406 | Beer | Mar. 17, 2020 | CANARCHY CRAFT BREWERY COLLECTIVE LLC |

1

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) Status | Owner |
|---|---|---|---|---|
| JEWEL BASIN | 6429315 | Beer | Jul. 20, 2021 | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO. | 5608888 | Non-alcoholic cocktail mixes | Nov. 13, 2018 | ACE Basin Cocktail Company |
| NEW BASIN DISTILLING COMPANY | 4890160 | Liquor | Jan. 19, 2016 | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO. | 5177835 | Beverages, namely, beer and soda pop | Apr. 4, 2017 | PHOENICIAN BREWING COMPANY, LLC |
| BASIN & RANGE | 5022765 | Distilled Spirits | Aug. 16, 2016 | Congregation Spirits, LLC |
| JUICE BASIN[1] | 90-870224 | Aloe vera juices; Beauty beverages, namely, fruit juices and energy drinks containing nutritional supplements; Fruit juice beverages; Fruit juices and fruit drinks; Green vegetable juice beverages; Herbal juices; Mixed fruit juices; Non-alcoholic beverages containing fruit juices; Non-alcoholic fruit juice beverages; Vegetable juices; Vegetable-fruit juices | (Aug. 6, 2021) *Awaiting examination* | juice basin AKA Basin Bar LLC |
| TURNING BASIN | 88-373488 | Beer; Wine; alcoholic beverages except | (Apr. 5, 2019) | Buffalo Bayou Distilleries, LLC |

---

[1] Applicant respectfully asserts that JUICE BASIN was filed after its mark and therefore should not be used in support of any refusal.

2

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) Status | Owner |
|------|------|------|------|------|
| | | beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon | *Notice of Allowance Issued* | |
| Tahoe Basin | 6760872 /88-640188 | Chai tea; Coffee | (Oct. 3, 2019) *Registration Issued* | Java Detour NorCal LLC |
| WILD BASIN | 88-614301 | Soda pops; Soft drinks | (Sep. 12, 2019) *Notice of Allowance Issued* | CANarchy Craft Brewery Collective LLC |

In refusing registration, the Office Action relies upon the fact that each of the 10 cited registrations/applications possesses the term "BASIN", as does the applied for mark. The majority of the marks cited against Applicant's mark BASIN BEVERAGE CO. have been registered or seek registration in beer, some other alcoholic drink, or some other type of beverage. However, even were each and every one of the above cited registrations in the same goods class as Applicant, i.e. beer, registration refusal would still not be proper.

**B. Law & Argument**

Applicant respectfully disagrees that any likelihood of confusion exists, because (1): Applicant's  BASIN BEVERAGE CO. mark and the cited marks are sufficiently dissimilar; and (2) the extensive use of BASIN by third parties demonstrates the weakness of the term BASIN in trademarks, in similar goods and services.

    1.  Applicant's Mark is Sufficiently Dissimilar To The Cited Marks

The Office Action relies upon the fact that each of the 10 cited registrations/applications possesses the term "BASIN". However, the Office Action fails to give proper weight to the additional terms in the cited registrations and applications.

As noted in *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), "[t]he Board has often held that it is the first part of a mark which is most likely to be impressed upon the mind of the

consumer and remembered. *See e.g., Presto Prod. Inc. v. Nice-Pak Prod., Inc.,* 9 USPQ2d 1895, 1897 (TTAB 1988)." With respect to the present refusal, each of the marks with goods of "beer" has another word or term prior to BASIN (JEWEL BASIN, WILD BASIN, TURNING BASIN, HELIO BASIN BREWING CO.). The same is true for all but one of the remaining cited marks (BASIN & RANGE), which although beginning with BASIN, emphasizes the second term RANGE as much as BASIN. Applicant submits that once proper consideration is given to the entirety of the marks, especially in light of the fact that the additional terms serve as the dominant portions of such marks, there is sufficient dissimilarity between the marks so as to not find any likelihood of confusion. However, even if the dominant portion of each mark was regarded as the term plus BASIN, the additional terms still result in sufficient dissimilarity.

In *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), (not precedent), the Trademark Trial and Appeal Board reversed the refusal to register Applicant's design mark for CANNONBALL CREEK BREWING COMPANY GOLDEN COLORADO (BREWING COMPANY GOLDEN, COLORADO disclaimed) for "beer" under  Section 2(d) based on an alleged likelihood of confusion with the mark CANNONBALL DOUBLE IPA (DOUBLE IPA disclaimed) for "ale; beer; brewed malt-based alcoholic beverage in the nature of beer."

In explaining its decision, the TTAB emphasized the importance of the additional term, noting that it created a different commercial impression in the marks:

> In view of the foregoing, we find that the dominant portion of Applicant's mark is the wording CANNONBALL CREEK and that the dominant element of the cited mark is the term CANNONBALL.
>
> In terms of connotation and commercial impression, however, we find that dominant portions of the marks at issue to be quite dissimilar. The circumstances of this case are very similar, if not identical, to those in *Champagne Louis Roederer S.A. v. Delicato Vineyards*, 148 F.3d 1373, 47 USPQ2d 1459 (Fed. Cir. 1998). In that case, the Federal Circuit affirmed the Board's holding that the second word in applicant's mark CRYSTAL CREEK served to create a totally different commercial impression from the one created by opposer's mark CRISTAL when the marks were contemporaneously used on wine.
>
> In the present case as in *Champagne Louis*, the dominant portion of Applicant's mark consists of two words, with the first word being identical to the dominant element of the cited mark. Put quite simply, we find that the presence of the word CREEK in Applicant's mark, like the presence of CREEK in the

4

applicant's mark in *Champagne Louis*, causes the mark to be dissimilar from the cited mark in meaning and overall commercial impression.

*In re Hutchinson and Stengl* , Serial No. 86809909, (pp. 8-9)

Similarly, in *Hi Wines Ltd. V. Hi Degree Tequila, LLC*, Opposition No. 91251181, (2021) (not precedent) the TTAB found that the Applicant's HI DEGREE mark for was sufficiently dissimilar from the Opposer's mark HI! so that confusion was unlikely. The Board found this even though the goods were "in part, legally identical, and the channels of trade and purchasers overlap[ped]." *Id.* at p. 34. In evaluating the similarity of the marks, the Board found that the marks differed significantly in appearance and sound by virtue of the additional word DEGREE in Applicant's mark. *Id.* at p. 31.

Applicant's mark of BASIN BEVERAGE CO. shares the term BASIN with the third party marks. However, it also has BEVERAGE CO. as part of its mark. Much like CANNONBALL and CANNONBALL CREEK, HI! and HI DEGREE, and CRYSTAL CREEK and CRISTAL, Applicant's mark of BASIN BEVERAGE CO. is sufficiently dissimilar with the marks cited against it due to the additional words in the marks. Such additional words lead the marks to be significantly different in both appearance and sound, and thus, commercial impression.

### 2. Extensive Third-Party Usage Precludes a Finding of a Likelihood of Confusion

Furthermore, the extensive use of the term BASIN by third parties reveals there would be no confusion between Applicant's applied for BASIN BEVERAGE CO. mark and the cited marks. Due to the third-party usage, consumers would have to look at the entire mark of any mark which contains the term "BASIN" in order to determine the source of the goods or services. Accordingly, consumers would not be confused simply because two marks contain the term "BASIN". Consumers would have to appreciate minute differences between any marks containing the term "BASIN".

### a. Additional Usage of "BASIN" by Others

In addition to the cited registrations, Applicant further submits the following four marks as additional evidence of widespread third-party usage of the term "BASIN". Notably, of the total 14 cited registrations and applications, all but two of the marks (HELIO BASIN BREWING CO. wordmark and design mark) have different owners. That is, any time a consumer sees a mark

5

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

including "BASIN," the consumer must evaluate the entirety of the mark and cannot believe that

all the goods sold under marks including the term "BASIN" derive from the same source.

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/(Filing Date) | Owner |
|---|---|---|---|---|
|  | 4746735 | Beer, ale, lager, stout and porter | June 2, 2015 | KB Brewing, Inc. DBA Klamath Basin Brewing Company |
|  | 5246096 | Headwear; shirts Beer | July 18, 2017 | Phoenician Brewing Company, LLC |
| GREAT BASIN COFFEE COMPANY | 5510241 | Coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee | July 3, 2018 | GREAT BASIN COFFEE COMPANY, LLC |
| BASIN OF ATTRACTION | 6019694 | Beer; ale | March 24, 2020 | August Schell Brewing Company |

6

Copies of such registrations are attached as Exhibit A. A quick internet search reveals further use of "BASIN" as part of a trademark used with the sale of beer. Such unregistered, third-party usage of "BASIN" with beer further demonstrates why consumers must appreciate minute differences between marks using the term "BASIN". For example, users of non-registered marks are "Loomis Basin Brewing Company" (since 2010 according to website: https://loomisbasinbrewing.com/home-0/); "Great Basin Brewing Company" (since 1993 according to website: https://www.greatbasinbrewingco.com/beer); "Beehive Basin Brewery" (http://www.beehivebasinbrewery.com/); and "Big Basin" by "New Bohemia Brewing Co." https://untappd.com/b/new-bohemia-brewing-co-big-basin/3976949. Copies of such usage is attached as Exhibit B (print screens followed by screenshots, all accessed July 24, 2022).

> b. *The "BASIN" Portion of the Cited Marks is Entitled To A Narrow Scope of Protection*

The "BASIN" portion of each of the cited marks is weak and entitled to a narrow scope of protection due to the extensive third-party use of "BASIN" in other marks. Because of such third-party use, consumers will look to minute differences between any mark containing "BASIN" to distinguish between the marks, the marks are weak (with respect to their usage of "BASIN") and simply possessing the term "BASIN" in a mark, even with the same goods, should not serve as a basis for refusal of Applicant's mark.

As explained by the Federal Circuit,

> "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark."*Juice Generation,*794 F.3d at 1338, 2015 WL 4400033, at *3. "The weaker an opposer's mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection." *Id.; see also Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,*396 F.3d 1369, 1373 (Fed.Cir.2005) ("Evidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.").

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1373 (Fed. Cir. 2015).

In *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334 (Fed. Cir. 2015), the Federal Circuit addressed whether the mark "PEACE LOVE AND JUICE" and a design for use

7

with juice bar services was likely to cause confusion with opposer's marks, all which contained the phrase "PEACE & LOVE" for restaurant services. *Id.* at 1336. Remanding for further proceedings, the Federal Circuit held that the Board did not adequately assess the weakness of the "PEACE & LOVE" marks and did not properly consider the three-word combination of the applicant's mark "PEACE LOVE AND JUICE" as a whole in comparing it to the two-word combinations in the opposer's marks.

In its analysis, the Federal Circuit found that the applicant's evidence of third-party uses was "powerful on its face." *Id.* at 1339. The Federal Circuit explained:

> In addition, "[a] real evidentiary value of third party *registrations* per se is to show the sense in which ... a mark is used in ordinary parlance." 2 McCarthy on Trademarks and Unfair Competition § 11:90 (4th ed.2015) (emphasis added). "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak."

*Id.* The Federal Circuit found that the Board failed to give adequate consideration to the strength or weakness of opposer's marks in light of the third-party use and registrations and that the Board erred when it stated "PEACE LOVE" is the dominant portion of "PEACE LOVE AND JUICE" and compared to "PEACE & LOVE" is virtually identical, that the addition of a disclaimed word "JUICE" does not distinguish the applicant's mark from the opposer's marks. *Id.* at 1340-1341. Rejecting such an analysis as inadequate, the Board could afford more or less weight to particular components of a mark for appropriate reasons, but it was still required to view the mark as a whole. *Id.* The Federal Circuit explained:

> But the Board did not set forth an analysis showing that it avoided the error of giving no significance to the term, which is impermissible notwithstanding that the term is generic and disclaimed. See *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 851 (Fed.Cir.1992) (Board erred by giving no weight to generic term); see also Shen Mfg. Co. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1243 (Fed.Cir.2004) ("The disclaimed elements of a mark, however, are relevant to the assessment of similarity. This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases have been disclaimed." (citation omitted)); Nat'l Data Corp., 753 F.2d at 1059 ("The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion. The public is unaware

8

of what words have been disclaimed during prosecution of the trademark application at the PTO." (footnote omitted)).

*Id.* at 1341. The Federal Circuit remanded to the Board to take consideration of the disclaimed term as well as the evidence of third-party use. After remand, the mark was ultimately registered (see U.S. Reg. No. 4923032 for PEACE LOVE AND JUICE and design).

Similarly, in *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363 (Fed. Cir. 2015), the Federal Circuit reversed the Trademark Trial and Appeal Board's finding that there was a likelihood of confusion between applicant's mark of 🐾 and opposer's mark of **KELME** 🐾 (U.S. Trademark Application Serial No. 77/823,794 and U.S. Reg. No. 1,856,808). In arriving at this conclusion, the Federal Circuit relied on the dissimilarity of the marks and the many third-party marks incorporating paw prints, stating:

> We agree with Jack Wolfskin that the Board erred in its consideration of this evidence. Jack Wolfskin presented extensive evidence of third-party registrations depicting paw prints and evidence of these marks being used in internet commerce for clothing. The Board too quickly dismissed the significance of this evidence. As we recently explained in Juice Generation, such extensive evidence of third-party use and registrations is "powerful on its face," even where the specific extent and impact of the usage has not been established. 794 F.3d at 1339, 2015 WL 4400033, at *4 (detailing the extensive use of marks used in connection with the food service industry that incorporate the words "Peace" and "Love"). For example, evidence of thirdparty registrations is relevant to "show the sense in which a mark is used in ordinary parlance," id. at 1339, 2015 WL 4400033 at *4 ; that is, some segment that is common to both parties' marks may have "a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak," id. In addition, **evidence of third-party use of similar marks on similar goods "can show that customers have been educated to distinguish between different marks on the basis of minute distinctions**." Id. at 1338, 2015 WL 4400033 at *3 (internal quotation marks omitted). In this case, Jack Wolfskin's evidence demonstrates the ubiquitous use of paw prints on clothing as source identifiers. Given the volume of evidence in the record, consumers are conditioned to look for differences between paw designs and additional indicia of origin to determine the source of a given product. **Jack Wolfskin's extensive evidence of third-party uses and registrations of paw prints indicates that consumers are not as likely confused by different, albeit similar looking, paw prints.** The Board's conclusion that this factor was neutral is not supported by substantial evidence.

9

*Id.* at 1374 (emphasis added).

In the same way that consumers are not likely to be confused by similar paw prints due to the extensive evidence of third-party use and registrations of paw prints, consumers of beer and other beverages are not likely to be confused as to the source of the good simply because two marks include the term "BASIN." In such a crowded area with similar marks, consumers are trained to distinguish between the marks based on "minute distinctions."

In a recent Federal Circuit decision, *Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211 (Fed. Cir. May 24, 2021), the Federal Circuit found there was no likelihood of confusion between the opposer's various INDUSTRY marks and the applicant's BLUE INDUSTRY mark. Addressing the similarity or dissimilarity of the marks, the Federal Circuit agreed with the Board that BLUE, the lead term in the applicant's mark BLUE INDUSTRY, made it so that the applicant's mark BLUE INDUSTRY did not bear a striking resemblance in appearance, sound, meaning or commercial impression to any of the pleaded (INDUSTRY) marks of opposer. *Id.* at *7-9.

The Federal Circuit again emphasized the importance of third-party use, stating:

"[E]vidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015). This court has held that, "The purpose of a defendant introducing third-party uses is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions." *Omaha Steaks Int'l*, 908 F.3d at 1324 (quoting *Palm Bay Imps.*, 396 F.3d at 1374) (internal quotation marks omitted). "Third[-]party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation*, 794 F.3d at 1339. **"The weaker an opposer's mark, the closer an applicant's mark can come without causing likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection**." *Id.* at 1338 (quoting *Palm Bay Imps.*, 396 F.3d 1373). "[E]xtensive evidence of third-party use and registrations is 'powerful on its face,' even where the specific extent and impact of the usage has not been established." *JackWolfskin Ausrustung Fur Draussen GmbH & Co. KGaA v. New Millenium Sports, S.L.U.*, 797 F.3d 1363, 1374 (Fed. Cir. 2015) (quoting *Juice Generation*, 794 F.3d at 1339).

10

*Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211, at \*9-10 (Fed. Cir. May 24, 2021) (emphasis added). The Board found that "numerous" third parties had registered or used INDUSTRY formative marks in connection with clothing and thus, INDUSTRY (or the plural thereof) is "'both conceptionally and commercially weak' and therefore **the scope of the marks' protection is limited.**" *Id.* at \*10 (emphasis added). The Board found that due to the third-party registrations and use "'consumers are conditioned to look for differences between INDUSTRY formative marks to determine the source of a given product and are therefore less likely to be confused.'" *Id.* The Federal Circuit likewise found that the extensive third party registrations and use weighed against a finding of a likelihood of confusion.

Similar to *Pure & Simple Concepts, Inc. v. I H W Mgmt.* and as previously noted, the marks cited against Applicant's mark BASIN each contain additional terms. Just as BLUE INDUSTRY was sufficiently dissimilar to INDUSTRY based on the term BLUE, so should JEWEL BASIN be regarded as dissimilar to BASIN BEVERAGE CO. due to JEWEL, and WILD BASIN due to WILD, and so on.

In yet another recent decision, *E. & J. Gallo Winery v. Thunder Road Brands, LLC*, Opposition No. 91222284, (2018), (Not precedent), the TTAB dismissed the opposition, finding that the mark THUNDER ROAD for "alcoholic beverages, namely Tennessee sour mash whiskey and moonshine" was not likely to be confused with opposer's common law use of the mark THUNDERBIRD on wine, or its registered marks for THUNDERBIRD for "wines" or THUNDERBIRD for "alcoholic beverages except beers." The TTAB noted extensive third-party registrations and usage (pp. 17-19) and found that based on such usage, the term THUNDER was weak as a source indicator for alcoholic beverages. The TTAB stated that consumers had been exposed to "so many different THUNDER-formative marks in connection with alcoholic beverages that they likely have become alert to 'minute distinctions' among the various marks." (p. 20). According to the TTAB,

> A mark having the term THUNDER in connection with alcoholic beverages therefore should be given a restricted scope of protection, and the THUNDERBIRD mark is not entitled to such a broad scope of protection that it is a bar to the registration of any mark comprising in part, the word "thunder."

11

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

*Id.* at 20. In the same way, the extensive usage of BASIN, as noted, demonstrates that no one BASIN mark should be able to preclude registration of any other mark, simply on the basis that the other mark contains the term BASIN.

> 3.  Other Registrations of Beer Demonstrate How Customers Look to Minute Differences When Viewing Marks Associated With "Beer"

Since 2010, there have been over 40,000 applications for trademarks with "G & S: Beer" listed in the application. *See* Exhibit D. These are merely the applications for which beer is listed first in the G & S. Because beer is such a crowded area for trademarks, consumers are required to rely upon minute distinctions when certain terms are being used. The term "river" is another example of a term, much like "basin," associated with water, that is so commonly used with beer that consumers must rely on minute distinctions. As shown in the table below (registration certificates attached as Exhibit C), registrations have issued, for different owners, for a number of marks which include the term "river", including RIVER BEER and RIO (Spanish for river). Much like there is no likelihood of confusion between the various "RIVER" marks, and much like the registration of RIVER BEER and RIO did not prevent the subsequent registration of various RIVER marks, such as RIVER PIG, RIVER TRIP, FRENCH RIVER, BIG RIVER, HAZY RIVER, RIO CLARO, RIO BRAVO, or RIVER RAINBOW, the various BASIN marks should not preclude registration of BASIN.

| Mark | Reg. No. | Goods/Services | Reg. Date | Owner |
|---|---|---|---|---|
| RIVER RAINBOW | 6428997 | Beer | July 20, 2021 | Wild West Spirits, LLC |
| HAZY RIVER | 6330168 | Beer | April 20, 2021 | NEW HOLLAND IP, LLC |
| BIG RIVER | 5686065 | Beer | February 26, 2019 | Big River Breweries, Inc. |
| FRENCH RIVER | 5965946 | Beer | January 21, 2020 | Wooden Hill Brewing Company |
| DOWNRIVER | 5957350 | Beer | January 7, 2020 | Banter's Craft Beverages LLC |
| RIVER TRIP | 5875622 | Beer | October 1, 2019 | Allagash Brewing Company |
| RIVER PIG | 5680459 | Beer | February 19, 2019 | zEco Holdings LLC |

12

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

| Mark | Reg. No. | Goods/Services | Reg. Date | Owner |
|---|---|---|---|---|
| GOOD RIVER BEER | 5180929 | Craft beers | April 11, 2017 | Good River Beer, LLC |
| BRAIDED RIVER | 6125006 | Beer | August 11, 2020 | Nelson, David |
| RIVER BEER | 5478986 | Beer | May 29, 2018 | EXACTLY NEAT VENTURES LLC |
| FORE RIVER | 5319089 | Beer, ale, lager, stout, porter, shandy | October 24, 2017 | Fore River Brewing Company LLC |
| RIO | 6289532 | Beer | March 9, 2021 | Cerveceria Centro Americana, S.A. |
| NEW RIVER | 4316862 | Beer, ale and lager | April 9, 2013 | M.A. Hagerman Brewing Company, L.L.C. |
| GHOST RIVER | 3754607 | Beer | March 2, 2010 | GHOST RIVER BREWING, LLC |
| RIO CLARO | 4577593 | Beer | July 29, 2014 | G.K. Skaggs, Inc. |
| RIO BRAVO | 4998245 | Beer | July 12, 2016 | CERVECERIA MODELO DE MEXICO |

In light of the above, Applicant respectfully submits that there is no likelihood of confusion between the cited marks and its applied for mark of "BASIN BEVERAGE CO.". A Notice of Publication is hereby requested.

13

RAM SALE NUMBER:  90703327
RAM ACCOUNTING DATE:  20220725

INTERNET TRANSMISSION DATE:

2022/07/25

SERIAL NUMBER:

90/703327

| Description | Fee Code | Transaction Date | Fee | Number Of Classes | Total Fees Paid |
|---|---|---|---|---|---|
| | 7009 | 2022/07/25 | 350 | 3 | 1050 |

# BASIN BEVERAGE CO.

# BASIN BEVERAGE CO.

## Trademark Snap Shot Amendment & Mail Processing Stylesheet
(Table presents the data on Amendment & Mail Processing Complete)

### OVERVIEW

| | | | |
|---|---|---|---|
| SERIAL NUMBER | 90703327 | FILING DATE | 05/11/2021 |
| REG NUMBER | 0000000 | REG DATE | N/A |
| REGISTER | PRINCIPAL | MARK TYPE | TRADEMARK |
| INTL REG # | N/A | INTL REG DATE | N/A |
| TM ATTORNEY | CARLYLE, SHAUNIA P | L.O. ASSIGNED | 110 |

### PUB INFORMATION

| | |
|---|---|
| RUN DATE | 07/26/2022 |
| PUB DATE | N/A |
| STATUS | 661-RESPONSE AFTER NON-FINAL-ACTION-ENTERED |
| STATUS DATE | 07/25/2022 |
| LITERAL MARK ELEMENT | BASIN BEVERAGE CO. |

| | | | |
|---|---|---|---|
| DATE ABANDONED | N/A | DATE CANCELLED | N/A |
| SECTION 2F | NO | SECTION 2F IN PART | NO |
| SECTION 8 | NO | SECTION 8 IN PART | NO |
| SECTION 15 | NO | REPUB 12C | N/A |
| RENEWAL FILED | NO | RENEWAL DATE | N/A |
| DATE AMEND REG | N/A | | |

### FILING BASIS

| FILED BASIS | | CURRENT BASIS | | AMENDED BASIS | |
|---|---|---|---|---|---|
| 1 (a) | NO | 1 (a) | NO | 1 (a) | NO |
| 1 (b) | YES | 1 (b) | YES | 1 (b) | NO |
| 44D | NO | 44D | NO | 44D | NO |
| 44E | NO | 44E | NO | 44E | NO |
| 66A | NO | 66A | NO | | |
| NO BASIS | NO | NO BASIS | NO | | |

### MARK DATA

| | |
|---|---|
| STANDARD CHARACTER MARK | YES |
| LITERAL MARK ELEMENT | BASIN BEVERAGE CO. |
| MARK DRAWING CODE | 4-STANDARD CHARACTER MARK |
| COLOR DRAWING FLAG | NO |

### CURRENT OWNER INFORMATION

| | |
|---|---|
| PARTY TYPE | 10-ORIGINAL APPLICANT |

| NAME | Amoss, Matthew |
|---|---|
| ADDRESS | 1600 Tchoupitoulas Street<br>New Orleans, LA 70130 |
| ENTITY | 01-INDIVIDUAL |
| CITIZENSHIP | United States of America |

### GOODS AND SERVICES

| INTERNATIONAL CLASS | 030 |
|---|---|
| DESCRIPTION TEXT | Tea-based beverages; Coffee based beverages; Kombucha tea |

| INTERNATIONAL CLASS | 032 |
|---|---|
| DESCRIPTION TEXT | Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages |

| INTERNATIONAL CLASS | 033 |
|---|---|
| DESCRIPTION TEXT | Beverages, namely, wine, hard seltzer; Hard kombucha tea |

| INTERNATIONAL CLASS | 043 |
|---|---|
| DESCRIPTION TEXT | Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck |

### GOODS AND SERVICES CLASSIFICATION

| INTERNATIONAL CLASS | 030 | FIRST USE DATE | NONE | FIRST USE IN COMMERCE DATE | NONE | CLASS STATUS | 6-ACTIVE |
|---|---|---|---|---|---|---|---|
| INTERNATIONAL CLASS | 032 | FIRST USE DATE | NONE | FIRST USE IN COMMERCE DATE | NONE | CLASS STATUS | 6-ACTIVE |
| INTERNATIONAL CLASS | 033 | FIRST USE DATE | NONE | FIRST USE IN COMMERCE DATE | NONE | CLASS STATUS | 6-ACTIVE |
| INTERNATIONAL CLASS | 043 | FIRST USE DATE | NONE | FIRST USE IN COMMERCE DATE | NONE | CLASS STATUS | 6-ACTIVE |

### MISCELLANEOUS INFORMATION/STATEMENTS

| CHANGE IN REGISTRATION | NO |
|---|---|

### PROSECUTION HISTORY

| DATE | ENT CD | ENT TYPE | DESCRIPTION | ENT NUM |
|---|---|---|---|---|
| 07/25/2022 | TEME | I | TEAS/EMAIL CORRESPONDENCE ENTERED | 008 |
| 07/25/2022 | CRFA | I | CORRESPONDENCE RECEIVED IN LAW OFFICE | 007 |
| 07/25/2022 | TROA | I | TEAS RESPONSE TO OFFICE ACTION RECEIVED | 006 |
| 01/25/2022 | GNRN | O | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 005 |
| 01/25/2022 | GNRT | F | NON-FINAL ACTION E-MAILED | 004 |
| 01/25/2022 | CNRT | R | NON-FINAL ACTION WRITTEN | 003 |
| 01/18/2022 | DOCK | D | ASSIGNED TO EXAMINER | 002 |

| 08/11/2021 | NWOS | I | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | 001 |

### CURRENT CORRESPONDENCE INFORMATION

| ATTORNEY | Fabian Nehrbass |
| CORRESPONDENCE ADDRESS | Fabian Nehrbass<br>GARVEY, SMITH & NEHRBASS, PATENT ATTORNE<br>Suite 4310<br>701 Poydras Street<br>New Orleans LA 70139 |
| DOMESTIC REPRESENTATIVE | NONE |

# BASIN BEVERAGE CO.

| To: | Amoss, Matthew (FabianNehrbass@patents.gs) |
|---|---|
| Subject: | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGE CO. - T21144US (3) |
| Sent: | August 16, 2022 07:41:07 PM |
| Sent As: | ecom110@uspto.gov |
| Attachments: | |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90703327

**Mark:** BASIN BEVERAGE CO.

**Correspondence Address:**
Fabian Nehrbass
GARVEY, SMITH & NEHRBASS, PATENT
ATTORNE
Suite 4310
701 Poydras Street
New Orleans LA 70139
**Applicant:** Amoss, Matthew

**Reference/Docket No.** T21144US (3)

**Correspondence Email Address:**
 FabianNehrbass@patents.gs

# NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**. Respond using the Trademark Electronic Application System (TEAS).  A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:  August 16, 2022**

This letter is in response to the applicant's communication dated July 25, 2022. The examining attorney accepts the applicant's amended identification of goods and disclaimer statement.  However, the refusal to register based on a likelihood of confusion is continued.  Also, the prior pending applications remain a possible bar to registration.

**REQUEST FOR MORE INFORMATION**

To permit proper examination of the application, applicant must submit additional product information about applicant's goods.  *See* 37 C.F.R. §2.61(b); TMEP §814.  The required product information should include fact sheets, instruction manuals, and/or advertisements.  If these materials are unavailable, applicant should submit similar documentation for goods of the same type, explaining how its own product will differ. If the goods feature new technology and no competing goods are available, applicant must provide a detailed description of the goods.

Factual information about the goods must clearly indicate how they operate, their salient features, and their prospective customers and channels of trade.  Conclusory statements regarding the goods will not satisfy this requirement.

If applicant submits webpage evidence to satisfy this requirement, applicant must provide (1) an image of the webpage, (2) the date it was accessed or printed, and (3) the complete URL address.  *In re ADCO Indus.-Techs., L.P.*, 2020 USPQ2d 53786, at *2 (TTAB 2020) (citing *In re I-Coat Co.*, 126 USPQ2d 1730, 1733 (TTAB 2018)); TMEP §710.01(b).  Providing only a website address or hyperlink to the webpage is not sufficient to make the materials of record.  *In re ADCO Indus.-Techs., L.P.*, 2020 USPQ2d 53786, at *2 (citing *In re Olin Corp.*, 124 USPQ2d 1327, 1331 n.15 (TTAB 2017); *In re HSB Solomon Assocs., LLC*, 102 USPQ2d 1269, 1274 (TTAB 2012); TBMP §1208.03); TMEP §814.

Applicant has a duty to respond directly and completely to this requirement for information. *See In re Ocean Tech., Inc.*, 2019 USPQ2d 450686, at *2 (TTAB 2019) (citing *In re AOP LLC*, 107 USPQ2d 1644, 1651 (TTAB 2013)); TMEP §814. Failure to comply with a requirement for information is an independent ground for refusing registration. *In re SICPA Holding SA*, 2021 USPQ2d 613, at *6 (TTAB 2021) (citing *In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship  LLP*, 67 USPQ2d 1699, 1701-02 (TTAB 2003); TMEP §814).

**How to respond.  Click to file a response to this nonfinal Office action.**

/Shaunia Carlyle/
Examining Attorney
Law Office 110
United States Patent and Trademark Office
571-272-9374
shaunia.carlyle@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.** A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

| | |
|---|---|
| **To:** | Amoss, Matthew (FabianNehrbass@patents.gs) |
| **Subject:** | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGE CO. - T21144US (3) |
| **Sent:** | August 16, 2022 07:41:09 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | |

**United States Patent and Trademark Office (USPTO)**

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **August 16, 2022** for
**U.S. Trademark Application Serial No. 90703327**

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action in order to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action.**  This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS).  Your response must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response period.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE
· **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

· **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

· **Beware of trademark-related scams.**  Protect yourself from people and companies that may try to take financial advantage of you.  Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you.  We will never request your credit card number or social security number over the phone.  And all official USPTO correspondence will only be emailed from the domain "@uspto.gov."   Verify the correspondence originated from us by using your Serial Number in our database, TSDR, to confirm that it appears under the "Documents"  tab, or contact the Trademark Assistance Center.

· **Hiring a U.S.-licensed attorney.**  If you do not have an attorney and are not required to have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.

PTO- 1957
Approved for use through 11/30/2023. OMB 0651-0050
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Response to Office Action

---

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 90703327 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 110 |
| **MARK SECTION** | |
| **MARK** | mark |
| **LITERAL ELEMENT** | BASIN BEVERAGE CO. |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **ADDITIONAL STATEMENTS SECTION** | |
| **MISCELLANEOUS STATEMENT** | Attached is a response to the request for more information. Specifically, Applicant attaches screenshots of similar goods which may be offered by Applicant as set forth in IC 32 and 33. It is Applicant's understanding that no such information is requested for IC 43 and 30. |
| **MISCELLANEOUS FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | mis-45309233-202209061615 47713607_._RequestForMore InformationResponse-.pdf |
| **CONVERTED PDF FILE(S)**<br>(8 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml7\ ROA0002.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml7\ ROA0003.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml7\ ROA0004.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml7\ ROA0005.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml7\ ROA0006.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml7\ ROA0007.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml7\ ROA0008.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml7\ ROA0009.JPG |
| **CORRESPONDENCE INFORMATION (current)** | |
| **NAME** | Fabian Nehrbass |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | FabianNehrbass@patents.gs |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | SNehrbass@gmail.com; Sford@patents.gs; mrodriguez@patents.gs |
| **DOCKET/REFERENCE NUMBER** | T21144US (3) |
| **CORRESPONDENCE INFORMATION (proposed)** | |
| **NAME** | Fabian Nehrbass |

| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | FabianNehrbass@patents.gs |
|---|---|
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | sford@patents.gs; mrodriguez@patents.gs; aoshaughnessy@patents.gs |
| DOCKET/REFERENCE NUMBER | T21144US (3) |

## SIGNATURE SECTION

| RESPONSE SIGNATURE | /Fabian M. Nehrbass, LA Bar #35264/ |
|---|---|
| SIGNATORY'S NAME | Fabian M. Nehrbass |
| SIGNATORY'S POSITION | Attorney of Record, Louisiana Bar Member |
| SIGNATORY'S PHONE NUMBER | 504-828-6014 |
| DATE SIGNED | 09/06/2022 |
| ROLE OF AUTHORIZED SIGNATORY | Authorized U.S.-Licensed Attorney |
| SIGNATURE METHOD | Signed directly within the form |

## FILING INFORMATION SECTION

| SUBMIT DATE | Tue Sep 06 16:36:32 ET 2022 |
|---|---|
| TEAS STAMP | USPTO/ROA-XX.XX.X.XXX-202 20906163632446452-9070332 7-800e5bfbd43e25287d0a445 87788551c4a69ebc70913f473 14a878f535e43bae753-N/A-N /A-20220906161547713607 |

PTO- 1957
Approved for use through 11/30/2023. OMB 0651-0050
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## Response to Office Action

## To the Commissioner for Trademarks:

Application serial no. **90703327** BASIN BEVERAGE CO.(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/90703327/large) has been amended as follows:

### ADDITIONAL STATEMENTS
**Miscellaneous Statement**
Attached is a response to the request for more information. Specifically, Applicant attaches screenshots of similar goods which may be offered by Applicant as set forth in IC 32 and 33. It is Applicant's understanding that no such information is requested for IC 43 and 30.

**Original PDF file:**
mis-45309233-202209061615 47713607_._RequestForMore InformationResponse-.pdf
**Converted PDF file(s)** ( 8 pages) Miscellaneous File1Miscellaneous File2Miscellaneous File3Miscellaneous File4Miscellaneous File5Miscellaneous File6Miscellaneous File7Miscellaneous File8

**Correspondence Information (current):**
　Fabian Nehrbass
　PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
　SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): SNehrbass@gmail.com; Sford@patents.gs; mrodriguez@patents.gs

The docket/reference number is T21144US (3).

**Correspondence Information (proposed):**
　Fabian Nehrbass

PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): sford@patents.gs; mrodriguez@patents.gs; aoshaughnessy@patents.gs

The docket/reference number is T21144US (3).

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the owner/holder and the owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

**SIGNATURE(S)**
**Response Signature**
Signature: /Fabian M. Nehrbass, LA Bar #35264/    Date: 09/06/2022
Signatory's Name: Fabian M. Nehrbass
Signatory's Position: Attorney of Record, Louisiana Bar Member

Signatory's Phone Number: 504-828-6014 Signature method: Signed directly within the form

The signatory has confirmed that he/she is a U.S.-licensed attorney who is an active member in good standing of the bar of the highest court of a U.S. state (including the District of Columbia and any U.S. Commonwealth or territory); and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S.-licensed attorney not currently associated with his/her company/firm previously represented the owner/holder in this matter: the owner/holder has revoked their power of attorney by a signed revocation or substitute power of attorney with the USPTO; the USPTO has granted that attorney's withdrawal request; the owner/holder has filed a power of attorney appointing him/her in this matter; or the owner's/holder's appointed U.S.-licensed attorney has filed a power of attorney appointing him/her as an associate attorney in this matter.

Mailing Address:   Fabian Nehrbass
  GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
  Suite 4310
  701 Poydras Street
  New Orleans, Louisiana 70139
Mailing Address:   Fabian Nehrbass
  GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
  Suite 4310
  701 Poydras Street
  New Orleans, Louisiana 70139

Serial Number: 90703327
Internet Transmission Date: Tue Sep 06 16:36:32 ET 2022
TEAS Stamp: USPTO/ROA-XX.XX.X.XXX-202209061636324464
52-90703327-800e5bfbd43e25287d0a44587788
551c4a69ebc70913f47314a878f535e43bae753-
N/A-N/A-20220906161547713607

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Request for More Information

In response to the Request for More Information dated August 16, 2022, Applicant submits the following:

- Applicant's products are not in commerce at this time
- The word "Basin" in Applicant's mark "Basin Beverage Co." is not descriptive of Applicant's products
- Set forth below are screenshots of similar goods to those which may be offered by Applicant as set forth in IC 32 and 33
- Each screenshot contains the date accessed of the webpage



https://us.budweiser.com/



https://www.lacroixwater.com/

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Request for More Information



BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Request for More Information



[https://www.heb.com/product-detail/2042283](https://www.heb.com/product-detail/2042283)



https://lagunitas.com/beer/hoppy-refresher/

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Request for More Information



https://shop.unionwinecompany.com/collections/underwood

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Request for More Information



https://trulyhardseltzer.com/

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Request for More Information



https://www.goodhousekeeping.com/health/diet-nutrition/g39476860/best-hard-kombucha/

Respectfully submitted,

/Fabian M. Nehrbass/
Fabian M. Nehrbass, LA Bar No. 35264
Garvey, Smith & Nehrbass, Patent Attorneys, L.L.C.

| | |
|---|---|
| **To:** | Amoss, Matthew (FabianNehrbass@patents.gs) |
| **Subject:** | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGE CO. - T21144US (3) |
| **Sent:** | October 05, 2022 08:37:24 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90703327

**Mark:**  BASIN BEVERAGE CO.

**Correspondence Address:**
Fabian Nehrbass
GARVEY, SMITH & NEHRBASS, PATENT
ATTORNE
Suite 4310
701 Poydras Street
New Orleans LA 70139
**Applicant:**  Amoss, Matthew

**Reference/Docket No.** T21144US (3)

**Correspondence Email Address:**
 FabianNehrbass@patents.gs

## NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**.  Respond using the Trademark Electronic Application System (TEAS).  A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:  October 05, 2022**

This letter is in response to the applicant's communication dated September 6, 2022.   The examining attorney withdraws the refusal to register based on a likelihood of confusion with U.S. Registration Numbers 6429315, 6014406, 5608888, 5177835, and 5022765 and no longer finds Application Serial Numbers 90-870224, 88-373488, 88-640188, and 88-614301as possible bars to registration.

## LIKELIHOOD OF CONFUSION

 Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 4890160, 6760872, and 5510241.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the attached registration.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties.  *See* 15 U.S.C. §1052(d).  Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors").  *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).  Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case."  *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis:  (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services.  *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

### U.S. Registration Number 4890160

#### Similarity of the Marks

The applicant has applied for the mark BASIN BEVERAGE CO.  The registrant's mark is NEW BASIN DISTILLING COMPANY.  Here, both marks contain the wording BASIN.  Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression.  *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (holding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (holding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (holding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression.  *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.* , 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii).  Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks.  *In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii).  In the registrant's mark the wording DISTILLING COMPANY has been disclaimed as being descriptive. Therefore, this wording is the less dominant wording in the registrant's mark.   In the applicant's mark the wording BEVERAGE CO has also been disclaimed for being descriptive of the goods and services.  Therefore, this wording is the less dominant wording in the applicant's mark.

#### Similarity of the Goods – International Classes 32 and 33

The goods are compared to determine whether they are similar, commercially related, or travel in the same trade channels.  *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The applicant's mark is for beverages, namely, beer, sparkling water, non-alcoholic water-based beverages; beverages, namely, wine, hard seltzer; hard kombucha tea.  The registrant's mark is for liquor.

Liquor is defined as alcoholic drinks, especially strong alcoholic drinks.  See attached dictionary definition.  Here, all of the marks are for alcoholic beverages.

Where the goods of an applicant and registrant are "similar in kind and/or closely related,"  the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services.  *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

### U.S. Registration Number 6760872

#### Similarity of the Marks

The applicant has applied for the mark BASIN BEVERAGE CO.  The registrant's mark is TAHOE BASIN.   Here, both marks contain the word BASIN.

The wording BEVERAGE CO. is the less dominant wording in the applicant's mark because it is descriptive of the goods and services.

Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce* , 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (holding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (holding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (holding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

*Similarity of the Goods – International Class 30*

The applicant's mark is for tea-based beverages; coffee-based beverages; kombucha tea.   The registrant's mark is for chai tea; coffee.

Here, both marks are for coffee and tea-based beverages.

Where the goods of an applicant and registrant are "similar in kind and/or closely related,"  the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services.  *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

**U.S. Registration Number 5510241**

*Similarity of the Marks*

The applicant has applied for the mark BASIN BEVERAGE CO.  The registrant's mark is GREAT BASIN COFFEE COMPANY.   Here, both marks contain the word BASIN and a variation of the entity designation COMPANY.  The wording after BASIN in both marks gives the commercial impression of a beverage.  These marks convey a similar mental reaction.

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties."  *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b).  The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks.  *In re Ox Paperboard, LLC*, 2020 USPQ2d 10878, at *4 (TTAB 2020) (citing *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016)); *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); *see In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014).

*Similarity of the Goods – International Class 30*

The applicant's mark is for tea-based beverages; coffee-based beverages; kombucha tea.   The registrant's mark is for coffee; coffee and tea; coffee-based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee.

Here, both marks are for coffee and tea-based beverages.

Where the goods of an applicant and registrant are "similar in kind and/or closely related," the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services.  *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

For the above stated reasons the mark is refused based on a likelihood of confusion.

**REFUSAL PERTAINS TO THREE CLASSES**

The stated refusal refers to International Classes 30, 32 and 33 only and does not bar registration in the other class.

Applicant may respond to the stated refusal by submitting evidence and arguments against the refusal.  In addition, applicant may respond by

doing one of the following:

(1)  Deleting the classes to which the refusal pertains;

(2)  Filing a Request to Divide Application form (form #3) to divide out the goods and/or services that have not been refused registration, so that the mark may proceed toward publication for opposition in the classes to which the refusal does not pertain.  *See* 37 C.F.R. §2.87. *See generally* TMEP §§1110 *et seq.* (regarding the requirements for filing a request to divide). If applicant files a request to divide, then to avoid abandonment, applicant must also file a timely response to all outstanding issues in this Office action, including the refusal.  37 C.F.R. §2.87(e).; or

(3)  Amending the basis for such classes, if appropriate.  TMEP §806.03(h).  (The basis cannot be changed for applications filed under Trademark Act Section 66(a).  TMEP §1904.01(a).)

**How to respond.  Click to file a response to this nonfinal Office action.**

/Shaunia Carlyle/
Examining Attorney
Law Office 110
United States Patent and Trademark Office
571-272-9374
shaunia.carlyle@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.**  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.**  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

**DESIGN MARK**

**Serial Number**
86304088

**Status**
SECTION 8 & 15-ACCEPTED AND ACKNOWLEDGED

**Word Mark**
NEW BASIN DISTILLING COMPANY

**Standard Character Mark**
Yes

**Registration Number**
4890160

**Date Registered**
2016/01/19

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
New Basin Distilling Company LLC LIMITED LIABILITY COMPANY OREGON 2063
NW Andrews Drive Madras OREGON 97741

**Goods/Services**
Class Status -- ACTIVE.  IC 033.  US  047 049.  G & S: Liquor.  First
Use: 2014/05/25.  First Use In Commerce: 2015/08/25.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DISTILLING COMPANY"
APART FROM THE MARK AS SHOWN.

**Filing Date**
2014/06/09

**Examining Attorney**
FENNESSY, EDWARD

**Attorney of Record**
Alison Hohengarten

-1-

# New Basin Distilling Company

https://www.macmillandictionary.com/dictionary/american/liquor    09/16/2022 01:38:56 PM



https://www.macmillandictionary.com/dictionary/american/liquor    09/16/2022 01:38:56 PM



https://www.macmillandictionary.com/dictionary/american/liquor        09/16/2022 01:39:56 PM

**CONTACT**
PRIVACY
CONSENT MANAGEMENT
COOKIES POLICY
TERMS AND CONDITIONS
FAQ
INDEX

**ABOUT**
AUTHORS
PARTNERS
OPTIONS
TOOLS

**FOLLOW US**

Join Macmillan Dictionary on Twitter and Facebook for daily word facts, quizzes and language news.

© Macmillan Education Limited 2009–2022

**Print: Oct 5, 2022**                    **88640188**

**DESIGN MARK**

**Serial Number**
88640188

**Status**
REGISTERED

**Word Mark**
TAHOE BASIN

**Standard Character Mark**
Yes

**Registration Number**
6760872

**Date Registered**
2022/06/14

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Java Detour NorCal LLC LIMITED LIABILITY COMPANY CALIFORNIA 635
Lakeridge Drive Auburn CALIFORNIA 95603

**Goods/Services**
Class Status -- ACTIVE.  IC 030.  US  046.  G & S: Chai tea; Coffee.
First Use: 2022/03/11.  First Use In Commerce: 2022/03/11.

**Filing Date**
2019/10/03

**Examining Attorney**
SALCIDO,JOHN

**Attorney of Record**
Sean Ploen

**-1-**

# Tahoe Basin

**Print: Oct 5, 2022**                    **87764676**

**DESIGN MARK**

**Serial Number**
87764676

**Status**
REGISTERED

**Word Mark**
GREAT BASIN COFFEE COMPANY

**Standard Character Mark**
Yes

**Registration Number**
5510241

**Date Registered**
2018/07/03

**Type of Mark**
TRADEMARK

**Register**
SUPPLEMENTAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
GREAT BASIN COFFEE COMPANY, LLC. LIMITED LIABILITY COMPANY UTAH 151 S.
Main St. Springville UTAH 84663

**Goods/Services**
Class Status -- ACTIVE.  IC 030.  US 046.  G & S: Coffee; Coffee and
tea; Coffee based beverages; Coffee beans; Coffee beverages with milk;
Coffee, tea, cocoa and artificial coffee; Coffee-based beverage
containing milk; Coffee-based beverages; Coffee-based iced beverages;
Beverages made of coffee; Beverages with a coffee base; Caffeine-free
coffee; Green coffee; Ground coffee beans; Prepared coffee and
coffee-based beverages; Roasted coffee beans; Unroasted coffee.  First
Use: 2017/04/14.  First Use In Commerce: 2018/01/01.

**Filing Date**
2018/01/22

**Amended Register Date**
2018/05/17

**Examining Attorney**
CROWDER-SCHAEFER

**-1-**

# Great Basin Coffee Company

| | |
|---|---|
| **To:** | Amoss, Matthew (FabianNehrbass@patents.gs) |
| **Subject:** | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGE CO. - T21144US (3) |
| **Sent:** | October 05, 2022 08:37:26 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | |

**United States Patent and Trademark Office (USPTO)**

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **October 05, 2022** for
**U.S. Trademark Application Serial No. 90703327**

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action in order to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action.**  This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS).  Your response must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response period.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

· **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

· **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

· **Beware of trademark-related scams.**  Protect yourself from people and companies that may try to take financial advantage of you.  Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you.  We will never request your credit card number or social security number over the phone.  And all official USPTO correspondence will only be emailed from the domain "@uspto.gov."   Verify the correspondence originated from us by using your Serial Number in our database, TSDR, to confirm that it appears under the "Documents" tab, or contact the Trademark Assistance Center.

· **Hiring a U.S.-licensed attorney.**  If you do not have an attorney and are not required to have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.

PTO- 1957
Approved for use through 11/30/2023. OMB 0651-0050
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Response to Office Action

---

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 90703327 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 110 |
| **MARK SECTION** | |
| **MARK** | [mark](#) |
| **LITERAL ELEMENT** | BASIN BEVERAGE CO. |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **ARGUMENT(S)** | |
| Please see attached argument uploaded in evidence section. | |
| **EVIDENCE SECTION** | |
|    **EVIDENCE FILE NAME(S)** | |
|    **ORIGINAL PDF FILE** | evi_45309233-202210241041 39354641_._Response_to_Office_Action_2022.10.05-3.pdf |
|    **CONVERTED PDF FILE(S)** (13 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0002.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0003.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0004.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0005.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0006.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0007.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0008.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0009.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0010.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0011.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0012.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0013.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0014.JPG |
|    **ORIGINAL PDF FILE** | evi_45309233-202210241041 39354641_._ExhibitE-87232 944RiverBasin.pdf |
|    **CONVERTED PDF FILE(S)** (2 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0015.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0016.JPG |
| **ORIGINAL PDF FILE** | evi_1-45309233-2022102410 4139354641_. Exhibit-F-Th irdPartyBasinCoffee.pdf |
| **CONVERTED PDF FILE(S)** **(8 pages)** | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0017.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0018.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0019.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0020.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0021.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0022.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0023.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml10 \ROA0024.JPG |
| **DESCRIPTION OF EVIDENCE FILE** | Argument regarding likelihood of confusion; Exhibit E to Argument; Exhibit F to Argument. |
| **CORRESPONDENCE INFORMATION (current)** | |
| **NAME** | Fabian Nehrbass |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | FabianNehrbass@patents.gs |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | sford@patents.gs; mrodriguez@patents.gs; aoshaughnessy@patents.gs |
| **DOCKET/REFERENCE NUMBER** | T21144US (3) |
| **CORRESPONDENCE INFORMATION (proposed)** | |
| **NAME** | Fabian Nehrbass |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | FabianNehrbass@patents.gs |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | sford@patents.gs; mrodriguez@patents.gs; aoshaughnessy@patents.gs |
| **DOCKET/REFERENCE NUMBER** | T21144US (3) |
| **SIGNATURE SECTION** | |
| **RESPONSE SIGNATURE** | /Fabian M. Nehrbass, LA Bar #35264/ |
| **SIGNATORY'S NAME** | Fabian M. Nehrbass |
| **SIGNATORY'S POSITION** | Attorney of Record, Louisiana Bar Member |
| **SIGNATORY'S PHONE NUMBER** | 504-835-2000 |
| **DATE SIGNED** | 10/24/2022 |
| **ROLE OF AUTHORIZED SIGNATORY** | Authorized U.S.-Licensed Attorney |
| **SIGNATURE METHOD** | Signed directly within the form |
| **FILING INFORMATION SECTION** | |
| **SUBMIT DATE** | Mon Oct 24 10:56:30 ET 2022 |
| **TEAS STAMP** | USPTO/ROA-XX.XX.X.XXX-202 2102410563030 2553-9070332 7-800a419b87f36ffe6635123 224b4a661d0a448312dc6da43 decbd9d49816c9ad5c-N/A-N/ A-20221024104139354641 |

PTO- 1957
Approved for use through 11/30/2023. OMB 0651-0050
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

**Response to Office Action**

## To the Commissioner for Trademarks:

Application serial no. **90703327** BASIN BEVERAGE CO.(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/90703327/large) has been amended as follows:

**ARGUMENT(S)**
**In response to the substantive refusal(s), please note the following:**

Please see attached argument uploaded in evidence section.

**EVIDENCE**
Evidence has been attached: Argument regarding likelihood of confusion; Exhibit E to Argument; Exhibit F to Argument.
**Original PDF file:**
evi_45309233-202210241041 39354641_._ Response_to_Of fice_Action_2022.10.05-3.pdf
**Converted PDF file(s)** ( 13 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6
Evidence-7Evidence-8Evidence-9Evidence-10Evidence-11Evidence-12Evidence-13
**Original PDF file:**
evi_45309233-202210241041 39354641_._ ExhibitE-87232 944RiverBasin.pdf
**Converted PDF file(s)** ( 2 pages) Evidence-1Evidence-2
**Original PDF file:**
evi_45309233-2022102410 4139354641_._ Exhibit-F-Th irdPartyBasinCoffee.pdf
**Converted PDF file(s)** ( 8 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6Evidence-7Evidence-8

**Correspondence Information (current):**
    Fabian Nehrbass
    PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): sford@patents.gs; mrodriguez@patents.gs; aoshaughnessy@patents.gs

The docket/reference number is T21144US (3).

**Correspondence Information (proposed):**
    Fabian Nehrbass
    PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): sford@patents.gs; mrodriguez@patents.gs; aoshaughnessy@patents.gs

The docket/reference number is T21144US (3).

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the owner/holder and the owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

**SIGNATURE(S)**
**Response Signature**
Signature: /Fabian M. Nehrbass, LA Bar #35264/    Date: 10/24/2022
Signatory's Name: Fabian M. Nehrbass
Signatory's Position: Attorney of Record, Louisiana Bar Member

Signatory's Phone Number: 504-835-2000 Signature method: Signed directly within the form

The signatory has confirmed that he/she is a U.S.-licensed attorney who is an active member in good standing of the bar of the highest court of a U.S. state (including the District of Columbia and any U.S. Commonwealth or territory); and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S.-licensed attorney not currently associated with his/her company/firm previously represented the owner/holder in this matter: the owner/holder has revoked their power of attorney by a signed revocation or substitute power of attorney with the USPTO; the USPTO has granted that attorney's withdrawal request; the owner/holder

has filed a power of attorney appointing him/her in this matter; or the owner's/holder's appointed U.S.-licensed attorney has filed a power of attorney appointing him/her as an associate attorney in this matter.

Mailing Address:   Fabian Nehrbass
  GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
  Suite 4310
  701 Poydras Street
  New Orleans, Louisiana 70139
Mailing Address:   Fabian Nehrbass
  GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
  Suite 4310
  701 Poydras Street
  New Orleans, Louisiana 70139

Serial Number: 90703327
Internet Transmission Date: Mon Oct 24 10:56:30 ET 2022
TEAS Stamp: USPTO/ROA-XX.XX.X.XXX-202210241056303025
53-90703327-800a419b87f36ffe6635123224b4
a661d0a448312dc6da43decbd9d49816c9ad5c-N
/A-N/A-20221024104139354641

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

**LIKELIHOOD OF CONFUSION RESPONSE**

**A. INTRODUCTION – THE REFUSAL**

Applicant's applied for mark is "BASIN BEVERAGE CO.".

Applicant has applied for the mark for the goods/services listed below.

IC 030. Tea-based beverages; Coffee based beverages; Kombucha tea

IC 032. Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages

IC 033. Beverages, namely, wine, hard seltzer; Hard kombucha tea

IC 043. Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck

This is a response to the Nonfinal Office Action dated October 5, 2022.

Applicant notes with appreciation that the examining attorney has withdrawn the refusal to register based on a likelihood of confusion with U.S. Registration Numbers 6429315 (JEWEL BASIN), 6014406 (WILD BASIN), 5608888 (ACE BASIN COCKTAIL CO.), 5177835 (HELIO BASIN BREWING CO.), and 5022765 (BASIN & RANGE) and no longer finds Application Serial Numbers 88-373488 (TURNING BASIN) and 88-614301 (WILD BASIN) as possible bars to registration.

Per the Office Action, registration is refused due to an alleged likelihood of confusion with the following marks, for the following classes of the application:

| Registration No. | Mark | Goods/Services | Class Refused Due to Registration |
|---|---|---|---|
| 4890160 | NEW BASIN DISTILLING COMPANY | Liquor | IC 032, 033 |
| 6760872 | Tahoe Basin | Chai tea; Coffee | IC 030 |

1

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

| 5510241 | GREAT BASIN COFFEE COMPANY | coffee; coffee and tea; coffee-based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee. | IC 030 |

Each alleged likelihood of confusion is addressed in turn.

### B. NEW BASIN DISTILLING COMPANY - liquor

Applicant respectfully submits there is no likelihood of confusion between Applicant's mark of BASIN BEVERAGE CO. and the cited registration for NEW BASIN DISTILLING COMPANY. As noted above, the goods for NEW BASIN DISTILLING COMPANY are "liquor." The mark is being cited against Applicant's BASIN BEVERAGE CO. for IC 032 and IC 033: Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages and Beverages, namely, wine, hard seltzer; Hard kombucha tea.

Applicant respectfully submits that the two marks do not create a similar overall commercial impression. Applicant's mark consists of three words, BASIN BEVERAGE CO. The cited mark is four words, NEW BASIN DISTILLING COMPANY. Only one of the six words,

2

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

BASIN, is the same. Applicant respectfully submits that the single shared term of BASIN does not create a similar overall commercial impression. As the Federal Circuit has stated, "likelihood of confusion[[,]] cannot be predicated on dissection of a mark, that is, on only part of a mark." *In re Nat. Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985). Moreover, although DISTILLING COMPANY and BEVERAGE CO. have been disclaimed, "[t]he public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." *Id.* at p. 1059. Thus, although BEVERAGE CO. may be less dominant than BASIN in BASIN BEVERAGE CO. and DISTILLING COMPANY may be less dominant than NEW BASIN in NEW BASIN DISTILLING COMPANY, the marks as a whole still must be considered. Applicant respectfully submits no similar overall commercial impression is created in comparing the marks.

As noted in Applicant's response to the first non-final office action, BASIN is a widely used term for trademarks in Applicant's good and similar goods thereto. A table showing some registered marks utilizing BASIN as part of their mark is included below (this table incorporates information from two tables presented in Applicant's first response, showing both marks cited by the Office Action and additional marks cited by Applicant).

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) Status | Owner |
|------|--------|----------------|-----------------|-------|
| WILD BASIN | 6014406 | Beer | Mar. 17, 2020 | CANARCHY CRAFT BREWERY COLLECTIVE LLC |
| JEWEL BASIN | 6429315 | Beer | Jul. 20, 2021 | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO. | 5608888 | Non-alcoholic cocktail mixes | Nov. 13, 2018 | ACE Basin Cocktail Company |
| NEW BASIN DISTILLING COMPANY | 4890160 | Liquor | Jan. 19, 2016 | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO. | 5177835 | Beverages, namely, beer and soda pop | Apr. 4, 2017 | PHOENICIAN BREWING COMPANY, LLC |

3

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) *Status* | Owner |
|---|---|---|---|---|
| | | | | |
| BASIN & RANGE | 5022765 | Distilled Spirits | Aug. 16, 2016 | Congregation Spirits, LLC |
| TURNING BASIN | 88-373488 | Beer; Wine; alcoholic beverages except beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon | (Apr. 5, 2019) *Notice of Allowance Issued* | Buffalo Bayou Distilleries, LLC |
| WILD BASIN | 88-614301 | Soda pops; Soft drinks | (Sep. 12, 2019) *Notice of Allowance Issued* | CANarchy Craft Brewery Collective LLC |
|  | 4746735 | Beer, ale, lager, stout and porter | June 2, 2015 | KB Brewing, Inc. DBA Klamath Basin Brewing Company |
|  | 5246096 | Headwear; shirts Beer | July 18, 2017 | Phoenician Brewing Company, LLC |
| BASIN OF ATTRACTION | 6019694 | Beer; ale | March 24, 2020 | August Schell Brewing Company |

Notably, the cited mark NEW BASIN DISTILLING COMPANY is just one of 11 registered trademarks or trademark applications which incorporates the word BASIN previously cited. Upon additional searching, Applicant has located an additional trademark, RIVER BASIN, Reg. No. 5,429,308, for IC 033 liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; whiskey spirits (see Exhibit E). Of these 12 marks, four of them sell liquor or distilled spirits: NEW BASIN DISTILLING COMPANY for liquor, BASIN & RANGE for distilled spirits, TURNING BASIN for spirits, vodka, whiskey, gin, bourbon, and RIVER BASIN for liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; whiskey spirits. BASIN is thus not

4

simply shared between Applicant's BASIN BEVERAGE CO. mark and NEW BASIN DISTILLING COMPANY for different goods, but BASIN is a term shared amongst sellers of liquor / spirits. Because there are multiple sellers of goods of liquor / spirits that utilize BASIN, Applicant respectfully submits that the BASIN portion of NEW BASIN DISTILLING COMPANY cannot be the sole basis for a finding of a likelihood of confusion between Applicant's mark and the cited registration. Additionally, if there is no likelihood of confusion between two marks sharing the term BASIN for the *same goods*, there likewise should be no confusion amongst two marks sharing the term BASIN for *different goods*.

In the Office Action, reference is made to COMMCASH and COMMUNICASH and CONFIRM and CONFIRMCELLS, MILTRON and MILLTRONICS as examples of different marks which are confusingly similar. Applicant respectfully submits that the cited marks are much more similar in appearance, sound, and overall impression than the two marks at issue which only have one common term, BASIN, with one mark consisting of four words, NEW BASIN DISTILLING COMPANY, and the other three words, BASIN BEVERAGE CO.

### C. GREAT BASIN COFFEE COMPANY & TAHOE BASIN – coffee/tea

Applicant respectfully submits there is no likelihood of confusion between Applicant's mark of BASIN BEVERAGE CO. and the cited registrations of GREAT BASIN COFFEE COMPANY (for coffee; coffee and tea; coffee-based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee) or TAHOE BASIN (for chai tea; coffee) for IC 030 (tea-based beverages; coffee-based beverages; kombucha tea).

Although each of the trademarks include the term BASIN, each mark includes additional terms that serve to distinguish one trademark from another. BASIN BEVERAGE CO. consists of three words, GREAT BASIN COFFEE COMPANY consists of four words, and TAHOE BASIN consists of two words. The only word that is common to all of the trademarks is BASIN. When considering each mark as a whole, the marks do not create a similar commercial impression such that consumers would likely assume a connection between the various trademark owners. Moreover, additional third-party uses of unregistered trademarks demonstrates that the consuming

5

public has to look beyond the word BASIN in determining the source of a coffee or tea related drink. For example, there is THUNDER BASIN COFFEE COMPANY (also uses mark THUNDER BASIN) (https://www.facebook.com/Thunderbasincoffeecompany/photos/), NILE BASIN COFFEE (https://www.nilebasinllc.com/), and SNOWBASIN coffee (https://www.google.com/shopping/product/1?client=firefox-b-1-d&q=%22basin+coffee%22&prds=epd:14515708719327015984,eto:14515708719327015984_0, pid:14515708719327015984&sa=X&ved=0ahUKEwjAmL-sifL6AhWzTTABHTtVBv8Q9pwGCAg) (see Exhibit F). The use of the term BASIN by a number of third parties demonstrates that consumers would not find that the Applicant's trademark of BASIN BEVERAGE CO. would likely be confused with GREAT BASIN COFFEE COMPANY or TAHOE BASIN.

### D. ADDITIONAL ARGUMENT

Applicant respectfully disagrees that any likelihood of confusion exists, because (1): Applicant's BASIN BEVERAGE CO. mark and the cited marks are sufficiently dissimilar; and (2) the extensive use of BASIN by third parties demonstrates that shared use of BASIN alone cannot be the basis for a finding of a likelihood of confusion between different trademarks, in similar goods and services.

   1. <u>Applicant's Mark is Sufficiently Dissimilar To The Cited Marks</u>

The Office Action relies upon the fact that each of the 10 cited registrations/applications possesses the term "BASIN". However, the Office Action fails to give proper weight to the additional terms in the cited registrations and applications.

As noted in *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), "[t]he Board has often held that it is the first part of a mark which is most likely to be impressed upon the mind of the consumer and remembered. *See e.g., Presto Prod. Inc. v. Nice-Pak Prod., Inc.,* 9 USPQ2d 1895, 1897 (TTAB 1988)." With respect to the present refusal, each of the marks has another word or term prior to BASIN (NEW, GREAT, TAHOE). Applicant submits that once proper consideration is given to the entirety of the marks, especially in light of the fact that the additional terms serve as the dominant portions of such marks, there is sufficient dissimilarity between the marks so as

6

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

to not find any likelihood of confusion. However, even if the dominant portion of each mark was regarded as the term plus BASIN, the additional terms still result in sufficient dissimilarity.

In *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), (not precedent), the Trademark Trial and Appeal Board reversed the refusal to register Applicant's design mark for CANNONBALL CREEK BREWING COMPANY GOLDEN COLORADO (BREWING COMPANY GOLDEN, COLORADO disclaimed) for "beer" under  Section 2(d) based on an alleged likelihood of confusion with the mark CANNONBALL DOUBLE IPA (DOUBLE IPA disclaimed) for "ale; beer; brewed malt-based alcoholic beverage in the nature of beer."

In explaining its decision, the TTAB emphasized the importance of the additional term, noting that it created a different commercial impression in the marks:

> In view of the foregoing, we find that the dominant portion of Applicant's mark is the wording CANNONBALL CREEK and that the dominant element of the cited mark is the term CANNONBALL.
> In terms of connotation and commercial impression, however, we find that dominant portions of the marks at issue to be quite dissimilar. The circumstances of this case are very similar, if not identical, to those in *Champagne Louis Roederer S.A. v. Delicato Vineyards*, 148 F.3d 1373, 47 USPQ2d 1459 (Fed. Cir. 1998). In that case, the Federal Circuit affirmed the Board's holding that the second word in applicant's mark CRYSTAL CREEK served to create a totally different commercial impression from the one created by opposer's mark CRISTAL when the marks were contemporaneously used on wine.
> In the present case as in *Champagne Louis*, the dominant portion of Applicant's mark consists of two words, with the first word being identical to the dominant element of the cited mark. Put quite simply, we find that the presence of the word CREEK in Applicant's mark, like the presence of CREEK in the applicant's mark in *Champagne Louis*, causes the mark to be dissimilar from the cited mark in meaning and overall commercial impression.

*In re Hutchinson and Stengl*, Serial No. 86809909, (pp. 8-9)

Similarly, in *Hi Wines Ltd. V. Hi Degree Tequila, LLC*, Opposition No. 91251181, (2021) (not precedent) the TTAB found that the Applicant's HI DEGREE mark for was sufficiently dissimilar from the Opposer's mark HI! so that confusion was unlikely. The Board found this even though the goods were "in part, legally identical, and the channels of trade and purchasers overlap[ped]." *Id.* at p. 34. In evaluating the similarity of the marks, the Board found that the marks differed

7

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

significantly in appearance and sound by virtue of the additional word DEGREE in Applicant's mark. *Id.* at p. 31.

Applicant's mark of BASIN BEVERAGE CO. shares the term BASIN with the third-party marks. However, it also has BEVERAGE CO. as part of its mark. Much like CANNONBALL and CANNONBALL CREEK, HI! and HI DEGREE, and CRYSTAL CREEK and CRISTAL, Applicant's mark of BASIN BEVERAGE CO. is sufficiently dissimilar from NEW BASIN DISTILLING COMPANY, TAHOE BASIN, and GREAT BASIN COFFEE COMPANY due to the additional words in the marks. Such additional words lead the marks to be significantly different in both appearance and sound, and thus, commercial impression.

    2.   Extensive Third-Party Usage Precludes a Finding of a Likelihood of Confusion

Furthermore, the extensive use of the term BASIN by third parties reveals there would be no confusion between Applicant's applied for BASIN BEVERAGE CO. mark and the cited marks. Due to the third-party usage, consumers would have to look at the entire mark of any mark which contains the term "BASIN" in order to determine the source of the goods or services. Accordingly, consumers would not be confused simply because two marks contain the term "BASIN". Consumers would have to appreciate minute differences between any marks containing the term "BASIN".

    *a.  Additional Usage of "BASIN" by Others*

In addition to the cited registrations, Applicant further refers to the third-party usage of the term BASIN cited herein and that submitted in Applicant's prior response. That is, any time a consumer sees a mark including "BASIN," the consumer must evaluate the entirety of the mark and cannot believe that all the goods sold under marks including the term "BASIN" derive from the same source.

    *b.  The "BASIN" Portion of the Cited Marks is Entitled To A Narrow Scope of Protection*

The "BASIN" portion of each of the cited marks is weak and entitled to a narrow scope of protection due to the extensive third-party use of "BASIN" in other marks. Because of such third-party use, consumers will look to minute differences between any mark containing "BASIN" to distinguish between the marks, the marks are weak (with respect to their usage of "BASIN") and

8

simply possessing the term "BASIN" in a mark, even with the same goods, should not serve as a basis for refusal of Applicant's mark.

    As explained by the Federal Circuit,

> "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark."*Juice Generation,*794 F.3d at 1338, 2015 WL 4400033, at *3. "The weaker an opposer's mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection." *Id.; see also Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,*396 F.3d 1369, 1373 (Fed.Cir.2005) ("Evidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.").

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1373 (Fed. Cir. 2015).

    In *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334 (Fed. Cir. 2015), the Federal Circuit addressed whether the mark "PEACE LOVE AND JUICE" and a design for use with juice bar services was likely to cause confusion with opposer's marks, all which contained the phrase "PEACE & LOVE" for restaurant services. *Id.* at 1336. Remanding for further proceedings, the Federal Circuit held that the Board did not adequately assess the weakness of the "PEACE & LOVE" marks and did not properly consider the three-word combination of the applicant's mark "PEACE LOVE AND JUICE" as a whole in comparing it to the two-word combinations in the opposer's marks.

    In its analysis, the Federal Circuit found that the applicant's evidence of third-party uses was "powerful on its face." *Id.* at 1339. The Federal Circuit explained:

> In addition, "[a] real evidentiary value of third party *registrations* per se is to show the sense in which ... a mark is used in ordinary parlance." 2 McCarthy on Trademarks and Unfair Competition § 11:90 (4th ed.2015) (emphasis added). "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak."

*Id.* The Federal Circuit found that the Board failed to give adequate consideration to the strength or weakness of opposer's marks in light of the third-party use and registrations and that the Board erred when it stated "PEACE LOVE" is the dominant portion of "PEACE LOVE AND JUICE"

<div align="center">9</div>

and compared to "PEACE & LOVE" is virtually identical, that the addition of a disclaimed word "JUICE" does not distinguish the applicant's mark from the opposer's marks. *Id.* at 1340-1341. Rejecting such an analysis as inadequate, the Board could afford more or less weight to particular components of a mark for appropriate reasons, but it was still required to view the mark as a whole. *Id.* The Federal Circuit explained:

> But the Board did not set forth an analysis showing that it avoided the error of giving no significance to the term, which is impermissible notwithstanding that the term is generic and disclaimed. See *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 851 (Fed.Cir.1992) (Board erred by giving no weight to generic term); see also Shen Mfg. Co. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1243 (Fed.Cir.2004) ("The disclaimed elements of a mark, however, are relevant to the assessment of similarity. This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases have been disclaimed." (citation omitted)); Nat'l Data Corp., 753 F.2d at 1059 ("The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion. The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." (footnote omitted)).

*Id.* at 1341. The Federal Circuit remanded to the Board to take consideration of the disclaimed term as well as the evidence of third-party use. After remand, the mark was ultimately registered (see U.S. Reg. No. 4923032 for PEACE LOVE AND JUICE and design).

Similarly, in *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363 (Fed. Cir. 2015), the Federal Circuit reversed the Trademark Trial and Appeal Board's finding that there was a likelihood of confusion between applicant's mark of  and opposer's mark of  (U.S. Trademark Application Serial No. 77/823,794 and U.S. Reg. No. 1,856,808). In arriving at this conclusion, the Federal Circuit relied on the dissimilarity of the marks and the many third-party marks incorporating paw prints, stating:

> We agree with Jack Wolfskin that the Board erred in its consideration of this evidence. Jack Wolfskin presented extensive evidence of third-party registrations depicting paw prints and evidence of these marks being used in internet commerce for clothing. The Board too quickly dismissed the significance of this evidence. As we recently explained in Juice Generation, such extensive evidence of third-party use and registrations is "powerful on its face," even where the specific extent and impact of the usage has not been established. 794 F.3d at 1339, 2015 WL 4400033,

10

at *4 (detailing the extensive use of marks used in connection with the food service industry that incorporate the words "Peace" and "Love"). For example, evidence of thirdparty registrations is relevant to "show the sense in which a mark is used in ordinary parlance," id. at 1339, 2015 WL 4400033 at *4 ; that is, some segment that is common to both parties' marks may have "a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak," id. In addition, **evidence of third-party use of similar marks on similar goods "can show that customers have been educated to distinguish between different marks on the basis of minute distinctions**." Id. at 1338, 2015 WL 4400033 at *3 (internal quotation marks omitted). In this case, Jack Wolfskin's evidence demonstrates the ubiquitous use of paw prints on clothing as source identifiers. Given the volume of evidence in the record, consumers are conditioned to look for differences between paw designs and additional indicia of origin to determine the source of a given product. **Jack Wolfskin's extensive evidence of third-party uses and registrations of paw prints indicates that consumers are not as likely confused by different, albeit similar looking, paw prints.** The Board's conclusion that this factor was neutral is not supported by substantial evidence.

*Id.* at 1374 (emphasis added).

In the same way that consumers are not likely to be confused by similar paw prints, or the repeated words "PEACE" and "LOVE" due to the extensive evidence of third-party use and registrations of paw prints and "PEACE LOVE" marks, consumers of Applicant's goods are not likely to be confused as to the source of the good simply because two marks include the term "BASIN." In an area where multiple trademarks incorporating BASIN exist, consumers are trained to distinguish between the marks based on "minute distinctions." In the present application, Applicant respectfully submits that the distinctions between its mark and those cited against it are much more than minute.

In a recent Federal Circuit decision, *Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211 (Fed. Cir. May 24, 2021), the Federal Circuit found there was no likelihood of confusion between the opposer's various INDUSTRY marks and the applicant's BLUE INDUSTRY mark. Addressing the similarity or dissimilarity of the marks, the Federal Circuit agreed with the Board that BLUE, the lead term in the applicant's mark BLUE INDUSTRY, made it so that the applicant's mark BLUE INDUSTRY did not bear a striking resemblance in appearance, sound, meaning or commercial impression to any of the pleaded (INDUSTRY) marks of opposer. *Id.* at *7-9.

11

The Federal Circuit again emphasized the importance of third-party use, stating:

> "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation*, *Inc. v. GS Enters*. *LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015). This court has held that, "The purpose of a defendant introducing third-party uses is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions." *Omaha Steaks Int'l*, 908 F.3d at 1324 (quoting *Palm Bay Imps*., 396 F.3d at 1374) (internal quotation marks omitted). "Third[-]party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation*, 794 F.3d 1339. **"The weaker an opposer's mark, the closer an applicant's mark can come without causing likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection**." *Id*. at 1338 (quoting *Palm Bay Imps*., 396 F.3d 1373). "[E]xtensive evidence of third-party use and registrations is 'powerful on its face,' even where the specific extent and impact of the usage has not been established." *JackWolfskin Ausrustung Fur Draussen GmbH & Co. KGaA v. New Millenium Sports*, *S.L.U*., 797 F.3d 1363, 1374 (Fed. Cir. 2015) (quoting *Juice Generation*, 794 F.3d at 1339).

*Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211, at *9-10 (Fed. Cir. May 24, 2021) (emphasis added). The Board found that "numerous" third parties had registered or used INDUSTRY formative marks in connection with clothing and thus, INDUSTRY (or the plural thereof) is "'both conceptually and commercially weak' and therefore **the scope of the marks' protection is limited.**" *Id*. at *10 (emphasis added). The Board found that due to the third-party registrations and use "'consumers are conditioned to look for differences between INDUSTRY formative marks to determine the source of a given product and are therefore less likely to be confused.'" *Id*. The Federal Circuit likewise found that the extensive third-party registrations and use weighed against a finding of a likelihood of confusion.

Similar to *Pure & Simple Concepts, Inc. v. I H W Mgmt.* and as previously noted, the marks cited against Applicant's mark BASIN each contain additional terms. Just as BLUE INDUSTRY was sufficiently dissimilar to INDUSTRY based on the term BLUE, so should NEW BASIN DISTILLING COMPANY be regarded as dissimilar to BASIN BEVERAGE CO. due to NEW and DISTILLING COMPANY, and GREAT BASIN COFFEE COMPANY due to GREAT and COFFEE COMPANY, and TAHOE BASIN due to TAHOE.

12

BASIN BEVERAGES – BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327

In yet another recent decision, *E. & J. Gallo Winery v. Thunder Road Brands, LLC*, Opposition No. 91222284, (2018), (Not precedent), the TTAB dismissed the opposition, finding that the mark THUNDER ROAD for "alcoholic beverages, namely Tennessee sour mash whiskey and moonshine" was not likely to be confused with opposer's common law use of the mark THUNDERBIRD on wine, or its registered marks for THUNDERBIRD for "wines" or THUNDERBIRD for "alcoholic beverages except beers." The TTAB noted extensive third-party registrations and usage (pp. 17-19) and found that based on such usage, the term THUNDER was weak as a source indicator for alcoholic beverages. The TTAB stated that consumers had been exposed to "so many different THUNDER-formative marks in connection with alcoholic beverages that they likely have become alert to 'minute distinctions' among the various marks." (p. 20). According to the TTAB,

> A mark having the term THUNDER in connection with alcoholic beverages therefore should be given a restricted scope of protection, and the THUNDERBIRD mark is not entitled to such a broad scope of protection that it is a bar to the registration of any mark comprising in part, the word "thunder."

*Id.* at 20. In the same way, the extensive usage of BASIN, as noted, demonstrates that the BASIN marks cited against Applicant should not be able to preclude registration of Applicant's mark, simply on the basis that the other marks contain the term BASIN and that the marks exist for the same or related goods.

### E. CONCLUSION

In light of the above, Applicant respectfully submits that there is no likelihood of confusion between the cited marks and the applied for mark of "BASIN BEVERAGE CO.". A Notice of Publication is hereby requested.

13

# United States of America

## United States Patent and Trademark Office

# RIVER BASIN

| | |
|---|---|
| **Reg. No. 5,429,308** | River Basin Distillery (LOUISIANA LIMITED LIABILITY COMPANY)<br>4218 Banks Street |
| **Registered Mar. 20, 2018** | New Orleans, LOUISIANA 70119 |
| **Int. Cl.: 33** | CLASS 33: Liquor; Whiskey; Whiskey; Whiskey spirits; Blended spirits; Distilled Spirits; Whiskey spirits |
| **Trademark** | FIRST USE 8-1-2017; IN COMMERCE 8-1-2017 |
| **Principal Register** | THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR |
| | SER. NO. 87-232,944, FILED 11-10-2016 |

Director of the United States
Patent and Trademark Office

**Exhibit E**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Exhibit E**

Thunder Basin Coffee Company | Facebook                    https://www.facebook.com/Thunderbasincoffeecompany/photos/



**See more of Thunder Basin Coffee Company on Facebook**



**Exhibit F**

Thunder Basin Coffee Company | Facebook                    https://www.facebook.com/Thunderbasincoffeecompany/photos/



## See more of Thunder Basin Coffee Company on Facebook

**Exhibit F**

Thunder Basin Coffee Company | Facebook

https://www.facebook.com/Thunderbasincoffeecompany/photos/



**Exhibit F**

Thunder Basin Coffee Company | Facebook                    https://www.facebook.com/Thunderbasincoffeecompany/photos/



**See more of Thunder Basin Coffee Company on Facebook**

**Exhibit F**



**See more of Thunder Basin Coffee Company on Facebook**

Log In    or    Create new account

**Exhibit F**



**Exhibit F**

Organic Basin Blend – Daily Rise Coffee 5 lb. / Drip | Google Shopping          https://www.google.com/shopping/product/1?client=firefox-b-1-d&q=...



Organic

Description: This medium roasted blend is a smooth full body coffee that fuels active lifestyles. Tasting Notes: active body / chocolatey / nutty

See more details at Daily Rise Coffee »

## Compare buying options

| Sold by | Details & special offers | Item price | Total price |
|---|---|---|---|
| Daily Rise Coffee | $8.00 delivery by Fri, Oct 28<br>Free 14-day returns | $52.50 | $65.72 ⓘ |

**Exhibit F**

Organic Basin Blend – Daily Rise Coffee 5 lb. / Drip | Google Shopping  https://www.google.com/shopping/product/1?client=firefox-b-1-d&q=...



$16.42
Starbucks 1 lb Ground...
★★★★☆ (27,044)

$60.58
Wandering Bear Orga...
★★★★★ (8,977)

$11.16
Chock Full o'Nuts Gro...
★★★★☆ (1,072)

$12.50
Teeccino Coffee Alter
★★★★☆ (6,450)

Recently viewed ⓘ



$19.53
Great Basin Blend Mediu...

$329.00
Allen + Roth 37-in Shado...

$239.00
Project Source 36-in Gray...

$120.00
Saucony Shadow 5000 M...

Feedback

Want to suggest a feature, report a bug, or tell us about incorrect data? Send feedback or report a violation.

⬤ New Orleans, LA · Learn more

Google Home  Advertising Programs  Business Solutions  Privacy & Terms  Ab

**Exhibit F**

  10/21/2022, 2:39 PM

| | |
|---|---|
| **To:** | Amoss, Matthew (FabianNehrbass@patents.gs) |
| **Subject:** | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGE CO. - T21144US (3) |
| **Sent:** | November 22, 2022 08:15:54 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90703327

**Mark:** BASIN BEVERAGE CO.

**Correspondence Address:**
Fabian Nehrbass
GARVEY, SMITH & NEHRBASS, PATENT
ATTORNE
Suite 4310
701 Poydras Street
New Orleans LA 70139
**Applicant:** Amoss, Matthew

**Reference/Docket No.** T21144US (3)

**Correspondence Email Address:**
 FabianNehrbass@patents.gs

**FINAL OFFICE ACTION**

The USPTO must receive applicant's response to this letter within  six months of the issue date below or the application will be **abandoned**.  Respond using the Trademark Electronic Application System (TEAS) and/or Electronic System for Trademark Trials and Appeals (ESTTA).  A link to the appropriate TEAS response form and/or to ESTTA for an appeal appears at the end of this Office action.

**Issue date:  November 22, 2022**

 INTRODUCTION

This Office action is in response to applicant's communication filed on October 24, 2022.

In a previous Office action(s) dated October 5, 2022, the trademark examining attorney refused registration of the applied-for mark based on the following:  Trademark Act Section 2(d) for a likelihood of confusion with a registered mark.

The trademark examining attorney maintains and now makes FINAL the refusal(s) in the summary of issues below.  *See* 37 C.F.R. §2.63(b); TMEP §714.04.

For the reasons set forth below, the refusal under Trademark Act Section 2(d) is now made FINAL with respect to U.S. Registration Nos. 4890160, 6760872, and 5510241. *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.63(b).

SUMMARY OF ISSUES MADE FINAL that applicant must address:
- Likelihood of Confusion

**LIKELIHOOD OF CONFUSION – International Classes 30, 32 and 33**

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 4890160, 6760872, and 5510241.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the attached registrations.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties.  *See* 15 U.S.C. §1052(d).  Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors").  *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).  Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case."  *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis:  (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services.  *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."  *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam* , 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

The goods are compared to determine whether they are similar, commercially related, or travel in the same trade channels.  *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

*U.S. Registration Number 4890160*

*Similarity of the Marks*

The applicant has applied for the mark BASIN BEVERAGE CO. The registrant's mark is NEW BASIN DISTILLING COMPANY. Here, both marks contain the word BASIN followed by wording that describes a type of beverage company. To DISTILL means to heat a liquid until it becomes steam or vapor and then cool it so it becomes a liquid again. See attached dictionary definition. This is a process that is done to create beverages. The fact that one mark uses the abbreviation, CO., for the entity designation, COMPANY, and the other spells it out does very little to help distinguish the marks for trademark purposes. It is the position of the examining attorney that removal of the word NEW in the applicant's mark does very little to create a different commercial impression from the registrant's mark.

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Ox Paperboard, LLC*, 2020 USPQ2d 10878, at *4 (TTAB 2020) (citing *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016)); *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); *see In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014).

*Similarity of the Goods – International Classes 32 and 33*

The applicant's mark is for beverages, namely, beer, sparkling water, non-alcoholic water-based beverages; beverages, namely, wine, hard seltzer; hard kombucha tea. The registrant's mark is for liquor.

The term "liquor" is used to describe an alcoholic drink. See attached dictionary definition. Here, the goods of the applicant and the registrant are related. The compared goods need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Where the goods of an applicant and registrant are "similar in kind and/or closely related," the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services. *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

### U.S. Registration Number 6760872

*Similarity of the Marks*

The applicant has applied for the mark BASIN BEVERAGE CO. The registrant's mark is TAHOE BASIN. The word TAHOE refers to a geographic area. See attached dictionary definition. The registrant's use of the word TAHOE does not create a different commercial impression from the use of the word BASIN alone in the applicant's mark.

Where the goods of an applicant and registrant are "similar in kind and/or closely related," as is the case here, the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods. *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

As previously stated, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Ox Paperboard, LLC*, 2020 USPQ2d 10878, at *4 (TTAB 2020) (citing *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016)); *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); *see In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014).

*Similarity of the Goods – International Class 30*

The applicant's mark is for Tea-based beverages; Coffee based beverages; Kombucha tea. The registrant's mark is for Chai tea; Coffee. Here, both marks are for coffee and tea-based beverages.

Where the goods of an applicant and registrant are "similar in kind and/or closely related," the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services. *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

### U.S. Registration Number 5510241

*Similarity of the Marks*

The applicant has applied for the mark BASIN BEVERAGE CO. The registrant's mark is GREAT BASIN COFFEE COMPANY.

Marks must be compared in their entireties and should not be dissected; however, a trademark examining attorney may weigh the individual components of a mark to determine its overall commercial impression. *In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) ("[Regarding the issue of confusion,] there is nothing improper in stating that . . . more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." (quoting *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985)). Here, the phrases BEVERAGE CO. and COFFEE COMPANY convey very similar commercial impressions especially when the goods of the parties are similar, namely, coffee based beverages.

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." Cai v. Diamond Hong, Inc., 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. In re Ox Paperboard, LLC, 2020 USPQ2d 10878, at *4 (TTAB 2020) (citing In re Bay State Brewing Co., 117 USPQ2d 1958, 1960 (TTAB 2016)); In re Inn at St. John's, LLC, 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); see In re St. Helena Hosp., 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014). It is the position of the examining attorney that the registrant's use of the word GREAT before BASIN does not change the commercial impression of the word BASIN.

*Similarity of the Goods – International Class 30*

The applicant's mark is for Tea-based beverages; Coffee based beverages; Kombucha tea. The registrant's mark is for Coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee. Here, both marks are for coffee- based beverages.

Where the goods of an applicant and registrant are identical or virtually identical, the degree of similarity between the marks required to support a finding that confusion is likely declines. *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(b).

The fact that there may be other registered marks that contain the word BASIN does not necessarily make the wording diluted or weak. The examining attorney must analyze each case based on its own facts, and each mark stands on its own merits. *In re Cordua Rests., Inc.*, 823 F.3d 594, 600, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016) (citing *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009); *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001)). A part of the analysis for a likelihood of confusion is evaluating whether the marks have a similar commercial impression. The addition of wording can change the commercial impression.

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); see Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); In re Hyper Shoppes (Ohio), Inc., 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

For the above stated reasons the refusal to register is continued and made FINAL.

**How to respond.**  **Click to file a request for reconsideration of this final Office action** that fully resolves all outstanding requirements and refusals **and/or** **click to file a timely appeal to the Trademark Trial and Appeal Board (TTAB)** with the required filing fee(s).

/Shaunia Carlyle/
Examining Attorney
Law Office 110
United States Patent and Trademark Office
571-272-9374
shaunia.carlyle@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.**  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon**.  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

**Print: Nov 20, 2022**                    **86304088**

**DESIGN MARK**

**Serial Number**
86304088

**Status**
SECTION 8 & 15-ACCEPTED AND ACKNOWLEDGED

**Word Mark**
NEW BASIN DISTILLING COMPANY

**Standard Character Mark**
Yes

**Registration Number**
4890160

**Date Registered**
2016/01/19

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
New Basin Distilling Company LLC LIMITED LIABILITY COMPANY OREGON 2063
NW Andrews Drive Madras OREGON 97741

**Goods/Services**
Class Status -- ACTIVE.  IC 033.  US  047 049.  G & S: Liquor.  First
Use: 2014/05/25.  First Use In Commerce: 2015/08/25.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DISTILLING COMPANY"
APART FROM THE MARK AS SHOWN.

**Filing Date**
2014/06/09

**Examining Attorney**
FENNESSY, EDWARD

**Attorney of Record**
Alison Hohengarten

-1-

# New Basin Distilling Company

**Print: Nov 20, 2022**            **87764676**

**DESIGN MARK**

**Serial Number**
87764676

**Status**
REGISTERED

**Word Mark**
GREAT BASIN COFFEE COMPANY

**Standard Character Mark**
Yes

**Registration Number**
5510241

**Date Registered**
2018/07/03

**Type of Mark**
TRADEMARK

**Register**
SUPPLEMENTAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
GREAT BASIN COFFEE COMPANY, LLC. LIMITED LIABILITY COMPANY UTAH 151 S.
Main St. Springville UTAH 84663

**Goods/Services**
Class Status -- ACTIVE. IC 030. US 046. G & S: Coffee; Coffee and
tea; Coffee based beverages; Coffee beans; Coffee beverages with milk;
Coffee, tea, cocoa and artificial coffee; Coffee-based beverage
containing milk; Coffee-based beverages; Coffee-based iced beverages;
Beverages made of coffee; Beverages with a coffee base; Caffeine-free
coffee; Green coffee; Ground coffee beans; Prepared coffee and
coffee-based beverages; Roasted coffee beans; Unroasted coffee. First
Use: 2017/04/14. First Use In Commerce: 2018/01/01.

**Filing Date**
2018/01/22

**Amended Register Date**
2018/05/17

**Examining Attorney**
CROWDER-SCHAEFER

**-1-**

# Great Basin Coffee Company

**Print: Nov 20, 2022**                    **88640188**

**DESIGN MARK**

**Serial Number**
88640188

**Status**
REGISTERED

**Word Mark**
TAHOE BASIN

**Standard Character Mark**
Yes

**Registration Number**
6760872

**Date Registered**
2022/06/14

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Java Detour NorCal LLC LIMITED LIABILITY COMPANY CALIFORNIA 635
Lakeridge Drive Auburn CALIFORNIA 95603

**Goods/Services**
Class Status -- ACTIVE.  IC 030.  US  046.  G & S: Chai tea; Coffee.
First Use: 2022/03/11.  First Use In Commerce: 2022/03/11.

**Filing Date**
2019/10/03

**Examining Attorney**
SALCIDO,JOHN

**Attorney of Record**
Sean Ploen

-1-

# Tahoe Basin

https://www.collinsdictionary.com/dictionary/english/distil    11/20/2022 08:38:24 PM



https://www.collinsdictionary.com/dictionary/english/distil    11/20/2022 06:36:24 PM

**Synonyms:** purify, process, filter, refine    More Synonyms of **distil**

**distillation** (dɪstɪleɪʃ°n)    🔊 ) UNCOUNTABLE NOUN

*Any faults in the original cider stood out sharply after distillation.* 🔊

**Synonyms:** distilling, processing, refining, purification    More Synonyms of **distil**

**Synonyms:** essence, extract, elixir, spirit    More Synonyms of **distil**

2. VERB

If an oil or liquid is **distilled from** a plant, it is produced by a process which extracts the most essential part of the plant. To **distil** a plant means to produce an oil or liquid from it by this process.

*The oil is distilled from the berries of this small tree.* [ be VERB-ed + from] 🔊

*...the art of distilling rose petals.* [ VERB-ing] 🔊

*A skin lotion distilled from the root is a marvellous cure for sore rashes and spots.* [ VERB-ed] 🔊

[Also VERB noun from noun]

**Synonyms:** extract, express, squeeze, obtain    More Synonyms of **distil**

**distillation**    UNCOUNTABLE NOUN

*...the distillation of rose petals to produce rosewater.* [+ of] 🔊

**Synonyms:** distilling, processing, refining, purification    More Synonyms of **distil**

**Synonyms:** essence, extract, elixir, spirit    More Synonyms of **distil**

3. VERB

If a thought or idea is **distilled from** previous thoughts, ideas, or experiences, it comes from them. If it is **distilled into** something, it becomes part of that thing.

*Reviews are distilled from articles previously published in the main column.* [ be VERB-ed + from] 🔊

*Eventually passion was distilled into the natural beauty of a balmy night.* [ be V-ed into n] 🔊

*Roy distills these messages into something powerful.* [ VERB noun + into] 🔊

*The advice is based on the distilled wisdom of a panel of heart specialists.* [ VERB-ed] 🔊

**distillation**    SINGULAR NOUN



NEXT

**Pop Goes the Weasel: the magical language of nursery rhymes**

Nursery rhymes are deceptively simple but they teach us all about rhyme, word order, and vocabulary whether real or nonsense!

NOVEMBER 17, 2022

https://www.collinsdictionary.com/dictionary/english/distil    11/20/2022 06:36:24 PM

*The material below is a distillation of his work.* [...]    READ MORE

**Synonyms:** distilling, processing, refining, purification   More Synonyms of **distil**

**Synonyms:** essence, extract, elixir, spirit   More Synonyms of **distil**

More Synonyms of **distil**

*Collins COBUILD Advanced Learner's Dictionary. Copyright © HarperCollins Publishers*



You may also like

English Quiz
Confusables

Synonyms of 'distil'

## distil

**in British English**

*or* US **distill** (dɪsˈtɪl)

**VERB**

**Word forms:** **-tils** *or* US **-tills**, **-tilling** *or* **-tilled**

1. to subject to or undergo distillation See also rectify (sense 2)

2. (*sometimes foll by* out *or* off)
   to purify, separate, or concentrate, or be purified, separated, or concentrated by distillation

https://www.collinsdictionary.com/dictionary/english/distil      11/20/2022 06:36:24 PM

**3.** to obtain or be obtained by distillation
*to distil whisky*

**4.** to exude or give off (a substance) in drops or small quantities

**5.** (*transitive*)
to extract the essence of as if by distillation

*Collins English Dictionary. Copyright © HarperCollins Publishers*

**Derived forms**

**distillable** (dis 'tillable) ADJECTIVE

**Word origin**

C14: from Latin *dēstillāre* to distil, from DE- + *stillāre* to drip

# distil

**in American English**

(dɪˈstɪl)

**TRANSITIVE VERB** or **INTRANSITIVE VERB**
**Word forms:** -tilled, -tilling

*chiefly Brit* distill

*Most material © 2005, 1997, 1991 by Penguin Random House LLC; Modified entries © 2019 by Penguin Random House LLC and HarperCollins Publishers Ltd*

**Examples of 'distil' in a sentence**

# distil

*These examples have been automatically selected and may contain sensitive content that does not reflect the opinions or policies of Collins, or its parent company HarperCollins.*

https://www.collinsdictionary.com/dictionary/english/distil    11/20/2022 06:36:24 PM

*Collins, or its parent company HarperCollins.*

*We welcome feedback: report an example sentence to the Collins team. Read more...*

*And a distillery name may be used only if the whisky was distilled there.*
*TIMES, SUNDAY TIMES (2009)*

*He was the first to patent the process of distilling this cannel coal into coal oil.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

*The leaves are distilled for the production of cineole based eucalyptus oil.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

*The leaves are steam distilled as a commercial source of cineole based eucalyptus oil.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

*The songs they brought to the sessions -- many written during the voyage -- were original and distinctive,*
*distilling their recent musical influences.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

*The other industries are distilling and linen manufacture.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

*it has been described as distilling the art of yogic concentration.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

*One depended on distilling an additive for reactivity, while the other used a petroleum based reagent.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

*Paraffin wax could also be processed by distilling residue left after crude petroleum was refined.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

*He distilled this by a process of his own invention from crude oil.*
*RETRIEVED FROM WIKIPEDIA CC BY-SA 3...*

**COBUILD Collocations**

https://www.collinsdictionary.com/dictionary/english/distil     11/20/2022 06:36:24 PM

## distil

distil the essence of

**Trends of**

## distil

View usage for: All Years ▾



**In other languages**

## distil

British English: distil    verb /dɪˈstɪl/
If a liquid such as whisky or water is distilled, it is heated until it changes into steam or vapour and then cooled until it becomes liquid again. This is usually done in order to make it pure.

*Pure water is vital in whisky distilling.*

American English: distill    /dɪˈstɪl/
Brazilian Portuguese: destilar
Chinese: 蒸馏
European Spanish: destilar

Italian: distillare
Japanese: 蒸留する
Korean: 증류하다
European Portuguese: destilar

https://www.collinsdictionary.com/dictionary/english/distil        11/20/2022 06:36:24 PM

French: distiller
German: destilieren

Latin American Spanish: destilar

Translate your text for free

**Browse alphabetically**                    **Related terms of**

# distil                                      # distil

disthronize                                   dis'til
distich                                       distil the essence of
distichous
**distil**
distil the essence of
distill
distilland

All ENGLISH words that begin with 'D'

**Source**

Definition of **distil** from the Collins English Dictionary
Read about the team of authors behind Collins Dictionaries.

New from Collins

Quick Word Challenge

Question: 1 ~ **Score: 0 / 5**

https://www.collinsdictionary.com/dictionary/english/distil          11/20/2022 06:36:24 PM



This page in

English

FAQS
Related Links

Browse all official Collins
dictionaries

Consent Management
Terms & Conditions
Privacy Policy
California Privacy Rights
Do Not Sell My Personal Information

About Us     Contact Us

© Collins 2022



https://www.macmillandictionary.com/dictionary/american/liquor     11/20/2022 07:43:17 PM



https://www.macmillandictionary.com/dictionary/american/liquor     11/20/2022 07:43:17 PM

**CONTACT**
**PRIVACY**
**CONSENT MANAGEMENT**
**COOKIES POLICY**
**TERMS AND CONDITIONS**
**FAQ**
**INDEX**

**ABOUT**
**AUTHORS**
**PARTNERS**
**OPTIONS**
**TOOLS**

**FOLLOW US**

Join Macmillan Dictionary on Twitter and Facebook for daily word facts, quizzes and language news.

© Macmillan Education Limited 2009–2022

https://www.macmillandictionary.com/dictionary/american/basin     11/20/2022 07:53:23 PM



https://www.macmillandictionary.com/dictionary/american/basin    11/20/2022 07:53:23 PM



**1b** a large area of the Earth's surface that is lower than the surrounding area

*the Caribbean Basin*

Synonyms and related words    +

**2** a large round open container used for holding water or washing things in

Synonyms and related words    +

**2a** a sink in a bathroom

Synonyms and related words    +

American definition and synonyms of basin from the online English dictionary from Macmillan Education.
This is the American English definition of basin.View British English definition of basin.
Change your default dictionary to British English.
View the pronunciation for basin.

**≋ THESAURUS**

| TRENDING WORDS | | SYNONYMS OF THE MONTH |
|---|---|---|
| for | 0.1% | *gift* |
| blue movie | -8.3% | |
| take on | -4.0% | |
| put off | -0.3% | |
| keen on something | -2.0% | |

present    surprise



https://www.thefreedictionary.com/Tahoe    11/20/2022 08:10:21 PM



https://www.thefreedictionary.com/Tahoe      11/20/2022 08:10:21 PM

2006, 2007, 2009, 2011, 2014

## Ta•hoe ( 'tō hō)

n.

Lake, a lake in E California and W Nevada, in the Sierra Nevada Mountains: resort. ab. 200 sq. mi. (520 sq. km).

**"CITE" ⊕⊕** Random House Kernerman Webster's College Dictionary, © 2010 K Dictionaries Ltd. Copyright 2005, 1997, 1991 by Random House, Inc. All rights reserved.

Want to thank TFD for its existence? Tell a friend about us, add a link to this page, or visit the webmaster's page for free fun content.

Link to this page:

<a href="https://www.thefreedictionary.com/Tahoe">Tahoe</a>



Advertisement. Bad banner? Please let us know
Remove Ads

https://www.thefreedictionary.com/Tahoe          11/20/2022 08:10:21 PM



https://www.thefreedictionary.com/Tahoe          11/20/2022 08:10:21 PM

| Table Square | Tahoe Backcountry Ski Patrol |
| tahsil | Tahoe Basin Wide Area Network |
| tahsildar | Tahoe Center For A Sustainable Future |
| Tai | |



Advertisement. Bad banner? Please let us know Remove Ads

**More from** THE FREE DICTIONARY

Mobile Apps    App Store    Google play    kindle    Windows    Windows Phone

Free Tools    For surfers: Free toolbar & extensions | Word of the Day | Bookmark | Help
For webmasters: Free content | Linking | Lookup box

Terms of Use | Privacy policy | Feedback | Advertise with Us | Copyright © 2003-2022 Farlex, Inc

Disclaimer
All content on this website, including dictionary, thesaurus, literature, geography, and other reference data is for informational purposes only. This information should not be considered complete, up to date, and is not intended to be used in place of a visit, consultation, or advice of a legal, medical, or any other professional.

| | |
|---|---|
| **To:** | Amoss, Matthew (FabianNehrbass@patents.gs) |
| **Subject:** | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGE CO. - T21144US (3) |
| **Sent:** | November 22, 2022 08:15:57 PM |
| **Sent As:** | ecom110@uspto.gov |
| **Attachments:** | |

**United States Patent and Trademark Office (USPTO)**

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **November 22, 2022** for
**U.S. Trademark Application Serial No. 90703327**

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action in order to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action.**  This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS).  Your response must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response period.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

· **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

· **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

· **Beware of trademark-related scams.**  Protect yourself from people and companies that may try to take financial advantage of you.  Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you.  We will never request your credit card number or social security number over the phone.  And all official USPTO correspondence will only be emailed from the domain "@uspto.gov."   Verify the correspondence originated from us by using your Serial Number in our database, TSDR, to confirm that it appears under the "Documents"  tab, or contact the Trademark Assistance Center.

· **Hiring a U.S.-licensed attorney.**  If you do not have an attorney and are not required to have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.

PTO- 1960
Approved for use through 11/30/2023. OMB 0651-0050
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Request for Reconsideration after Final Action

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 90703327 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 110 |
| **MARK SECTION** | |
| **MARK** | mark |
| **LITERAL ELEMENT** | BASIN BEVERAGE CO. |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **EVIDENCE SECTION** | |
| **EVIDENCE FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | evi_45309233-202303061109 15341589_._Response_to_Fi nal_Office_Action_-_1.pdf |
| **CONVERTED PDF FILE(S) (18 pages)** | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0002.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0003.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0004.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0005.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0006.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0007.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0008.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0009.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0010.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0011.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0012.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0013.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0014.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0015.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0016.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0017.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0018.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0019.JPG |
| **ORIGINAL PDF FILE** | evi_45309233-202303061109 15341589_. Exhibit_G_-_Be ar_Basin_Medium_Roast___L ong_Valley_Coffee.pdf |
| **CONVERTED PDF FILE(S)** (2 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0020.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0021.JPG |
| **ORIGINAL PDF FILE** | evi_45309233-202303061109 15341589_. Exhibit_H_-_Gr eat_Basin_NPS.pdf |
| **CONVERTED PDF FILE(S)** (3 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0022.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0023.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0024.JPG |
| **ORIGINAL PDF FILE** | evi_45309233-202303061109 15341589_. Exhibit_J_-_TA HOE_BASIN.pdf |
| **CONVERTED PDF FILE(S)** (55 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0025.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0026.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0027.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0028.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0029.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0030.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0031.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0032.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0033.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0034.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0035.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0036.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0037.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0038.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0039.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0040.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0041.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0042.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0043.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0044.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0045.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0046.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0047.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0048.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0049.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0050.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0051.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0052.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0053.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0054.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0055.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0056.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0057.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0058.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0059.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0060.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0061.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0062.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0063.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0064.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0065.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0066.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0067.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0068.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0069.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0070.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0071.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0072.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0073.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0074.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0075.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0076.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0077.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0078.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0079.JPG |
| **ORIGINAL PDF FILE** | evi_45309233-202303061109 15341589_-_Exhibit_K_-_Great_Basin_Coffee_Company_-_closed.pdf |
| **CONVERTED PDF FILE(S)** **(18 pages)** | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0080.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0081.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0082.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0083.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0084.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0085.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0086.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0087.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0088.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0089.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0090.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0091.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0092.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0093.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0094.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0095.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0096.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0097.JPG |
| **ORIGINAL PDF FILE** | evi_45309233-202303061109 15341589_._Exhibit_L_-_Tu rning_Basin.pdf |
| **CONVERTED PDF FILE(S)** (3 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0098.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0099.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0100.JPG |
| **ORIGINAL PDF FILE** | evi_45309233-202303061159 36865882_._Exhibit_I_-_Gr eat_Basin_Coffee_Company_-_response.pdf |
| **CONVERTED PDF FILE(S)** (4 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0101.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0102.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0103.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\907\033\90703327\xml13 \RFR0104.JPG |
| **DESCRIPTION OF EVIDENCE FILE** | Argument regarding likelihood of confusion; Exhibits G, H, I, J, K, and L to the argument |
| **ATTORNEY INFORMATION (current)** | |
| **NAME** | Fabian Nehrbass |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C. |
| **INTERNAL ADDRESS** | Suite 4310 |
| **STREET** | 701 Poydras Street |
| **CITY** | New Orleans |
| **STATE** | Louisiana |
| **POSTAL CODE** | 70139 |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |

| | |
|---|---|
| **PHONE** | 504-835-2000 |
| **FAX** | 504-835-2070 |
| **EMAIL** | FabianNehrbass@patents.gs |
| **DOCKET/REFERENCE NUMBER** | T21144US (3) |
| **ATTORNEY INFORMATION (proposed)** | |
| **NAME** | Fabian Nehrbass |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C. |
| **INTERNAL ADDRESS** | Suite 4310 |
| **STREET** | 701 Poydras Street |
| **CITY** | New Orleans |
| **STATE** | Louisiana |
| **POSTAL CODE** | 70139 |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **PHONE** | 504-835-2000 |
| **FAX** | 504-835-2070 |
| **EMAIL** | FabianNehrbass@patents.gs |
| **DOCKET/REFERENCE NUMBER** | 100142.3 |
| **OTHER APPOINTED ATTORNEY** | Charles C. Garvey, Jr., Gregory C. Smith, Seth M. Nehrbass, Julia M. FitzPatrick, Vanessa M. D'Souza, and Julie R. Chauvin |
| **CORRESPONDENCE INFORMATION (current)** | |
| **NAME** | Fabian Nehrbass |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | FabianNehrbass@patents.gs |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | sford@patents.gs; mrodriguez@patents.gs; aoshaughnessy@patents.gs |
| **DOCKET/REFERENCE NUMBER** | T21144US (3) |
| **CORRESPONDENCE INFORMATION (proposed)** | |
| **NAME** | Fabian Nehrbass |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | FabianNehrbass@patents.gs |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | sford@patents.gs; jchauvin@patents.gs; aoshaughnessy@patents.gs |
| **DOCKET/REFERENCE NUMBER** | 100142.3 |
| **SIGNATURE SECTION** | |
| **RESPONSE SIGNATURE** | /Fabian M. Nehrbass, LA Bar #35264/ |
| **SIGNATORY'S NAME** | Fabian M. Nehrbass |
| **SIGNATORY'S POSITION** | Attorney of Record, Louisiana Bar Member |
| **SIGNATORY'S PHONE NUMBER** | 504-828-6014 |
| **DATE SIGNED** | 03/06/2023 |

| ROLE OF AUTHORIZED SIGNATORY | Authorized U.S.-Licensed Attorney |
|---|---|
| SIGNATURE METHOD | Signed directly within the form |
| CONCURRENT APPEAL NOTICE FILED | YES |
| FILING INFORMATION SECTION | |
| SUBMIT DATE | Mon Mar 06 12:03:22 ET 2023 |
| TEAS STAMP | USPTO/RFR-XX.XX.X.XXX-202 30306120322422297-9070332 7-850d522393796df372b9b7e eb1db2bf5dce0175f7e3565e5 7a1d95cd1989a0cf5a-N/A-N/ A-20230306115936865882 |

PTO- 1960
Approved for use through 11/30/2023. OMB 0651-0050
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## Request for Reconsideration after Final Action

### To the Commissioner for Trademarks:

Application serial no. **90703327** BASIN BEVERAGE CO.(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/90703327/large) has been amended as follows:

### EVIDENCE
Evidence has been attached: Argument regarding likelihood of confusion; Exhibits G, H, I, J, K, and L to the argument
**Original PDF file:**
evi_45309233-202303061109 15341589_._ Response_to_Fi nal_Office_Action_-_1.pdf
**Converted PDF file(s)** ( 18 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6
Evidence-7Evidence-8Evidence-9Evidence-10Evidence-11Evidence-12Evidence-13Evidence-14
Evidence-15Evidence-16Evidence-17Evidence-18
**Original PDF file:**
evi_45309233-202303061109 15341589_._ Exhibit_G_-_Be ar_Basin_Medium_Roast___L ong_Valley_Coffee.pdf
**Converted PDF file(s)** ( 2 pages) Evidence-1Evidence-2
**Original PDF file:**
evi_45309233-202303061109 15341589_._ Exhibit_H_-_Gr eat_Basin_NPS.pdf
**Converted PDF file(s)** ( 3 pages) Evidence-1Evidence-2Evidence-3
**Original PDF file:**
evi_45309233-202303061109 15341589_._ Exhibit_J_-_TA HOE_BASIN.pdf
**Converted PDF file(s)** ( 55 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6
Evidence-7Evidence-8Evidence-9Evidence-10Evidence-11Evidence-12Evidence-13Evidence-14
Evidence-15Evidence-16Evidence-17Evidence-18Evidence-19Evidence-20Evidence-21Evidence-22
Evidence-23Evidence-24Evidence-25Evidence-26Evidence-27Evidence-28Evidence-29Evidence-30
Evidence-31Evidence-32Evidence-33Evidence-34Evidence-35Evidence-36Evidence-37Evidence-38
Evidence-39Evidence-40Evidence-41Evidence-42Evidence-43Evidence-44Evidence-45Evidence-46
Evidence-47Evidence-48Evidence-49Evidence-50Evidence-51Evidence-52Evidence-53Evidence-54Evidence-55
**Original PDF file:**
evi_45309233-202303061109 15341589_._ Exhibit_K_-_Gr eat_Basin_Coffee_Company_ _-_closed.pdf
**Converted PDF file(s)** ( 18 pages) Evidence-1Evidence-2Evidence-3Evidence-4Evidence-5Evidence-6
Evidence-7Evidence-8Evidence-9Evidence-10Evidence-11Evidence-12Evidence-13Evidence-14
Evidence-15Evidence-16Evidence-17Evidence-18
**Original PDF file:**
evi_45309233-202303061109 15341589_._ Exhibit_L_-_Tu rning_Basin.pdf
**Converted PDF file(s)** ( 3 pages) Evidence-1Evidence-2Evidence-3
**Original PDF file:**

evi_45309233-202303061159 36865882_ . Exhibit_I_-_Gr eat_Basin_Coffee_Company__-_response.pdf
**Converted PDF file(s)** ( 4 pages) Evidence-1Evidence-2Evidence-3Evidence-4

The owner's/holder's current attorney information: Fabian Nehrbass. Fabian Nehrbass of GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C., is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

 Suite 4310
 701 Poydras Street
 New Orleans, Louisiana 70139
 United States
The docket/reference number is T21144US (3).
 The phone number is 504-835-2000.
 The fax number is 504-835-2070.
 The email address is FabianNehrbass@patents.gs

The owner's/holder's proposed attorney information: Fabian Nehrbass. Other appointed attorneys are Charles C. Garvey, Jr., Gregory C. Smith, Seth M. Nehrbass, Julia M. FitzPatrick, Vanessa M. D'Souza, and Julie R. Chauvin. Fabian Nehrbass of GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C., is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, and the attorney(s) is located at

 Suite 4310
 701 Poydras Street
 New Orleans, Louisiana 70139
 United States
The docket/reference number is 100142.3.
 The phone number is 504-835-2000.
 The fax number is 504-835-2070.
 The email address is FabianNehrbass@patents.gs

Fabian Nehrbass submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

**Correspondence Information (current)**
 Fabian Nehrbass
 PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
 SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): sford@patents.gs; mrodriguez@patents.gs; aoshaughnessy@patents.gs

The docket/reference number is T21144US (3).

**Correspondence Information (proposed)**
 Fabian Nehrbass
 PRIMARY EMAIL FOR CORRESPONDENCE: FabianNehrbass@patents.gs
 SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): sford@patents.gs; jchauvin@patents.gs; aoshaughnessy@patents.gs

The docket/reference number is 100142.3.

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the owner/holder and the owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

**SIGNATURE(S)**
**Request for Reconsideration Signature**
Signature: /Fabian M. Nehrbass, LA Bar #35264/    Date: 03/06/2023
Signatory's Name: Fabian M. Nehrbass
Signatory's Position: Attorney of Record, Louisiana Bar Member

Signatory's Phone Number: 504-828-6014 Signature method: Signed directly within the form

The signatory has confirmed that he/she is a U.S.-licensed attorney who is an active member in good standing of the bar of the highest court of a U.S. state (including the District of Columbia and any U.S. Commonwealth or territory); and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S.-licensed attorney not currently associated

with his/her company/firm previously represented the owner/holder in this matter: the owner/holder has revoked their power of attorney by a signed revocation or substitute power of attorney with the USPTO; the USPTO has granted that attorney's withdrawal request; the owner/holder has filed a power of attorney appointing him/her in this matter; or the owner's/holder's appointed U.S.-licensed attorney has filed a power of attorney appointing him/her as an associate attorney in this matter.

The applicant is filing a Notice of Appeal in conjunction with this Request for Reconsideration.

Mailing Address:   Fabian Nehrbass
    GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
    Suite 4310
    701 Poydras Street
    New Orleans, Louisiana 70139
Mailing Address:   Fabian Nehrbass
    GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
    Suite 4310
    701 Poydras Street
    New Orleans, Louisiana 70139

Serial Number: 90703327
Internet Transmission Date: Mon Mar 06 12:03:22 ET 2023
TEAS Stamp: USPTO/RFR-XX.XX.X.XXX-202303061203224222
97-90703327-850d522393796df372b9b7eeb1db
2bf5dce0175f7e3565e57a1d95cd1989a0cf5a-N
/A-N/A-20230306115936865882

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Final Office Action dated November 22, 2022
GSN File 100142.3

**LIKELIHOOD OF CONFUSION RESPONSE**

### A. INTRODUCTION – THE REFUSAL

Applicant's applied for mark is "BASIN BEVERAGE CO.".

Applicant has applied for the mark for the goods/services listed below.

IC 030. Tea-based beverages; Coffee based beverages; Kombucha tea

IC 032. Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages

IC 033. Beverages, namely, wine, hard seltzer; Hard kombucha tea

IC 043. Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck

This is a response to the Final Office Action dated November 22, 2022.

Per the Final Office Action, registration for BASIN BEVERAGE CO. is refused for classes 30, 32, and 33, due to an alleged likelihood of confusion with the following marks, for the following classes of the application:

| Registration No. | Mark | Goods/Services | Class Refused Due to Registration |
|---|---|---|---|
| 4890160 | NEW BASIN DISTILLING COMPANY | Liquor | IC 032, 033 |
| 6760872 | Tahoe Basin | Chai tea; Coffee | IC 030 |
| 5510241 | GREAT BASIN COFFEE COMPANY | coffee; coffee and tea; coffee-based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial | IC 030 |

1

| | | coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee. | |
|---|---|---|---|

Each alleged likelihood of confusion is addressed in turn.

**B.  NEW BASIN DISTILLING COMPANY - liquor**

Applicant respectfully submits there is no likelihood of confusion between Applicant's mark of BASIN BEVERAGE CO. and the cited registration for NEW BASIN DISTILLING COMPANY. As noted above, the good for NEW BASIN DISTILLING COMPANY is "liquor." The mark is being cited against Applicant's BASIN BEVERAGE CO. for IC 032: Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages and IC 033: Beverages, namely, wine, hard seltzer; Hard kombucha tea.

The Final Office Action finds a likelihood of confusion based on allegations that (1) BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY create a similar commercial impression; and (2) the goods are similar in kind and/or closely related. Applicant respectfully disagrees with this assertion of likelihood of confusion.

2

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Final Office Action dated November 22, 2022
GSN File 100142.3

### a. The marks are dissimilar, when viewed in their entireties as to appearance, sound, connotation and commercial impression

Applicant respectfully disagrees with the Final Office Action's assertion that BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY create a similar commercial impression. In evaluating the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression, Applicant submits this factor weighs in favor of registration.

First, the appearance is sufficiently distinct to not render confusion likely. Applicant's mark consists of three words: BASIN BEVERAGE CO. The cited mark is four words: NEW BASIN DISTILLING COMPANY. Only one of the six/seven[1] words, BASIN, is the same. In appearance, the marks share but a single term.

Second, as to sound, there is but one word of the six/seven – BASIN – that sounds the same. The rest bear no resemblance in sound. And it is not as if the single shared word leads the overall marks to sound similar. Each mark is long – Applicant's three-word mark of BASIN BEVERAGE CO. and the four-word cited mark of NEW BASIN DISTILLING COMPANY are not alike in sound. For Applicant's mark, BASIN is the first term. For the cited mark, it is the second. The emphasis of *NEW* in the cited registration cannot be ignored.

In connotation, it is clear the cited mark refers specifically to a distilling company, or one that produces distilled spirits. Applicant's mark, on the other hand, does not imply that it offers distilled spirits, and in fact, the goods and services applied for do not include liquor (the good of the cited mark) or spirits. Applicant's mark is therefore sufficiently dissimilar in connotation to the cited mark.

Finally, as to overall commercial impression, Applicant respectfully submits that the single shared term of BASIN does not create a similar overall commercial impression. As the Federal

---

[1] Applicant respectfully disagrees that CO. and COMPANY create a similar commercial impression between the marks BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY. However, acknowledging that CO. is an abbreviation of COMPANY, Applicant notes that there are 7 different words (or six if one counts abbreviations as the same as the non-abbreviated word).

3

Circuit has stated, "likelihood of confusion[[,]] cannot be predicated on dissection of a mark, that is, on only part of a mark." *In re Nat. Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985). Moreover, although DISTILLING COMPANY and BEVERAGE CO. have been disclaimed, "[t]he public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." *Id.* at p. 1059. Thus, although BEVERAGE CO. may be less dominant than BASIN in BASIN BEVERAGE CO. and DISTILLING COMPANY may be less dominant than NEW BASIN in NEW BASIN DISTILLING COMPANY, the marks, as a whole, still must be considered.

In asserting an alleged similar overall commercial impression, the Office Action provides that the use of CO and Company do little to distinguish the marks for trademark purposes. Applicant respectfully notes that the two words, CO and Company, have different sounds and appearance and therefore do help distinguish the marks from each other.

Applicant respectfully submits no similar overall commercial impression is created in comparing the marks. Additional argument in this regard is found in the Additional Arguments section, *infra*.

b.   ***Third Party Use Demonstrates Why A Single Shared Term of Basin Is Not Likely to Cause Confusion***

BASIN is a widely used term for trademarks both with those goods in Applicant's application (i.e. beer) and those goods (liquor) of the cited mark. A table showing some registered marks utilizing BASIN as part of their mark is included below (this table incorporates information from prior tables).

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) Status | Owner |
|------|------|------|------|------|
| WILD BASIN | 6014406 | Beer | Mar. 17, 2020 | CANARCHY CRAFT BREWERY COLLECTIVE LLC |

4

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Final Office Action dated November 22, 2022
GSN File 100142.3

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) *Status* | Owner |
|---|---|---|---|---|
| JEWEL BASIN | 6429315 | Beer | Jul. 20, 2021 | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO. | 5608888 | Non-alcoholic cocktail mixes | Nov. 13, 2018 | ACE Basin Cocktail Company |
| NEW BASIN DISTILLING COMPANY | 4890160 | Liquor | Jan. 19, 2016 | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO. | 5177835 | Beverages, namely, beer and soda pop | Apr. 4, 2017 | PHOENICIAN BREWING COMPANY, LLC |
| BASIN & RANGE | 5022765 | Distilled Spirits | Aug. 16, 2016 | Congregation Spirits, LLC |
| TURNING BASIN | 88-373488 97-498075 | Beer; Wine; alcoholic beverages except beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon | (Apr. 5, 2019) *Recently abandoned* (July 11, 2022) *Notice of Allowance issued 24 January 2023*[2] | Buffalo Bayou Distilleries, LLC |
| WILD BASIN | 88-614301 | Soda pops; Soft drinks | (Sep. 12, 2019) *Notice of Allowance Issued* | CANarchy Craft Brewery Collective LLC |
|  | 4746735 | Beer, ale, lager, stout and porter | June 2, 2015 | KB Brewing, Inc. DBA Klamath Basin Brewing Company |

---

[2] Applicant is adding this application to the record as Exhibit L.

5

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Final Office Action dated November 22, 2022
GSN File 100142.3

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) *Status* | Owner |
|------|------|------|------|------|
| HELIO BASIN | 5246096 | Headwear; shirts Beer | July 18, 2017 | Phoenician Brewing Company, LLC |
| BASIN OF ATTRACTION | 6019694 | Beer; ale | March 24, 2020 | August Schell Brewing Company |
| RIVER BASIN | 5429308 | Liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; whiskey spirits | March 20, 2018 | River Basin Distillery |

Notably, the cited mark NEW BASIN DISTILLING COMPANY is just one of 11 registered trademarks or trademark applications which incorporates the word BASIN previously cited. Upon additional searching, Applicant has located an additional trademark, RIVER BASIN, Reg. No. 5,429,308, for IC 033 liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; whiskey spirits (see Exhibit E to prior response filed 24 October 2022). Of these 12 marks, four of them list liquor or distilled spirits under their goods: NEW BASIN DISTILLING COMPANY for liquor, BASIN & RANGE for distilled spirits, TURNING BASIN for spirits, vodka, whiskey, gin, bourbon, and RIVER BASIN for liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; whiskey spirits. BASIN is thus not simply shared between Applicant's BASIN BEVERAGE CO. mark and NEW BASIN DISTILLING COMPANY for different goods, but BASIN is a term shared amongst sellers of liquor / spirits. Because there are multiple sellers of goods of liquor / spirits that utilize BASIN, Applicant respectfully submits the shared term BASIN in NEW BASIN DISTILLING COMPANY and BASIN BEVERAGE CO. cannot be the basis for a finding of a likelihood of confusion between Applicant's mark and the cited mark.

Perhaps even more important, if there is no likelihood of confusion between two marks sharing the term BASIN for the *same goods*, there likewise should be no confusion amongst two marks sharing the term BASIN for *different goods*. That is, Applicant has demonstrated that there

6

is no likelihood of confusion between it and the many separate users of trademarks for beer (a good in Applicant's application) which utilize the term BASIN. How could there be confusion with another mark, no more similar than the other marks cited, which is not even for the same goods as Applicant? If consumers are not likely to be confused between WILD BASIN and BASIN BEVERAGE CO. or HELIO BASIN BREWING CO. and BASIN BEVERAGE CO., for *the same goods*, surely there can be no confusion between BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY, *for different goods.*

Again, it bears mentioning that New Basin Distilling Company is not even the only owner of a trademark for liquor/spirits that uses the term BASIN. Since it cannot prevent other owners from using the term BASIN, for *the same goods* (liquor), why would it prevent Applicant from using the term BASIN, *for different goods*? It should not be able to do so.

   c.  ***The Goods Are Not The Same***

The question is not whether alcoholic beverages are related in a general sense, as undoubtedly, they are both beverages and alcoholic, but whether they are related such that Applicant's mark would likely cause confusion with the cited mark. Specifically, the question is whether the goods are related such that the single shared term BASIN renders consumers likely to be confused as to the source of the goods and/or services offered. In a relevant decision by the Trademark Trial and Appeal Board finding the examining attorney had failed to establish on the record the relatedness of energy vodka infused with caffeine and wine, the board explained:

> **There is no per se rule that holds that all alcoholic beverages are related**. See *G. H. Mumm & Cie v. Desnoes & Geddes Ltd.*, 917 F.2d 1292, 16 USPQ2d 1635 (Fed. Cir. 1990)[RED STRIPE and design for beer was not confusingly similar to a design of a red stripe for wines and sparkling wines]; *National Distillers and Chemical Corp. v. William Grant & Sons, Inc.*, 505 F.2d 719, 184 USPQ 34 (CCPA 1974) [DUET for prepared alcoholic cocktails, some of which contained brandy, and DUVET for French brandy and liqueurs not confusingly similar]. See also, TMEP §1207.01(a)(iv) ["there can be no rule that certain goods or services are per se related, such that there must be a likelihood of confusion from the use of similar marks in relation thereto"].

*In re White Rock Distilleries, Inc.,* Serial No. 77093221, TTAB, Oct. 5, 2009 (not precedent)(emphasis added). Applicant respectfully submits that consumers of Applicant's goods

7

are not likely to be confused with a liquor brand simply based on a single shared term. There is not evidence in the record that consumers of Applicant's goods are necessarily the same consumers of the cited mark's goods, or that consumers of Applicant's goods would not properly distinguish companies selling different alcoholic beverages, even if such companies shared a single term in common. In fact, the evidence of record, namely the various trademarks which share the term BASIN *for liquor / spirits*, suggests that a shared term of BASIN alone is not likely to cause confusion between consumers *even of the same goods.*

### C. GREAT BASIN COFFEE COMPANY & TAHOE BASIN – coffee/tea

Applicant respectfully submits there is no likelihood of confusion between Applicant's mark of BASIN BEVERAGE CO. and the cited registrations of GREAT BASIN COFFEE COMPANY (for coffee; coffee and tea; coffee-based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee) or TAHOE BASIN (for chai tea; coffee) for IC 030 (tea-based beverages; coffee-based beverages; kombucha tea).

Firstly, it should be noted that GREAT BASIN COFFEE COMPANY (Reg. No. 5,510,241) is on the supplemental register (see registration) and that the owner of the mark, during prosecution, disclaimed "Great Basin", stating the applicant was "[a]dding 2 disclaimers to acknowledge that Great Basin Coffee Company does not and will not have exclusive rights to "Great Basin" because it is geographically descriptive and other companies must be able to use it…" (Exhibit I, Response to Office Action by Great Basin Coffee Company).

Secondly, TAHOE BASIN is geographically descriptive as well. A screenshot showing the listed owner's address shows that the address is near "Lake Tahoe Basin." (See Exhibit J, documents regarding owner of TAHOE BASIN location (Pacific Green Coffee Roasters see specimen submitted in USPTO for TAHOE BASIN and listed owner address).

Although each of the trademarks include the term BASIN, each mark includes additional terms that serve to distinguish one trademark from another. BASIN BEVERAGE CO. consists of

8

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Final Office Action dated November 22, 2022
GSN File 100142.3

three words, GREAT BASIN COFFEE COMPANY consists of four words, and TAHOE BASIN consists of two words. The only word that is common to all of the trademarks is BASIN. It is the only word that is common in terms of sound or appearance. Only Co. and company have a similar connotation. When considering each mark in their entirety, the marks do not create a similar commercial impression such that consumers would likely assume a connection between the various trademark owners. Consumers would assume that TAHOE BASIN is located near the Lake Tahoe Basin (which it is) and that Great Basin is likewise descriptive (per the Great Basin Applicant's own admission, it is (presumably a reference to The Great Basin – see https://www.nps.gov/grba/planyourvisit/the-great-basin.htm)(Exhibit H). Moreover, additional third-party uses of unregistered trademarks demonstrates that the consuming public has to look beyond the word BASIN in determining the source of a coffee or tea related drink. For example, please see the table below, which shows additional, unregistered marks.

| Mark | Goods/Services |
|---|---|
| THUNDER BASIN COFFEE COMPANY | Coffee shop |
| THUNDER BASIN | Coffee shop |
| NILE BASIN COFFEE | coffee |
| SNOWBASIN | coffee |
| BEAR BASIN | coffee |

Thus, in addition to the cited marks, there is THUNDER BASIN COFFEE COMPANY (also uses mark THUNDER BASIN) (https://www.facebook.com/Thunderbasincoffeecompany/photos/), NILE BASIN COFFEE (https://www.nilebasinllc.com/), SNOWBASIN coffee (https://www.google.com/shopping/product/1?client=firefox-b-1-d&q=%22basin+coffee%22&prds=epd:14515708719327015984,eto:14515708719327015984_0,pid:14515708719327015984&sa=X&ved=0ahUKEwjAmL-sifL6AhWzTTABHTtVBv8Q9pwGCAg) (see Exhibit F, submitted 24 October 2022), and BEAR

BASIN (https://longvalleycoffee.com/products/bear-basin-medium-roast) (see Exhibit G). The use of the term BASIN by a number of third parties further supports Applicant's position that consumers would not find that the Applicant's trademark of BASIN BEVERAGE CO. would likely be confused with GREAT BASIN COFFEE COMPANY or TAHOE BASIN.

Moreover, Applicant respectfully disagrees with the Final Office Action's assertion that "registrant's use of the word TAHOE does not create a different commercial impression from the use of the word BASIN alone in the applicant's mark." TAHOE BASIN is geographically descriptive and refers specifically to a geographic area. Without TAHOE, the mark would have a very different connotation. With each mark examined in their entireties, Applicant submits that there would be no confusion between BASIN BEVERAGE CO. and TAHOE BASIN.

It should be noted that there also can be no confusion with GREAT BASIN COFFEE COMPANY because the mark appears no longer in use. Please see the attached documents, as Exhibit K, showing the website no longer active, Instagram deleted, Facebook page non-existent, Utah Secretary of State page showing company as expired.

### D. ADDITIONAL ARGUMENT

Applicant respectfully disagrees that any likelihood of confusion exists, because (1): Applicant's BASIN BEVERAGE CO. mark and the cited marks are sufficiently dissimilar; and (2) the extensive use of BASIN by third parties demonstrates that shared use of BASIN alone cannot be the basis for a finding of a likelihood of confusion, between Applicant's mark of BASIN BEVERAGE CO. and the cited marks of NEW BASIN DISTILLING COMPANY, GREAT BASIN COFFEE COMPANY, and TAHOE BASIN.

1. Applicant's Mark is Sufficiently Dissimilar To The Cited Marks

The Office Action relies upon the fact that each of the cited registrations/applications possess the term "BASIN". However, the Office Action fails to give proper weight to the additional terms in the cited registrations and applications.

As noted in *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), "[t]he Board has often held that it is the first part of a mark which is most likely to be impressed upon the mind of the

10

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Final Office Action dated November 22, 2022
GSN File 100142.3

consumer and remembered. *See e.g., Presto Prod. Inc. v. Nice-Pak Prod., Inc.,* 9 USPQ2d 1895, 1897 (TTAB 1988)." With respect to the present refusal, each of the marks has another word or term prior to BASIN (NEW, GREAT, TAHOE). Applicant submits that once proper consideration is given to the entirety of the marks, especially in light of the fact that the additional terms serve as the dominant portions of such marks, there is sufficient dissimilarity between the marks so as to not find any likelihood of confusion. However, even if the dominant portion of each mark was regarded as the term plus BASIN, the additional terms still result in sufficient dissimilarity.

In *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), (not precedent), the Trademark Trial and Appeal Board reversed the refusal to register Applicant's design mark for CANNONBALL CREEK BREWING COMPANY GOLDEN COLORADO (BREWING COMPANY GOLDEN, COLORADO disclaimed) for "beer" under  Section 2(d) based on an alleged likelihood of confusion with the mark CANNONBALL DOUBLE IPA (DOUBLE IPA disclaimed) for "ale; beer; brewed malt-based alcoholic beverage in the nature of beer."

In explaining its decision, the TTAB emphasized the importance of the additional term, noting that it created a different commercial impression in the marks:

> In view of the foregoing, we find that the dominant portion of Applicant's mark is the wording CANNONBALL CREEK and that the dominant element of the cited mark is the term CANNONBALL.
> In terms of connotation and commercial impression, however, we find that dominant portions of the marks at issue to be quite dissimilar. The circumstances of this case are very similar, if not identical, to those in *Champagne Louis Roederer S.A. v. Delicato Vineyards*, 148 F.3d 1373, 47 USPQ2d 1459 (Fed. Cir. 1998). In that case, the Federal Circuit affirmed the Board's holding that the second word in applicant's mark CRYSTAL CREEK served to create a totally different commercial impression from the one created by opposer's mark CRISTAL when the marks were contemporaneously used on wine.
> In the present case as in *Champagne Louis*, the dominant portion of Applicant's mark consists of two words, with the first word being identical to the dominant element of the cited mark. Put quite simply, we find that the presence of the word CREEK in Applicant's mark, like the presence of CREEK in the applicant's mark in *Champagne Louis*, causes the mark to be dissimilar from the cited mark in meaning and overall commercial impression.

11

*In re Hutchinson and Stengl* , Serial No. 86809909, (pp. 8-9)

Similarly, in *Hi Wines Ltd. V. Hi Degree Tequila, LLC*, Opposition No. 91251181, (2021) (not precedent) the TTAB found that the Applicant's HI DEGREE mark for distilled blue agave liquor was sufficiently dissimilar from the Opposer's mark HI! for alcoholic beverages except beer, so that confusion was unlikely. The Board found this even though the goods were "in part, legally identical, and the channels of trade and purchasers overlap[ped]." *Id.* at p. 34. In evaluating the similarity of the marks, the Board found that the marks differed significantly in appearance and sound by virtue of the additional word DEGREE in Applicant's mark. *Id.* at p. 31.

Applicant's mark of BASIN BEVERAGE CO. shares the term BASIN with the third-party marks. However, it also has BEVERAGE CO. as part of its mark. Much like CANNONBALL and CANNONBALL CREEK, HI! and HI DEGREE, and CRYSTAL CREEK and CRISTAL, Applicant's mark of BASIN BEVERAGE CO. is sufficiently dissimilar from NEW BASIN DISTILLING COMPANY, TAHOE BASIN, and GREAT BASIN COFFEE COMPANY due to the additional words in the marks. Such additional words lead the marks to be significantly different in both appearance and sound, and thus, commercial impression.

2.  Extensive Third-Party Usage Precludes a Finding of a Likelihood of Confusion

Furthermore, the extensive use of the term BASIN by third parties reveals there would be no confusion between Applicant's applied for BASIN BEVERAGE CO. mark and the cited marks. Due to the third-party usage, consumers would have to look at the entire mark of any mark which contains the term "BASIN" in order to determine the source of the goods or services. Accordingly, consumers would not be confused simply because two marks contain the term "BASIN". Consumers would have to appreciate minute differences between any marks containing the term "BASIN".

a.  *Additional Usage of "BASIN" by Others*

In addition to the cited registrations, Applicant further refers to the third-party usage of the term BASIN cited herein and that submitted in Applicant's prior response. That is, any time a consumer sees a mark including "BASIN," the consumer must evaluate the entirety of the mark

12

and cannot believe that all the goods sold under marks including the term "BASIN" derive from the same source.

> b. *The "BASIN" Portion of the Cited Marks is Entitled To A Narrow Scope of Protection*

The "BASIN" portion of each of the cited marks is weak and entitled to a narrow scope of protection due to the extensive third-party use of "BASIN" in other marks. Because of such third-party use, consumers will look to minute differences between any mark containing "BASIN" to distinguish between the marks, the marks are weak (with respect to their usage of "BASIN") and simply possessing the term "BASIN" in a mark, even with the same goods, should not serve as a basis for refusal of Applicant's mark.

As explained by the Federal Circuit,

> "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark."*Juice Generation,*794 F.3d at 1338, 2015 WL 4400033, at *3. "The weaker an opposer's mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection." *Id.; see also Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,*396 F.3d 1369, 1373 (Fed.Cir.2005) ("Evidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.").

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1373 (Fed. Cir. 2015).

In *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334 (Fed. Cir. 2015), the Federal Circuit addressed whether the mark "PEACE LOVE AND JUICE" and a design for use with juice bar services was likely to cause confusion with opposer's marks, all which contained the phrase "PEACE & LOVE" for restaurant services. *Id.* at 1336. Remanding for further proceedings, the Federal Circuit held that the Board did not adequately assess the weakness of the "PEACE & LOVE" marks and did not properly consider the three-word combination of the applicant's mark "PEACE LOVE AND JUICE" as a whole in comparing it to the two-word combinations in the opposer's marks.

13

In its analysis, the Federal Circuit found that the applicant's evidence of third-party uses was "powerful on its face." *Id.* at 1339. The Federal Circuit explained:

> In addition, "[a] real evidentiary value of third party *registrations* per se is to show the sense in which ... a mark is used in ordinary parlance." 2 McCarthy on Trademarks and Unfair Competition § 11:90 (4th ed.2015) (emphasis added). "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak."

*Id.* The Federal Circuit found that the Board failed to give adequate consideration to the strength or weakness of opposer's marks in light of the third-party use and registrations and that the Board erred when it stated "PEACE LOVE" is the dominant portion of "PEACE LOVE AND JUICE" and compared to "PEACE & LOVE" is virtually identical, that the addition of a disclaimed word "JUICE" does not distinguish the applicant's mark from the opposer's marks. *Id.* at 1340-1341. Rejecting such an analysis as inadequate, the Board could afford more or less weight to particular components of a mark for appropriate reasons, but it was still required to view the mark as a whole. *Id.* The Federal Circuit explained:

> But the Board did not set forth an analysis showing that it avoided the error of giving no significance to the term, which is impermissible notwithstanding that the term is generic and disclaimed. See *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 851 (Fed.Cir.1992) (Board erred by giving no weight to generic term); see also Shen Mfg. Co. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1243 (Fed.Cir.2004) ("The disclaimed elements of a mark, however, are relevant to the assessment of similarity. This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases have been disclaimed." (citation omitted)); Nat'l Data Corp., 753 F.2d at 1059 ("The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion. The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." (footnote omitted)).

*Id.* at 1341. The Federal Circuit remanded to the Board to take consideration of the disclaimed term as well as the evidence of third-party use. After remand, the mark was ultimately registered (see U.S. Reg. No. 4923032 for PEACE LOVE AND JUICE and design).

14

BASIN BEVERAGE CO.
U.S. Trademark Application Serial No. 90703327
Response to Final Office Action dated November 22, 2022
GSN File 100142.3

Similarly, in *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363 (Fed. Cir. 2015), the Federal Circuit reversed the Trademark Trial and Appeal Board's finding that there was a likelihood of confusion between applicant's mark of ✿ and opposer's mark of **KELME** ✿ (U.S. Trademark Application Serial No. 77/823,794 and U.S. Reg. No. 1,856,808). In arriving at this conclusion, the Federal Circuit relied on the dissimilarity of the marks and the many third-party marks incorporating paw prints, stating:

> We agree with Jack Wolfskin that the Board erred in its consideration of this evidence. Jack Wolfskin presented extensive evidence of third-party registrations depicting paw prints and evidence of these marks being used in internet commerce for clothing. The Board too quickly dismissed the significance of this evidence. As we recently explained in Juice Generation, such extensive evidence of third-party use and registrations is "powerful on its face," even where the specific extent and impact of the usage has not been established. 794 F.3d at 1339, 2015 WL 4400033, at *4 (detailing the extensive use of marks used in connection with the food service industry that incorporate the words "Peace" and "Love"). For example, evidence of thirdparty registrations is relevant to "show the sense in which a mark is used in ordinary parlance," id. at 1339, 2015 WL 4400033 at *4 ; that is, some segment that is common to both parties' marks may have "a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that segment is relatively weak," id. In addition, **evidence of third-party use of similar marks on similar goods "can show that customers have been educated to distinguish between different marks on the basis of minute distinctions**." Id. at 1338, 2015 WL 4400033 at *3 (internal quotation marks omitted). In this case, Jack Wolfskin's evidence demonstrates the ubiquitous use of paw prints on clothing as source identifiers. Given the volume of evidence in the record, consumers are conditioned to look for differences between paw designs and additional indicia of origin to determine the source of a given product. **Jack Wolfskin's extensive evidence of third-party uses and registrations of paw prints indicates that consumers are not as likely confused by different, albeit similar looking, paw prints.** The Board's conclusion that this factor was neutral is not supported by substantial evidence.

*Id.* at 1374 (emphasis added).

In the same way that consumers are not likely to be confused by similar paw prints, or the repeated words "PEACE" and "LOVE" due to the extensive evidence of third-party use and

15

registrations of paw prints and "PEACE LOVE" marks, consumers of Applicant's goods are not likely to be confused as to the source of the good simply because two marks include the term "BASIN." In an area where multiple trademarks incorporating BASIN exist, consumers are trained to distinguish between the marks based on "minute distinctions." In the present application, Applicant respectfully submits that the distinctions between its mark and those cited against it are much more than minute.

In a recent Federal Circuit decision, *Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211 (Fed. Cir. May 24, 2021), the Federal Circuit found there was no likelihood of confusion between the opposer's various INDUSTRY marks and the applicant's BLUE INDUSTRY mark. Addressing the similarity or dissimilarity of the marks, the Federal Circuit agreed with the Board that BLUE, the lead term in the applicant's mark BLUE INDUSTRY, made it so that the applicant's mark BLUE INDUSTRY did not bear a striking resemblance in appearance, sound, meaning or commercial impression to any of the pleaded (INDUSTRY) marks of opposer. *Id.* at *7-9.

The Federal Circuit again emphasized the importance of third-party use, stating:

"[E]vidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015). This court has held that, "The purpose of a defendant introducing third-party uses is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions." *Omaha Steaks Int'l*, 908 F.3d at 1324 (quoting *Palm Bay Imps.*, 396 F.3d at 1374) (internal quotation marks omitted). "Third[-]party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation*, 794 F.3d at 1339. **"The weaker an opposer's mark, the closer an applicant's mark can come without causing likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection."** *Id.* at 1338 (quoting *Palm Bay Imps.*, 396 F.3d 1373). "[E]xtensive evidence of third-party use and registrations is 'powerful on its face,' even where the specific extent and impact of the usage has not been established." *JackWolfskin Ausrustung Fur Draussen GmbH & Co. KGaA*

16

*v. New Millenium Sports, S.L.U.*, 797 F.3d 1363, 1374 (Fed. Cir. 2015) (quoting *Juice Generation*, 794 F.3d at 1339).

*Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211, at *9-10 (Fed. Cir. May 24, 2021) (emphasis added). The Board found that "numerous" third parties had registered or used INDUSTRY formative marks in connection with clothing and thus, INDUSTRY (or the plural thereof) is "'both conceptionally and commercially weak' and therefore **the scope of the marks' protection is limited.**" *Id.* at *10 (emphasis added). The Board found that due to the third-party registrations and use "'consumers are conditioned to look for differences between INDUSTRY formative marks to determine the source of a given product and are therefore less likely to be confused.'" *Id.* The Federal Circuit likewise found that the extensive third-party registrations and use weighed against a finding of a likelihood of confusion.

Similar to *Pure & Simple Concepts, Inc. v. I H W Mgmt.* and as previously noted, the marks cited against Applicant's mark BASIN each contain additional terms. Just as BLUE INDUSTRY was sufficiently dissimilar to INDUSTRY based on the term BLUE, so should NEW BASIN DISTILLING COMPANY be regarded as dissimilar to BASIN BEVERAGE CO. due to NEW and DISTILLING COMPANY, and GREAT BASIN COFFEE COMPANY due to GREAT and COFFEE COMPANY, and TAHOE BASIN due to TAHOE.

In yet another recent decision, *E. & J. Gallo Winery v. Thunder Road Brands, LLC*, Opposition No. 91222284, (2018), (Not precedent), the TTAB dismissed the opposition, finding that the mark THUNDER ROAD for "alcoholic beverages, namely Tennessee sour mash whiskey and moonshine" was not likely to be confused with opposer's common law use of the mark THUNDERBIRD on wine, or its registered marks for THUNDERBIRD for "wines" or THUNDERBIRD for "alcoholic beverages except beers." The TTAB noted extensive third-party registrations and usage (pp. 17-19) and found that based on such usage, the term THUNDER was weak as a source indicator for alcoholic beverages. The TTAB stated that consumers had been exposed to "so many different THUNDER-formative marks in connection with alcoholic beverages that they likely have become alert to 'minute distinctions' among the various marks." (p. 20). According to the TTAB,

17

> A mark having the term THUNDER in connection with alcoholic beverages therefore should be given a restricted scope of protection, and the THUNDERBIRD mark is not entitled to such a broad scope of protection that it is a bar to the registration of any mark comprising in part, the word "thunder."

*Id.* at 20. In the same way, the extensive usage of BASIN, as noted, demonstrates that the BASIN marks cited against Applicant should not be able to preclude registration of Applicant's mark, simply on the basis that the other marks contain the term BASIN and that the marks exist for the same or related goods.

### E. CONCLUSION

In light of the above, Applicant respectfully submits that there is no likelihood of confusion between the cited marks and the applied for mark of "BASIN BEVERAGE CO.". A Notice of Publication is hereby requested.

18

Bear Basin Medium Roast – Long Valley Coffee                    https://longvalleycoffee.com/products/bear-basin-medium-roast



Home    Product list    Blog    About Us

Home  >  Products  >  **Bear Basin Medium Roast**

# Bear Basin Medium Roast

$14.00

Size
| 1 lb. ⌄ |

Style
| Whole Bean ⌄ |

Quantity
| 1 ⌄ |

**Add to cart**

Ethiopian, Costa Rican, Sumatran, and Mexican beans roasted to the perfect caramel color. It is our smoothest roast for the coffee lover in you!

Share this item:                    | Save |

**Exhibit G**

Bear Basin Medium Roast – Long Valley Coffee    https://longvalleycoffee.com/products/bear-basin-medium-roast

Follow Us

Copyright © 2023 Long Valley Coffee | This website runs on Shopify

 

**Exhibit G**

1/24/2023, 3:09 PM

The Great Basin - Great Basin National Park (U.S. National Park Service)        https://www.nps.gov/grba/planyourvisit/the-great-basin.htm



PARK CLOSURES

### Wheeler Peak Scenic Drive Closure @ Upper Lehman

The Wheeler Peak Scenic Drive is closed at Upper Lehman Creek Campground, about 2.5 miles up due to ice and snow. Weather is highly variable in the park. Check https://bit.ly/3F1hoQ4 for current forecasts.

### Lehman Caves closed in January/February 2023

Lehman Cave tours will be unavailable in January and February of 2023 due to several cave rehabilitation and improvement projects. Tours will resume March 1st, 2023 and can be reserved 30 days in advance. More information: https://go.nps.gov/LehmanCaves

✚ **2 more non-emergency alert notifications...**

**Dismiss**    **View all alerts**

# The Great Basin

## What is the Great Basin?

Defining the Great Basin begins with a choice: are you looking at the way the water flows (hydrographic), the way the landscape formed (geologic), or the resident plants and animals (biologic)? Each of these definitions will give you a slightly different geographic boundary of the Great Basin, but the hydrographic definition is the most commonly used.

The **Hydrographic Great Basin** is a 200,000 square mile area



The Great Basin can be defined hydrographically, topographically, or biologically.
NPS Image

**Exhibit H**

1/26/2023, 3:44 PM

The Great Basin - Great Basin National Park (U.S. National Park Service)    https://www.nps.gov/grba/planyourvisit/the-great-basin.htm

that drains internally. All precipitation in the region evaporates, sinks underground or flows into lakes (mostly saline). Creeks, streams, or rivers find no outlet to either the Gulf of Mexico or the Pacific Ocean. The region is bounded by the Wasatch Mountains to the east, the Sierra Nevada to the west, and the Snake River Plain to the north. The south rim is less distinct. The Great Basin includes most of Nevada, half of Utah, and sections of Idaho, Wyoming, Oregon, and California. The term "Great Basin" is slightly misleading; the region is actually made up of many small basins. The Great Salt Lake, Pyramid Lake, and the Humboldt Sink are a few of the "drains" in the Great Basin.



The **Basin and Range** region is the product of geological forces stretching the earth's crust, creating many north-south trending mountain ranges. These ranges are separated by flat valleys or basins. These hundreds of ranges make Nevada the most mountainous state in the country.

The **Great Basin Desert** is defined by plant and animal communities. The climate is affected by the rain shadow of the Sierra Nevada and Cascade Mountains. It is a temperate desert with hot, dry summers and snowy winters. The valleys are dominated by sagebrush and shadescale. The biologic communities on the mountain ranges differ with elevation, and the individual ranges act as islands isolated by seas of desert vegetation. Because the Great Basin exhibits such drastic elevation changes from its valleys to its peaks, the region supports an impressive diversity of species, from those adapted to the desert to those adapted to forest and alpine environments.

Great Basin National Park preserves a small representative piece of this entire region.

Last updated: April 22, 2021

## Was this page helpful?

○ Yes

○ No

**Exhibit H**

The Great Basin - Great Basin National Park (U.S. National Park Service)              https://www.nps.gov/grba/planyourvisit/the-great-basin.htm

An official form of the United States government. Provided by **Touchpoints**

CONTACT INFO                                         STAY CONNECTED

**Mailing Address:**

100 Great Basin National Park
Baker , NV 89311

**Phone:**

775-234-7331
Available 8:00 am - 4:00 pm, Monday through
Friday. Closed on Thanksgiving, Christmas, New
Year's Day

**Exhibit H**

(2) Pacific Green Coffee | Auburn CA | Facebook

https://www.facebook.com/pacific.green.coffee/



November 11, 2016

# Pacific Green Coffee

### 1.2K likes • 1.1K followers



Learn More    Posts    About    Mentions    Reviews    Followers    Photos    More ▼

## Intro

Pacific Green Coffee sells roasted coffee beans, primarily organic and Fair Trade beans; online, who

October 29, 2016

Page · Coffee shop

1010 Fox Run Ct, Auburn, CA, United States, California

(530) 308-8233

ron@pacificgreencoffee.com

pacificgreencoffee.com

**Exhibit J**



**Exhibit J**



https://www.facebook.com/pacific.green.coffee/



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**



**Exhibit J**



**Exhibit J**



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**



**Exhibit J**



**Exhibit J**



**Exhibit J**



**Exhibit J**



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

(2) Pacific Green Coffee | Auburn CA | Facebook                                    https://www.facebook.com/pacific.green.coffee/



**Exhibit J**



**Exhibit J**



**Exhibit J**



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

https://www.facebook.com/pacific.green.coffee/



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

https://www.facebook.com/pacific.green.coffee/



**Exhibit J**

1/24/2023, 3:32 PM

(2) Pacific Green Coffee | Auburn CA | Facebook                    https://www.facebook.com/pacific.green.coffee/



**Exhibit J**



**Exhibit J**



**Exhibit J**

(2) Pacific Green Coffee | Auburn CA | Facebook      https://www.facebook.com/pacific.green.coffee/



**Exhibit J**

https://www.facebook.com/pacific.green.coffee/



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

https://www.facebook.com/pacific.green.coffee/



**Exhibit J**

1/24/2023, 3:32 PM

(2) Pacific Green Coffee | Auburn CA | Facebook                                                    https://www.facebook.com/pacific.green.coffee/



**Exhibit J**



**Exhibit J**



**Exhibit J**



**Exhibit J**



**Exhibit J**

(2) Pacific Green Coffee | Auburn CA | Facebook                                    https://www.facebook.com/pacific.green.coffee/



**Exhibit J**



**Exhibit J**



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

1/24/2023, 3:32 PM



**Exhibit J**

(2) Pacific Green Coffee | Auburn CA | Facebook                                    https://www.facebook.com/pacific.green.coffee/



**Exhibit J**



**Exhibit J**



**Exhibit J**

(2) Pacific Green Coffee | Auburn CA | Facebook                                    https://www.facebook.com/pacific.green.coffee/



**Exhibit J**



**Exhibit J**

(2) Pacific Green Coffee | Auburn CA | Facebook
https://www.facebook.com/pacific.green.coffee/



**Exhibit J**





## 635 Lakeridge Dr
Building



📍   635 Lakeridge Dr, Auburn, CA 95603

**Exhibit J**

635 Lakeridge Dr - Google Maps                    https://www.google.com/maps/place/635+Lakeridge+Dr,+Auburn,+C...

Photos



**Exhibit J**

1/25/2023, 4:14 PM

1010 Fox Run Ct - Google Maps                                    https://www.google.com/maps/place/1010+Fox+Run+Ct,+Auburn,+C...





## 1010 Fox Run Ct
Building



📍    1010 Fox Run Ct, Auburn, CA 95603

**Exhibit J**

Photos



**Exhibit J**

Create an Ecommerce Website and Sell Online! Ecommerce Software b...                    http://greatbasin.coffee/





**Only one step left!**
To finish setting up your new web address, go to **your domain settings**, click "Connect existing domain", and enter: greatbasin.coffee

Start a store  |  Find products to sell  |  Buy an existing online store

**Exhibit K**

Create an Ecommerce Website and Sell Online! Ecommerce Software b...                    http://greatbasincoffee.com/



**Only one step left!**
**To finish setting up your new web address, go to your domain settings,**
**click "Connect existing domain", and enter: greatbasincoffee.com**



Start a store  |  Find products to sell  |  Buy an existing online store

**Exhibit K**



Great Basin Coffee Company

# Will be opening soon...

Hey, friends. We have had such a great time roasting coffee for you all over the last 5 years. The site is currently down because we are in a sort of readjustment phase in business, but will have some new things coming in the next few months so stay tuned. Thank you so much for the continued support.



Enter store using password

This store will be powered by 🛒 Shopify

https://web.archive.org/web/20220429071541/https://www.instagram.com/greatbasincoffee/

## Exhibit K



**Exhibit K**

Great Basin Coffee Co. Roastery & Espresso Lab - Google Maps          https://www.google.com/maps/place/Great+Basin+Coffee+Co.+Roast...



**Exhibit K**

Appx358

Great Basin Coffee Co. Roastery & Espresso Lab - Google Maps          https://www.google.com/maps/place/Great+Basin+Coffee+Co.+Roast...



## Great Basin Coffee Co. Roastery & Espresso Lab

5.0 ★ ★ ★ ★ ★  50 reviews

Coffee roasters

Temporarily closed

    

Remove stop    Save    Nearby    Send to phone    Share

---

  1106 S State St #16, Provo, UT 84606

  Temporarily closed  ⌄

  Menu
places.singleplatform.com

  (339) 227-0823

⋮⋮  6996+G8 Provo, Utah

  Send to your phone

  ✏ Suggest an edit

---

Add missing information  ⓘ

---

Photos

**Exhibit K**




Add a photo

## Street View



Street View

**Don't see what you need here?**
Questions are often answered by the community within 20 minutes.




Ask the community

## Review summary

5
4
3
2
1

**5.0**
★★★★★
50 reviews


"Ordering their Mexican Peaberry was my first, and it was tasty!"


"They **flavors** are not burned out and it lingers with a satisfying **mouth feel**."

**Exhibit K**

Appx360



"They always do an awesome job and they are super cool **people** to work with."

☑ Write a review

## Reviews

🔍     ☰ Sort

All     beans  8     bag  4     company  4

drink  3

**Mandi Sagez**
1 review

⋮

★★★★★ 3 years ago

I enjoyed a cup of Great Basin Coffee at a recent Collective Retreat stay and reached out to Alex & Mike to inquire about the blend so I could order more. They created a custom listing so I could order the exact blend! Their coffee speaks …

**More**



👍 Like          ⤳ Share

**Response from the owner**  3 years ago
Thank you, Mandi! We are so glad to have served you.

**Exhibit K**

Great Basin Coffee Co. Roastery & Espresso Lab - Google Maps          https://www.google.com/maps/place/Great+Basin+Coffee+Co.+Roast...



**Michelle Aime**
7 reviews

★★★★★ a year ago

Once we started buying from Great Basin, we have not bought our coffee beans anywhere else. The product is superior and they are quick to fill the order, Everytime. One time our order did not come and I called at eight in the morning and my beans were in my mailbox by noon!! Good service.

👍 Like        ❮ Share

**Rajesh Bhatta**
2 reviews

★★★★★ a year ago

We stayed in Provo overnight on our trip back from Yellowstone to LA. While searching for some decent coffee, we came across Great Basin's website. Decided to stop by their roasting location..Honestly, expectation was not high! But we were …

More

👍 2        ❮ Share

**Response from the owner**  a year ago
Rajesh, Thank you so much for your kind review. We were very glad you stopped by. Thank you for your continued support, you and your family are so great!

More reviews (47)

People also search for

**Exhibit K**

5 of 6                                                              1/25/2023, 2:09 PM

Great Basin Coffee Co. Roastery & Espresso Lab - Google Maps          https://www.google.com/maps/place/Great+Basin+Coffee+Co.+Roast...







**Rugged Grounds**
4.8 ★ (412)
Coffee shop

**Peace on Earth**
4.6 ★ (928)
Coffee shop

**Pueblo**
5.0 ★
Coffee

## Web results

https://www.thecoffeemaven.com › gre...

**Great Basin Coffee Co Roastery &...**

Great Basin Coffee Co Roastery & Espresso Lab is one of the best roasters in Utah. We share how you can enjoy a hassle-free, never-ending supply of new, ...

https://www.localcoffeeshops.org › shop

**Great Basin Coffee Co. Roastery ...**

Profile & Reviews for Great Basin Coffee Co. Roastery & Espresso Lab, a Coffee Shop in Provo. Call: +1 339-227-0823. Address: 1106 S State St #16, Provo, UT ...

https://www.restaurantji.com › provo

**Great Basin Coffee Co. Roastery ...**

**Exhibit K**

Please Log In

https://web.archive.org/web/20211206194350/https://www.greatbasinco...

The Wayback Machine - https://web.archive.org/web/20211206194350/https://www.greatbasincoffe...

Great Basin Coffee Company

# Will be opening soon...

Hey, friends. We have had such a great time roasting coffee for you all over the last 5 years. The site is currently down because we are in a sort of readjustment phase in business, but will have some new things coming in the next few months so stay tuned. Thank you so much for the continued support.



📷

**Exhibit K**

1/25/2023, 2:08 PM

This store will be powered by 🛍 Shopify

**Exhibit K**

(1) Facebook

https://www.facebook.com/greatbasincoffee/



**This content isn't available right now**
When this happens, it's usually because the owner only shared it with a small group of people, changed who can see it or it's been deleted.

**Go to News Feed**

**Go Back**
**Visit Help Center**

**Exhibit K**

1/25/2023, 2:11 PM

Appx366

# Sorry, this page isn't available.

e link you followed may be broken, or the page may have been removed. Go back to Instagram.

Meta   About   Blog   Jobs   Help   API   Privacy   Terms   Top Accounts   Locations   Instagram Lite

Contact Uploading & Non-Users

English ⌄   © 2023 Instagram from Meta

**Exhibit K**

https://www.instagram.com/greatbasincoffee/









**Exhibit K**

1/25/2023, 2:11 PM



DIVISION OF CORPORATIONS AND COMMERCIAL CODE
## BUSINESS SEARCH

### Search Results for "great basin"

| Business Name: Name | Status | Type | City |
|---|---|---|---|
| GREAT BASIN BUILDERS | Expired | DBA | Provo |
| GREAT BASIN BUILDING MAINTENANCE | Expired | DBA | LAYTON |
| GREAT BASIN BUILDING MAINTENANCE | Expired | DBA | OGDEN |
| GREAT BASIN BUILDING MAINTENANCE, INC. | Expired | Corporation | Roy |
| GREAT BASIN BUILDINGS | Active | DBA | Draper |
| GREAT BASIN CABINET AND MILL | Expired | DBA | Spanish Fork |
| GREAT BASIN CABINETRY, INC. | Active | Corporation | SALT LAKE CITY |
| GREAT BASIN CAPITAL GROUP LLC | Expired | Limited Liability Company | West Valley City |
| GREAT BASIN CAPITAL PARTNERS L.L.C. | Expired | Limited Liability Company | Eagle Mountain |
| GREAT BASIN CAPITAL, LLC | Expired | Limited Liability Company | Salt Lake City |
| GREAT BASIN CAR SHOPS | Expired | DBA | Taylorsville |
| GREAT BASIN CARDIOVASCULAR RESEARCH FOUNDATION, INC. | Expired | Corporation | PARK CITY |
| GREAT BASIN CATTLE COMPANY, THE | Expired | DBA | Salt Lake City |
| GREAT BASIN CERTIFIED PUBLIC ACCOUNTANT, P.C. | Expired | Corporation | TREMONTON |
| GREAT BASIN CHIROPRACTIC | Expired | DBA | Salt Lake City |
| GREAT BASIN CHIROPRACTIC, P.C. | Active | Corporation | Salt Lake City |
| GREAT BASIN CHURCH OF CHRIST, INC. | Active | Corporation | DELTA |
| GREAT BASIN CLINICAL RESEARCH, INC. | Expired | Corporation | West Point |
| GREAT BASIN COFFEE COMPANY LLC | Expired | Limited Liability Company | PROVO |
| GREAT BASIN COFFEE COMPANY LLC | Expired | Limited Liability Company | PROVO |

## Exhibit K

| | | | |
|---|---|---|---|
| GREAT BASIN COLLECTABLES | Expired | DBA | DELTA |
| GREAT BASIN COLLECTING COMPANY | Expired | DBA | Salt Lake City |
| GREAT BASIN COMMERCIAL, L.L.C. | Expired | Limited Liability Company | Salt Lake City |
| GREAT BASIN COMMODITIES, LLC | Expired | Limited Liability Company | Delta |
| GREAT BASIN COMMUNICATIONS GROUP, INC. | Expired | Corporation | Salt Lake City |
| GREAT BASIN COMMUNITY ONCOLOGY | Expired | Corporation | Salt Lake City |
| GREAT BASIN COMPANIES | Expired | DBA | WEST VALLEY CITY |
| GREAT BASIN COMPUTER ANIMATION, INC. | Expired | Corporation | SLC |
| GREAT BASIN COMPUTER, INC. | Expired | Corporation | WEST JORDAN |
| GREAT BASIN CONCRETE, LLC | Expired | Limited Liability Company | Riverdale |
| GREAT BASIN CONSOLIDATORS, INC. | Expired | Corporation | SLC |
| GREAT BASIN CONSTRUCTION | Expired | DBA | NORTH SALT LAKE |
| GREAT BASIN CONSTRUCTION | Expired | DBA | DELTA |
| GREAT BASIN CONSTRUCTION & LAND DEVELOPMENT, INC. | Expired | Corporation | SLC |
| GREAT BASIN CONSTRUCTION CONSULTANTS LLC | Active | Limited Liability Company | Provo |
| GREAT BASIN CONSTRUCTION, LLC | Expired | Limited Liability Company | NORTH SALT LAKE |
| GREAT BASIN CONSULTING | Expired | DBA | Salt Lake City |
| GREAT BASIN CONSULTING | Expired | DBA | Ogden |
| GREAT BASIN CONSULTING, INC. | Expired | Corporation | Ogden |
| GREAT BASIN CONTRACTING INC. | Active | Corporation | NORTH OGDEN |
| GREAT BASIN COOKING COMPANY | Active | DBA | Logandale |
| GREAT BASIN COOPERATIVE LLC | Expired | Limited Liability Company | Park City |
| GREAT BASIN CORPORATION | Expired | Corporation | Salt Lake City |
| GREAT BASIN CORPORATION | Expired | DBA | Salt Lake City |
| GREAT BASIN CORPORATION | Expired | DBA | WEST VALLEY CITY |
| GREAT BASIN COURIER SERVICE | Expired | DBA | Sandy |
| GREAT BASIN CRANE II, L.C. | Expired | Limited Liability Company | FARMINGTON |
| GREAT BASIN CRANE, L.L.C. | Expired | Limited Liability | FARMINGTON |

**Exhibit K**

Search Results for "great basin" - Utah Business Search - Utah.gov                    https://secure.utah.gov/bes/searchResults.html



| | Company | | |
|---|---|---|---|
| GREAT BASIN CULTURAL FOUNDATION | Expired | DBA | RIVERTON |
| GREAT BASIN DAIRY COOPERATIVE, INC. | Expired | Corporation | Salt Lake City |

Total Results: 459

**Exhibit K**

Trademark Status & Document Retrieval                    https://tsdr.uspto.gov/#caseNumber=97498075&caseType=SERIAL_...

---

**For assistance with TSDR**, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**Processing Wait Times:** Please note that due to an extraordinary surge in applications, processing times are longer than usual. See **current trademark processing wait times** for more information.

---

STATUS     DOCUMENTS                                    Back to Search          Print

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2023-03-06 10:35:01 EST |
| **Mark:** | TURNING BASIN |

<div align="right">

# TURNING BASIN

</div>

| | | | |
|---|---|---|---|
| **US Serial Number:** | 97498075 | **Application Filing Date:** | Jul. 11, 2022 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**

LIVE/APPLICATION/Published for Opposition

A pending trademark application has been examined by been published in a way that provides an opportunity for registration.

| | |
|---|---|
| **Status:** | Notice of Allowance (NOA) sent (issued) to the applicant. Applicant must file a Statement of Use or Exte of the NOA issuance date. |
| **Status Date:** | Jan. 24, 2023 |
| **Publication Date:** | Nov. 29, 2022 |
| **Notice of Allowance Date:** | Jan. 24, 2023 |

## Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | TURNING BASIN |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |

## Goods and Services

**Note:**

The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | |
|---|---|
| **For:** | Beer |
| **International Class(es):** | 032 - Primary Class |
| **U.S Class(es):** | 045, 046, 048 |
| **Class Status:** | ACTIVE |

---

# EXHIBIT L

| | |
|---|---|
| **Basis:** | 1(b) |
| **For:** | Wine; Alcoholic beverages except beers; Alcoholic beverages, namely, spirits, vodka, whiskey, gin, bou |
| **International Class(es):** | 033 - Primary Class |
| **Class Status:** | ACTIVE |
| **Basis:** | 1(b) |

**U.S Class(es):** 047, 049

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | No |
| **Filed ITU:** | Yes | **Currently ITU:** | Yes |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | Buffalo Bayou Distilleries, LLC |
| **Owner Address:** | 5610 Clinton Drive, Building B<br>Houston, TEXAS UNITED STATES 77020 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY |

**State or Country Where Organized:** TEXAS

## Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | John S. Egbert | **Docket Number:** | 2984-118 |
| **Attorney Primary Email Address:** | mail@emsip.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | JOHN S. EGBERT<br>EGBERT, MCDANIEL & SWARTZ, PLLC<br>1001 TEXAS AVE., SUITE 1250<br>HOUSTON, TEXAS UNITED STATES 77002 |
| **Phone:** | 713-224-8080 |
| **Correspondent e-mail:** | mail@emsip.com  mswartz@emsip.com |

**Fax:** 713-223-4873

**Correspondent e-mail Authorized:** Yes

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|

## EXHIBIT L

| Jan. 24, 2023 | NOA E-MAILED - SOU REQUIRED FROM APPLICANT | |
| Nov. 29, 2022 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Nov. 29, 2022 | PUBLISHED FOR OPPOSITION | |
| Nov. 09, 2022 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Oct. 27, 2022 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Oct. 25, 2022 | ASSIGNED TO EXAMINER | 96985 |
| Jul. 29, 2022 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Jul. 14, 2022 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

**TM Staff Information**

        **TM Attorney:**  SEARS, DAVID W.                **Law Office Assigned:**  LAW OFFICE 305

**File Location**

      **Current Location:**  INTENT TO USE SECTION           **Date in Location:**  Jan. 24, 2023

## Assignment Abstract Of Title Information - None recorded

## Proceedings - None recorded

**EXHIBIT L**

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

# Response to Office Action

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 87764676 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 104 |
| **MARK SECTION** | |
| **MARK** | https://tmng-al.uspto.gov/resting2/api/img/87764676/large |
| **LITERAL ELEMENT** | GREAT BASIN COFFEE COMPANY |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **ARGUMENT(S)** | |
| The 3 corrections I am making in support of registration are: Adding 2 disclaimers to acknowledge that Great Basin Coffee Company does not and will not have exclusive rights to "Great Basin" because it is geographically descriptive and other companies must be able to use it or "Coffee Company" for the same reason. Also, I am removing 1 "coffee" from the goods list because it is a duplicate. | |
| **GOODS AND/OR SERVICES SECTION (current)** | |
| **INTERNATIONAL CLASS** | 030 |
| **DESCRIPTION** | |
| Coffee; Coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee | |
| **FILING BASIS** | Section 1(a) |
| **FIRST USE ANYWHERE DATE** | At least as early as 04/14/2017 |
| **FIRST USE IN COMMERCE DATE** | At least as early as 01/01/2018 |
| **GOODS AND/OR SERVICES SECTION (proposed)** | |
| **INTERNATIONAL CLASS** | 030 |
| **TRACKED TEXT DESCRIPTION** | |
| Coffee; ~~Coffee~~; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee | |
| **FINAL DESCRIPTION** | |
| Coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee | |
| **FILING BASIS** | Section 1(a) |

# Exhibit I

| FIRST USE ANYWHERE DATE | At least as early as 04/14/2017 |
|---|---|
| FIRST USE IN COMMERCE DATE | At least as early as 01/01/2018 |

| ADDITIONAL STATEMENTS SECTION | |
|---|---|
| DISCLAIMER | No claim is made to the exclusive right to use COFFEE COMPANY apart from the mark as shown. |
| MISCELLANEOUS STATEMENT | I would like to add this disclaimer to my application to resolve the issue of being Primarily Geographically Descriptive. No claim is made to the exclusive right to use GREAT BASIN apart from the mark as shown. |

| SIGNATURE SECTION | |
|---|---|
| RESPONSE SIGNATURE | /Michael Cunniff/ |
| SIGNATORY'S NAME | Michael Charles Cunniff |
| SIGNATORY'S POSITION | Owner |
| SIGNATORY'S PHONE NUMBER | 339-227-0823 |
| DATE SIGNED | 05/03/2018 |
| AUTHORIZED SIGNATORY | YES |
| RESPONSE SIGNATURE | /Alex Kopelson/ |
| SIGNATORY'S NAME | Alexander Clarke Kopelson |
| SIGNATORY'S POSITION | Owner |
| SIGNATORY'S PHONE NUMBER | 801-682-3199 |
| DATE SIGNED | 05/03/2018 |
| AUTHORIZED SIGNATORY | YES |

| FILING INFORMATION SECTION | |
|---|---|
| SUBMIT DATE | Thu May 03 11:32:40 EDT 2018 |
| TEAS STAMP | USPTO/ROA-XXX.XX.XX.XX-20 180503113240533999-877646 76-510a4e9f2d5f548a317be7 cbc8d7cdd2192a6673e2cb5ef b906eac2abb6ad37ecc-N/A-N /A-20180503105010992531 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/29/2020)

## Response to Office Action

**To the Commissioner for Trademarks:**

Application serial no. **87764676** GREAT BASIN COFFEE COMPANY(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/87764676/large) has been amended as follows:

**ARGUMENT(S)**
**In response to the substantive refusal(s), please note the following:**

The 3 corrections I am making in support of registration are: Adding 2 disclaimers to acknowledge that Great Basin Coffee Company does not and will not have exclusive rights to "Great Basin" because it is geographically descriptive and other companies must be able to use it or "Coffee

## Exhibit I

Company" for the same reason. Also, I am removing 1 "coffee" from the goods list because it is a duplicate.

**CLASSIFICATION AND LISTING OF GOODS/SERVICES**
**Applicant proposes to amend the following class of goods/services in the application:**
**Current:** Class 030 for Coffee; Coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee
Original Filing Basis:
**Filing Basis: Section 1(a), Use in Commerce:** The applicant is using the mark in commerce, or the applicant's related company or licensee is using the mark in commerce, on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended. The mark was first used at least as early as 04/14/2017 and first used in commerce at least as early as 01/01/2018 , and is now in use in such commerce.

**Proposed:**
**Tracked Text Description:** Coffee; ~~Coffee~~; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee

Class 030 for Coffee; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee, tea, cocoa and artificial coffee; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Beverages made of coffee; Beverages with a coffee base; Caffeine-free coffee; Green coffee; Ground coffee beans; Prepared coffee and coffee-based beverages; Roasted coffee beans; Unroasted coffee
**Filing Basis: Section 1(a), Use in Commerce:** The applicant is using the mark in commerce, or the applicant's related company or licensee is using the mark in commerce, on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended. The mark was first used at least as early as 04/14/2017 and first used in commerce at least as early as 01/01/2018 , and is now in use in such commerce.
**ADDITIONAL STATEMENTS**
**Disclaimer**
No claim is made to the exclusive right to use COFFEE COMPANY apart from the mark as shown.

**Miscellaneous Statement**
I would like to add this disclaimer to my application to resolve the issue of being Primarily Geographically Descriptive. No claim is made to the exclusive right to use GREAT BASIN apart from the mark as shown.

**SIGNATURE(S)**
**Response Signature**
Signature: /Michael Cunniff/    Date: 05/03/2018
Signatory's Name: Michael Charles Cunniff
Signatory's Position: Owner

Signatory's Phone Number: 339-227-0823

**Response Signature**
Signature: /Alex Kopelson/    Date: 05/03/2018
Signatory's Name: Alexander Clarke Kopelson
Signatory's Position: Owner

Signatory's Phone Number: 801-682-3199

The signatory has confirmed that he/she is not represented by either an authorized attorney or Canadian attorney/agent, and that he/she is either: (1) the owner/holder ; or (2) a person(s) with legal authority to bind the owner/holder; and if an authorized U.S. attorney or Canadian attorney/agent previously represented him/her in this matter, either he/she has filed a signed revocation of power of attorney with the USPTO or the USPTO has granted the request of his/her prior representative to withdraw.

Serial Number: 87764676
Internet Transmission Date: Thu May 03 11:32:40 EDT 2018
TEAS Stamp: USPTO/ROA-XXX.XX.XX.XX-20180503113240533
999-87764676-510a4e9f2d5f548a317be7cbc8d

## Exhibit I

7cdd2192a6673e2cb5efb906eac2abb6ad37ecc-
N/A-N/A-20180503105010992531

**Exhibit I**

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1269969** |
|---|---|
| Filing date: | **03/06/2023** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Application serial no. | 90703327 |
|---|---|
| Applicant | Amoss, Matthew |

# Notice of Appeal

Notice is given that Amoss, Matthew appeals to the Trademark Trial and Appeal Board the refusal to register the application or the cancellation of the registration. A request for reconsideration has been filed. A suspension of the appeal is requested pending reconsideration.

The following goods or services are at issue on appeal:

- Class 030. First Use: None First Use In Commerce: None
  All goods and services in the class are appealed, namely: Tea-based beverages; Coffee based beverages; Kombucha tea

- Class 032. First Use: None First Use In Commerce: None
  All goods and services in the class are appealed, namely: Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages

- Class 033. First Use: None First Use In Commerce: None
  All goods and services in the class are appealed, namely: Beverages, namely, wine, hard seltzer; Hard kombucha tea

Respectfully submitted,
/Fabian M. Nehrbass/
03/06/2023
FABIAN NEHRBASS
GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
701 POYDRAS STREET
SUITE 4310
NEW ORLEANS, LA 70139
UNITED STATES
Primary email: FabianNehrbass@patents.gs
Secondary email(s): sford@patents.gs, aoshaughnessy@patents.gs, jchauvin@patents.gs
504-835-2000

| Docket no. | 100142.3 |
|---|---|

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

March 6, 2023

*In re Amoss, Matthew*

Ex Parte Appeal No. 90703327

Appeal received: **03/06/2023**

Brief due: **N/A**

**ESTTA1269969**

Appellant filed a notice of appeal, with the required fee, on the date indicated above. The appeal was filed under the provisions of Trademark Rule 2.141(a) from a final refusal in above-identified application and is hereby instituted.

Appellant checked the box on the ESTTA form indicating that it has filed a request for reconsideration which is still pending before the Trademark Examining Attorney, or it is filing a request for reconsideration today. Appellant should notify the Board immediately if it has not filed a timely request for reconsideration and does not intend to do so.

In view of the filing of the request for reconsideration, the appeal is suspended and the application is remanded to the Examining Attorney to consider the request for reconsideration.

If registrability is found on the basis of the request for reconsideration, the appeal will be moot. In the event the refusal of registration is maintained, and assuming that the request for reconsideration does not raise a new issue, the application will be returned to the Board, proceedings in the appeal will be resumed, and Appellant will be allowed time in which to file an appeal brief. If the request for reconsideration raises a new issue, the Examining Attorney may not issue a final refusal until the Appellant has been given an opportunity to respond. Upon issuance of a final refusal, proceedings in the appeal will be resumed, and Appellant will be allowed time in which to file an appeal brief.

**Request to Divide**

If, in addition to filing a notice of appeal and request for reconsideration, Appellant has also filed a request to divide the application, then the Examining Attorney should forward the application to the ITU/Divisional Unit of the Office to act on the request to divide. After the request to divide is processed, the Examining Attorney should consider the request for reconsideration. If registrability is found on the basis of the request for reconsideration, the appeal will be moot. If the refusal of registration is maintained, the divided file containing classes for which an appeal has been filed should be returned to the Board, and the Board will then resume proceedings in the appeal and allow Appellant time to file an appeal brief. The file for which no appeal has been taken should be treated by the Examining Attorney in the same manner as any request for reconsideration where there has been no appeal.

**Appeal Briefs**

Upon resumption of the appeal, Appellant will be allowed time to file an appeal brief, with the required fee. Failure to file the brief may result in dismissal of the appeal. Trademark Rules 2.142(b)(1) and 2.6(a)(18).

The Trademark Rules of Practice provide that the Examining Attorney shall file a written brief answering Appellant's brief and shall send a copy of the brief to Appellant within sixty days after Appellant's brief is sent to the Examining Attorney. Appellant may file a reply brief within twenty days from the mailing date of the Examining Attorney's brief. If an oral hearing is desired, Appellant must file a separate request accompanied by the required fee not later than ten days after the due date for Appellant's reply brief. Trademark Rules 2.142, 2.6(a)(18) and 2.6(a)(24).

Briefs must meet each of the requirements prescribed in Trademark Rule 2.126, which states that submissions must be made to the Board via ESTTA. *See* Trademark Rule 2.142(b)(2). ESTTA forms for electronic filings are available at https://estta.uspto.gov. Board proceeding files can be viewed using TTABVUE at https://ttabvue.uspto.gov.

**To:**       FABIAN NEHRBASS(fabiannehrbass@patents.gs)

**Subject:**  U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGE CO. - T21144US (3)

**Sent:**     April 26, 2023 07:57:52 PM EDT

**Sent As:**  tmng.notices@uspto.gov

---

**Attachments**

screencapture-www-threeriversbrewery-com-16808808256231
screencapture-www-threeriversbrewery-com-16808808461961
screencapture-www-threeriversbrewery-com-spirits-1-16808809206031
screencapture-www-threeriversbrewery-com-beers-16808809637471
screencapture-www-littletoadcreek-com-beer-spirits-16808810037731
screencapture-tumblerootbreweryanddistillery-com-16808811153241
screencapture-oldhousetoday-com-16808811888221
screencapture-oldhousetoday-com-distillery-our-spirits-16808812337931
screencapture-oldhousetoday-com-brewery-our-beers-16808812695051
screencapture-oldhousetoday-com-winery-our-wines-16808813815341
screencapture-www-gervasivineyard-com-16808814936731
screencapture-www-gervasivineyard-com-spirits-16808815395281
screencapture-www-gervasivineyard-com-wine-16808815769141
screencapture-cuervo-com-products-16808817345751
screencapture-www-smirnoff-com-en-us-16808818189651
7030682
7027969
7013939
6978787
6996586
6976704
6855930
6811886
6777985
6741069
6687583
6494612
5950187
6931393
6740192
7010898
6246361
6404321
6218431
5828905
6701713
5348605
5288884

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90703327

**Mark:** BASIN BEVERAGE CO.

**Correspondence Address:**
FABIAN NEHRBASS
GARVEY, SMITH & NEHRBASS, PATENT ATTORNEYS, L.L.C.
701 POYDRAS STREET
SUITE 4310
NEW ORLEANS LA 70139 UNITED STATES

**Applicant:** Amoss, Matthew

**Reference/Docket No.** T21144US (3)

**Correspondence Email Address:** fabiannehrbass@patents.gs

# REQUEST FOR RECONSIDERATION AFTER FINAL ACTION DENIED

**Issue date:** April 26, 2023

**Applicant's request for reconsideration is denied.** *See* 37 C.F.R. §2.63(b)(3). The trademark examining attorney has carefully reviewed applicant's request and determined the request did not: (1) raise a new issue, (2) resolve all the outstanding issue(s), (3) provide any new or compelling evidence with regard to the outstanding issue(s), or (4) present analysis and arguments that were persuasive or shed new light on the outstanding issue(s). TMEP §§715.03(a)(ii)(B), 715.04(a).

Accordingly, the following refusal(s) made final in the Office action dated November 22, 2022, are **maintained and continued**:

- Likelihood of Confusion

*See* TMEP §§715.03(a)(ii)(B), 715.04(a).

## LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 4890160, 6760872, and 5510241. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*

*Similarity of the Marks*

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321,

110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

In favor of registration the applicant argues that the marks are different. However, when comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Ox Paperboard, LLC*, 2020 USPQ2d 10878, at *4 (TTAB 2020) (citing *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016)); *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); *see In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014).

The applicant also argues that the common wording has been disclaimed in a registrant's mark and therefore little weight should be given to the use of the word BASIN. However, the applicant should be advised that the public is generally not aware of disclaimers in trademark applications and registrations that reside only in the USPTO's records. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *Shen Mfg. Co. v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1243, 73 USPQ2d 1350, 1355 (Fed. Cir. 2004); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1059, 224 USPQ 749, 751 (Fed. Cir. 1985)). Furthermore, the Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board have recognized that marks deemed "weak" or merely descriptive are still entitled to protection under Section 2(d) against the registration by a subsequent user of a similar mark for closely related goods and/or services. TMEP §1207.01(b)(ix); *see King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 1401, 182 USPQ 108, 109 (C.C.P.A. 1974); *In re Max Capital Grp. Ltd.*, 93 USPQ2d 1243, 1246 (TTAB 2010). Thus, this protection under Section 2(d) extends to marks registered on the Supplemental Register. TMEP §1207.01(b)(ix); *see, e.g., In re Morinaga Nyugyo Kabushiki Kaisha*, 120 USPQ2d 1738, 1743 (TTAB 2016) (citing *Towers v. Advent Software, Inc.*, 913 F.2d 942, 946, 16 USPQ2d 1039, 1042 (Fed. Cir. 1990); *In re Research & Trademark Corp.*, 793 F.2d 1276, 1278, 230 USPQ 49, 49 (Fed. Cir. 1986); *In re Clorox Co.*, 578 F.2d 305, 307-08, 198 USPQ 337, 340 (C.C.P.A. 1978)).

With respect to the third party registration submitted by the applicant, prior decisions and actions of other trademark examining attorneys in applications for other marks have little evidentiary value and are not binding upon the USPTO or the Trademark Trial and Appeal Board. TMEP §1207.01(d)(vi); *see In re USA Warriors Ice Hockey Program, Inc.*, 122 USPQ2d 1790, 1793 n.10 (TTAB 2017). Each case is decided on its own facts, and each mark stands on its own merits. *In re Cordua Rests., Inc.*, 823 F.3d 594, 600, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016) (citing *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009); *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001)).

*Similarity of the Goods*

The goods are compared to determine whether they are similar, commercially related, or travel in the

same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The trademark examining attorney has attached evidence from the USPTO's X-Search database consisting of a number of third-party marks registered for use in connection with the same or similar goods and/or services as those of both applicant and registrant in this case. This evidence shows that the goods and/or services listed therein, namely liquor and/or chair and/or coffee AND tea based beverages and/or coffee based beverages and/or wine and/or beer are of a kind that may emanate from a single source under a single mark. *See In re I-Coat Co.*, 126 USPQ2d 1730, 1737 (TTAB 2018) (citing *In re Infinity Broad. Corp.*, 60 USPQ2d 1214, 1217-18 (TTAB 2001); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988)); TMEP §1207.01(d)(iii).

The examining attorney has also attached Internet evidence, consisting of screenshots of various websites, establishes that the same entity commonly manufactures, produces, or provides the relevant goods and/or services and markets the goods and/or services under the same mark.  Thus, applicant's and registrant's goods and/or services are considered related for likelihood of confusion purposes. *See, e.g.*, *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).

For the above stated reasons the final refusal to register based on a likelihood of confusion is maintained and continued.

**If applicant has already filed an appeal** with the Trademark Trial and Appeal Board, the Board will be notified to resume the appeal.  *See* TMEP §715.04(a).

**If applicant has not filed an appeal** and time remains in the response period for the final Office action, applicant has the remainder of that time to (1) file another request for reconsideration that complies with and/or overcomes any outstanding final requirement(s) and/or refusal(s), and/or (2) file a notice of appeal to the Board.  TMEP §715.03(a)(ii)(B).

/Shaunia Carlyle/
Shaunia Carlyle
Examining Attorney
LO110--LAW OFFICE 110
(571) 272-9374
Shaunia.Carlyle@USPTO.GOV





Read More»    Read More»    Read More»    Read More»

© THREE RIVERS BREWERY 101 E. MAIN ST. FARMINGTON, NM  505 324-2187
THREE RIVERS PIZZERIA 505-325-0308
THREE RIVERS BREWSTILLERY LOUNGE 505 324-2197
THREE RIVERS TAPROOM 505 325-6605



Read More>    Read More>    Read More>    Read More>

© THREE RIVERS BREWERY 101 E. MAIN ST. FARMINGTON, NM  505 324-2187
THREE RIVERS PIZZERIA 505-325-0308
THREE RIVERS BREWSTILLERY LOUNGE 505 324-2197
THREE RIVERS TAPROOM 505 325-6605







A spirit that entails all the wild times that life throws our way. Great for making some of our favorite libations!

### River Whiskey

5 year barrel aged whiskey distilled for Three Rivers by eagle rock distilling.

### Blackstrap Rum

Our white rum is made from Caribbean Blackstrap molasses and cane sugar.

### Blackstrap Spiced Rum



Our spiced rum is made from Caribbean Blackstrap molasses and cane sugar and then infused with Three Rivers special blend of spices to create a wonderful, aromatic drink.

© THREE RIVERS BREWERY 101 E. MAIN ST. FARMINGTON, NM  505 324-2187
THREE RIVERS PIZZERIA 505-325-0308
THREE RIVERS BREWSTILLERY LOUNGE 505 324-2197
THREE RIVERS TAPROOM 505 325-6605





HOME    BREWERY-EATERY    PIZZERIA    BREWSTILLERY LOUNGE    TAP ROOM    CONTACT

## WHAT'S ON TAP

Three Rivers Brewery takes brewing beer seriously and our list of <u>award winning beers</u> proves that. Come and sample our many distinctive styles of beer such as Papa Bear's Golden Honey Ale. There are a number of specialty beers available at different times. The beers on tap are always changing and if you don't see your favorite beer on this list please give us a call. We can tell you what we have right now. Don't miss out.

### What's to Eat!

**Papa Bear's Golden Honey Ale $5**
Light golden ale brewed with honey malt
IBU: 12 ABV: 5%

**Thodes fat dog stuck in a door stout $5**
dark and smooth stout brewed in memory of
our friend Jim Thode.
IBU: 25 ABV: 6%

**Merica $5**
American pale ale with Citra hops IBU: 45
ABV: 6.5%

**Pinon Hills Pils $5**
clean, crisp New Mexican Lager
ABV  4.5%

**Orchard Ave Marionberry Wheat $6**
American wheat ale with honey malt and tons
of marionberry puree IBU: 20 ABV: 5.3%

**Red Apple Flyer Cider   $6**
Semi-Sweet, Light and Crisp Apple Cider
IBU: 6 ABV: 6%

**The Common Good $5**
California common amber lager
IBU: 25 ABV: 5.8%

**Coco Negro $8**
Imperial Stout with toasted coconut IBU: 45
ABV: 8%

**Sky High IPA $6**
West coast IPA brewed with a massive amount
of mosaic hops! IBU 75 ABV 7%

**Arroyo Amber $5**
American Amber Ale with Amarillo hops and
crystal malts IBU:25 ABV 5.8%

Wines of the San Juan-Girls Are Meaner  7/28
Wines of the San Juan-Taxi Cab  8/30
St. Clair—Cabernet Reserve  6/25
St. Clair—Merlot  6/25
St. Clair— Mimbres Red  6/25
St. Clair-Mimbres white  6/25

**Brewstillery Cocktails**
**House Specialties**
**Riverita $10**
Tierra Del Encanto, Triple Sec, Agave Nectar,
Fresh Squeezed Lime Juice and Orange Juice
**3 Hail Mary's $ 10**
Entropy Vodka, House made Bloody Mary Mix



St. Clair-Chardonnay 6/25
St. Clair-Rose 6/25

**3RB Mule $8**
Entropy Vodka, House Ginger Beer,
Fresh Squeezed Lime Juice

**The Classics**
Gladys Gin & Tonic $8
River Whiskey & 3RB Cola $8
Blackstrap Rum & 3RB Cola $9
Entropy Vodka & House Cranberry Juice $8
Entropy Vodka & Fresh Squeezed Orange Juice $8
Entropy Vodka & Tonic $8
All of our bottles of distilled spirits are available to go.
Ask your server for pricing.

© THREE RIVERS BREWERY 101 E. MAIN ST. FARMINGTON, NM 505-324-2187
THREE RIVERS PIZZERIA 505-325-0308
THREE RIVERS BREWSTILLERY LOUNGE 505-324-2197
THREE RIVERS TAPROOM 505-325-6605



# BEER
## Canned Classics
### ALSO AVAILABLE ON TAP AT BOTH TAPROOMS

**Grumpy Old Troll IPA**

Cheer up those beer-loving taste buds with our traditional American-style IPA. It's a perfectly layered and balanced brew - sweet and citrusy on the nose, lots of malt goodness and substantial hop bitterness.
ABV 7.6 IBU 84

**Lucky Toad Lager**

Looking for a taste of summer all year long? You're in luck! Our crisp, light, Helles-style lager balances an all-malt base with just enough mellow hops to create a crushable brew that just screams sun and fun
ABV 4.9 IBU 19

**Pendejo Porter**

This big, beautiful porter is stupid delicious, with a roasty, malty aroma that dives into a rich, dark-brown body heavy in flavor with nice alcohol warmth. Go easy on this one or the pendejo could be you!
ABV 6.2 IBU 27

**Hop-a-Long Pale Ale**

New Mexico takes center stage with wild-harvested Neomexicana hops from the Gila River, plus a little rye in the grain bill. Earthy and bright, it's an easy-drinking pale that's a short hop to your next one.
ABV 6.3 IBU 53



## Exclusively On Tap at the Toad





**FIND OUR BEER
IN STORES!**



WHERE TO FIND

**SMARTE
BLONDE ALE**

Light sweet malty
aroma with a low
fruitiness and low hop
aroma. An easy-
drinking, approachable,
and malt-oriented
American craft ale.
ABV 5.2 IBU 17.4

**COPPER ALE**

Comet hops don't get in
the way of this rich malt
forward ale. For those
who enjoy an amber ale
on the porch in the
evening, give this
mining district version a
try. Guaranteed to
please.
ABV 6.5 IBU 23

## SPIRITS
### Mixed-Up Canned Cocktails









**Classic
Margarita**

We amp up the "Class"
in our Classic
Margarita. Simple
flavors of citrusy lime
and lightly sweet agave
nectar mix with our
house-made, stand-
out triple sec and
agave spirits. Tastes
like it was freshly made
by your favorite
bartender
ABV 10%

**Mojito Mule**

The Mojito meets the
Mule and surprise,
surprise – they are
instant friends! with
mint-infused rum,
tangy lime, bold ginger
beer sweetened only
with agave nectar,
what's not to love
about this ready-to-
?drink rock star
ABV 10%

**Gin &
Grapefruit
Mule**

Our perfectly balanced
Gin Mule invites a burst
of fresh grapefruit to
the spicy ginger beer
and gin party. A light
touch of sweet agave
and fresh lime tie it all
together for an
exceptional ready-to-
drink cocktail
ABV 10%

**Classic Mule**

This ready-to-drink
classic mule is for
lovers of the pure and
bold Spicy ginger juice,
fresh lime and lemon,
just a touch of sweet
agave nectar, and
vodka – that's it!
Simple, natural
ingredients make this
cocktail a well-
balanced instant
classic
ABV 10%





**Silver City**
200 N Bullard St. Silver City,
NM 88061

**Las Cruces**
119 N Main St. Las Cruces,
NM 88001

**Silver City**
**Sun-Wed:** 11am-10pm
**Thurs:** 11am-11pm
**Fri-Sat:** 11am-12am

**Las Cruces**
**Mon-Thurs:** 3pm-12am
**Fri-Sat:** 11:30am-1am
**Sun:** 11:30am-10pm

**Silver City**
**575-956-6144**
info@littletoadcreek

Music booking
info@littletoadcreek.com

**Las Cruces**
**575-556-9934**
info@littletoadcreek.com

Music booking
musiclc@littletoadcreek.com

©2022 by Little Toad Creek









# OUR BEERS

Tumbleroot has a 10-barrel brew house with 10 and 20-barrel fermenters. We focus on draft beer with some seasonal, bottle conditioned releases. We have a rotating beer list featuring at least eight draft beers that reflect and resonate with the changing character of the high desert through the four seasons. Our limited release bottlings include cask aged sours and strong ales matured in spirit barrels. These special brews showcase the creative synergy between our brewery and distillery.

### Sunrise Lager

Crisp with subtle flavors of pilsner malt (graham cracker), this beer is a clean and easy drinking lager. A touch of noble hops, (spicy and herbal) lend a hint of bitterness and complementary flavors. We mash this beer at very...

Read More

### Sour Red Ale

A mixed-fermentation (souring bacteria and "wild" yeast) red ale that was aged in French red wine barrels for over a year and then bottle conditioned. Available in 3 varieties: Sour Red Ale, Sour Red Ale with Cherries, Sour Red Ale...

Read More

### Double Brown Ale

An American Style Brown Ale taken to the next level. Our double brown ale is a supercharged version of an American brown ale that can also be thought of as a brown IPA. Robust malts take the lead and impart...

Read More



Our distillery is set up to be versatile. The still can be run as a pot still or we can run our spirits through a 20 plate vodka column. We produce vodka, a variety of rums, whiskies, and gins, and agave spirits (can't call it tequila if it ain't from Mexico). All of our spirits are made from scratch with organic and wild harvested ingredients, as well as herbs and botanicals from the Kirkman's garden. Before distillation, our whiskies, vodkas and gins begin their lives as beers in our brew house, and we believe that this cross pollination between brewery and distillery makes our spirits unique.





### Welcome to Old House Vineyards

It was a rainy Mother's day in 1998 when we discovered the 75 acres and abandoned farm house at the foothills of the Blue Ridge Mountains. With the help of family, friends, and a local grape grower, we soon began working to transform the property into Old House Vineyards.

Today, the formerly overgrown alfalfa fields are lush vineyards producing grapes for our award-winning wines. The 1800's farm house has been restored to an inviting gathering place for the enjoyment of good food and wine.

We couldn't have imagined years ago the amount of labor or fun that would be involved in bringing this venture to life. We look forward to sharing the fruits of our labor with you.

  

**Photo Gallery**

Are you looking for a beautiful, private and unique setting for your wedding? Consider hosting your ceremony and reception at the Old House island and lakeside pavilion. There is nothing quite like a wedding at Old House. Take a look at our gallery.

**Plan Your Event**

Interested in hosting an event at Old House Vineyards? We have the perfect spaces for your upcoming meeting, party or gathering. From our Private Party Room to our Brewery Taproom, we can accommodate your event,

**Book a Tour**

Get an insider's perspective from the actual members of the family who run the operation -- your tour guides! These tours aren't scripted and can follow any line of thought from questions asking how and why we got started.



Old House Vineyards  |  18351 Corkys Lane, Culpeper, VA 22701  |  (p) 540-423-1032  |  (f) 540-423-1320  |  info@oldhousevineyards.com

HOME    WINERY    DISTILLERY    BREWERY    WEDDINGS    EVENTS    VISIT US

f

Site designed and developed by K Art and Design, Inc.







makes a spirit identifiable. We then seek to improve upon those elements thereby establishing a spirit that is specific, while maintaining the integrity of the spirit itself. We don't take shortcuts such as adding flavor essences, synthetic flavor enhancers, coloring or other such shortcuts. When you taste an Old House product you are enjoying a painstakingly created beverage that has been created for your enjoyment. *Please note: Our Spirits are Small Batch and are continually changing and evolving.*

Diceros Barrel Aged Rum

Dude Spirit

Agave Nectar

Old House Whiskey VI

Grog

Bumbo 1758

Black X Coffee

## What is Diceros?

Old House's Diceros label is the creation of our Distiller, Keith Balbirio. The label was created to allow Keith to explore new ideas and create unique products while simultaneously support a cause for which he is passionate -- Saving Rhinos. Keith's love for these animals began when he was living in London where he became friends with a veterinarian for exotic animals. Spending time with him, Keith learned the plight of these magnificent animals which left him a desire to help. Therefore, a portion of every Diceros bottle goes to support the Rhinos and the hopes of a brighter future for these bright animals.



Old House Vineyards | 18351 Corkys Lane, Culpeper, VA 22701 | (p) 540-423-1032 | (f) 540-423-1320 | info@oldhousevineyards.com

HOME   WINERY   DISTILLERY   BREWERY   WEDDINGS   EVENTS   VISIT US

f



https://oldhousetoday.com/brewery/our-beers/

at 11:27:54, 04/07/2023

WINERY    DISTILLERY    BREWERY    WEDDINGS    EVENTS    VISIT US

Virginia's First Trifecta

## BREWERY | OUR BEERS

How can you go wrong... Winery, Distillery with museum, **Brewery** and an Irish Pub. Beautiful venue.

**Grizz Skinner**
Online Review



With 40 acres of Two-Row Winter Barley and 10 acres of wheat in the fields surrounding the Brewery, we are pleased to say that the majority of our base malts are Virginia grown. Whether, one is visiting the Brewery, Winery, and/or the Distillery, our philosophy remains the same — the beverages one enjoys at Old House are not just made here, they are grown here as well!



## Our view on craft beer production is twofold.

Our first focus is on Session Beers. Session Beers are not defined by flavors or aromas, which allows them to fall into almost any style category. Instead, the primary focus of a session beer is on refreshment and drinkability. We want our patrons to be able to sit down and enjoy the entire afternoon. Any style can be made lower in strength than what is described in the classic style guidelines. The goal should be to reach a balance between a style's character and a lower alcohol content.

Our second (and longer term) goal is Old House collaboration projects focusing on Barrel Aged beers utilizing barrels from both the Winery and Distillery. At our disposal, we have whiskey barrels, agave barrels, rum barrels, brandy barrels, port barrels, and wine barrels. The possibilities are endless and we look forward to sharing them with you!

*click images for larger view*



HOME     WINERY     DISTILLERY     BREWERY     WEDDINGS     EVENTS     VISIT US



For information regarding shipping or to place an order, please call the winery at 540-423-1032 or send an email to info@oldhousevineyards.com.

Wines are available for shipment to the following areas: Alaska, California, Florida, Minnesota, Virginia, and Washington DC.

| Petillante |
| Clover Hill |
| Chardonnay |
| Vidal Blanc |
| Rosie's Rosé |
| Melange de Maison |
| Wicked Bottom |
| Cabernet Franc |
| Bacchanalia |
| Chambourcin Dessert Wine |



## Some facts and figures about how we make our wine at Old House Vineyards.

- Harvest is done in early September to late October as each of the varieties of grapes ripens.
- We pick the grapes in the cool of the morning into 25 pound lugs then bring them to the winery.
- The crushing and destemming is the first step of the pressing process. The crushed fruit falls down into the press or fermenter, depending on the type of wine being made.
- The white wine pressing process is very gentle as it is important to keep the skins from breaking down too much. The goal is to separate the juice from the skins without adding any more solids to the juice.
- The juice is allowed to settle in a tank and the sediment is racked off into a vessel for fermentation.
- "Racking" is the term for sucking the clean wine off of the sediment or lees on the bottom of the vessel. The wine is transferred into a clean vessel and the lees is left behind in the old one.
- Lees is filtered and kept separate or thrown away. Sometimes the filtered lees can be very good and can add another component to a wine. Other times it can be hard or unpalatable and will be thrown away.
- With red wine the grapes are crushed into a bin and fermentation begins. The skins of the red grape are very important in red wine—they have all of the color and a lot of the hearty character that defines a red wine.
- The cap of a red fermenter is the grape skins that float to the top of the vat. These skins catch $CO_2$ that is released from fermentation.
- "Punching down" is done with a stick or paddle to get the cap back into the wine. This process is performed 2-3 time a day during the fermentation process.
- To press off the grape skins after fermentation, the juice is pumped out of the bin and the skins are shoveled into the press.



- The pressing is similar to the whites in that pressing gently is better for the wine.
- After a couple of days of settling, the wine is racked into oak wine barrels.
- The barrels we use are a combination of both new and older oak. We use French, American and Hungarian oak barrels to make our wines. Each gives the wine a slightly different character.



Old House Vineyards  |  18351 Corkys Lane, Culpeper, VA 22701  |  (p) 540-423-1032  |  (f) 540-423-1320  |  info@oldhousevineyards.com

HOME    WINERY    DISTILLERY    BREWERY    WEDDINGS    EVENTS    VISIT US





At Gervasi Vineyard Resort & Spa, our mission is to provide a memorable experience at our winery resort for travelers, diners, and wine lovers on our beautiful 55-acre estate in Canton, Ohio. We are a destination and offer several luxury accommodation options for guests seeking a unique experience. Stay in our Tuscan-inspired Villas, our boutique inn, The Casa, and our restored Farmhouse from the early 1800s.

Gervasi Vineyard is home to three restaurants that serve everything from fine Italian cuisine in The Bistro to a more casual dining experience at The Crush House Wine Bar & Eatery. The Still House is a coffeehouse and cocktail lounge offering specialty cocktails, beer and wine as well as a heated outdoor cigar lounge. Our winery features award-winning wines from bold reds to sweet whites, offering over 30 varietals. The boutique distillery now offers many spirits from which to choose including bourbon, gin and vodka.

VIDEO TOUR          OUR STORY          PROPERTY MAP

**GV Brand Promise**
*Our commitment to safety, cleanliness and sanitation in all of our venues is paramount for our guests.*
Learn More »

BUY GIFT CARDS

DINE & DRINK
*Italian Bistro, The Crush House, Piazza Outdoor Patio, The Still House*

STAY
*The Villas, The Casa & The Farmhouse*

PLAY
*Events, Tastings, Live Music & More!*









## SPIRITS

Gervasi Spirits are inspired by our promise to develop new endeavors and products that people will enjoy as much as our vineyard and wines. By our true nature, we love the challenge of building new spaces and mastering processes that create great experiences.

Gervasi features unique spirits such as our wine barrel-finished bourbon, rosé vodka, and blood orange gin. These flavor-infused spirits are carefully crafted to enjoy neat or as signature ingredients in our creative cocktails. The cocktail list ranges from the tried-and-true classics of the prohibition era all the way to the cutting-edge flavor combinations and flair techniques of today's mixologists.





## SPIRITS AWARDS

- **Wine Barrel Bourbon** - Best of Class Whiskey at 2022 Finger Lakes International Wine & Spirits Competition
- **Saint's Desire Blood Orange Gin** – Platinum Award at the 2020 Great American International Spirits Competition
- **Small Batch Vodka** – Gold Award at the 2020 Great American International Spirits Competition & Silver Medal from The Fifty Best Domestic Vodka tasting 2020.
- **Small Batch Gin** – Silver Award at the 2020 Great American International Spirits Competition

ABOUT US

HOURS/CONTACT

BLOG

MEDIA

EMPLOYMENT

Get the GV Newsletter!

Email

First Name

Last Name

SUBMIT

330.497.1000
1700 55th Street NE, Canton, OH 44721





## WINE

**GV Estate Wines**

Gervasi Vineyard's award-winning wine portfolio offers 30+ varietals and tastes for every palate, from a bold, dry red, to a sweet, white dessert wine. Gervasi proudly features four estate-grown varieties, made from grapes grown from five acres of vineyards on the sprawling 55-acre estate. Each estate wine is named to align with our owners' passions: Passione "Passion" made with Aromella grapes, Lascito "Legacy" a Frontenac Gris, Unita "Unity" a Marquette wine and Celebrazione "Celebrate" a blend of Merlot and Marquette.

**Gervasi Select & Classic Wines**



Over a dozen quality wines are offered in our GV wine portfolio made from grapes and juice from other regions. Our winemaker works closely with vineyards from across the country (California, Washington, and as well other regions in Ohio) to secure only the freshest quality grapes and juice to create our own unique blend of Cabernet, Pinot Noir, Chardonnay, Pinot Grigio, and other well-known varietals in our own state-of-the-art winery.

**Italian Collection**

Gervasi currently offers ten Italian imported wines, crafted and private-labeled specifically for Gervasi Vineyard. our wines span a range of flavor profiles that are sure to please the connoisseur and novice wine drinker alike.

OUR WINES
Award-winning wine portfolio

THE WINERY
State-of-the-art winemaking facilities

THE CAVE
Now open!

TASTINGS & TOURS

# WINE SHIPPING

Gervasi's award winning wines make the perfect gift! If you can't make it to Gervasi, shop our wines online and have them delivered right to your home or send some to a friend or family member.





atmosphere and delicious wine

d great, have been beautiful bistro, patio, crush house. The property landscaping is awesome. Food and wine have always been good.

anniversary. We had a wonderful experience. The food was great! The wine exceeded expectations. The hotel was clean and comfortable! Will go back again soon!

ABOUT US

HOURS/CONTACT

BLOG

MEDIA

EMPLOYMENT

LOYALTY & GIFT CARDS

330.497.1000
1700 55th Street NE, Canton, OH 44721

Our Mission    Policies    Accessibility    Sitemap

© Copyright 2021, Gervasi Vineyard. All rights reserved. Site by Stella

Get the GV Newsletter!

Email

First Name

Last Name

SUBMIT

protected by reCAPTCHA

THE SPA IS OPENING APRIL 11    Learn More









TEQUILA FACTS   TERMS OF SERVICE   PRIVACY POLICY   CONTACT US   COOKIE SETTINGS   DO NOT SELL MY PERSONAL INFORMATION   DRINK RESPONSIBLY   SERVING FACTS STATEMENTS

CONNECT WITH CUERVO

JOSE CUERVO® trademarks owned by Beckle, S.A.B. de C.V. © 2023 Proximo, Jersey City, NJ. Please drink responsibly.



SMIRNOFF VODKA + READY TO DRINK





SHOP ALL →

SMIRNOFF RECIPE COLLECTIONS

CTIONS • COCKTAIL COLLECTIONS • COCKTAIL C(

SIONS • COCKTAIL OCCASIONS • COCKTAIL OCC



# GET YOUR PINK

# ON.





*Browse*

## SMIRNOFF VODKA COCKTAILS →


# THE PRODUCTS
# THE COCKTAILS
# WHERE TO SHOP
# ABOUT US



CONDITIONS OF USE       UGC POLICY         ACCESSIBILITY        DO NOT SELL OR SHARE MY
                                                                PERSONAL INFORMATION
PRIVACY AND COOKIE NOTICE   DRINK RESPONSIBLY   DRINKIQ        THEBAR.COM

UNITED STATES (EN)          ⌄          HIGH CONTRAST MODE

PLEASE DO NOT SHARE WITH ANYONE UNDER THE LEGAL PURCHASE AGE FOR ALCOHOL.DRINK RESPONSIBLY.    © DIAGEO 2023

**(2) DESIGN ONLY**



**Mark Punctuated**

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Coffee; Coffee based beverages; Coffee beans. FIRST USE: 20180500. FIRST USE IN COMMERCE: 20200300

**Mark Drawing Code**
(2) DESIGN ONLY

**Design Code**
010103 020313 090113 090308 090312 090505

**Serial Number**
97316074

**Filing Date**
20220316

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20230131

**Registration Number**
7030682

**Date Registered**
20230418

**Owner**
(REGISTRANT) Austin Durable Goods LLC LIMITED LIABILITY COMPANY TEXAS 9100 Texas Oaks
Dr. Austin TEXAS 78748

**Priority Date**

**Disclaimer Statement**

**Description of Mark**
Color is not claimed as a feature of the mark. The mark consists of a woman wearing a cowboy hat, bandana

around the neck and a glove with a star on it swinging a lasso overhead.

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Alec Ross

**(4) STANDARD CHARACTER MARK**

Marea Negra

**Mark Punctuated**
MAREA NEGRA

**Translation**
The English translation of "MAREA NEGRA" in the mark is "OIL SLICK".

**Goods/Services**

- IC 030. US 046.G & S: Beverages made of coffee; Beverages made of tea; Beverages with coffee base; Beverages with tea base; Beverages with a coffee base; Beverages with a tea base; Coffee beverages with milk; Coffee based beverages; Coffee-based beverage containing milk; Coffee-based beverages; Coffee-based iced beverages; Tea-based beverages; Tea-based beverages containing boba; Tea-based beverages with fruit flavoring; Tea-based beverages with milk; Tea-based iced beverages; Preparations for making coffee-based beverages; Prepared coffee and coffee-based beverages; Vegan coffee-based beverages. FIRST USE: 20220601. FIRST USE IN COMMERCE: 20220601
- IC 032. US 045 046 048.G & S: Non-alcoholic beverages flavored with coffee; Non-alcoholic beverages flavored with tea; Non-alcoholic beverages flavoured with coffee; Non-alcoholic beverages flavoured with tea; Non-alcoholic beverages with tea flavor; Non-alcoholic soda beverages flavoured with tea. FIRST USE: 20220601. FIRST USE IN COMMERCE: 20220601

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
97419392

**Filing Date**
20220519

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20221115

**Registration Number**
7027969

**Date Registered**
20230411

**Owner**
(REGISTRANT) Wesmex Trading, LLC LIMITED LIABILITY COMPANY FLORIDA 3856 Heron Ridge

Lane Weston FLORIDA 33331

**Priority Date**

**Disclaimer Statement**

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**

**Print: Sat Apr 22 2023**                  **97078299**

## (4) STANDARD CHARACTER MARK

Drip Queen Coffee

**Mark Punctuated**
DRIP QUEEN COFFEE

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Coffee; Coffee-based drinks; Candy; Tea; Coffee beans; Coffee substitutes; Decaffeinated coffee. FIRST USE: 20210302. FIRST USE IN COMMERCE: 20210601

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
97078299

**Filing Date**
20211017

**Current Filing Basis**
1A

**Original Filing Basis**
1A;1B

**Publication for Opposition Date**
20221108

**Registration Number**
7013939

**Date Registered**
20230328

**Owner**
(REGISTRANT) Drip Queen Coffee, LLC DBA Drip Queen Coffee LIMITED LIABILITY COMPANY COLORADO 1710 Briargate Blvd, STE 182 Colorado Springs COLORADO 80920

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DRIP" AND "COFFEE" APART FROM THE MARK AS SHOWN

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**

**Print: Sat Apr 22 2023**                                **97217559**

## (4) STANDARD CHARACTER MARK

EVIL COFFEE

**Mark Punctuated**
EVIL COFFEE

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Coffee beans; Roasted coffee beans; Ground coffee beans; Whole coffee beans; Coffee; Coffee-based beverages; Prepared coffee and coffee-based beverages. FIRST USE: 20191028. FIRST USE IN COMMERCE: 20191028

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
97217559

**Filing Date**
20220113

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20221129

**Registration Number**
6978787

**Date Registered**
20230214

**Owner**
(REGISTRANT) Ross Dantonio INDIVIDUAL UNITED STATES 1279 Rome Corners Road Galena OHIO 43021

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COFFEE" APART FROM THE MARK AS SHOWN

**Description of Mark**

**Type of Mark**

TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Elizabeth Milesnick

**Print: Sat Apr 22 2023**                    **97282600**

## (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS



**Mark Punctuated**
TASTE OF BELGIUM

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Coffee; Coffee beans; Mixes for bakery goods; Waffles; Ground coffee. FIRST USE: 20130801. FIRST USE IN COMMERCE: 20130801
- IC 032. US 045 046 048.G & S: Beer. FIRST USE: 20160225. FIRST USE IN COMMERCE: 20160225
- IC 043. US 100 101.G & S: Restaurant and catering services; Restaurant services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Restaurant and café services. FIRST USE: 20130801. FIRST USE IN COMMERCE: 20130801

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS

**Design Code**
110103 241101 260131 260715 261102

**Serial Number**
97282600

**Filing Date**
20220224

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20221220

**Registration Number**
6996586

**Date Registered**
20230307

**Owner**
(REGISTRANT) Taste of Belgium, LLC LIMITED LIABILITY COMPANY OHIO 911 E McMillan St

Cincinnati OHIO 45206

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BELGIUM" APART FROM THE MARK
AS SHOWN

**Description of Mark**
The mark consists of A crown, closed at the top by two high arches filled with decorative circles and featuring a
fork in place of the traditional cross in the front and a rectangular base featuring decorative diamond shapes;
words "Taste of Belgium" appear under mark.

**Type of Mark**
TRADEMARK. SERVICE MARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Kristen M Myers

**Print: Sat Apr 22 2023**                              **90568792**

## (4) STANDARD CHARACTER MARK

DRINK WEIRD

**Mark Punctuated**
DRINK WEIRD

**Translation**

**Goods/Services**

- IC 025. US 022 039.G & S: Hats; Pants; Shirts; Socks; Baseball caps and hats; Hoodies; Jackets; Sweatshirts; Hooded sweatshirts; Polo shirts; Short-sleeved or long-sleeved t-shirts; T-shirts. FIRST USE: 20200917. FIRST USE IN COMMERCE: 20200917
- IC 030. US 046.G & S: Coffee; Tea; Beverages made of tea; Chai tea; Chamomile tea; Coffee based beverages; Coffee and tea; Ginseng tea; Green tea; Iced tea; Kombucha tea; Tea-based beverages; Tea-based beverages with fruit flavoring; Tea-based iced beverages; Black tea; Oolong tea. FIRST USE: 20200917. FIRST USE IN COMMERCE: 20200917
- IC 032. US 045 046 048.G & S: Lemonade; Carbonated water; Cola drinks; Drinking water; Energy drinks; Flavored waters; Flavored bottled water; Fruit drinks; Fruit flavoured carbonated drinks; Fruit flavored drinks; Fruit flavored soft drinks; Mineral water; Soda water; Soft drinks; Soft drinks flavored with tea; Sparkling water; Sports drinks; Sports drinks, namely, performance drinks; Sports drinks, namely, recovery drinks; Still water; Bottled drinking water; Carbonated mineral water; Flavoured mineral water; Mineral and carbonated waters; Sports drinks, namely, energy drinks. FIRST USE: 20200917. FIRST USE IN COMMERCE: 20200917

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
90568792

**Filing Date**
20210309

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20221129

**Registration Number**
6976704

**Date Registered**
20230214

**Owner**
(<mark>REGISTRANT</mark>) WEIRD BEVERAGES LLC LIMITED LIABILITY COMPANY TEXAS SUITE 500 111 CONGRESS AVENUE AUSTIN TEXAS 78701

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DRINK" IN INTERNATIONAL CLASSES 30 AND 32 APART FROM THE MARK AS SHOWN

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Brad A. Hakala, Esq.

## (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM

ZER**O&**

**Mark Punctuated**
ZERO&

**Translation**

**Goods/Services**

- IC 029. US 046.G & S: Beverages having a milk base; Milk based beverages containing fruit juice; Milk beverages containing fruits; Milk beverages with cocoa; Milk-based beverage containing coffee. FIRST USE: 20210301. FIRST USE IN COMMERCE: 20210301
- IC 030. US 046.G & S: Beverages made of coffee; Beverages made of tea; Beverages with a tea base; Bubble tea; Coffee and tea; Japanese green tea; Tea; Tea-based beverages; Tea-based beverages containing boba; Tea-based beverages with fruit flavoring; Tea-based iced beverages; Tea-based milk tea. FIRST USE: 20210301. FIRST USE IN COMMERCE: 20210301
- IC 032. US 045 046 048.G & S: Frozen fruit drinks; Fruit drinks and fruit juices; Fruit-based beverages. FIRST USE: 20210301. FIRST USE IN COMMERCE: 20210301
- IC 035. US 100 101 102.G & S: Retail store services featuring fruit tea and milk tea. FIRST USE: 20210301. FIRST USE IN COMMERCE: 20210301
- IC 043. US 100 101.G & S: Bubble tea shops; Café services; Coffee and juice bar services; Coffee and tea bars; Mobile café services for providing food and drink; Providing of food and drink via a mobile truck; Restaurant services, namely, providing of food and beverages for consumption on and off the premises; Serving of food and drink/beverages. FIRST USE: 20210301. FIRST USE IN COMMERCE: 20210301

**Mark Drawing Code**
(5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM

**Design Code**

**Serial Number**
90813963

**Filing Date**
20210706

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20220712

**Registration Number**
6855930

**Date Registered**
20220927

**Owner**
(<mark>REGISTRANT</mark>) Fuji INC. CORPORATION DELAWARE 5988 Newpark Mall Road Newark CALIFORNIA 94560

**Priority Date**

**Disclaimer Statement**

**Description of Mark**
The mark consists of the wording "ZERO&" represented in a stylized font.

**Type of Mark**
TRADEMARK. SERVICE MARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Kathryn E. Smith

Print: Sat Apr 22 2023                          90723874

## (4) STANDARD CHARACTER MARK

Telluride Brewing Co

**Mark Punctuated**
TELLURIDE BREWING CO

**Translation**

**Goods/Services**

- IC 032. US 045 046 048.G & S: Beer; Beer, ale and lager; Beer, ale and porter; Beer, ale, lager, stout and porter; Brewed malt-based beers; Coffee-flavored beer; Craft beers; Flavored beer; Pale beer; Porter; Wheat beer. FIRST USE: 20111001. FIRST USE IN COMMERCE: 20111001

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
90723874

**Filing Date**
20210520

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20220524

**Registration Number**
6811886

**Date Registered**
20220809

**Owner**
(REGISTRANT) Telluride Brewing Works, LLC LIMITED LIABILITY COMPANY COLORADO 156 Society Drive Telluride COLORADO 81435

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BREWING CO" APART FROM THE MARK AS SHOWN

**Description of Mark**

**Type of Mark**

TRADEMARK

**Register**
PRINCIPAL-2(F)

**Live Dead Indicator**
LIVE

**Attorney of Record**
Matthew T. Hoots

**Print: Sat Apr 22 2023**                                **90666976**

<div align="center">

**(4) STANDARD CHARACTER MARK**

</div>

LOBOS COFFEE ROASTERS

**Mark Punctuated**
LOBOS COFFEE ROASTERS

**Translation**
The English translation of LOBOS in the mark is WOLVES.

**Goods/Services**

- IC 021. US 002 013 023 029 030 033 040 050.G & S: Beverageware; Bottles, sold empty; Coffee cups; Coffee mugs; Coffee cups, tea cups and mugs; Non-electric coffee makers; Non-electric French presses. FIRST USE: 20210421. FIRST USE IN COMMERCE: 20210421
- IC 030. US 046.G & S: Cocoa; Coffee; Cookies; Espresso; Sandwiches; Tea; Bakery goods; Cocoa-based beverages; Coffee-based beverages; Coffee beans; Espresso drinks; Hot chocolate; Tea-based beverages. FIRST USE: 20201202. FIRST USE IN COMMERCE: 20201202
- IC 032. US 045 046 048.G & S: Beer; Beer, ale, lager, stout, porter, shandy; Craft beers; all the aforesaid containing coffee. FIRST USE: 20210213. FIRST USE IN COMMERCE: 20210213
- IC 043. US 100 101.G & S: Coffee bars; Coffee shops; Coffee supply services for offices; Restaurant services; Snack-bar services. FIRST USE: 20201202. FIRST USE IN COMMERCE: 20201202

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
90666976

**Filing Date**
20210423

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20220419

**Registration Number**
6777985

**Date Registered**
20220705

**Owner**
(REGISTRANT) Village of Wolves Industries, LLC LIMITED LIABILITY COMPANY FLORIDA 4987 Longmeadow Park St Orlando FLORIDA 32811

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COFFEE ROASTERS" APART FROM THE
MARK AS SHOWN

**Description of Mark**

**Type of Mark**
TRADEMARK. SERVICE MARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Brian R Orr

## (4) STANDARD CHARACTER MARK

Botrista

**Mark Punctuated**
BOTRISTA

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Agave syrup for use as natural sweetener; Black tea; Dulce de leche; Fructose for food; Fruit tea; Green tea; Iced black tea; Iced tea; Kumquat tea; Maple syrup; Tea-based beverages also containing milk; Mint tea; Tea; Tea-based beverages; Chocolate-based beverages with milk; Chocolate-based beverages; Cocoa beverages with milk; Coffee; Coffee beverages with milk; Coffee-based beverages; Natural sweeteners; Tea-based beverages with milk. FIRST USE: 20210628. FIRST USE IN COMMERCE: 20210628

- IC 032. US 045 046 048.G & S: Fruit beverages; Lemonades; Non-alcoholic beverages, namely, non-alcoholic fruit juice beverages; Non-alcoholic beverages flavored with coffee; Non-alcoholic cocktails; Non-alcoholic essences for making non-alcoholic beverages, not in the nature of essential oils; Non-alcoholic honey-based beverages; Packed fruit beverages, namely, fruit beverages in plastic bottles; Sparkling water; Syrups for beverages; Syrups for lemonade; Water beverages; Cocktails, non-alcoholic. FIRST USE: 20210628. FIRST USE IN COMMERCE: 20210628

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
90541842

**Filing Date**
20210223

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20211116

**Registration Number**
6741069

**Date Registered**
20220524

**Owner**
(REGISTRANT) Botrista Technology, Inc. CORPORATION DELAWARE 2686 Middlefield Road, Suite

F&G Redwood City CALIFORNIA 94063

**Priority Date**

**Disclaimer Statement**

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Michael T. Smith

## (4) STANDARD CHARACTER MARK

MAUNK-SUCK

**Mark Punctuated**
MAUNK-SUCK

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Coffee. FIRST USE: 20210626. FIRST USE IN COMMERCE: 20210629
- IC 032. US 045 046 048.G & S: Beer, Soda pops. FIRST USE: 20210626. FIRST USE IN COMMERCE: 20210629

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
90019030

**Filing Date**
20200624

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20201103

**Registration Number**
6687583

**Date Registered**
20220329

**Owner**
(REGISTRANT) Topsy Turvy Brewery, LLC LIMITED LIABILITY COMPANY WISCONSIN 281 Keyes Avenue Hampshire ILLINOIS 60140

**Priority Date**

**Disclaimer Statement**

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**

PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Laura R. Wanek

**Print: Sat Apr 22 2023**                    **90042451**

<div align="center">

**(3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS**

</div>



**Mark Punctuated**
DONT YELL AT ME SPACE BETWEEN DAILY TEA TIME

**Translation**
The non-Latin characters in the mark at the top of the mark transliterate to "bu yao dui wo jian jiao" and this means "don't yell at me" in English and the non-Latin characters in the mark at the bottom of the mark transliterate to "ri chang cha jian" and this means "space between daily tea time" in English.

**Goods/Services**

- IC 030. US 046.G & S: Coffee and coffee substitutes; Coffee and artificial coffee; Coffee substitutes; Coffee, tea, cocoa and artificial coffee; Prepared coffee and coffee-based beverages. FIRST USE: 20200620. FIRST USE IN COMMERCE: 20200712
- IC 032. US 045 046 048.G & S: Beer; Non-alcoholic beverages containing fruit juices; Non-alcoholic beverages flavoured with coffee; Non-alcoholic beverages flavoured with tea; Non-alcoholic beverages with tea flavor; Non-alcoholic beverages, namely, carbonated beverages; Non-alcoholic beer flavored beverages; Non-alcoholic carbonated beverages; Non-alcoholic fruit juice beverages; Non-alcoholic soda beverages flavoured with tea; Coffee-flavored beer; Non-alcoholic beer. FIRST USE: 20200620. FIRST USE IN COMMERCE: 20200712
- IC 043. US 100 101.G & S: Restaurant and café services. FIRST USE: 20200620. FIRST USE IN COMMERCE: 20200712

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS

**Design Code**
011505 020101 020131 020901 110303 241714 260102 260131 261709 280103

**Serial Number**
90042451

**Filing Date**
20200708

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20201208

**Registration Number**
6494612

**Date Registered**
20210921

**Owner**
(REGISTRANT) DONT YELL AT ME. CO., LTD LIMITED LIABILITY COMPANY TAIWAN 6-1-22, Ln. 553, Sec. 4, Zhongxiao E Rd. Taipei City TAIWAN 110

**Priority Date**

**Disclaimer Statement**

**Description of Mark**
Color is not claimed as a feature of the mark. The mark consists of a design of the head of a man and an arm holding a cup of tea, centrally in the mark, encircled with six Chinese characters at the top of the circle, the word "DON'T", a comma symbol and the word "AT" at the left portion of the circle, the word "YELL", a comma symbol and the word "ME" at the right portion of the circle; three small circles connected with lines at the left lower portion of the circle; three small circles connected with lines at the right lower portion of the circle; four Chinese characters between two comma symbols in the curly brackets at the bottom of the circle with the wording "SPACE BETWEEN DAILY TEA TIME" appearing beneath the bottom circle.

**Type of Mark**
TRADEMARK. SERVICE MARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Jerry Zhang

## (4) STANDARD CHARACTER MARK

Wizard Blend

**Mark Punctuated**
WIZARD BLEND

**Translation**

**Goods/Services**

- IC 032. US 045 046 048.G & S: Beer; Beer, ale and lager; Beer, ale and porter; Coffee-flavored beer; Malt beer. FIRST USE: 20160701. FIRST USE IN COMMERCE: 20160701

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
88493655

**Filing Date**
20190628

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20191015

**Registration Number**
5950187

**Date Registered**
20191231

**Owner**
(REGISTRANT) Modern Times Drinks, Inc. DBA Modern Times Beer CORPORATION CALIFORNIA 3725 Greenwood St. San Diego CALIFORNIA 92110 (LAST LISTED OWNER) MMT CRAFT, LLC LIMITED LIABILITY COMPANY DELAWARE 3725 GREENWOOD STREET SAN DIEGO CALIFORNIA 92110

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BLEND" APART FROM THE MARK AS SHOWN

**Description of Mark**

**Type of Mark**

TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
DAVID ISRAEL

Print: Sat Apr 22 2023                    88474545

## (4) STANDARD CHARACTER MARK

Head Beer Coach

**Mark Punctuated**
HEAD BEER COACH

**Translation**

**Goods/Services**

- IC 032. US 045 046 048.G & S: Beer; beer, ale and lager; beer, ale and porter; beer, ale lager, stout and porter; beer, ale, lager, stout, porter, shandy; beer-based cocktails; alcohol- free beers; black beer; brewed malt-based beers; coffee-flavored beer; de-alcohlised beer; flavored beers; malt beer; malt liquor; non-alcoholic beer; non- alcoholic beer flavored beverages; pale beer; porter; wheat beer. FIRST USE: 20210705. FIRST USE IN COMMERCE: 20210705

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
88474545

**Filing Date**
20190614

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20191015

**Registration Number**
6931393

**Date Registered**
20221220

**Owner**
(REGISTRANT) Bowen, Paul INDIVIDUAL UNITED STATES 1020 Alberta St Longwood FLORIDA 32750

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BEER" APART FROM THE MARK AS SHOWN

**Description of Mark**

**Type of Mark**

TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**

Print: Sat Apr 22 2023                    **90069641**

## (4) STANDARD CHARACTER MARK

Better Day Beverage Co

**Mark Punctuated**
BETTER DAY BEVERAGE CO

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Tea; Fermented tea; Kombucha tea; Matcha. FIRST USE: 20200501. FIRST USE IN COMMERCE: 20210801
- IC 032. US 045 046 048.G & S: Beer; Non-alcoholic beer; Non-alcoholic beverages with tea flavor; Non-alcoholic beverages, namely, carbonated beverages; Non-alcoholic carbonated beverages; Carbonated non-alcoholic drinks; Cider, non-alcoholic; Cocktails, non-alcoholic. FIRST USE: 20200501. FIRST USE IN COMMERCE: 20210801
- IC 033. US 047 049.G & S: Alcoholic beverages containing fruit; Alcoholic beverages except beers; Alcoholic coffee-based beverage; Alcoholic cordials; Alcoholic punch; Alcoholic punches; Alcoholic tea-based beverage; Liquor; Prepared alcoholic cocktail. FIRST USE: 20200501. FIRST USE IN COMMERCE: 20210801

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
90069641

**Filing Date**
20200723

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20210105

**Registration Number**
6740192

**Date Registered**
20220524

**Owner**
(REGISTRANT) Hunter Johnson INDIVIDUAL UNITED STATES 7203 Morton St. Dallas TEXAS 75209

**Priority Date**

**Disclaimer Statement**

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BEVERAGE CO" APART FROM THE
MARK AS SHOWN

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Tyler K Berger

**Print: Sat Apr 22 2023**                        **97272352**

## (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS



**Mark Punctuated**
THE GIDDY GOAT COFFEE ROASTERS

**Translation**

**Goods/Services**

- IC 021. US 002 013 023 029 030 033 040 050.G & S: Drinkware; mugs; thermal insulated containers for food or beverage. FIRST USE: 20210200. FIRST USE IN COMMERCE: 20210200
- IC 025. US 022 039.G & S: Tops as clothing; t-shirts. FIRST USE: 20210731. FIRST USE IN COMMERCE: 20210731
- IC 030. US 046.G & S: Coffee; coffee beans; tea-based beverages; coffee-based beverages; cocoa-based beverages; bakery goods; empanadas. FIRST USE: 20201100. FIRST USE IN COMMERCE: 20201100
- IC 032. US 045 046 048.G & S: Beer; fruit beverages; fruit juices. FIRST USE: 20211206. FIRST USE IN COMMERCE: 20211206
- IC 041. US 100 101 107.G & S: Entertainment services in the nature of live music performances; providing educational demonstrations; arranging, organizing, conducting, and hosting social entertainment events, art events, and exercise events. FIRST USE: 20200500. FIRST USE IN COMMERCE: 20200500
- IC 043. US 100 101.G & S: Providing of food and drink; coffee shop services; coffee-house and snack-bar services; restaurant and bar services; café services; coffee and tea bars; rental of banquet and social function facilities for special occasions, namely, wedding receptions and birthday parties. FIRST USE: 20201000. FIRST USE IN COMMERCE: 20201000

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS

**Design Code**
030710 030724 050703 110303 240907 260117 260121 270305

**Serial Number**
97272352

**Filing Date**
20220217

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20230110

**Registration Number**
7010898

**Date Registered**
20230328

**Owner**
(<mark>REGISTRANT</mark>) Giddy Goat, LLC LIMITED LIABILITY COMPANY NORTH CAROLINA 435 South Tryon Street, Unit 904 Charlotte NORTH CAROLINA 28202

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COFFEE ROASTERS" APART FROM THE MARK AS SHOWN

**Description of Mark**
The color(s) brown, black, blue, green, yellow, tan, and white is/are claimed as a feature of the mark. The mark consists of the word "THE" in brown and outlined in green alongside a brown, black, white, and tan goat. The goat has a blue-green and white eye and is smiling. The goat is standing on a brown coffee bean and holding a white coffee cup with brown coffee inside and white steam coming out of it. The words "GIDDY GOAT" are below the goat and are written in white on a brown background and outlined in yellow. The letter "O" in "GOAT" has a brown coffee bean inside of it. The words "COFFEE ROASTERS" appear below that in white and are within a brown banner. The entire mark is on a circle design that has blue water in the middle, then is outlined in green, dark green, and then yellow. The rest of the white in the mark represents background only and is not being claimed as a feature of the mark.

**Type of Mark**
TRADEMARK. SERVICE MARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Samantha N. Skains-Menchaca

Print: Sat Apr 22 2023                              88452581

## (4) STANDARD CHARACTER MARK

Go Beyond Usual

**Mark Punctuated**
GO BEYOND USUAL

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Coffee. FIRST USE: 20200903. FIRST USE IN COMMERCE: 20200903
- IC 032. US 045 046 048.G & S: Beer, specifically excluding wine. FIRST USE: 20200903. FIRST USE IN COMMERCE: 20200903

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
88452581

**Filing Date**
20190530

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20190924

**Registration Number**
6246361

**Date Registered**
20210112

**Owner**
(REGISTRANT) Living Waters Brewing Company LLC LIMITED LIABILITY COMPANY TENNESSEE
3041 Bromley Way Antioch TENNESSEE 37013

**Priority Date**

**Disclaimer Statement**

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**

PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Candace L Moon

## (4) STANDARD CHARACTER MARK

NOW WE'RE TALKING

**Mark Punctuated**
NOW WE'RE TALKING

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Herbal infusions; Tea; Tea bags; Tea for infusions; Tea-based beverages; Tea-based beverages also containing MILK; Tea-based beverages with fruit flavoring; Tea-based iced beverages; Barley tea; Beverages made of tea; Beverages with a tea base; Black tea; Chai tea; Chamomile tea; Earl Grey tea; Fruit teas; Green tea; Herb tea; Herbal tea; Iced tea; Instant tea; Instant black tea; Jasmine tea; Rooibos tea. FIRST USE: 20200905. FIRST USE IN COMMERCE: 20200905
- IC 032. US 045 046 048.G & S: Non-alcoholic beverages flavored with tea; Non-alcoholic beverages flavoured with tea; Non-alcoholic beverages with tea flavor. FIRST USE: 20200905. FIRST USE IN COMMERCE: 20200905

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
88654629

**Filing Date**
20191015

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20200303

**Registration Number**
6404321

**Date Registered**
20210629

**Owner**
(REGISTRANT) Tetley USA Inc. CORPORATION DELAWARE 155 Chestnut Ridge Road Montvale NEW JERSEY 07645

**Priority Date**

**Disclaimer Statement**

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Jennifer Hart

**(4) STANDARD CHARACTER MARK**

TEAVITY

**Mark Punctuated**
TEAVITY

**Translation**

**Goods/Services**

- IC 005. US 006 018 044 046 051 052.G & S: Asthmatic tea; Herbal teas for medicinal purposes; Medicinal tea. FIRST USE: 20200123. FIRST USE IN COMMERCE: 20200123
- IC 030. US 046.G & S: Tea; Tea bags; Tea extracts; Tea for infusions; Tea of salty kelp powder (kombucha); Tea pods; Tea substitutes; Tea-based beverages; Tea-based beverages also containing herbal extracts; Tea-based beverages containing boba; Tea-based beverages with fruit flavoring; Tea-based iced beverages; Tea-based milk tea; Acanthopanax tea (Ogapicha); Artificial coffee and tea; Barley tea; Beverages made of tea; Beverages with a tea base; Black tea; Bubble tea; Buckwheat tea; Butterfly pea flower tea; Chai tea; Chamomile tea; Chinese matrimony vine tea (Gugijacha); Citron tea; Coffee and tea; Coffee cherry tea; Coffee, tea, cocoa and artificial coffee; Earl Grey tea; Fermented tea; Flavourings of tea, other than essential oils, for food or beverages; Flowers or leaves for use as tea substitutes; Fruit teas; Ginger tea; Ginseng tea; Green tea; Herb tea; Herbal tea; Iced tea; Instant tea; Instant black tea; Instant green tea; Instant Oolong tea; Instant white tea; Japanese green tea; Jasmine tea; Kelp tea; Kombucha tea; Lime tea; Lime blossom tea; Mixes for making tea; Mixes in the nature of concentrates, syrups or powders used in the preparation of tea based beverages; Oolong tea; Peppermint tea; Processed tea leaves; Red ginseng tea; Roasted barley tea; Roasted brown rice tea; Rooibos tea; Rose hip tea; Rosemary tea; Sage tea; Sparkling tea; Syrups for making tea; Theine-free tea; Theine-free tea sweetened with sweeteners; Theine-free tea with added sweeteners; Tieguanyin tea; White tea; White lotus tea (Baengnyeoncha); Yuja-cha (Korean honey citron tea). FIRST USE: 20200123. FIRST USE IN COMMERCE: 20200123
- IC 032. US 045 046 048.G & S: Fruit-based soft drinks flavored with tea; Non-alcoholic beverages flavoured with tea; Non-alcoholic beverages with tea flavor; Non-alcoholic soda beverages flavoured with tea; Soft drinks flavored with tea. FIRST USE: 20200123. FIRST USE IN COMMERCE: 20200123

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
88803916

**Filing Date**
20200220

**Current Filing Basis**
1A

**Original Filing Basis**
1B

**Publication for Opposition Date**
20200623

**Registration Number**
6218431

**Date Registered**
20201208

**Owner**
(REGISTRANT) Mega Sellers LLC FORMERLY Mega Sellers LLC LIMITED LIABILITY COMPANY
FLORIDA 2645 Executive Park Dr Suite 505 Weston FLORIDA 33331

**Priority Date**

**Disclaimer Statement**

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**

**Print: Sat Apr 22 2023**                          **88296721**

# (4) STANDARD CHARACTER MARK

BEACH SHACK

**Mark Punctuated**
BEACH SHACK

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Coffee. FIRST USE: 20190205. FIRST USE IN COMMERCE: 20190205
- IC 032. US 045 046 048.G & S: Beer. FIRST USE: 20190125. FIRST USE IN COMMERCE: 20190125

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
88296721

**Filing Date**
20190211

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20190521

**Registration Number**
5828905

**Date Registered**
20190806

**Owner**
(REGISTRANT) Sycamore Brewing, LLC LIMITED LIABILITY COMPANY NORTH CAROLINA 401 W 24th St Suite B Charlotte NORTH CAROLINA 28206

**Priority Date**

**Disclaimer Statement**

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**

**Print: Sat Apr 22 2023**                              **87760048**

## (4) STANDARD CHARACTER MARK

CHA CHA MATCHA

**Mark Punctuated**
CHA CHA MATCHA
**Translation**
**Goods/Services**

- IC 030. US 046.G & S: Tea; artificial tea; beverages made of tea; beverages with a tea base; black tea; chai tea; flavorings of tea, other than essential oils, for food or beverages; green tea; herb tea; herbal tea; iced tea; mixes for making tea; mixes in the nature of concentrates, syrups or powders used in the preparation of tea based beverages; syrups for making tea; tea bags; tea extracts; tea for infusions; tea-based beverages; tea-based beverages with fruit flavoring; tea-based iced beverages; matcha. FIRST USE: 20160600. FIRST USE IN COMMERCE: 20160600
- IC 032. US 045 046 048.G & S: Concentrates, syrups or powders for making tea-flavored beverages. FIRST USE: 20160600. FIRST USE IN COMMERCE: 20160600

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK
**Design Code**
**Serial Number**
87760048
**Filing Date**
20180118
**Current Filing Basis**
1A
**Original Filing Basis**
1B
**Publication for Opposition Date**
20200616
**Registration Number**
6701713
**Date Registered**
20220412
**Owner**
(REGISTRANT) CHA CHA HOLDINGS LLC LIMITED LIABILITY COMPANY DELAWARE 373 Broome Street New York NEW YORK 10013
**Priority Date**
**Disclaimer Statement**

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MATCHA" APART FROM THE MARK AS SHOWN

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Amanda Roach

**Print: Sat Apr 22 2023**                              **87069745**

<div align="center">

**(4) STANDARD CHARACTER MARK**

</div>

Red Horn

**Mark Punctuated**
RED HORN

**Translation**

**Goods/Services**

- IC 030. US 046.G & S: Coffee. FIRST USE: 20140800. FIRST USE IN COMMERCE: 20140800
- IC 032. US 045 046 048.G & S: Beer. FIRST USE: 20140800. FIRST USE IN COMMERCE: 20140800

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Design Code**

**Serial Number**
87069745

**Filing Date**
20160613

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**
20161122

**Registration Number**
5348605

**Date Registered**
20171205

**Owner**
(REGISTRANT) Red Horn, LP DBA Red Horn Coffee House & Brewing Co. Flipside Coffee House LLC - Texas (US) LIMITED PARTNERSHIP TEXAS Suite 800 13010 W Parmer Lane Cedar Park TEXAS 78613
(REGISTRANT) Red Horn, LP DBA Red Horn Coffee House & Brewing Co. Flipside Coffee House LLC - Texas (US) LIMITED PARTNERSHIP TEXAS Suite 800 13010 W Parmer Lane Cedar Park TEXAS 78613

**Priority Date**

**Disclaimer Statement**

**Description of Mark**

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Emily M. Haas

Print: Sat Apr 22 2023                    87113807

## (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS



**Mark Punctuated**
CHA TEA. FOOD. BOBA

**Translation**

**Goods/Services**

- IC 021. US 002 013 023 029 030 033 040 050.G & S: Bowls; cups and mugs; mug trees; mugs of precious metal; coffee cups, tea cups and mugs; coffee mugs; drinking cups. FIRST USE: 20160701. FIRST USE IN COMMERCE: 20160701
- IC 030. US 046.G & S: Coffee and tea; fruit teas; iced tea; iced coffee; iced tea; tea; tea bags; tea extracts; tea pods; tea-based iced beverages; tea-based beverages with fruit flavoring; beverages with a tea base; black tea; chai tea; coffee-based iced beverages; ginger tea; instant tea; jasmine tea; kombucha tea; oolong tea; rosemary tea; tea-based iced beverages. FIRST USE: 20160701. FIRST USE IN COMMERCE: 20160701
- IC 032. US 045 046 048.G & S: Fruit drinks and fruit juices; fruit juice; fruit flavored drinks; fruit flavored soft drinks; fruit flavoured drinks; aerated fruit juices; frozen fruit drinks. FIRST USE: 20160701. FIRST USE IN COMMERCE: 20160701
- IC 043. US 100 101.G & S: Food preparation services; preparation of food and beverages; provision of food and drink in restaurants; restaurant services; restaurant services, including sit-down service of food and take-out restaurant services; restaurant services, namely, providing of food and beverages for consumption on and off the premises; serving of food and drink/beverages. FIRST USE: 20160701. FIRST USE IN COMMERCE: 20160701

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS

**Design Code**
050325 081325 260121

**Serial Number**
87113807

**Filing Date**
20160722

**Current Filing Basis**
1A

**Original Filing Basis**
1A

**Publication for Opposition Date**

20170704

**Registration Number**
5288884

**Date Registered**
20170919

**Owner**
(REGISTRANT) CHA FOR TEA, INC. CORPORATION CALIFORNIA PO BOX 2178 ARCADIA CALIFORNIA 91077

**Priority Date**

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CHA", "TEA", "FOOD" AND "BOBA" APART FROM THE MARK AS SHOWN

**Description of Mark**
yellow and gray. The mark consists of a large tea leaf in yellow with a grey vein. A yellow circle appears to the left. Below is the word "CHA" in grey, and below that is the wording "tea. food. boba". The letters are in grey with the exception of the "o" in "boba", which is yellow and represents a boba.

**Type of Mark**
TRADEMARK. SERVICE MARK

**Register**
PRINCIPAL

**Live Dead Indicator**
LIVE

**Attorney of Record**
Michael W. Schroeder

**United States Patent and Trademark Office (USPTO)**

# USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on April 26, 2023 for
**U.S. Trademark Application Serial No. 90703327**

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action**.  This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS) or the Electronic System for Trademark Trials and Appeals (ESTTA), as appropriate.  Your response and/or appeal must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response deadline.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

# GENERAL GUIDANCE

- **Check the status of your application periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

- **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

- **Beware of trademark-related scams**.  Protect yourself from people and companies that may try to take financial advantage of you.  Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you.  We will never request your credit card number or social security number over the phone.  Verify the correspondence originated from us by using your serial number in our database, TSDR, to confirm that it appears under the "Documents" tab, or contact the Trademark Assistance Center.

- **<u>Hiring a U.S.-licensed attorney</u>.**  If you do not have an attorney and are not required to have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1293632** |
|---|---|
| Filing date: | **06/26/2023** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Ex Parte Appeal - Serial No. | 90703327 |
|---|---|
| Appellant | Matthew Amoss |
| Applied for mark | BASIN BEVERAGE CO. |
| Correspondence address | FABIAN NEHRBASS<br>GARVEY SMITH & NEHRBASS PATENT ATTORNEYS LLC<br>701 POYDRAS STREET<br>SUITE 4310<br>NEW ORLEANS, LA 70139<br>UNITED STATES<br>Primary email: fabiannehrbass@patents.gs<br>Secondary email(s): sford@patents.gs, mrodriguez@patents.gs, aoshaugh-nessy@patents.gs<br>504-835-2000 |
| Submission | Appeal brief |
| Attachments | AppealBrief-2023.06.26.pdf(377422 bytes ) |
| Appealed classes | Class 030. First Use: None First Use In Commerce: None<br>All goods and services in the class are appealed, namely: Tea-based beverages; Coffee based beverages; Kombucha tea<br><br>Class 032. First Use: None First Use In Commerce: None<br>All goods and services in the class are appealed, namely: Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages<br><br>Class 033. First Use: None First Use In Commerce: None<br>All goods and services in the class are appealed, namely: Beverages, namely, wine, hard seltzer; Hard kombucha tea |
| Filer's name | Fabian M. Nehrbass |
| Filer's email | FabianNehrbass@patents.gs |
| Signature | /Fabian M. Nehrbass/ |
| Date | 06/26/2023 |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

### EX PARTE APPEAL

APPLICANT: Amoss, Matthew

APPLICATION NO.: 90/703,327

FILING DATE: May 11, 2021

MARK: **BASIN BEVERAGE CO.**

GOODS & SERVICES:

> INT'L CLASS 030: Tea-based beverages; Coffee based beverages; Kombucha tea
>
> INT'L CLASS 032: Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages
>
> INT'L CLASS 033: Beverages, namely, wine, hard seltzer; Hard kombucha tea
>
> INT'L CLASS 043: Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck

TRADEMARK ATTORNEY: CARLYLE, SHAUNIA P

ATTORNEY DOCKET NO.: T21144US (100142.3)

### APPEAL BRIEF OF APPLICANT

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

# TABLE OF AUTHORITIES

*Cai v. Diamond Hong, Inc.*, 901 F.3d 1367 (Fed. Cir. 2018)…………………………………………6

*E. & J. Gallo Winery v. Thunder Road Brands, LLC*, Opposition No. 91222284, (2018), (Not

    precedent)……………………………………………………………………………...21

*Hi Wines Ltd. V. Hi Degree Tequila, LLC*, Opposition No. 91251181, (2021) (not precedent)….16

*In re Hunke and Jochheim*, 185 USPQ 188, 189 (TTAB 1975)…………………………………13

*In re Hutchinson and Stengl*, Serial No. 86809909, (2019)…………………………………..15, 16

*In re Nat. Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985)……………………………………..6

*In re White Rock Distilleries, Inc.,* Serial No. 77093221, TTAB, Oct. 5, 2009 (not precedent)….10

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*,

    797 F.3d 1363, 1373 (Fed. Cir. 2015)………………………………………………18-20

*Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334 (Fed. Cir. 2015)……………..18-19

*Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211 (Fed. Cir. May 24, 2021)……….20-21

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

## ARGUMENT

A Final Office Action was issued on November 22, 2022. A Request for Reconsideration was filed on March 6, 2023, along with an Appeal. The Request for Reconsideration was denied on April 26, 2023, wherein the Examiner maintained and continued the refusals made in the November 22, 2022 Final Office Action. An Order was issued by the Trademark Trial and Appeal Board on April 26, 2023 resuming the appeal and making the Applicant's Appeal Brief due by June 25, 2023.

Applicant respectfully submits that "BASIN BEVERAGE CO." is entitled to registration, as there is no likelihood of confusion between this mark sought to be registered and the marks of U.S. Registration Nos. 4,890,160 (NEW BASIN DISTILLING COMPANY), 6,760,872 (Tahoe Basin), and 5,510,241 (GREAT BASIN COFFEE COMPANY).

## I.        INTRODUCTION

Per the Final Office Action, registration for BASIN BEVERAGE CO. is refused for International Classes 30, 32, and 33, due to an alleged likelihood of confusion with the following marks, for the following International classes of the application:

| Registration No. | Mark | Goods/Services | Class Refused Due to Registration |
|---|---|---|---|
| 4890160 | NEW BASIN DISTILLING COMPANY | Liquor | IC 032, 033 |
| 6760872 | Tahoe Basin | Chai tea; Coffee | IC 030 |
| 5510241 | GREAT BASIN COFFEE COMPANY | coffee; coffee and tea; coffee-based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based | IC 030 |

3

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

| | | beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee. | |
|---|---|---|---|

Each alleged likelihood of confusion is addressed in turn.

### A. NEW BASIN DISTILLING COMPANY - liquor

Applicant respectfully submits there is no likelihood of confusion between Applicant's mark of BASIN BEVERAGE CO. and the cited registration for NEW BASIN DISTILLING COMPANY. As noted above, the good for NEW BASIN DISTILLING COMPANY is "liquor." The mark is being cited against Applicant's BASIN BEVERAGE CO. for IC 032: Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages and IC 033: Beverages, namely, wine, hard seltzer; Hard kombucha tea.

The Final Office Action finds a likelihood of confusion based on allegations that (1) BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY create a similar commercial impression; and (2) the goods are similar in kind and/or closely related. Applicant respectfully disagrees with this assertion of likelihood of confusion.

#### a. *Not Confusing With Other Basin Marks For Beer, Why Then For Liquor?*

First and foremost, Applicant has argued, and the Examining Attorney agreed, that there is no likelihood of confusion between its mark and the many separate users of trademarks for beer (a good in Applicant's application) which utilize the term BASIN. **If there is no confusion between two marks sharing the term BASIN for the <u>same</u> goods, how could there be confusion between two marks, which are no more similar, sharing the term BASIN for <u>different</u> goods?**

4

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

Simply stated, there cannot be. It is not possible to be confusingly similar to another trademark for <u>different</u> goods based on a term shared with another trademark used with <u>identical</u> goods, when the trademarks for the identical goods are just as, if not more, similar to the applicant's mark. For example, there is no likelihood of confusion between BASIN BEVERAGE CO. and WILD BASIN, JEWEL BASIN, HELIO BASIN BREWING CO., TURNING BASIN, and BASIN OF ATTRACTION, for example (see table below), all of which use the trademarks for *identical goods*. Why then would there be confusion between BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY, which do not even have identical goods? This point was made previously and is elaborated on below. However, the Office Action did not address this inconsistency. Applicant submits that this alone is enough to obviate the need for any further analysis of BASIN as compared to NEW BASIN DISTILLING COMPANY. Nevertheless, a full examination is below.

### b. *The marks are dissimilar, when viewed in their entireties as to appearance, sound, connotation and commercial impression*

Applicant respectfully disagrees with the Final Office Action's assertion that BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY create a similar commercial impression. In evaluating the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression, Applicant submits this factor weighs in favor of registration.

First, the appearance is sufficiently distinct to not render confusion likely. Applicant's mark consists of three words: BASIN BEVERAGE CO. The cited mark is four words: NEW BASIN DISTILLING COMPANY. Only one of the six/seven[1] words, BASIN, is the same. In appearance, the marks share but a single term.

Second, as to sound, there is but one word of the six/seven – BASIN – that sounds the same. The rest bear no resemblance in sound. And it is not as if the single shared word leads the overall marks to sound similar. Each mark is long – Applicant's three-word mark of BASIN BEVERAGE CO. and the four-word cited mark of NEW BASIN DISTILLING COMPANY are not alike in sound. For Applicant's mark, BASIN is the first term. For the cited mark, it is the

---

[1] Applicant respectfully disagrees that CO. and COMPANY create a similar commercial impression between the marks BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY. However, acknowledging that CO. is an abbreviation of COMPANY, Applicant notes that there are 7 different words (or six if one counts abbreviations as the same as the non-abbreviated word).

second. The emphasis of *NEW* in the cited registration cannot be ignored.

In connotation, it is clear the cited mark refers specifically to a distilling company, or one that produces distilled spirits. Applicant's mark, on the other hand, does not imply that it offers distilled spirits, and in fact, the goods and services applied for do not include liquor (the good of the cited mark) or spirits. Applicant's mark is therefore sufficiently dissimilar in connotation to the cited mark.

Finally, as to overall commercial impression, Applicant respectfully submits that the single shared term of BASIN does not create a similar overall commercial impression. As the Federal Circuit has stated, "likelihood of confusion[[,]] cannot be predicated on dissection of a mark, that is, on only part of a mark." *In re Nat. Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985). However, that is exactly what the Office Actions seek to do. In the denial of the Request for Reconsideration after Final, the Examiner cites language from *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367 (Fed. Cir. 2018) which states that "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." (quoting *Coach Servs., Inc. v. Triumph Learning LLC* , 668 F.3d 1356, 1363 (Fed. Cir. 2012). Notably, the Examiner omits the preceding sentence of *Cai*, which states exactly what Applicant argues – that one must examine "the similarity or dissimilarity of the marks **in their entireties** as to appearance, sound, connotation[,] and commercial impression." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012)) (emphasis added in bold). There is no evidence submitted, or indication, that an "average purchaser" would not take into account the fact that the two marks share but a single common term.

Moreover, although DISTILLING COMPANY and BEVERAGE CO. have been disclaimed, "[t]he public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." *Id.* at p. 1059. Thus, although BEVERAGE CO. may be less dominant than BASIN in BASIN BEVERAGE CO. and DISTILLING COMPANY may be less dominant than NEW BASIN in NEW BASIN DISTILLING COMPANY, the marks, as a whole, still must be considered.

In asserting an alleged similar overall commercial impression, the Office Action provides that the use of CO. and Company do little to distinguish the marks for trademark purposes.

6

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

Applicant respectfully notes that the two words, CO. and Company, have different sounds and appearances and therefore do help distinguish the marks from each other.

Applicant respectfully submits that no similar overall commercial impression is created in comparing the marks. Additional argument in this regard is found in the Additional Arguments section, *infra*.

> ### c. Third Party Use Demonstrates Why A Single Shared Term of Basin Is Not Likely to Cause Confusion

BASIN is a widely used term for trademarks both with the goods in Applicant's application (i.e. beer) and the goods (liquor) of the cited mark. A table showing some registered marks utilizing BASIN as part of their mark is included below.

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) Status | Owner |
|------|------|------|------|------|
| WILD BASIN[2] | 6014406 | Beer | Mar. 17, 2020 | CANARCHY CRAFT BREWERY COLLECTIVE LLC |
| JEWEL BASIN[3] | 6429315 | Beer | Jul. 20, 2021 | Copperwood Brewing, LLC |
| ACE BASIN COCKTAIL CO.[4] | 5608888 | Non-alcoholic cocktail mixes | Nov. 13, 2018 | ACE Basin Cocktail Company |
| NEW BASIN DISTILLING COMPANY[5] | 4890160 | Liquor | Jan. 19, 2016 | New Basin Distilling Company LLC |
| HELIO BASIN BREWING CO.[6] | 5177835 | Beverages, namely, beer and soda pop | Apr. 4, 2017 | PHOENICIAN BREWING COMPANY, LLC |
| BASIN & | 5022765 | Distilled Spirits | Aug. 16, 2016 | Congregation |

---

[2] Jan. 25, 2022 Office Action, p. 17.
[3] Jan. 25, 2022 Office Action, p. 25.
[4] Jan. 25, 2022 Office Action, p. 15.
[5] Jan. 25, 2022 Office Action, at p. 11.
[6] Jan. 25, 2022 Office Action, p. 13.

7

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) *Status* | Owner |
|---|---|---|---|---|
| RANGE[7] | | | | Spirits, LLC |
| TURNING BASIN[8] | 88-373488<br><br>97-498075 | Beer; Wine; alcoholic beverages except beers; alcoholic beverages, namely, spirits, vodka, whiskey, gin, bourbon | (Apr. 5, 2019) *Recently abandoned*<br><br>(July 11, 2022) *Notice of Allowance issued 24 January 2023*[9] | Buffalo Bayou Distilleries, LLC |
| WILD BASIN[10] | 88-614301 | Soda pops; Soft drinks | (Sep. 12, 2019) *Notice of Allowance Issued* | CANarchy Craft Brewery Collective LLC |
|  [11] | 4746735 | Beer, ale, lager, stout and porter | June 2, 2015 | KB Brewing, Inc. DBA Klamath Basin Brewing Company |
|  [12] | 5246096 | Headwear; shirts Beer | July 18, 2017 | Phoenician Brewing Company, LLC |
| BASIN OF ATTRACTION[13] | 6019694 | Beer; ale | March 24, 2020 | August Schell Brewing Company |
| RIVER BASIN[14] | 5429308 | Liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; | March 20, 2018 | River Basin Distillery |

---

[7] Jan. 25, 2022 Office Action, at p. 9.
[8] Jan. 25, 2022 Office Action, at p. 19.
[9] Mar. 6, 2023 Request for Reconsideration After Final Action, at pp. 105-107.
[10] Jan. 25, 2022 Office Action, at p. 21.
[11] July 25, 2022 Response to Office Action, at p. 13 (Exhibit A).
[12] July 25, 2022 Response to Office Action, at p. 15 (Exhibit A).
[13] July 25, 2022 Response to Office Action, at p. 19 (Exhibit A).
[14] Oct. 24, 2022 Response to Office Action, at p. 18 (Exhibit E).

8

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

| Mark | Reg. No. / App. No. | Goods/Services | Reg. Date/ (Filing Date) *Status* | Owner |
|---|---|---|---|---|
| | | whiskey spirits | | |

Notably, the cited mark NEW BASIN DISTILLING COMPANY is just one of 11 registered trademarks or trademark applications which incorporates the word BASIN previously cited. Upon additional searching, Applicant located an additional trademark, RIVER BASIN, Reg. No. 5,429,308, for IC 033 liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; whiskey spirits.[15] Of these 12 marks, four of them list liquor or distilled spirits under their goods: NEW BASIN DISTILLING COMPANY for liquor, BASIN & RANGE for distilled spirits, TURNING BASIN for spirits, vodka, whiskey, gin, bourbon, and RIVER BASIN for liquor; whiskey; whiskey spirits; blended spirits; distilled spirits; whiskey spirits. BASIN is thus not simply shared between Applicant's BASIN BEVERAGE CO. mark and NEW BASIN DISTILLING COMPANY for different goods, but BASIN is a term shared amongst sellers of liquor / spirits. Because there are multiple sellers of goods of liquor / spirits that utilize BASIN, Applicant respectfully submits the shared term BASIN in NEW BASIN DISTILLING COMPANY and BASIN BEVERAGE CO. cannot be the basis for a finding of a likelihood of confusion between Applicant's mark and the cited mark.

Perhaps even more importantly, if there is no likelihood of confusion between two marks sharing the term BASIN for the *same goods*, there likewise should be no confusion amongst two marks sharing the term BASIN for *different goods*. That is, Applicant has demonstrated that there is no likelihood of confusion between it and the many separate users of trademarks for beer[16] (a good in Applicant's application) which utilize the term BASIN. How could there be confusion with another mark, no more similar than the other marks cited, which is not even for the same goods as Applicant? If consumers are not likely to be confused between WILD BASIN and BASIN BEVERAGE CO. or HELIO BASIN BREWING CO. and BASIN BEVERAGE CO., for *the same goods*, surely there can be no confusion between BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY, *for different goods*. There is no rationale or litmus test supporting this difference in analysis.

---

[15] Oct. 24, 2022 Response to Office Action, at p. 18 (Exhibit E).
[16] In addition to those cited registrations, see also July 25, 2022 Response to Office Action, at p. 21-56 (Exhibit B) for additional third party use.

9

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

Again, it bears mentioning that New Basin Distilling Company is not even the only owner of a trademark for liquor/spirits that uses the term BASIN. Since it cannot prevent other owners from using the term BASIN, for *the same goods* (liquor), why would it be able to prevent Applicant from using the term BASIN, *for different goods*? It should not be able to do so.

With respect to the submission of RIVER BASIN, the Examiner states: "prior decisions and actions of other trademark examining attorneys in applications for other marks have little evidentiary value and are not binding upon the USPTO or the Trademark Trial and Appeal Board." (April 26, 2023 Denial of Request for Reconsideration, page 3). Applicant respectfully submits that the Examiner has misinterpreted the purpose of the submission of RIVER BASIN. RIVER BASIN is submitted not so that this Examiner must follow what a different examiner did, but rather, as explained, to show yet another example of another trademark using the term BASIN, this time for the *same* goods as the cited mark.

### d.   *The Goods of the Respective Marks Are Not The Same*

The question is not whether alcoholic beverages are related in a general sense, as undoubtedly, they are both beverages and alcoholic, but whether they are related such that Applicant's mark would likely cause confusion with the cited mark. Specifically, the question is whether the goods are related such that the single shared term BASIN renders consumers likely to be confused as to the source of the goods and/or services offered. In a relevant decision by the Trademark Trial and Appeal Board finding the examining attorney had failed to establish on the record the relatedness of energy vodka infused with caffeine and wine, the Board explained:

> **There is no per se rule that holds that all alcoholic beverages are related**. See *G. H. Mumm & Cie v. Desnoes & Geddes Ltd.*, 917 F.2d 1292, 16 USPQ2d 1635 (Fed. Cir. 1990)[RED STRIPE and design for beer was not confusingly similar to a design of a red stripe for wines and sparkling wines]; *National Distillers and Chemical Corp. v. William Grant & Sons, Inc.*, 505 F.2d 719, 184 USPQ 34 (CCPA 1974) [DUET for prepared alcoholic cocktails, some of which contained brandy, and DUVET for French brandy and liqueurs not confusingly similar]. See also, TMEP §1207.01(a)(iv) ["there can be no rule that certain goods or services are per se related, such that there must be a likelihood of confusion from the use of similar marks in relation thereto"].

*In re White Rock Distilleries, Inc.,* Serial No. 77093221, TTAB, Oct. 5, 2009 (not precedent)(emphasis added). Applicant respectfully submits that consumers of Applicant's goods are not likely to be confused with a liquor brand simply based on a single shared term. There is no evidence in the record that the average consumer of Applicant's goods are necessarily the same

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

consumers of the cited mark's goods, or that consumers of Applicant's goods would not properly distinguish companies selling different alcoholic beverages, even if such companies shared a single term in common. In fact, the evidence of record, namely the various trademarks which share the term BASIN *for liquor / spirits*, suggests that a shared term of BASIN alone is not likely to cause confusion between consumers *even for the same goods.*

In an attempt to rebut this point, the Trademark Examiner attaches (as evidence to the April 26, 2023 denial of the Request for Reconsideration) various internet screenshots which purport to establish "that the same entity **commonly** manufactures, produces, or provides the relevant goods and/or services and markets the goods and/or services under the same mark." (page 5, emphasis added). However, the actual documents, screenshots from various websites, does not support the Examiner's assertion. The evidence submitted by the Examiner only demonstrates that at least on a handful of occasions, the same company / establishment produced and sold both liquor and other alcoholic goods, such as beer or wine, under the same name. The evidence **does not** indicate that such overlap is **so common** so as to suggest that any differences between liquor and the goods set forth in Applicant's application should be ignored in examining any likelihood of confusion. Moreover, the evidence largely demonstrates that the companies / establishments which sell both liquor and another type of alcohol, often do so only at their facility, the brewery or distillery. Assuming, for the sake of argument, that Smirnoff and Jose Cuervo products can be found in the same store, the first five examples do not indicate that their products are sold to consumers outside of their place of establishment. Accordingly they do not support the Examiner's position that consumers of liquor and consumers of Applicant's goods are likely to assume that all liquor companies could just as easily be beer or wine companies, and vice versa. Applicant submits that the submitted evidence by the Examiner does ***not*** indicate that "the same entity **commonly** manufactures, produces, or provides the relevant goods and/or services and markets the goods and/or services under the same mark" as was alleged in the Examiner's denial of the request for reconsideration.

Furthermore, the purported evidence is misapplied. After all, how many breweries are there that are not also distilleries? What percentage of breweries are also distilleries? How many beer companies do not sell liquor? How many beer companies also sell liquor? How many wine companies do not sell liquor compared to how many wine companies sell liquor? These questions and evidence which relates to these questions would be much more indicative of how related the

11

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

goods of Applicant and "liquor" are. Absent any such evidence, the Examiner fails to demonstrate a relatedness of the goods so as to disregard any differences between them.

For the foregoing reasons, Applicant's mark, "BASIN BEVERAGE CO.," is dissimilar enough from "NEW BASIN DISTILLING COMPANY," and the goods associated with each respective mark are different enough such that there is no likelihood of confusion between the marks.

## B. GREAT BASIN COFFEE COMPANY & TAHOE BASIN – associated goods: coffee/tea

Applicant respectfully submits there is no likelihood of confusion between Applicant's mark of BASIN BEVERAGE CO. and the cited registrations of GREAT BASIN COFFEE COMPANY (US Reg. No. 5510241) (for coffee; coffee and tea; coffee-based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee) or TAHOE BASIN (US Reg. No. 6760872) (for chai tea; coffee) for IC 030 (tea-based beverages; coffee-based beverages; kombucha tea).

### a. GREAT BASIN And TAHOE BASIN Are Geographically Descriptive and Weak

Firstly, it should be noted that GREAT BASIN COFFEE COMPANY (Reg. No. 5,510,241) is on the supplemental register (see registration[17]) and that the owner of the mark, during prosecution, disclaimed "Great Basin", stating the applicant was "[a]dding 2 disclaimers to acknowledge that Great Basin Coffee Company does not and will not have exclusive rights to "Great Basin" because it is geographically descriptive and other companies must be able to use it…" (Mar. 6, 2023 Request for Reconsideration After Final Action, at pp. 108-111).

Secondly, TAHOE BASIN is geographically descriptive as well. A screenshot showing the listed owner's address shows that the address is near "Lake Tahoe Basin." (See Oct. 24, 2022 Response to Office Action, at pp. 32-34, 83-86, documents regarding owner of TAHOE BASIN location (Pacific Green Coffee Roasters)).

In the April 26, 2023 denial of Applicant's Request for Reconsideration, the Examiner

---

[17] July 25, 2022 Response to Office Action, p. 17 (Exhibit A)

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

states:

> Furthermore, the Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board have recognized that marks deemed "weak" **or merely descriptive** are still entitled to protection under Section 2(d) against the registration by a subsequent user of a similar mark for closely related goods and/or services. TMEP §1207.01(b)(ix); see King Candy Co. v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 1401, 182 USPQ 108, 109 (C.C.P.A. 1974); In re Max Capital Grp. Ltd., 93 USPQ2d 1243, 1246 (TTAB 2010).

(emphasis added in bold)(Denial, Page 3). However, the bolded language should not have been included. The TMEP (1207.01(b)(ix)) omits the bolded "or merely descriptive" from its statement:

> However, even a weak mark is entitled to protection against the registration of a similar mark for closely related goods or services. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 1401 182 USPQ 108, 109 (C.C.P.A. 1974) ; *In re Max Cap. Grp. Ltd.*, 93 USPQ2d 1243, 1246 (TTAB 2010) (quoting *In re Chica, Inc.*, 84 USPQ2d 1845, 1850 (TTAB 2007)).

In fact, with respect to marks on the supplemental register or descriptive marks, that same section of the TMEP provides: "The Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board have recognized that merely descriptive and weak designations may be entitled to a narrower scope of protection than an entirely arbitrary or coined word." (TMEP 1207.01(b)(ix) (citations omitted)). The TMEP goes on, citing *In re Hunke and Jochheim*, 185 USPQ 188, 189 (TTAB 1975):

> it is well established that the scope of protection afforded a merely descriptive or even a highly suggestive term is less than that accorded an arbitrary or coined mark. That is, terms falling within the former category have been generally categorized as "weak" marks, and the scope of protection extended to these marks has been limited to the substantially identical notation and/or to the subsequent use and registration thereof for substantially similar goods.

Notably, the denial of the Request for Reconsideration omits this critical language. Applicant's mark of BASIN BEVERAGE CO. is not "the substantially identical notation" provided by GREAT BASIN COFFEE COMPANY. Moreover, if GREAT BASIN does not have exclusive right to GREAT BASIN, how could it arguably preclude the registration of another mark with only one of those words, BASIN? It should not. Applicant respectfully submits that the reliance on GREAT BASIN COFFEE COMPANY is misplaced.

Similarly, TAHOE BASIN, as shown in the evidence submitted by Applicant, is

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

geographically descriptive as well. However, even were it not, the single shared term of BASIN, when such a term is shared by other companies selling *the same* goods, should not serve as the basis for a likelihood of confusion.

### b. *BASIN BEVERAGE CO. Gives a Different Impression Than GREAT BASIN COFFEE COMPANY and TAHOE BASIN*

Although each of the trademarks include the term BASIN, each mark includes additional terms that serve to distinguish one trademark from another. BASIN BEVERAGE CO. consists of three words, GREAT BASIN COFFEE COMPANY consists of four words, and TAHOE BASIN consists of two words. The only word that is common to all of the trademarks is BASIN. It is the only word that is common in terms of sound or appearance. Only Co. and company have a similar connotation. When considering each mark in their entirety, the marks do not create a similar commercial impression such that consumers would likely assume a connection between the various trademark owners. Consumers would assume that TAHOE BASIN is located near the Lake Tahoe Basin (which it is) and that Great Basin is likewise descriptive (per the Great Basin Applicant's own admission, it is (presumably a reference to The Great Basin – see https://www.nps.gov/grba/planyourvisit/the-great-basin.htm)(Oct. 24, 2022 Response to Office Action, at pp. 29-31)). Moreover, additional third-party uses of unregistered trademarks demonstrates that the consuming public has to look beyond the word BASIN in determining the source of a coffee or tea related drink. For example, please see the table below, which shows additional, unregistered marks.

| Mark | Goods/Services |
|------|----------------|
| THUNDER BASIN COFFEE COMPANY | Coffee shop |
| THUNDER BASIN | Coffee shop |
| NILE BASIN COFFEE | coffee |
| SNOWBASIN | coffee |
| BEAR BASIN | coffee |

Thus, in addition to the cited marks, there is THUNDER BASIN COFFEE COMPANY (which also uses the mark, THUNDER BASIN) (https://www.facebook.com/Thunderbasincoffeecompany/photos/), NILE BASIN COFFEE

14

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

(https://www.nilebasinllc.com/),                    SNOWBASIN                    coffee
(https://www.google.com/shopping/product/1?client=firefox-b-1-
d&q=%22basin+coffee%22&prds=epd:14515708719327015984,eto:14515708719327015984_0,
pid:14515708719327015984&sa=X&ved=0ahUKEwjAmL-
sifL6AhWzTTABHTtVBv8Q9pwGCAg) (see Oct. 24, 2022 Response to Office Action, at pp. 20-
27), and BEAR BASIN (https://longvalleycoffee.com/products/bear-basin-medium-roast) (see
Mar. 6, 2023 Request for Reconsideration after Final Action, pp. 27-28). The use of the term
BASIN by a plethora of third parties further supports Applicant's position that consumers would
not find that the Applicant's trademark of BASIN BEVERAGE CO. would likely be confused
with GREAT BASIN COFFEE COMPANY or TAHOE BASIN.

Moreover, Applicant respectfully disagrees with the Final Office Action's assertion that
"registrant's use of the word TAHOE does not create a different commercial impression from the
use of the word BASIN alone in the applicant's mark." TAHOE BASIN is geographically
descriptive and refers specifically to a geographic area. Without TAHOE, the mark would have a
very different connotation. When each mark is examined and compared in their entireties,
Applicant submits that there is no confusion between BASIN BEVERAGE CO. and TAHOE
BASIN.

It should also be noted that there can be no confusion with GREAT BASIN COFFEE
COMPANY because the mark appears to no longer be in use. (Please see Mar. 6, 2023 Request
for Reconsideration After Final Action, at pp. 87-104 (Exhibit K), showing the website as no
longer active, Instagram deleted, Facebook page non-existent, Utah Secretary of State page
showing company as expired.)

For the foregoing reasons, there is no confusion between Applicant's mark of BASIN
BEVERAGE CO. and the cited marks of GREAT BASIN COFFEE COMPANY and TAHOE
BASIN.

### C. ADDITIONAL ARGUMENT

Applicant respectfully disagrees that any likelihood of confusion exists, because (1):
Applicant's BASIN BEVERAGE CO. mark and the cited marks are sufficiently dissimilar; and
(2) the extensive use of the term BASIN by third parties as part of their mark demonstrates that
the shared use of BASIN alone cannot be the basis for a finding of a likelihood of confusion
between Applicant's mark of BASIN BEVERAGE CO. and the cited marks of NEW BASIN

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

DISTILLING COMPANY, GREAT BASIN COFFEE COMPANY, and TAHOE BASIN.

1. <u>Applicant's Mark is Sufficiently Dissimilar To The Cited Marks</u>

The Office Actions rely upon the shared term "BASIN" and fail to give proper weight to the additional terms in the cited registrations and applications.

As noted in *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), "[t]he Board has often held that it is the first part of a mark which is most likely to be impressed upon the mind of the consumer and remembered. *See e.g., Presto Prod. Inc. v. Nice-Pak Prod., Inc.,* 9 USPQ2d 1895, 1897 (TTAB 1988)." With respect to the present refusal, each of the marks has another word or term prior to BASIN (NEW, GREAT, TAHOE). Applicant submits that once proper consideration is given to the entirety of the marks, especially in light of the fact that the additional terms serve as the dominant portions of such marks, there is sufficient dissimilarity between the marks to negate a likelihood of confusion. However, even if the dominant portion of each mark was regarded as the term plus BASIN, the additional terms still result in sufficient dissimilarity between the marks.

In *In re Hutchinson and Stengl*, Serial No. 86809909, (2019), (not precedent), the Trademark Trial and Appeal Board reversed the refusal to register Applicant's design mark for CANNONBALL CREEK BREWING COMPANY GOLDEN COLORADO (BREWING COMPANY GOLDEN, COLORADO disclaimed) for "beer" under  Section 2(d) based on an alleged likelihood of confusion with the mark CANNONBALL DOUBLE IPA (DOUBLE IPA disclaimed) for "ale; beer; brewed malt-based alcoholic beverage in the nature of beer."

In explaining its decision, the TTAB emphasized the importance of the additional term, noting that it created a different commercial impression in the marks:

> In view of the foregoing, we find that the dominant portion of Applicant's mark is the wording CANNONBALL CREEK and that the dominant element of the cited mark is the term CANNONBALL.
> In terms of connotation and commercial impression, however, we find that dominant portions of the marks at issue to be quite dissimilar. The circumstances of this case are very similar, if not identical, to those in *Champagne Louis Roederer S.A. v. Delicato Vineyards*, 148 F.3d 1373, 47 USPQ2d 1459 (Fed. Cir. 1998). In that case, the Federal Circuit affirmed the Board's holding that the second word in applicant's mark CRYSTAL CREEK served to create a totally different commercial impression from the one created by opposer's mark CRISTAL when

16

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

> the marks were contemporaneously used on wine.
>
> In the present case as in *Champagne Louis*, the dominant portion of Applicant's mark consists of two words, with the first word being identical to the dominant element of the cited mark. Put quite simply, we find that the presence of the word CREEK in Applicant's mark, like the presence of CREEK in the applicant's mark in *Champagne Louis*, causes the mark to be dissimilar from the cited mark in meaning and overall commercial impression.

*In re Hutchinson and Stengl* , Serial No. 86809909, (pp. 8-9)

Similarly, in *Hi Wines Ltd. V. Hi Degree Tequila, LLC*, Opposition No. 91251181, (2021) (not precedent) the TTAB found that the Applicant's HI DEGREE mark for distilled blue agave liquor was sufficiently dissimilar from the Opposer's mark HI! for alcoholic beverages except beer, such that confusion was unlikely. The Board found this even though the goods were "in part, legally identical, and the channels of trade and purchasers overlap[ped]." *Id.* at p. 34. In evaluating the similarity of the marks, the Board found that the marks differed significantly in appearance and sound by virtue of the additional word DEGREE in Applicant's mark. *Id.* at p. 31.

Applicant's mark of BASIN BEVERAGE CO. shares the term BASIN with the third-party marks. However, it also has BEVERAGE CO. as part of its mark. Much like CANNONBALL and CANNONBALL CREEK, HI! and HI DEGREE, and CRYSTAL CREEK and CRISTAL, Applicant's mark of BASIN BEVERAGE CO. is sufficiently dissimilar from NEW BASIN DISTILLING COMPANY, TAHOE BASIN, and GREAT BASIN COFFEE COMPANY due to the additional words in the marks. Such additional words lead the marks to be significantly different in both appearance and sound, and thus, commercial impression. These significant differences between the marks results in a finding of no likelihood of confusion between them.

2. <u>Extensive Third-Party Usage Precludes a Finding of a Likelihood of Confusion</u>

Furthermore, the extensive use of the term BASIN by third parties reveals there would be no confusion between Applicant's applied for BASIN BEVERAGE CO. mark and the cited marks. Due to the extensive third-party usage, consumers would have to look at the entire mark of any mark which contains the term "BASIN" in order to determine the source of the goods or services. Accordingly, consumers would not be confused simply because two marks contain the shared term "BASIN". Consumers would have to appreciate minute differences between any marks containing the term "BASIN".

*a. Additional Usage of "BASIN" by Others*

17

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

In addition to the cited registrations, Applicant further refers to the third-party usage of the term BASIN cited herein and those submitted in Applicant's prior responses (Jul. 25, 2022 Response to Office Action; Oct. 24, 2022 Response to Office Action; and Mar. 6, 2023 Request for Reconsideration After Final Action). That is, any time a consumer sees a mark including "BASIN," the consumer must evaluate the entirety of the mark and cannot believe that all the goods sold under marks including the term "BASIN" derive from the same source.

> ### b. The "BASIN" Portion of the Cited Marks is Entitled To A Narrow Scope of Protection

The "BASIN" portion of each of the cited marks is weak and entitled to a narrow scope of protection due to the extensive third-party use of "BASIN" in other marks. Because of such third-party use, consumers will look to minute differences between any mark containing "BASIN" to distinguish between the marks, the marks are weak (with respect to their usage of "BASIN") and simply possessing the term "BASIN" in a mark, even with the same goods, should not serve as a basis for refusal of Applicant's mark.

As explained by the Federal Circuit,

> "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation,* 794 F.3d at 1338, 2015 WL 4400033, at *3. "The weaker an opposer's mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection." *Id.; see also Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,* 396 F.3d 1369, 1373 (Fed.Cir.2005) ("Evidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection.").

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1373 (Fed. Cir. 2015).

In *Juice Generation, Inc. v. GS Enterprises LLC*, 794 F.3d 1334 (Fed. Cir. 2015), the Federal Circuit addressed whether the mark "PEACE LOVE AND JUICE" and a design for use with juice bar services was likely to cause confusion with opposer's marks, all which contained the phrase "PEACE & LOVE" for restaurant services. *Id.* at 1336. Remanding for further proceedings, the Federal Circuit held that the Board did not adequately assess the weakness of the "PEACE & LOVE" marks and did not properly consider the three-word combination of the applicant's mark "PEACE LOVE AND JUICE" as a whole in comparing it to the two-word combinations in the opposer's marks.

18

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

In its analysis, the Federal Circuit found that the applicant's evidence of third-party uses was "powerful on its face." *Id.* at 1339. The Federal Circuit explained:

> In addition, "[a] real evidentiary value of third party *registrations* per se is to show the sense in which ... a mark is used in ordinary parlance." 2 McCarthy on Trademarks and Unfair Competition § 11:90 (4th ed.2015) (emphasis added). "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak."

*Id.* The Federal Circuit found that the Board failed to give adequate consideration to the strength or weakness of opposer's marks in light of the third-party use and registrations and that the Board erred when it stated "PEACE LOVE" is the dominant portion of "PEACE LOVE AND JUICE" and compared to "PEACE & LOVE" is virtually identical, that the addition of a disclaimed word "JUICE" does not distinguish the applicant's mark from the opposer's marks. *Id.* at 1340-1341. Rejecting such an analysis as inadequate, the Board could afford more or less weight to particular components of a mark for appropriate reasons, but it was still required to view the mark as a whole. *Id.* The Federal Circuit explained:

> But the Board did not set forth an analysis showing that it avoided the error of giving no significance to the term, which is impermissible notwithstanding that the term is generic and disclaimed. See *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 851 (Fed.Cir.1992) (Board erred by giving no weight to generic term); see also Shen Mfg. Co. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1243 (Fed.Cir.2004) ("The disclaimed elements of a mark, however, are relevant to the assessment of similarity. This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases have been disclaimed." (citation omitted)); Nat'l Data Corp., 753 F.2d at 1059 ("The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion. The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." (footnote omitted)).

*Id.* at 1341. The Federal Circuit remanded to the Board to take consideration of the disclaimed term as well as the evidence of third-party use. After remand, the mark was ultimately registered (see U.S. Reg. No. 4923032 for PEACE LOVE AND JUICE and design).

Similarly, in *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363 (Fed. Cir. 2015), the Federal Circuit reversed the Trademark Trial and Appeal Board's finding that there was a likelihood of confusion between

19

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

applicant's mark of  and opposer's mark of  **KELME**  (U.S. Trademark Application Serial No. 77/823,794 and U.S. Reg. No. 1,856,808). In arriving at this conclusion, the Federal Circuit relied on the dissimilarity of the marks and the many third-party marks incorporating paw prints, stating:

> We agree with Jack Wolfskin that the Board erred in its consideration of this evidence. Jack Wolfskin presented extensive evidence of third-party registrations depicting paw prints and evidence of these marks being used in internet commerce for clothing. The Board too quickly dismissed the significance of this evidence. As we recently explained in Juice Generation, such extensive evidence of third-party use and registrations is "powerful on its face," even where the specific extent and impact of the usage has not been established. 794 F.3d at 1339, 2015 WL 4400033, at *4 (detailing the extensive use of marks used in connection with the food service industry that incorporate the words "Peace" and "Love"). For example, evidence of thirdparty registrations is relevant to "show the sense in which a mark is used in ordinary parlance," id. at 1339, 2015 WL 4400033 at *4 ; that is, some segment that is common to both parties' marks may have "a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak," id. In addition, **evidence of third-party use of similar marks on similar goods "can show that customers have been educated to distinguish between different marks on the basis of minute distinctions**." Id. at 1338, 2015 WL 4400033 at *3 (internal quotation marks omitted). In this case, Jack Wolfskin's evidence demonstrates the ubiquitous use of paw prints on clothing as source identifiers. Given the volume of evidence in the record, consumers are conditioned to look for differences between paw designs and additional indicia of origin to determine the source of a given product. **Jack Wolfskin's extensive evidence of third-party uses and registrations of paw prints indicates that consumers are not as likely confused by different, albeit similar looking, paw prints.** The Board's conclusion that this factor was neutral is not supported by substantial evidence.

*Id.* at 1374 (emphasis added).

In the same way that consumers are not likely to be confused by similar paw prints, or the repeated words "PEACE" and "LOVE" due to the extensive evidence of third-party use and registrations of paw prints and "PEACE LOVE" marks, consumers of Applicant's goods are not likely to be confused as to the source of the good simply because two marks include the term "BASIN." In an area where multiple trademarks incorporating BASIN exist, consumers are trained to distinguish between the marks based on "minute distinctions." In the present application, Applicant respectfully submits that the distinctions between its mark and those cited against it are much more than minute. And, these distinctions between the marks prevent a finding of likelihood

20

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

of confusion.

In *Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211 (Fed. Cir. May 24, 2021), the Federal Circuit found there was no likelihood of confusion between the opposer's various INDUSTRY marks and the applicant's BLUE INDUSTRY mark. Addressing the similarity or dissimilarity of the marks, the Federal Circuit agreed with the Board that BLUE, the lead term in the applicant's mark BLUE INDUSTRY, made it so that the applicant's mark BLUE INDUSTRY did not bear a striking resemblance in appearance, sound, meaning or commercial impression to any of the pleaded (INDUSTRY) marks of opposer. *Id.* at *7-9.

In its decision, the Federal Circuit again emphasized the importance of third-party use, stating:

> "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation*, *Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015). This court has held that, "The purpose of a defendant introducing third-party uses is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions." *Omaha Steaks Int'l*, 908 F.3d at 1324 (quoting *Palm Bay Imps.*, 396 F.3d at 1374) (internal quotation marks omitted). "Third[-]party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation*, 794 F.3d at 1339. **"The weaker an opposer's mark, the closer an applicant's mark can come without causing likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection."** *Id.* at 1338 (quoting *Palm Bay Imps.*, 396 F.3d 1373). "[E]xtensive evidence of third-party use and registrations is 'powerful on its face,' even where the specific extent and impact of the usage has not been established." *JackWolfskin Ausrustung Fur Draussen GmbH & Co. KGaA v. New Millenium Sports, S.L.U.*, 797 F.3d 1363, 1374 (Fed. Cir. 2015) (quoting *Juice Generation*, 794 F.3d at 1339).

*Pure & Simple Concepts, Inc. v. I H W Mgmt.*, 2020-1211, at *9-10 (Fed. Cir. May 24, 2021) (emphasis added). The Board found that "numerous" third parties had registered or used INDUSTRY formative marks in connection with clothing and thus, INDUSTRY (or the plural thereof) is "'both conceptually and commercially weak' and therefore **the scope of the marks' protection is limited.**" *Id.* at *10 (emphasis added). The Board found that due to the third-party registrations and use "'consumers are conditioned to look for differences between INDUSTRY formative marks to determine the source of a given product and are therefore less likely to be confused.'" *Id.* The Federal Circuit likewise found that the extensive third-party registrations and

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

use weighed against a finding of a likelihood of confusion.

Similar to *Pure & Simple Concepts, Inc. v. I H W Mgmt.* and as previously noted, the marks cited against Applicant's mark BASIN each contain additional, significant terms. Just as BLUE INDUSTRY was sufficiently dissimilar to INDUSTRY based on the term BLUE, so should NEW BASIN DISTILLING COMPANY be regarded as dissimilar to BASIN BEVERAGE CO. due to NEW and DISTILLING COMPANY, and GREAT BASIN COFFEE COMPANY due to GREAT and COFFEE COMPANY, and TAHOE BASIN due to TAHOE.

In yet another decision, *E. & J. Gallo Winery v. Thunder Road Brands, LLC*, Opposition No. 91222284, (2018), (Not precedent), the TTAB dismissed the opposition, finding that the mark THUNDER ROAD for "alcoholic beverages, namely Tennessee sour mash whiskey and moonshine" was not likely to be confused with opposer's common law use of the mark THUNDERBIRD on wine, or its registered marks for THUNDERBIRD for "wines" or THUNDERBIRD for "alcoholic beverages except beers." The TTAB noted extensive third-party registrations and usage (pp. 17-19) and found that based on such usage, the term THUNDER was weak as a source indicator for alcoholic beverages. The TTAB stated that consumers had been exposed to "so many different THUNDER-formative marks in connection with alcoholic beverages that they likely have become alert to 'minute distinctions' among the various marks." (p. 20). According to the TTAB,

> A mark having the term THUNDER in connection with alcoholic beverages therefore should be given a restricted scope of protection, and the THUNDERBIRD mark is not entitled to such a broad scope of protection that it is a bar to the registration of any mark comprising in part, the word "thunder."

*Id.* at 20. In the same way, the extensive usage of BASIN, as noted, demonstrates that the BASIN marks cited against Applicant should not be able to preclude registration of Applicant's mark, simply on the basis that the other marks contain the term BASIN and that the marks exist for the same or related goods.

### D. CONCLUSION

In light of the above, Applicant respectfully submits that there is no likelihood of confusion between the cited marks and the applied for mark of "BASIN BEVERAGE CO.". A Notice of Publication is hereby requested.

22

Ex Parte Appeal No. 90703327
Appeal Brief dated June 26, 2023

Respectfully submitted,

 /Fabian M. Nehrbass, LA Bar No. 35264/
Fabian M. Nehrbass, LA Bar No. 35264
    e-mail: FabianNehrbass@patents.gs
Julie R. Chauvin, LA Bar No. 34265
GARVEY, SMITH & NEHRBASS,
PATENT ATTORNEYS, L.L.C.
PTO Customer No. 22920
701 Poydras Street-Suite 4310
New Orleans, LA  70139
Tel.: (504) 835-2000
Fax: (504) 835-2070
www.neworleanspatents.com

P:\CLIENTFILES\100\100142\3 - BASIN BEVERAGES TM\APPEALBRIEF-2023.06.26.DOCX

| **To:** | FABIAN NEHRBASS(fabiannehrbass@patents.gs) |
| **Subject:** | U.S. Trademark Application Serial No. 90703327 - BASIN BEVERAGE CO. - T21144US (3) - Examiner Brief |
| **Sent:** | August 15, 2023 10:03:54 AM EDT |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

screencapture-www-merriam-webster-com-dictionary-co-16917964446721
screencapture-dictionary-cambridge-org-dictionary-english-beer-16919563542031
screencapture-dictionary-cambridge-org-dictionary-english-hard-seltzer-16919566026721

#### United States Patent and Trademark Office (USPTO)

**U.S. Application Serial No.** 90703327

**Mark:** BASIN BEVERAGE CO.

**Correspondence Address:**
FABIAN NEHRBASS
GARVEY SMITH & NEHRBASS PATENT ATTORNEYS LLC
701 POYDRAS STREET
SUITE 4310
NEW ORLEANS LA 70139
UNITED STATES

**Applicant:** Amoss, Matthew

**Reference/Docket No.** T21144US (3)

**Correspondence Email Address:** fabiannehrbass@patents.gs

## <u>EXAMINING ATTORNEY'S APPEAL BRIEF</u>

The applicant has appealed the trademark examining attorney's final refusal to register the applied-for standard character mark, **BASIN BEVERAGE CO.** in International Classes 30, 32, and 33 on the grounds that the that it is likely to cause confusion within the meaning of Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d).

**STATEMENT OF FACTS**

1. On May 11, 2021, the applicant filed the mark **BASIN BEVERAGE CO.** for beverages, including beer, wine, sparkling water, water flavored beverages, hard seltzer, tea-based beverages, coffee-based beverages, kombucha; beverage manufacturing services; restaurant and bar services; restaurant services; bar services; wine bar services; brewery services, including brewpub taproom services, brewing classes; merchandise, including apparel, glassware, mugs, key chains; clothing, including shirts; t-shirts; hats; café; co-working space services; co-working space; event venue; event services; festival services; bicycle shop; bicycle repair services; pop-up restaurant services; pop-up restaurants; food truck services; food truck location

2. On January 25, 2022, the examining attorney issued an Office Action refusing the mark based on a likelihood of confusion and issued a requirement for a disclaimer and an amended identification of goods and services with correct classifications.  The examining attorney also raised an issue of prior pending applications that may result in a likelihood of confusion up registration.

3. On July 25, 2022, the applicant amended the goods and services to the following: tea-based beverages; coffee based beverages; kombucha tea in International Class 30; beverages, namely, beer, sparkling water, non-alcoholic water-based beverages in International Class 32; beverages, namely, wine, hard seltzer; hard kombucha tea" in International Class 33; and restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck in International Class 43.

4. On August 16, 2022, the examining attorney requested information regarding the significance of the wording in the mark.

5. On November 22, 2022, the examining attorney issued a Final refusal to register the mark based on a likelihood of confusion with U.S. Registration Numbers 4890160 for NEW BASIN DISTILLING COMPANY for liquor in International Class 33; 6760872 for TAHOE BASIN for Chai tea; Coffee in International Class 30; and 5510241 for GREAT BASIN COFFEE COMPANY for coffee; coffee and tea; coffee based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground

coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee in International Class 30.

6. The refusal based on a likelihood of confusion was made Final with respect to International Classes 30, 32, and 33 only. This appeal followed.

## ISSUES ON APPEAL

1. Whether there is a likelihood of confusion between the applied-for mark, **BASIN BEVERAGE CO.,** for beer, sparkling water, non-alcoholic water-based beverages in International Class 32 and beverages, namely, wine, hard seltzer; hard kombucha tea in International Class 33 and U.S. Registration Number 4890160 for **NEW BASIN DISTILLING COMPANY** for liquor in International Class 33.

2. Whether there is a likelihood of confusion between the applied-for mark, **BASIN BEVERAGE CO**., for tea-based beverages; coffee based beverages; kombucha tea in International Class 30 and U.S. Registration Number 6760872 for **TAHOE BASIN** for Chai tea; coffee in International Class 30.

3. Whether there is a likelihood of confusion between the applied-for mark, **BASIN BEVERAGE CO.,** for tea-based beverages; coffee based beverages; kombucha tea in International Class 30 and U.S. Registration Number 5510241 for **GREAT BASIN COFFEE COMPANY** for coffee; coffee and tea; coffee based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee.

## ARGUMENTS

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant

or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The compared goods need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP

§1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i); *see Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *44 (TTAB 2022) (quoting *In re Jump Designs LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006)).

## 1. APPLICANT'S APPLIED-FOR MARK IS LIKELY TO CAUSE CONFUSION WITH U.S. REGISTRATION NUMBER 4890160

### A. SIMILARITY OF THE MARKS

The applicant's applied-for the mark, BASIN BEVERAGE CO., is confusingly similar to the registrant's mark, NEW BASIN DISTILLING COMPANY.

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b). Here, applicant's mark is similar to the registrant's mark because the marks share the dominant wording BASIN.

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed.

Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *41 (TTAB 2022); TMEP §1207.01(b)(viii), (c)(ii).  According to the applicant's identification of goods the applied-for mark is for beer, sparkling water, non-alcoholic water-based beverages in International Class 32 and beverages, namely, wine, hard seltzer; hard kombucha tea in International Class 33.  Here, the word BEVERAGES, which is used in the identification of goods, is descriptive of the nature of the goods and is therefore less dominant.  CO is an abbreviation used to refer to a COMPANY. https://www.merriam-webster.com/dictionary/co .  The examining attorney asks the Board to take judicial notice of the abbreviation CO. The Trademark Trial and Appeal Board may take judicial notice of dictionary definitions that (1) are available in a printed format, (2) are the electronic equivalent of a print reference work, or (3) have regular fixed editions. *See In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1747 n.15 (TTAB 2018) (taking judicial notice of definition from Dictionary.com because it was from *The Random House Unabridged Dictionary*), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); *In re Jimmy Moore LLC*, 119 USPQ2d 1764, 1768 (TTAB 2016) (taking judicial notice of definitions from *Merriam-Webster Online Dictionary* at www.merriam-webster.com); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1378 (TTAB 2006) (taking judicial notice of definition from *Encarta Dictionary* because it was readily available in specifically denoted editions via the Internet and CD-ROM); TBMP §1208.04; TMEP §710.01(c); *see also* Fed. R. Evid. 201; 37 C.F.R. §2.122(a).  Here, the phrase BEVERAGE CO, in the applicant's mark, describes the source of the goods and is therefore less dominant wording.  Similarly, the registrant's mark contains the phrase DISTILLING COMPANY which describes the provider or source of the goods, making it the less dominant wording in its mark. November 22, 2022, Office Action, TSDR p.3, 12-19.  The analysis then becomes between BASIN in the applicant's applied-for mark and NEW BASIN in the registrant's mark.  Consumers familiar with one mark may believe the other is a newer or updated version of the goods.  The Trademark Act not only guards against the misimpression that the senior user is the source of a junior user's goods and/or services, but it also protects against "reverse confusion," where a significantly larger or prominent junior user is perceived as the source of a smaller, senior user's goods and/or services such that the "senior user may experience diminution or even loss of its mark's identity and goodwill due to extensive use of a confusingly similar mark by the junior user" for related goods

and/or services. *In re i.am.symbolic, llc*, 866 F.3d 1315, 1329, 123 USPQ2d 1744, 1752 (Fed. Cir. 2017) (quoting *In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993)); *Fisons Horticulture, Inc. v. Vigoro Indust., Inc.*, 30 F.3d 466, 474-75, 31 USPQ2d 1592, 1597-98 (3d Cir. 1994).

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Ox Paperboard, LLC*, 2020 USPQ2d 10878, at *4 (TTAB 2020) (citing *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016)); *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); *see In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014). After the word BASIN the applicant uses the phrase BEVERAGE CO. whereas the registrant uses the phrase DISTILLING COMPANY in its mark. Here, the marks have a similar connotation. A DISTILLING COMPANY is a company that goes through the process of distilling or making a liquid pure. November 22, 2022, Office Action, TSDR pp 2 & 12. Considering that the registrant's goods include liquor, upon viewing the mark in connection with the goods, consumers would understand that the registrant is a beverage company. The applicant's goods include beer, sparkling water, non-alcoholic water-based beverages in International Class 32 and beverages, namely, wine, hard seltzer; hard kombucha tea. It is the position of the examining attorney that the wording BEVERAGE CO and DISTILLING COMPANY have a similar connotation when used in connection with the goods.

Additionally, use of the word NEW in the registrant's mark does not change the commercial impression of the word BASIN and therefore, the removal of the wording in the applicant's applied-for mark does very little to create a different commercial impression from the registrant's mark. As previously stated, marks are not compared side-by-side, but based on commercial impression. Here,

use of the wording BEVERAGE CO. in one mark and DISTILLING COMPANY in the other does not create a different commercial impression between the mark.

In the case at hand, the applicant's applied for mark, BASIN BEVERAGE CO. and the registrant's mark, NEW BASIN DISTILLING COMPANY., have similar commercial impressions and therefore have confusingly similar marks. The individual differences are insufficiently distinctive to distinguish the marks in overall commercial impression. Thus, the marks are confusingly similar.

## B. SIMILARITY OF THE GOODS

The goods are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The applicant's goods, namely, beer, sparkling water, non-alcoholic water-based beverages in International Class 32 and beverages, namely, wine, hard seltzer; hard kombucha tea in International Class 33 and the registrant's goods, namely, liquor are similar and commercially related.

The registrant identifies its goods as liquor which is defined as alcoholic drinks, especially strong alcoholic drinks. October 15, 2022, Office Action TSDR pp. 2 & 7. Determining likelihood of confusion is based on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

Various alcoholic beverages have been shown to be related goods for purposes of a Trademark Act Section 2(d) analysis. *In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004) (holding GASPAR'S ALE for beer and ale likely to be confused with JOSE GASPAR GOLD for distilled blue agave liquor); *In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003) (holding RED BULL for distilled blue agave liquor likely to be confused with RED BULL for

malt liquor); *In re Kysela Pere et Fils Ltd.*, 98 USPQ2d 1261 (TTAB 2011) (holding HB for wine likely to be confused with HB and design for beer); *Somerset Distilling, Inc. v. Speymalt Whiskey Distribs. Ltd.*, 14 USPQ2d 1539 (TTAB 1989) (holding JAS. GORDON and design for scotch whiskey likely to be confused with GORDON'S for distilled gin and vodka); *Schieffelin & Co. v. Molson Cos.*, 9 USPQ2d 2069 (TTAB 1989) (holding BRAS D'OR for brandy likely to be confused with BRADOR for beer); *Bureau Nat'l Interprofessionnel Du Cognac v. Int'l Better Drinks Corp.*, 6 USPQ2d 1610 (TTAB 1988) (holding trademark COLAGNAC for cola flavored liqueur likely to be confused with certification mark COGNAC for brandy).

In this case, the registrant uses broad wording to describe its goods, which presumably encompasses all goods of the type described, including applicant's more narrow list of goods, namely, beer, wine, hard seltzer; hard kombucha tea. *See, e.g.*, *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *44 (TTAB 2022); *In re Solid State Design Inc.*, 125 USPQ2d 1409, 1412-15 (TTAB 2018); *Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015). Thus, applicant's and registrant's goods are legally identical. *See, e.g.*, *In re i.am.symbolic, llc*, 127 USPQ2d 1627, 1629 (TTAB 2018) (citing *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336, 209 USPQ 986, 988 (C.C.P.A. 1981); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014); *Baseball Am. Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d 1844, 1847 n.9 (TTAB 2004)).

Additionally, the goods and/or services of the parties have no restrictions as to nature, type, channels of trade, or classes of purchasers and are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *49. Thus, applicant's and registrant's goods are related.

Further, the evidence of record demonstrates that the goods are related because the same entity commonly provides wine, beer and liquor under the same mark:

• 3 Rivers Brewery Block (April 26, 2023, Request for Reconsideration Denial, TSDR pp. 5-15)

- Liquor/Beer - http://threereiversbrewery.com/

•Little Toad Creek (April 26, 2023, Request for Reconsideration Denial, TSDR pp. 16-19)

 -Liquor / Beer - http://www.litteltoadcreek.com/beer-spirits

 • Tumbleroot Brewery and Distillery (April 26, 2023, Request for Reconsideration Denial, TSDR pp. 20-24)

 - Liquor / Beer - http://www.Tumblerootbreweryanddistillery.com/

 • Old House Vineyards (April 26, 2023, Request for Reconsideration Denial, TSDR pp. 25-36)

 - Spirits - http://oldhousevineyards.com/our-spirits/

 - Wine - http://oldhousevineyards.com/our-wines/

 - Beer - http://oldhousevineyards.com/our-beers/

•Gervasi Vineyard (April 256, 2023, Request for Reconsideration Denial, TSDR pp. 25-36)

 - Liquor / Beer - http://www.gervasivineyard.com/


Lastly, where the goods and/or services of an applicant and registrant are "similar in kind and/or closely related," the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services. *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

2. APPLICANT'S APPLIED-FOR MARK IS LIKELY TO CAUSE CONFUSION WITH U.S. REGISTRATION NUMBER 6760872

A. SIMILARITY OF THE MARKS

The applicant's applied-for the mark, BASIN BEVERAGE CO., is confusingly similar to the registrant's mark, TAHOE BASIN.

Marks are compared in their entireties for similarities in appearance, sound, connotation, and

commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *41 (TTAB 2022); TMEP §1207.01(b)(viii), (c)(ii). Here, the dominant wording in the applicant's applied-for mark, is BASIN because the wording BEVERAGE CO. describes the source of the goods. Terms that describe the provider of a product or service may also be merely descriptive of the product and/or service. *See In re Chamber of Com. of the U.S.*, 675 F.3d 1297, 1301, 102 USPQ2d 1217, 1220 (Fed. Cir. 2012) (affirming Board's holding that NATIONAL CHAMBER was merely descriptive of online service providing directory information for local and state chambers of commerce and business and regulatory data analysis services to promote the interest of businessmen and businesswomen); *In re Major League Umpires*, 60 USPQ2d 1059, 1060 (TTAB 2001) (holding MAJOR LEAGUE UMPIRE merely descriptive of clothing, face masks, chest protectors and shin guards provided, designed, and used by major league umpires); TMEP §1209.03(q).

While the registrant's mark includes the word TAHOE before BASIN, it is the position of the examining attorney that it does not change the commercial impression of the mark. BASIN is a

geographic term which is defined as a large area of land whose surface water all flows into a particular river or lake. November 22, 2022, Office Action, TSDR pp. 3 & 23. The registrant's use of the word TAHOE when added with BASIN does not create a different commercial impression then the applicant's use of the wording BASIN. Thus, the marks are confusingly similar.

## B. SIMILARITY OF THE GOODS

The goods are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The applicant's goods, namely, tea-based beverages; coffee based beverages; kombucha tea in International Class 30 and the registrant's goods, namely, Chai tea; Coffee in International Class 30 are related.

Determining likelihood of confusion is based on the description of the goods stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

In the case at hand, the applicant uses broad wording to describe the beverages, namely, tea-based beverages and coffee based beverages which presumably encompasses all goods and/or services of the type described, including registrant's more narrow list of beverages, namely, Chai tea and coffee. *See, e.g.*, *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *44 (TTAB 2022); *In re Solid State Design Inc.*, 125 USPQ2d 1409, 1412-15 (TTAB 2018); *Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015). Thus, applicant's and registrant's goods are legally identical. *See, e.g.*, *In re i.am.symbolic, llc*, 127 USPQ2d 1627, 1629 (TTAB 2018) (citing *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336, 209 USPQ 986, 988 (C.C.P.A. 1981); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014); *Baseball Am. Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d 1844, 1847 n.9 (TTAB 2004)).

Additionally, the goods and/or services of the parties have no restrictions as to nature, type, channels of trade, or classes of purchasers and are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *49. Thus, applicant's and registrant's goods and/or services are related.

As further evidence of the relatedness of the goods the record contains examples of third-party registrations for marks that list goods similar to those of the applicant and the registrant, namely, tea-based beverages, coffee-based beverages and coffee. April 26, 2023, Request for Reconsideration Denial, TSDR pp. 60-67, 70-73, and 76-79.

Where the goods of an applicant and registrant are "similar in kind and/or closely related," the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods and/or services. *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

3. APPLICANT'S APPLIED-FOR MARK IS LIKELY TO CAUSE CONFUSION WITH U.S. REGISTRATION NUMBER 5510241.

A. SIMILARITY OF THE MARKS

The applicant's applied for the mark, BASIN BEVERAGE CO., is confusingly similar to the registrant's mark, GREAT BASIN COFFEE COMPANY.

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks

confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *41 (TTAB 2022); TMEP §1207.01(b)(viii), (c)(ii).

Terms that identify the provider of a product or service may also be generic of the product and/or service. *See In re Wm. B. Coleman Co.*, 93 USPQ2d 2019, 2025 (TTAB 2010) (holding ELECTRIC CANDLE COMPANY generic for lighting fixtures); *In re Paint Prods. Co.*, 8 USPQ2d 1863, 1865 (TTAB 1988) (holding PAINT PRODUCTS CO. generic for paint); *In re E. I. Kane, Inc.*, 221 USPQ 1203, 1205 (TTAB 1984) (holding OFFICE MOVERS, INC. generic for moving services); TMEP §1209.03(q). In the applicant's applied-for mark the wording BEVERAGE CO, which has been disclaimed, describes the source of the goods making BASIN the dominant wording in the mark. Similarly, in the registrant's mark the wording COFFEE COMPANY describes the source of the goods making GREAT BASIN the dominant wording in the mark.

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who

retains a general rather than specific impression of trademarks. *In re Ox Paperboard, LLC*, 2020 USPQ2d 10878, at \*4 (TTAB 2020) (citing *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016)); *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); *see In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014). Here, the addition of the wording GREAT to the word BASIN in the registrant's mark does not change the commercial impression of the word BASIN as used in the applicant's applied-for mark. Thus, the marks are confusingly similar.

## B. SIMILARITY OF THE GOODS

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

The applicant's goods, namely, tea-based beverages; coffee based beverages; kombucha tea in International Class 30 and the registrant's goods, namely, coffee; coffee and tea; coffee based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee are not only related, but identical in some cases. Here, both marks are for coffee-based beverages and tea-based beverages.

Where the goods of an applicant and registrant are identical or virtually identical, the degree of similarity between the marks required to support a finding that confusion is likely declines. *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(b).

## ADDITIONAL ARGUMENTS

In favor of registration the applicant argues that there are other marks containing the word BASIN that were not cited by the examining attorney and if there was no confusion with those marks then there cannot be confusion with the registrations cited above. Additionally, the applicant cites other marks that contain the same word where the Court held that there was no confusion. However, the Court has held that each case is decided on its own facts, and each mark stands on its own merits. *In re Cordua Rests., Inc.*, 823 F.3d 594, 600, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016) (citing *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009); *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001)). The addition or deletion of wording from a mark, even when there is a common element, can change the connotation or commercial impression of the mark. It is the position of the examining attorney the the marks cited against the applicant have very similar commercial impressions. In order to differentiate the marks the applicant has counted and compared the number of words and syllables. However, likelihood of confusion is not analyzed by placing the marks side by side. The test is whether the marks convey a similar commercial impression. For example, in U.S. Registration Number 6019694 for BASIN OF ATTRACTION cited by the applicant in its July 25, 2022, Response to Office Action, the addition of the wording OF ATTRACTION adds new meaning to the word BASIN as the phrase refers to a mathematical theory. Similarly, the applicant cited U.S. Registration Number 6429315 for JEWEL BASIN for beer in its January 25, 2022, Response to Office Action, however, adding the word JEWEL to BASIN refers to a hiking trail in Montana which again changes the commercial impression of the word BASIN.

In favor of registration the applicant also cites *Pure & Simple Concepts, Inc. v. I H W Mgmt.,* 2020-1211 (Fed. Cir. May 24, 2021) where the court held that there ws no confusion between INDUSTRY and BLUE INDUSTRY. However, in making this determination the Court stated that they affirmed the Board's position that word BLUE, which was the first word and was not a claimed feature of the mark is the wording that would be impressed upon in the mind of the consumer. *Pure & Simple Concepts, Inc. v. I H W Mgmt.,* 2020-1211, at 8 (Fed. Cir. May 24, 2021). Here, in addition to the first word in the marks being different it is also stated that the word BLUE is a feature of the mark and is therefore a dominant element of the mark.

The applicant also cites *E.&J. Gallo Winery v. Thunder Road Brands., LLC* Opposition No. 91222283, (2018), (Not precedent), in favor of registration where the Board held that there was no confusion between THUNDER ROAD and THUNDERBIRD for similar goods. Here, the Court states:

> of particular significance in our analysis is the meaning of the marks considered as a whole. A "thunderbird" is a mythical bird, while THUNDER ROAD on its face refers to the name of a road. "Thunder Road" may also be associated with the name of a movie released in 1958 starring Robert Mitchum, the father of Applicant's principal James Mitchum,50 or the name of a song by Bruce Springsteen from 1975.51 The marks have entirely different connotations and hence different commercial impressions.

*E.&J. Gallo Winery v. Thunder Road Brands., LLC* Opposition No. 91222283, at 22. (2018), (Not precedent). It is important to note that the Court's finding that the marks had different connotations and therefore different commercial impressions was "of particular significance" in their analysis. This point emphasizes the importance of the commercial impressions of the marks.

The applicant also argues that the goods are not the same because the registrant identifies its goods as liquor; however, the applicant's goods are a subset of the registrant's broad category of goods. Liquor is defined as an alcoholic drink, especially strong alcoholic drinks. October 15, 2022, Office Action, TSDR pp. 2, 7-10. Beer is defined as an alcoholic drink made from grain and hops. https://dictionary.cambridge.org/dictionary/english/beer. Wine is defined as an alcoholic drink that is usually made from grapes, but can also be made from other fruits or flowers. It is made by fermenting the fruit with water and sugar. https://dictionary.cambridge.org/dictionary/english/wine. When the word "hard" is used with the name of a beverage it refers to a drink containing a high level of alcohol. https://dictionary.cambridge.org/dictionary/english/hard. For example, hard seltzer is defined as a drink consisting of fizzy water, alcohol, and flavouring. https://dictionary.cambridge.org/dictionary/english/hard-seltzer. The examining attorney asks the Board to take judicial notice of the abbreviation CO. The Trademark Trial and Appeal Board may take judicial notice of dictionary definitions that (1) are available in a printed format, (2) are the electronic equivalent of a print reference work, or (3) have regular fixed editions. *See In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1747 n.15 (TTAB 2018) (taking judicial notice of definition from Dictionary.com because it was from *The Random House Unabridged Dictionary*), *aff'd per curiam*,

777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); *In re Jimmy Moore LLC*, 119 USPQ2d 1764, 1768 (TTAB 2016) (taking judicial notice of definitions from *Merriam-Webster Online Dictionary* at www.merriam-webster.com); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1378 (TTAB 2006) (taking judicial notice of definition from *Encarta Dictionary* because it was readily available in specifically denoted editions via the Internet and CD-ROM); TBMP §1208.04; TMEP §710.01(c); *see also* Fed. R. Evid. 201; 37 C.F.R. §2.122(a). Event though the applicant argues that the goods are not the same because the words in the identification of goods are different they are in fact legally identical as they are types of liquor

The applicant argues that there should be no confusion with U.S. Registration 5510241 for GREAT BASIN COFFEE COMPANY because they do not have a social media or intent presence. However, a trademark or service mark registration on the Principal Register is prima facie evidence of the validity of the registration and the registrant's exclusive right to use the mark in commerce in connection with the specified goods and/or services. *See* 15 U.S.C. §1057(b); TMEP §1207.01(d)(iv). Thus, evidence and arguments that constitute a collateral attack on a cited registration, such as information or statements regarding a registrant's nonuse of its mark, are not relevant during ex parte prosecution. *See In re Dixie Rests.*, 105 F.3d 1405, 1408, 41 USPQ2d 1531, 1534-35 (Fed. Cir. 1997); *In re Peebles Inc.*, 23 USPQ2d 1795, 1797 n.5 (TTAB 1992); TMEP §1207.01(d)(iv).

The examining attorney attached evidence to the Request for Reconsideration denial illustrating that there are breweries that are also distilleries. The evidence also shows that consumers are used to seeing beer and/or wine manufactured with other types of alcoholic beverages. April 26, 2023, Request for Reconsideration Denied TSDR 5-57. In rebuttal of this evidence that applicant argues that only a small number of breweries are distilleries and asks how many breweries are not distilleries. However, the point of this evidence was to show that consumers have become used to seeing breweries and distilleries that are combined that the goods are related for likelihood of confusion purposes. For example, Tumbleroot Brewery & Distillery advertises that it has won awards for their beers and distilled spirits. April 26, 2023, Request for Reconsideration Denial, TSDR p21. Receiving these awards illustrates that this producer has gained recognition within the adult beverage industry and

public exposure. Seeing breweries that are also distilleries and sources of wine and liquor creates a connection in the mind of th relevant consumer. Through this branding the relevant consumer has grown accustomed to associating various types of liquor with beer and wine.

Furthermore, various alcoholic beverages have been shown to be related goods for purposes of a Trademark Act Section 2(d) analysis. *In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004) (holding GASPAR'S ALE for beer and ale likely to be confused with JOSE GASPAR GOLD for distilled blue agave liquor); *In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003) (holding RED BULL for distilled blue agave liquor likely to be confused with RED BULL for malt liquor); *In re Kysela Pere et Fils Ltd.*, 98 USPQ2d 1261 (TTAB 2011) (holding HB for wine likely to be confused with HB and design for beer); *Schieffelin & Co. v. Molson Cos.*, 9 USPQ2d 2069 (TTAB 1989) (holding BRAS D'OR for brandy likely to be confused with BRADOR for beer).

Applicant also argues that the examining attorney was incorrect in stating that weak or merely descriptive marks are still entitled to protection in the Request for Reconsideration Denial letter. (April 26, 2023, TSDR p.3). However, TMEP section 1207.01(b)(ix) states that "even marks that are registered on the Supplemental Register may be cited under §2(d)of the Trademark Act." The examining attorney also referenced in that same paragraph, *King Candy Co.* which stated, "Confusion is confusion. The likelihood thereof is to be avoided, as much between "weak" marks as between "strong" marks, or as between a "weak" and a "strong" mark. Similarly, the statute, by providing remedies to trademark owners, enables those owners to protect their marks. It is through such owner-action that the public is protected from confusion." *King Candy Co. v. Eunice King's Kitchen*, 496 F.2d 1400, 1401 (C.C.P.A. 1974)

Lastly, the applicant has made mention of non-registered marks containing the word BASIN as evidence that consumers can distinguish between the applicant's applied-for the mark and the registrants' marks. However, these  few applications are "not evidence of what happens in the market place or that customers are familiar with them." *Sock It To Me, Inc. v. Aiping Fan*, 2020 USPQ2d 10611, at *9 (TTAB 2020) (quoting *AMF Inc. v. Am. Leisure Prods.*, *Inc.*, 474 F.2d at 1406, 177 USPQ at 269).

**CONCLUSION**

1. Applicant's proposed mark, BASIN BEVERAGE CO., in standard character, is confusingly similar to the registered mark, NEW BASIN DISTILLING COMPANY, in standard character, because the marks are similar in commercial impression. In addition, the evidence of record establishes that the applicant's beer, sparkling water, non-alcoholic water-based beverages in International Class 32 and wine, hard seltzer; hard kombucha tea in International Class 33 and the registrant's liquor in International Class 33 are related. For the foregoing reasons, the refusal to register the mark under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), should be affirmed.

2. Applicant's proposed mark, BASIN BEVERAGE CO., in standard character, is confusingly similar to the registered mark, TAHOE BASIN, in standard character, because the marks are similar in connotation. In addition, the evidence of record establishes that the applicant's tea-based beverages; coffee based beverages; kombucha tea in International Class 30 and the registrant's Chai tea and coffee are related. For the foregoing reasons, the refusal to register the mark under Section 2(d) of the Trademark Act, 15 U.S.C.§1052(d), should be affirmed.

3. Applicant's proposed mark, BASIN BEVERAGE CO., in standard character, is confusingly similar to the registered mark, GREAT BASIN COFFEE COMPANY, in standard character, because the marks are similar in connotation. In addition, the evidence of record establishes that the applicant's tea-based beverages; coffee based beverages; kombucha tea in International Class 30 and the registrant's offee; coffee and tea; coffee based beverages; coffee beans; coffee beverages with milk; coffee, tea, cocoa and artificial coffee; coffee-based beverage containing milk; coffee-based beverages; coffee-based iced beverages; beverages made of coffee; beverages with a coffee base; caffeine-free coffee; green coffee; ground coffee beans; prepared coffee and coffee-based beverages; roasted coffee beans; unroasted coffee are related. For the foregoing reasons, the refusal to register the mark under Section 2(d) of the Trademark Act, 15 U.S.C.§1052(d), should be affirmed.

Respectfully submitted,


/Shaunia Carlyle/
Shaunia Carlyle
Examining Attorney
LO110--LAW OFFICE 110
(571) 272-9374
Shaunia.Carlyle@USPTO.GOV



/Chris Pedersen/
Managing Attorney
Law Office 110





1 : with : together : joint : jointly

coexist

coheir

cobalt

prefix

Word History
Entries Near
Cite this Entry
Share
Kids Definition
Medical Definition
Legal Definition
More from M-W
Show Less ^

Save Word

## CO 3 of 5 abbreviation (2)

1 cash order

2 Colorado

3 commanding officer

4 conscientious objector

5 corrections officer

## c/o 4 of 5 abbreviation (3)

care of

## CO- 5 of 5 prefix

1 : with : together : joint : jointly

coexist

coheir

2 : in or to the same degree

coextensive

3 a : one that is associated in an action with another : fellow : partner

coauthor

coworker

b : having a usually lesser share in duty or responsibility : alternate : deputy

copilot

4 : of, relating to, or constituting the complement of an angle

cosine

delivery trucks

Quordle
W O R D Y
L O V E R
P L A Y S
D A I L Y
Can you solve 4 words at once?
Play

Harris Teeter delivery
A cool new way to receive groceries
Order Now

WORD OF THE DAY
boycott
See Definitions and Examples »
Get Word of the Day daily email!
Your email address   SUBSCRIBE



Harris Teeter delivery — A cool new way to receive groceries — Order Now ▶

And a faster, more reliable connection — xfinity

xfinity

## Word History

### Etymology

**Prefix**

borrowed from Latin, variant of *com-* before a vowel, *h*, and *gn* COM-

NOTE: The original distribution of *co-* and *com-* with its variants has been lost in English and *co-* is now used before words beginning with any sound, especially in senses 3a and b.

## Dictionary Entries Near *co*

CNS
**co**
**Co**

See More Nearby Entries ›

## Cite this Entry

Style   MLA

"Co." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/co. Accessed 11 Aug. 2023.
⎘ Copy Citation



**Share**

Facebook    Twitter

**Kids Definition**

## co- prefix

1   : with : together : joint : jointly
    coexist
    coauthor

2   : in or to the same degree
    coextensive

3   : fellow : partner
    coworker

**Etymology**

**Prefix**
derived from Latin *com-* "with, together"

Network got game
xfinity 10x

Harris Teeter delivery    introducing refrigerated delivery trucks    Order Now ▸

**Medical Definition**

## Co  1 of 4  abbreviation

Network got game

coenzyme

## Co 2 of 4 symbol

cobalt

## CO 3 of 4 abbreviation

cardiac output

## c/o 4 of 4 abbreviation

complains of

---

**Legal Definition**

## c/o 1 of 4 abbreviation

care of

## co 2 of 4 abbreviation

1  company

2  county

## CO 3 of 4 abbreviation

1  commanding officer

2  conscientious objector

3  corrections officer

## co– 4 of 4 prefix

1  : with : together : joint : jointly

*codefendant*

2  a : associated in an action with another : fellow

co-conspirator

**b** : having a usually lesser share in duty or responsibility : alternate : deputy

co-counsel

**More from Merriam-Webster on** *co*

Britannica English: Translation of *co* for Arabic Speakers

**Love words? Need even more definitions?**

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

**Word Games**



**Name That Animal: Volume 2**

Can you tell a meerkat from a wombat?

Take the quiz

**Challenging Words You Should Know**

Not a quiz for the pusillanimous

Take the quiz

**True or False?**

Test your knowledge - and maybe learn something a...

Take the quiz

**Spelling Bee Quiz**

Can you outdo past winners of the National Spelli...

Take the quiz

Learn a new word every day. Delivered to your inbox!

Your email address          SUBSCRIBE

Merriam-Webster

OTHER MERRIAM-WEBSTER DICTIONARIES
MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY
SCRABBLE® WORD FINDER
MERRIAM-WEBSTER DICTIONARY API

FOLLOW US







With their stomachs filled, *beer* also began to flow to the members of the audience.

*From the Cambridge English Corpus*

Workers drank before, during, and after work, fueling their long hours and grueling labor with *beer*

*From the Cambridge English Corpus*

The representations of baking and brewing show the distribution of grain and the delivery of bread and *beer*.

*From the Cambridge English Corpus*

Quantities of bread and *beer*, the basic food items, were given as wages to the workers.

*From the Cambridge English Corpus*

The exact number is difficult to enumerate, as the official census figures tend to exclude informal *beer*

Traders who reached these centers relied on their relatives or fictive kin to provide services such as housing, food, *beer* brewing and goods storage.

*From the Cambridge English Corpus*

The third position, which was the one finally accepted, was that only the sale of *beer* and not its non-commercial use should be suppressed.

*From the Cambridge English Corpus*

**See all examples of beer**

These examples are from corpora and from sources on the web. Any opinions in the examples do not represent the opinion of the Cambridge Dictionary editors or of Cambridge University Press or its licensors.

**COLLOCATIONS with beer**

# beer

**These are words often used in combination with *beer*.**

Click on a collocation to see more examples of it.

**beer drinker**

• I lean towards the beer drinker.

*From the Hansard archive*

**beer festival**

• This was referred to during the parliamentary beer festival which was mentioned by a previous speaker.

*From the Hansard archive*

**bottled beer**

• But it is not so with bottled beer.

*From the Hansard archive*



beer goggles

beer mat







LEARN
New Words
Help
In Print
Word of the Year 2021
Word of the Year 2022

DEVELOP
Dictionary API
Double-Click Lookup
Search Widgets
License Data

ABOUT
Accessibility
Cambridge English
Cambridge University Press & Assessment
Cookies Settings
Cookies and Privacy
Corpus
Terms of Use

CAMBRIDGE
UNIVERSITY PRESS & ASSESSMENT

© Cambridge University Press &
Assessment 2023

**United States Patent and Trademark Office (USPTO)**

# USPTO OFFICIAL NOTICE

Examining attorney's appeal brief has issued
on August 15, 2023 for
**U.S. Trademark Application Serial No.  90703327**

A USPTO examining attorney has issued an appeal brief. Follow the steps below.

**(1)  [Read the appeal brief](#).** This email is NOT the appeal brief.

**(2)  Submit reply brief within 20 days of August 15, 2023** , if you wish to do so.  If submitted, a reply brief must be submitted using the Electronic System for Trademark Trials and Appeals (ESTTA) and received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the reply period.

**(3)  Direct questions** about the appeal proceeding to the Trademark Trial and Appeal Board at 571-272-8500 or TTABInfo@uspto.gov.

| ESTTA Tracking number: | **ESTTA1307939** |
|---|---|
| Filing date: | **09/05/2023** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Ex Parte Appeal - Serial No. | 90703327 |
| Appellant | Matthew Amoss |
| Applied for mark | BASIN BEVERAGE CO. |
| Correspondence address | FABIAN NEHRBASS<br>GARVEY SMITH & NEHRBASS PATENT ATTORNEYS LLC<br>701 POYDRAS STREET<br>SUITE 4310<br>NEW ORLEANS, LA 70139<br>UNITED STATES<br>Primary email: fabiannehrbass@patents.gs<br>Secondary email(s): sford@patents.gs, mrodriguez@patents.gs, aoshaughnessy@patents.gs<br>504-835-2000 |
| Submission | Reply brief |
| Attachments | ReplyBrief-1.pdf(145293 bytes )<br>Liquor-Merriam-Webster.pdf(1590010 bytes )<br>Liquor-Dictionary.pdf(558055 bytes ) |
| Filer's name | Fabian M. Nehrbass |
| Filer's email | FabianNehrbass@patents.gs, Sford@patents.gs, jchauvin@patents.gs |
| Signature | /Fabian M. Nehrbass, LA Bar #35264/ |
| Date | 09/05/2023 |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

## EX PARTE APPEAL

APPLICANT: Amoss, Matthew

APPLICATION NO.: 90/703,327

FILING DATE: May 11, 2021

MARK: **BASIN BEVERAGE CO.**

GOODS & SERVICES:

INT'L CLASS 030: Tea-based beverages; Coffee based beverages; Kombucha tea

INT'L CLASS 032: Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages

INT'L CLASS 033: Beverages, namely, wine, hard seltzer; Hard kombucha tea

INT'L CLASS 043: Restaurant and bar services; restaurant services; bar services; wine bar services; taproom services; café; pop-up restaurants; providing of food via a mobile truck

TRADEMARK ATTORNEY: CARLYLE, SHAUNIA P

ATTORNEY DOCKET NO.: T21144US (100142.3)

## REPLY BRIEF OF APPLICANT

Ex Parte Appeal No. 90703327
Reply Appeal Brief dated September 5, 2023

## ARGUMENT

Applicant respectfully submits this reply brief in further support of its appeal. Applicant respectfully submits that each of the issues is fully covered in its initial brief and that this reply brief is being submitted to address certain allegations in the Examiner's brief.

**1. The Examiner Incorrectly Asserts That Liquor is "Legally Identical" to Beer, Wine, Hard Kombucha Tea, Hard Seltzer**

As noted in Applicant's brief, Applicant has argued, and the Examining Attorney agreed, that there is no likelihood of confusion between its mark and the many separate users of registered trademarks for beer (a good in Applicant's BASIN BEVERAGE CO. application) which share the term BASIN (WILD BASIN, JEWEL BASIN, HELIO BASIN BREWING CO., TURNING BASIN, KLAMATH BASIN BREWING and design, HELIO BASIN and design, and BASIN OF ATTRACTION). Thus, BASIN BEVERAGE CO. and the aforementioned marks are not likely to be confused *for the same goods*. **If there is no confusion between two marks sharing the term BASIN for the same goods, how could there be confusion between two marks, which are no more similar, sharing the term BASIN for different goods?** Presumably in response to this inquiry, the Examiner alleges that Applicant's goods and liquor are "**legally identical**." (August 15, 2023 Appeal Brief, TSDR p. 9)(emphasis added).

> In this case, the registrant uses broad wording to describe its goods, which presumably encompasses all goods of the type described, including applicant's more narrow list of goods, namely, beer, wine, hard seltzer; hard kombucha tea. Thus, applicant's and registrant's goods are legally identical.

(August 15, 2023 Appeal Brief, TSDR p. 9, citations omitted)

> The applicant also argues that the goods are not the same because the registrant identifies its goods as liquor; however, the applicant's goods are a subset of the registrant's broad category of goods. Liquor is defined as an alcoholic drink, especially strong alcoholic drinks.

(August 15, 2023 Appeal Brief, TSDR p. 17).

2

Ex Parte Appeal No. 90703327
Reply Appeal Brief dated September 5, 2023

> Event (sic) though the applicant argues that the goods are not the same because the words in the identification of goods are different they are in fact legally identical as they are types of liquor (sic)

(August 15, 2023 Appeal Brief, TSDR p. 18).

Applicant respectfully submits that these assertions are incorrect – neither beer, nor wine, nor hard kombucha, nor hard seltzer, nor any good listed by Applicant, are types of liquor. Liquor is not a general term for alcoholic beverages. Rather, liquor, like beer, wine, hard seltzer and hard kombucha tea, is a type of alcohol. Liquor is synonymous with spirit when used with regard to alcoholic beverages and is specifically distinguished from Applicant's listed goods.

Applicant respectfully requests that the Board take judicial notice of the definitions of liquor from dictionary.com and merriam-webster.com: "a distilled or spiritous beverage . . . as distinguished from a fermented beverage, as wine or beer" (https://www.dictionary.com/browse/liquor), and "usually distilled rather than fermented alcoholic beverage" (https://www.merriam-webster.com/dictionary/liquor). Neither of these definitions suggest that liquor is the same as beer, wine, hard seltzer or hard kombucha tea. And in fact, these definitions of liquor actually distinguish liquor from other types of alcoholic beverages. Even the name of the cited registration, NEW BASIN DISTILLING COMPANY, suggests that its goods are made via a distilling process. And in fact, "Distilling Company" is disclaimed because it is descriptive. Applicant's goods, on the other hand, do not include liquor, are not types of liquor, are not distilled goods, and legally, are not the same as the cited mark's goods. Thus, the Examiner's attempt to equate liquor and other types of alcohol should be rejected. There can be no confusion between Applicant's mark of BASIN BEVERAGE CO. and NEW BASIN DISTILLING COMPANY, when the goods are not the same and there are other marks that share the term basin *for the same goods* as Applicant. Finally, it bears mentioning that the

3

Ex Parte Appeal No. 90703327
Reply Appeal Brief dated September 5, 2023

Examiner did not address the fact that there are other basin marks for liquor (RIVER BASIN, BASIN & RANGE, and TURNING BASIN). The Examiner's brief suggests that the mark cited against Applicant, NEW BASIN DISTILLING COMPANY, is the only mark for liquor including the term basin. As the aforementioned listed marks show, such is not the case. Accordingly, Applicant respectfully submits that the Examiner errs in equating the goods of NEW BASIN DISTILLING COMPANY (liquor) to Applicant's BASIN BEVERAGE CO. (beer, wine, hard kombucha tea, hard seltzer), errs in implying that NEW BASIN DISTILLING COMPANY can preclude others from use of the term basin in other alcoholic goods, and errs in finding a likelihood of confusion between Applicant's BASIN BEVERAGE CO. mark and NEW BASIN DISTILLING COMPANY.

## 2. The Examiner Engages in Improper Dissection of Marks

In evaluating NEW BASIN DISTILLING COMPANY and BASIN BEVERAGE CO., the Examiner also fails to properly consider the marks in their entirety. Rather, the Examiner engages in an improper multi-step dissection of the marks. First, the Examiner asserts that DISTILLING COMPANY and BEVERAGE CO. are less dominant portions (sources of the goods) of the marks. Based on this assertion, the Examiner alleges proper comparison is between NEW BASIN and BASIN, only. The Examiner then alleges that NEW "does not change the commercial impression of the word BASIN". (August 15, 2023 Appeal Brief, TSDR p. 7). There is no basis for this complete disregard of the term NEW. Notably, the Examiner previously agreed Applicant's co-pending mark for OLD BASIN (Serial Number 90820468) was entitled to publication. This begs the question of why the term OLD could impact the commercial impression of a mark but NEW cannot? It cannot. NEW BASIN sounds different, looks different, and has a different connotation than BASIN. NEW precedes BASIN and cannot be disregarded. As a result of the Examiner's

dissection, the Examiner completely disregards any word but BASIN in comparison of the marks. As noted in Applicant's initial brief, proper comparison is between the marks in their entireties and thus, the comparison is between NEW BASIN DISTILLING COMPANY and BASIN BEVERAGE CO. With such a proper comparison, there can be no likelihood of confusion.

### 3.  The Examiner's Disregard of TAHOE in TAHOE BASIN Goes Against The Examiner's Own Prior Analyses

The Examining Attorney alleges TAHOE does not impact the commercial impression of the mark TAHOE BASIN. (August 15, 2023 Appeal Brief, TSDR p. 11). The Examiner's Brief states: "The Registrant's use of the word TAHOE when added to BASIN does not create a different commercial impression than the applicant's use of the wording BASIN." (August 15, 2023 Appeal Brief, TSDR p. 12). This assertion is confusing. The Examiner has acknowledged that TAHOE refers to a specific geographic area (see Office Action November 22, 2022, TSDR p. 3). Thus, TAHOE BASIN refers to a specific basin. There is not only one basin. Even the Examiner's definition of basin as "a geographic term which is defined as a large area of land whose surface water all flows into a particular river or lake" (August 15, 2023 Appeal Brief, TSDR p. 12) demonstrates that there is unquestionably more than a single basin. It is simply confusing as to why the Examiner completely disregards the first term in TAHOE BASIN, especially when the first term is generally the dominant portion of a mark.

The assertion that TAHOE BASIN gives the same commercial impression as BASIN is all the more perplexing when considering the fact that the Examiner acknowledges, in the very same brief, that JEWEL changes the commercial impression of BASIN in JEWEL BASIN. According to the Examiner, because JEWEL BASIN is a specific place, JEWEL changes the commercial impression of JEWEL BASIN. (August 15, 2023 Appeal Brief, TSDR p. 16). Thus, according to the

5

Ex Parte Appeal No. 90703327
Reply Appeal Brief dated September 5, 2023

Examiner, TAHOE BASIN, a specific basin, DOES NOT give a different commercial impression from BASIN (so that it is confusingly similar to BASIN BEVERAGE CO.), but JEWEL BASIN, a specific basin, DOES give a different commercial impression from BASIN (so that it is NOT confusingly similar to BASIN BEVERAGE CO.). This is wholly illogical. Applicant respectfully submits that the Examiner's analysis and comparison of BASIN BEVERAGE CO. and TAHOE BASIN is flawed, based on the Examiner's own analyses, and that there is no likelihood of confusion between the marks for the reasons more fully explained in Applicant's appeal brief.

**4.   Great Basin Coffee Company is on the Supplemental Register and the Examiner fails to Treat it Accordingly**

Finally, it bears mentioning that Applicant, in its brief, pointed out that the Examiner omitted critical language in its referral to marks on the register by failing to note that merely descriptive and weak designations may be entitled *to a narrower scope of protection* than an entirely arbitrary or coined word. The statement by the Examiner in the office actions suggested there was no difference in treatment between marks on the supplemental register and those on the principal register, as it relates to a likelihood of confusion analysis. And in fact, the Examiner's brief fails to acknowledge that GREAT BASIN COFFEE COMPANY is on the supplemental register and ignores the fact that even the owner of the GREAT BASIN COFFEE COMPANY mark stated that it added a disclaimer "to acknowledge that Great Basin Coffee Company does not and will not have exclusive rights to 'Great Basin' because it is geographically descriptive and other companies must be able to use it…" (Mar. 6, 2023 Request for Reconsideration After Final Action, TSDR pp. 108-111) (for additional argument see June 26, 2023 Appeal Brief, p. 12). Applicant respectfully submits that there is no likelihood of confusion between GREAT BASIN COFFEE COMPANY and BASIN BEVERAGE CO., especially when considering the fact that GREAT BASIN

6

Ex Parte Appeal No. 90703327
Reply Appeal Brief dated September 5, 2023

COFFEE COMPANY is on the supplemental register.

      For the reasons stated in Applicant's initial brief, as well as those set forth herein, Applicant

respectfully submits that it is entitled to registration. A Notice of Publication is hereby requested.

                             Respectfully submitted,

                         /Fabian M. Nehrbass, LA Bar No. 35264/
                         Fabian M. Nehrbass, LA Bar No. 35264
                             e-mail: FabianNehrbass@patents.gs
                         Julie R. Chauvin, LA Bar No. 34265
                         GARVEY, SMITH & NEHRBASS,
                         PATENT ATTORNEYS, L.L.C.
                         PTO Customer No. 22920
                         701 Poydras Street-Suite 4310
                         New Orleans, LA  70139
                         Tel.: (504) 835-2000
                         Fax: (504) 835-2070
                         www.neworleanspatents.com

P:\CLIENTFILES\100\100142\3 - BASIN BEVERAGES TM\REPLYBRIEF.DOCX



# liquor   1 of 2   noun

li·quor   ˈli-kər 🔊

Synonyms of *liquor* ›

**:** a liquid substance: such as

**a :** a usually distilled rather than fermented alcoholic beverage

**b :** a watery solution of a drug

**c :** BATH sense 2b(1)

# liquor   2 of 2   verb

**liquored; liquoring**   ˈli-k(ə-)riŋ 🔊

*transitive verb*

**1**   **:** to dress (something, such as leather) with oil or grease

**2**   **:** to make drunk with alcoholic liquor → usually used with *up*

*intransitive verb*

**:** to drink alcoholic liquor especially to excess → usually used with *up*

## Synonyms

**Noun**

alcohol                  aqua vitae

Appx562



hooch [*slang*]     inebriant

intoxicant     John Barleycorn

juice [*slang*]     lush [*slang*]

moonshine     potable

rum     sauce [*slang*]

spirits     stimulant

strong drink     tipple

**Verb**

bib     booze

drink     guzzle

lush (up) [*slang*]     soak

tipple

See all Synonyms & Antonyms in Thesaurus ›

## Example Sentences

### Noun

He drinks beer and wine, but he doesn't drink any *hard liquor*.

vodka, whiskey, and other *liquors*



Alaska Ship Supply is a local landmark in the community, complete with iconic hoodies, coffee and groceries, a *liquor* store, and a large selection of fishing gear.

— Andy Lusk, *Anchorage Daily News*, 4 Aug. 2023

The owner of a *liquor* store is probably Asian or maybe white.

— Mesfin Fekadu, *The Hollywood Reporter*, 2 Aug. 2023

**See More ⌄**

These examples are programmatically compiled from various online sources to illustrate current usage of the word 'liquor.' Any opinions expressed in the examples do not represent those of Merriam-Webster or its editors. **Send us feedback** about these examples.

## Word History

### Etymology

**Noun**

Middle English *licour*, from Anglo-French, from Latin *liquor*, from *liquēre*

### First Known Use

**Noun**

13th century, in the meaning defined above

**Verb**

1502, in the meaning defined at transitive sense 1

### Time Traveler

**The first known use of *liquor* was in the 13th century**



## Phrases Containing *liquor*

hold one's liquor                    pot liquor

malt liquor

## Articles Related to *liquor*

**A Few Rounds with 'Happy Hour'**

## Dictionary Entries Near *liquor*

liquidus

**liquor**

liquor cabinet

See More Nearby Entries ›

## Cite this Entry

**Style**   MLA   ⌄

"Liquor." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.mer



## Kids Definition

# liquor *noun*

li·quor ˈlik-ər

**1**   **:** a liquid substance or solution

> dye *liquor*

**2**   **:** a strong alcoholic beverage

## Medical Definition

# liquor *noun*

li·quor   ( ˈlik-ər ◀)) )

**:** a liquid substance: as

**a** **:** a usually distilled rather than fermented alcoholic beverage

**b** **:** a solution of a medicinal substance usually in water

     → compare TINCTURE



## More from Merriam-Webster on *liquor*

Nglish: Translation of *liquor* for Spanish Speakers

Britannica English: Translation of *liquor* for Arabic Speakers

Last Updated: 8 Aug 2023 - Updated example sentences

## Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

**MERRIAM-WEBSTER UNABRIDGED**



Can you solve 4 words at once?

**Play**



Dictionary

Thesaurus

## chasten 🔊

See Definitions and Examples »

Get Word of the Day daily email!

Your email address

**SUBSCRIBE**

## Word Games

### Name That Animal: Volume 2
Can you tell a meerkat from a wombat?

**Take the quiz**

### Challenging Words You Should Know
Not a quiz for the pusillanimous

**Take the quiz**





© 2023 Merriam-Webster, Incorporated

 Dictionary.com ,     Thesaurus.com 

Start typing any word or phrase     🔍     ☰

 Hip-Hop 50: The Synonym Of The Day Playlist <u>Check it out!</u>     ✕

**Top Definitions**     **Synonyms**     **Quiz**     **Examples**     **British**

# liquor

[ **lik**-er *or, for 3,* **lik**-wawr ] **SHOW IPA**  

**See synonyms for:** liquor / liquored / liquoring **on Thesaurus.com**

*noun*

1. a distilled or spirituous beverage, as brandy or whiskey, as distinguished from a fermented beverage, as wine or beer.

2. any liquid substance, as broth from cooked meats or vegetables.

<u>SEE MORE</u>

*verb (used with object)*

5. *Informal*. to furnish or ply with liquor to drink (often followed by *up*).

*verb (used without object)*

6. *Informal*. to drink large quantities of liquor (often followed by *up*).

QUIZ

## ARE WORDS YOUR IKIGAI? THIS WORD OF THE DAY QUIZ IS FOR YOU!

Live your passion by solving the quiz on this week's words!

**QUESTION 1 OF 7**

## What does CLOUT mean?

something desired.

a burden, impediment, or hindrance.

pull; strong influence.

**TAKE THE QUIZ TO FIND OUT**

## ORIGIN OF LIQUOR[1]

1175–1225; <Latin: a liquid, originally liquidity (*liqu*(*ēre*) to be liquid + *-or*-or[1]); replacing Middle English *lic*(*o*)*ur*<Old French (French *liqueur*) <Latin *liquōrem,* accusative of *liquor*

## OTHER WORDS FOR LIQUOR

2     juice, drippings

**See synonyms for *liquor* on Thesaurus.com**

## OTHER WORDS FROM LIQUOR

**liq·uor·y,** adjective
**an·ti·liq·uor,** adjective

## WORDS THAT MAY BE CONFUSED WITH LIQUOR

liqueur, **liquor**

## WORDS NEARBY LIQUOR

liquid protein, liquid storax, liquidus, liquid x, liquify, liquor, liquorice, liquorice allsorts, liquorish, liquor store, liquor up

DICTIONARY.COM UNABRIDGED

BASED ON THE RANDOM HOUSE UNABRIDGED DICTIONARY, © RANDOM HOUSE, INC. 2023

## WORDS RELATED TO LIQUOR

alcohol, booze, whiskey, broth, decoction, drinkable, elixir, extract, firewater, fluid, inebriant, infusion, intoxicant, liquid, moonshine, poison, potable, sauce, solvent, spirits

## HOW TO USE LIQUOR IN A SENTENCE

Stitzel recently identified concentrations of organic compounds in cocoa *liquor* from Vietnam, Indonesia, Honduras, Ecuador and Mexico.

HOW DOES A CROP'S ENVIRONMENT SHAPE A FOOD'S SMELL AND TASTE? | CAROLYN BEANS | SEPTEMBER 10, 2020 | SCIENCE NEWS

Stitzel works with samples of cocoa *liquor* — cocoa beans that have been fermented, dried, roasted and ground into a paste — from across the globe.

HOW DOES A CROP'S ENVIRONMENT SHAPE A FOOD'S SMELL AND TASTE? | CAROLYN BEANS | SEPTEMBER 10, 2020 | SCIENCE NEWS

In unpublished work, she was able to use an elemental analysis to accurately link cocoa *liquor* to its country of origin about 97 percent of the time.

HOW DOES A CROP'S ENVIRONMENT SHAPE A FOOD'S SMELL AND TASTE? | CAROLYN BEANS | SEPTEMBER 10, 2020 | SCIENCE NEWS

The next day, Illinois allowed bars and restaurants to start selling unopened bottles of beer, wine and *liquor*, but mixed drinks were excluded.

NUMBER OF STATES ALLOWING TO-GO COCKTAILS HAS SURGED FROM 2 TO 33 DURING CORONAVIRUS | LEE CLIFFORD | AUGUST 24, 2020 | FORTUNE

The tariffs make importing these liquors more expensive, reducing demand.

COVID-19 AND A TRADE WAR ARE A DEADLY MIX FOR US LIQUOR IMPORTS | DAN KOPF | AUGUST 21, 2020 | QUARTZ

Appx573

SEE MORE EXAMPLES

∨

BRITISH DICTIONARY DEFINITIONS FOR LIQUOR

# liquor

/ (ˈlɪkə) /

*noun*

1. any alcoholic drink, esp spirits, or such drinks collectively

2. any liquid substance, esp that in which food has been cooked

SEE MORE

*verb*

6. brewing to steep (malt) in warm water to form wort; mash

**ORIGIN OF LIQUOR**[1]

C13: via Old French from Latin, from *liquēre* to be liquid

COLLINS ENGLISH DICTIONARY - COMPLETE & UNABRIDGED 2012 DIGITAL EDITION

© WILLIAM COLLINS SONS & CO. LTD. 1979, 1986 © HARPERCOLLINS

PUBLISHERS 1998, 2000, 2003, 2005, 2006, 2007, 2009, 2012

WORD OF THE DAY
August 16, 2023

# abscond

*verb (used without object)* | [ ab-**skond**

] 🔊

SEE DEFINITION

Appx574



Case: 24-1617     Document: 20     Page: 567     Filed: 11/14/2024

Appx576

Appx578

**Browse**

# Aa Bb Cc Dd Ee Ff Gg Hh Ii Jj Kk Ll Mm Nn Oo Pp Qq Rr Ss Tt Uu Vv Ww Xx Yy Zz

Dictionary.com

Thesaurus.com

Grammar Coach™

Appx579



About

Careers

Shop

Contact us

Cookies, terms, & privacy

Do Not Sell My Info

Get the Word of the Day every day!

Enter your email address    **Sign up**

My account

© 2023 Dictionary.com, LLC

ESTTA Tracking number: **ESTTA1348325**
Filing date: **03/25/2024**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Ex Parte Appeal - Serial No. | 90703327 |
| Appellant | Matthew Amoss |
| Applied for mark | BASIN BEVERAGE CO. |
| Correspondence address | FABIAN NEHRBASS<br>GARVEY SMITH & NEHRBASS PATENT ATTORNEYS LLC<br>701 POYDRAS STREET<br>SUITE 4310<br>NEW ORLEANS, LA 70139<br>UNITED STATES<br>Primary email: fabiannehrbass@patents.gs<br>Secondary email(s): sford@patents.gs, mrodriguez@patents.gs, aoshaughnessy@patents.gs<br>504-835-2000 |
| Submission | Copy of appeal to Court of Appeals for the Federal Circuit (CAFC) |
| Attachments | Form5FilledOut-Final-.pdf(283050 bytes )<br>ttabvue-90703327-EXA-11.pdf(339593 bytes ) |
| Filer's name | Fabian M. Nehrbass, Attorney for Applicant |
| Filer's email | FabianNehrbass@patents.gs, sford@patents.gs, jchauvin@patents.gs |
| Signature | /Fabian M. Nehrbass, LA Bar #35264/ |
| Date | 03/25/2024 |

FORM 5. Petition for Review/Notice of Appeal of an Order or Decision of an Agency, Board,    **Form 5**
Commission, Office, Bureau, or the US Court of Federal Claims (vaccine appeals only))    **March 2023**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## PETITION FOR REVIEW/NOTICE OF APPEAL

Notice is hereby given that the petitioner(s)/appellant(s) listed below hereby appeal(s) the below-noted case to the United States Court of Appeals for the Federal Circuit.

Originating Tribunal *(Name of Agency, Board, Commission, Office, Bureau, or Court whose decision is being appealed)*:    Trademark Trial and Appeal Board    ⊞

Case number being appealed:    90703327

Case title being appealed:    In re Matthew Amoss

Date of final decision or order being appealed:    01/26/2024

Date decision or order was received:    01/26/2024

☑ I have attached a copy of the decision or order being appealed.

**List all Petitioners/Appellants** (List each party filing this appeal. Do not use "et al." or other abbreviations. Attach continuation pages if necessary.)

| |
|---|
| Matthew Amoss |

Date: 03/25/2024        Signature: /s/Fabian M. Nehrbass

                                 Name: Fabian M. Nehrbass, LA Bar # 35264

                                 Address: Garvey, Smith & Nehrbass

                                 701 Poydras Street, Suite 4310

                                 New Orleans, LA 70139

                                 Phone Number: 504-835-2000

                                 Email Address: FabianNehrbass@patents.gs

## **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 14th day of November, 2024, I caused this Joint

Appendix to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

Daniel Stringer
Erica Jeung Dickey
Christina J. Hieber
Farheena Yasmeen Rasheed
United States Patent and Trademark Office
Office of the Solicitor
PO Box 1450
Mail Stop 8
Alexandria, Virginia 22313
(571) 270-3514
daniel.stringer@uspto.gov
erica.dickey@uspto.gov
christina.hieber@uspto.gov
farheena.rasheed@uspto.gov
*Counsel for Appellee*

/s/ Fabian Nehrbass_____
*Counsel for Appellant, Matthew Amoss*