NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: MATTHEW AMOSS,**
*Appellant*

---

2024-1617

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 90703327.

---

Decided: December 15, 2025

---

FABIAN NEHRBASS, Garvey, Smith & Nehrbass, Patent Attorneys, LLC, New Orleans, LA, for appellant. Also represented by JULIE RABALAIS CHAUVIN, VANESSA M. D'SOUZA.

ERICA JEUNG DICKEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee John A. Squires. Also represented by NICHOLAS THEODORE MATICH, IV, MARY BETH WALKER, GIULIO ERNESTO YAQUINTO.

---

Before LOURIE and STOLL, *Circuit Judges,* and OETKEN, *District Judge.*[1]

LOURIE, *Circuit Judge.*

Matthew Amoss appeals a Trademark Trial and Appeal Board ("the Board") final decision affirming the United States Patent and Trademark Office's refusal to register the mark "BASIN BEVERAGE CO." (Serial No. 90/703,327) ("applicant's mark") on the ground that it is likely to cause confusion under § 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). *In re Matthew Amoss*, No. 90703327 (T.T.A.B. Jan. 26, 2024) ("*Decision*"), J.A. 1–23. For the following reasons, we *affirm*.

BACKGROUND

Amoss filed a multiple-class application to register the mark "BASIN BEVERAGE CO." on the Principal Register for goods identified in three separate International Classes: (1) "Tea-based beverages; Coffee based beverages; Kombucha tea," in International Class 30, (2) "Beverages, namely, beer, sparkling water, non-alcoholic water-based beverages," in International Class 32, and (3) "Beverages, namely, wine, hard seltzer; Hard kombucha tea," in International Class 33. A multiple-class application is treated the same as filing separate applications for the same mark in each Class.

For each Class application, the Examining Attorney compared the applicant's mark to cited registered marks and assessed the relevant *DuPont* factors: here, the first (similarity of the marks), the second (similarity of the goods), the third (similarity in trade channels), the fourth (the classes of purchasers and conditions of purchase), the

---

[1] Honorable J. Paul Oetken, District Judge, United States District Court for the Southern District of New York, sitting by designation.

fifth (fame of the prior mark), and the sixth (the number and nature of similar marks in use). *See Application of E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). In doing so, the Examining Attorney found that consumer confusion was likely between the applicant's mark and the cited registered marks for each Class application and refused registration accordingly.[2] *See id.* The Board affirmed the refusals.[3] We discuss each refusal in turn.

I

The Examining Attorney refused registration for "BASIN BEVERAGE CO." under International Class 30 based on two cited registrations in that Class for the marks "GREAT BASIN COFFEE COMPANY" on the Supplemental Register and "TAHOE BASIN" on the Principal Register.[4] *See Decision*, J.A. 2. The Examining Attorney assessed the relevant *DuPont* factors and found that the goods are identical, distributed in overlapping trade channels, and marketed to overlapping purchasers. *See* J.A. 194–95, 240–41, 528–29, 531–34. She also found that the marks were similar in overall commercial impression because they all centered on the shared dominant term "BASIN." J.A. 194–95, 240–41, 526–28, 529–31. In so finding, the Examining Attorney explained that additional

---

[2] The application also identified services in International Class 43, which were not refused registration and are not part of this appeal.

[3] The Board did not consider the conditions of purchase aspect of the fourth *DuPont* factor because Amoss and the Examining Attorney failed to address it. *Decision*, J.A. 7 n.14.

[4] TAHOE BASIN (Reg. 6760872) is registered for goods including "Chai tea; Coffee," and GREAT BASIN COFFEE COMPANY (Reg. 5510241) is registered for goods including "Coffee and tea; Coffee based beverages."

wording of the various marks (*e.g.*, "GREAT," "TAHOE," "BEVERAGE CO.," and "COFFEE COMPANY") did not meaningfully distinguish source, as those words are geographic without other source-identifying features, merely descriptive of the goods, or a simple variation of an entity designation. J.A. 194–95, 240–41, 526–28, 529–31.

The Board affirmed the Examining Attorney's registration refusal. It agreed that the goods were in part legally identical under the second *DuPont* factor because the goods of the applicant and those of the registrants included tea- and coffee-based beverages. *Decision*, J.A. 5–6. The Board also found that, because the goods were in part identical and because the registrations contained no limitation on trade channels, the marks were properly presumed to share the same channels of trade and purchasers under the third and fourth *DuPont* factors, respectively. *Id.* at 6–7 (citations omitted). The Board therefore concluded that the second, third, and fourth *DuPont* factors "strongly" favored a likelihood of confusion. J.A. 7.

The Board then addressed the fifth and sixth *DuPont* factors relating to the strength of the mark. It found that those factors were neutral because the record lacked meaningful evidence of strength or weakness and noted that the applicant's offering of limited third-party uses, each involving differently modified "BASIN" terms, fell short of showing any conceptual or commercial weakness of the cited marks. *Id.* at 7–10. Finally, the Board found that the applicant's mark was similar to the cited marks, and thus that the first *DuPont* factor favored a likelihood of confusion. *Id.* at 11–16. The Board emphasized that the term "BASIN" was the dominant feature across the marks. *Id.* at 14–16. Furthermore, it explained that the surrounding non-dominant wording did not change the overall commercial impression of any of the marks because those additional terms were either generic company designations or provided mere geographic connotations without any other stronger source-identifying features. *Id.*

In sum, because the *DuPont* factors for comparing the similarity of the goods, commonality of trade channels and customers, and similarity of marks favored a likelihood of confusion, while the remaining strength factors were neutral, the Board upheld the Class 30 refusal. *Id.* at 16–17.

II

The Examining Attorney also refused registration for "BASIN BEVERAGE CO." under International Classes 32 and 33 based on a cited registration for the mark "NEW BASIN DISTILLING COMPANY" for goods in Class 33 identified as "liquor."[5] *Decision*, J.A. 2; J.A. 194, 240, 521–524. The Examining Attorney found the marks similar because each shared the identical dominant term "BASIN," and the modifiers ("NEW," "DISTILLING COMPANY," "BEVERAGE CO.") were descriptive or otherwise less source-identifying. J.A. 194, 240, 521–524. The Examining Attorney further explained that the registrant's good, "liquor," is related to the applicant's goods, beer and wine, based on third-party evidence showing that beer, wine, and liquor commonly emanate from a single source under one mark. J.A. 386 (noting attached evidence), 387–431 (evidence attached to reconsideration denial).

The Board affirmed the Examining Attorney's registration refusals. It agreed, regarding the second *DuPont* factor, that while the application and cited registration are not directed to identical goods, the evidence demonstrated a close relationship among beer, wine, and liquor. *Decision*, J.A. 17–18. Specifically, the Board credited "record evidence" that "several companies sell both beer (and/or wine) and liquor under the same mark." *Id.* at 18 (citing J.A. 525–26 (citing J.A. 387–431)). The Board also found

---

[5] NEW BASIN DISTILLING COMPANY (Reg. 4890160) ("Distilling Company" disclaimed) is registered for goods including "Liquor."

that, under the second and third *DuPont* factors, the channels of trade and purchasers, unrestricted in the subject application and cited registration, overlapped. *Id.* at 18–19.

In addition, as with Class 30, the Board found *DuPont* factors five and six, the strength factors, "neutral or, at best, tip[ping] only very slightly against a finding that confusion is likely. *Id.* at 22. In doing so, the Board explained that the applicant's eight third-party registrations and several uses of "BASIN" for similar goods were insufficient to show the "considerable" level of third-party use needed to narrow the scope of protection for "NEW BASIN DISTILLING COMPANY," particularly because many of those marks contained additional differentiating elements "that render them further from the cited registration than Applicant's mark." *Id.* at 22. Finally, on the first *DuPont* factor, the similarity of the marks, the Board found that "BASIN" was dominant in both marks, and that the term "NEW" in the cited mark merely reinforced focus on "BASIN." *Id.* at 22. Thus, the Board found the marks similar in overall commercial impression and likely to cause confusion. *Id.*

Balancing the *DuPont* factors, the Board concluded that the similarity of the marks, the relatedness of the goods, and the overlapping trade channels and purchasers outweighed any slight weakness in the cited mark as shown by applicant's third-party evidence. *Id.* It therefore upheld the Class 32 and 33 refusals. *Id.*

Amoss timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## Discussion

Amoss argues that the Board erred in finding a likelihood of confusion between the applicant's mark and any of the cited registrations under International Classes 30, 32, and 33. We first address Amoss's arguments as to

International Class 30 before turning to his arguments for International Classes 32 and 33.

Likelihood of confusion is a question of law that we review *de novo* based on underlying factual findings that we review for substantial evidence. *Bureau Nat'l Interprofessionnel du Cognac v. Cologne & Cognac Ent.*, 110 F.4th 1356, 1365 (Fed. Cir. 2024) (citations omitted). Under Section 2(d) of the Lanham Act, a mark may not be registered if it "so resembles a mark registered in the Patent and Trademark Office, . . . as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). That statutory requirement gives rise to the likelihood of confusion inquiry, which we assess on a case-by-case basis by evaluating the relevant *DuPont* factors. *See* 476 F.2d at 1361.

I

We begin with International Class 30 (tea-based beverages; coffee-based beverages; kombucha tea). Amoss argues that the Board erred in finding that his mark, "BASIN BEVERAGE CO.," is confusingly similar to the cited registrations for "TAHOE BASIN" and "GREAT BASIN COFFEE COMPANY." Amoss Op. Br. 31. Specifically, Amoss contends the Board's *DuPont* analysis was flawed because (1) the marks are not similar barring improper dissection, (2) evidence of third-party use supports registration, and (3) the cited "GREAT BASIN COFFEE COMPANY" mark is weak because it appears on the Supplemental Register. *Id.* at 31–44. We disagree.

At the outset, there is no dispute that the goods are identical in part under the second *DuPont* factor. *See Decision*, J.A. 5, 81, 202; Amoss Op. Br. 31–34. There is also no dispute that, because the goods are identical in part and because of "the absence of meaningful limitations in either the application or the cited registrations," *see Decision*, J.A. 6–7; Amoss Op. Br. 31–34, the goods are presumed to

"travel through all usual channels of trade and are offered to all normal potential purchasers" under the third and fourth *DuPont* factors. *See In re i.am.symbolic, llc*, 866 F.3d 1315, 1327 (Fed. Cir. 2017) (citation omitted). Thus, there is no dispute that the Board's findings that the second, third, and fourth *DuPont* factors favor a likelihood of confusion are supported by substantial evidence.

Moreover, because the goods were found identical in part, a lesser degree of similarity between the marks is required to give rise to a likelihood of confusion under the first *DuPont* factor. *See Century 21 Real Est. Corp. v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir. 1992) ("When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines."). Whether the marks are similar under the first *DuPont* factor depends on the marks in their "entireties." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165 (Fed. Cir. 2002) (citing *DuPont*, 476 F.2d at 1361). "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *i.am.symbolic*, 866 F.3d at 1323 (citation omitted).

Here, the Board properly compared the marks in their entireties and, despite acknowledging their minor technical differences, determined that they are similar in terms of their overall commercial impressions. *Decision*, *see* J.A. 11–16. In its comparison, the Board properly found that the marks "BASIN BEVERAGE CO." and "GREAT BASIN COFFEE COMPANY" share a similar structure: in both, the more dominant wording ("BASIN" and "GREAT BASIN") appears first, followed by the less dominant entity designators ("BEVERAGE CO." and "COFFEE COMPANY"). *Decision*, J.A. 15; *see Century 21*, 970 F.2d at 876 (affirming that lead words may dominate because "upon encountering each mark, consumers must first

notice this identical lead word"); *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1175 (Fed. Cir. 2004) (discussing the "per se" rule from *Goodyear's Rubber Manufacturing Co. v. Goodyear Rubber Co.*, 128 U.S. 598 (1888), that common terms like Co., Corp., and Inc., are perceived as conveying only organizational structure and have no source-identifying significance).

Because "[m]ore dominant features will, of course, weigh heavier in the overall impression of a mark," *In re Electrolyte Lab'ys, Inc.*, 929 F.2d 645, 647 (Fed. Cir. 1990), the Board did not err by discounting the commercial significance of the latter, less dominant elements of the marks, and concluded that, when viewed in their entireties, the marks are similar. *Decision*, J.A. 15–16. And "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark." *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985); *see, e.g.*, *In re Chatam Int'l Inc.*, 380 F.3d 1340, 1344 (Fed. Cir. 2004) ("[T]he court perceives no error in appropriately discounting portions of JOSE GASPAR GOLD and GASPAR'S ALE that did not change the commercial impression of the marks.").

Turning to the registration for "TAHOE BASIN," the Board acknowledged that while "TAHOE BASIN," and for that matter, "GREAT BASIN," may have a geographic connotation, without a term modifying "BASIN" in appellant's mark, "BASIN BEVERAGE CO." could refer to the basin in either registered mark. *Decision*, J.A. 15–16; *see, e.g.*, *Wella Corp. v. Cal. Concept Corp.*, 558 F.2d 1019, 1022 (CCPA 1977) (finding CALIFORNIA CONCEPT with surfer design confusingly similar to CONCEPT because "inclusion of a merely suggestive or descriptive element, of course, is of much less significance in avoiding a likelihood of confusion"). Substantial evidence supports this finding.

Amoss's contention that the Board improperly dissected the marks is misplaced. The Board did not do so.

Rather, it identified the dominant portions of each mark as consumers would perceive them and then evaluated the marks as a whole in light of those dominant features. *See Decision*, J.A. 12 ("But while . . . we may assess individual terms (or other features) that together make up a given mark, the ultimate assessment must rest on the marks in their entireties."). As discussed, assigning greater weight to the elements of a mark that most strongly influence commercial impression is appropriate. *In re Nat'l Data Corp.*, 753 F.2d at 1058; *see, e.g.*, *In re Chatam*, 380 F.3d at 1342 ("[T]he Board did not improperly discard the dissimilar portions of the JOSE GASPAR GOLD and GASPAR'S ALE[;]" rather, it "discounted the commercial significance of ALE in the registered mark and JOSE and GOLD in Chatam's mark.").

Next, Amoss contends that the Board's finding regarding the sixth *DuPont* factor was not supported by substantial evidence. *See* Amoss Op. Br. 34. The sixth *DuPont* factor relates to the strength of the cited marks and assesses "[t]he number and nature of similar marks in use on similar goods." *DuPont*, 476 F.2d at 1361. Sufficient "[e]vidence of third-party use of similar marks on similar goods is relevant to show that a [cited] mark is relatively weak and entitled to only a narrow scope of protection." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005) (citations omitted). Here, the Board reasonably found that Amoss's four examples of third-party use of the term "BASIN" in connection with coffee and coffee shops were a "meager showing" that fell far short of demonstrating that such "'ubiquitous' and 'considerable'" use is widespread, and thus were not sufficient to show that the cited marks are weak. *Decision*, J.A. 10.

The Board also noted that the cited third-party marks contain different modifying terms (*e.g.*, THUNDER BASIN, NILE BASIN, SNOWBASIN, BEAR BASIN) and therefore do little to show weakness in the cited marks that

would inure to Amoss's benefit because third-party use can demonstrate weakness only if the third-party marks are at least as close to the registered mark as the applicant's mark. *Decision*, J.A. 10 n.18 (citing *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 675 (Fed. Cir. 1984)). That is not the case here, rendering the sixth *DuPont* factor neutral. *Id.* The Board's finding on that factor is therefore supported by substantial evidence because it involved a careful review of the record under the appropriate law.

Finally, Amoss contends that the Board erred by affording the "GREAT BASIN COFFEE COMPANY" a greater scope of protection than it deserved as a mark on the Supplemental Register. Amoss Op. Br. 31–32. However, "a mark registered on the Supplemental Register can be used as a basis for refusing registration to another mark under [§] 2(d) of the [Lanham] Act." *Application of Clorox Co.*, 578 F.2d 305, 308 (C.C.P.A. 1978). And we see no basis in our law to restrict the scope of protection afforded to such a mark merely because it appears on the Supplemental Register, particularly where, as here, the mark still functions as a source identifier and the relevant *DuPont* factors otherwise support a likelihood of confusion.

Further, placement on the Supplemental Register reflects only a lack of inherent distinctiveness, not an inability to identify source or cause confusion. *See id.* (explaining that placement on the Supplemental Register does not render a mark incapable of causing confusion because (1) such marks must still be capable of distinguishing goods and (2) a lack of inherent distinctiveness does not necessarily equate to generic or common descriptive wording; thus, such non-generic descriptiveness may still support a § 2(d) refusal). Put simply, nothing in § 2(d) indicates that such registration limits a mark's capacity to serve as a basis for a likelihood of confusion refusal. *Cf.* 15 U.S.C. § 1052(d). Amoss fails to persuade us otherwise.

Because substantial evidence supports the Board's findings regarding the relevant *Dupont* factors, and because those factors favor a likelihood of confusion or were neutral, the Board did not err in concluding that, on balance, consumer confusion is likely.

## II

We turn to International Classes 32 (beverages, namely, beer, sparkling water, non-alcoholic water-based beverages) and 33 (beverages, namely, wine, hard seltzer; Hard kombucha tea). Amoss argues that the Board erred in finding that his mark, "BASIN BEVERAGE CO.," is confusingly similar to the cited registration for "NEW BASIN DISTILLING COMPANY." Amoss Op. Br. 10. Specifically, Amoss contends the Board's *DuPont* analysis was flawed because (1) the goods are unrelated, (2) the trade channels and classes of consumers do not overlap, (3) third-party evidence shows the cited mark is weak, and (4) the marks are dissimilar when viewed in their entirety. *Id.* at 10–30. We disagree.

First, the Board's finding that the goods are related under the second *DuPont* factor is supported by substantial evidence. The goods need only be "related in some manner," or the "circumstances surrounding their marketing [be] such that they could give rise to the mistaken belief that they emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369 (Fed. Cir. 2012). And evidence showing that the goods at issue commonly come from the same sources under the same mark demonstrates that the goods are related. *See Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002) (evidence that "a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis"); *see, e.g.*, *In re Detroit Athletic Co.*, 903 F.3d 1297, 1306 (Fed. Cir. 2018) (affirming finding of similarity between the respective goods and services because the "evidence suggests that consumers are

accustomed to seeing a single mark associated with a source that sells both”). Here, the Board found that the goods are related because record evidence demonstrates that the goods listed in both the application and the registration are produced and marketed by the same entities under a single mark. *See Decision*, J.A. 18 n.25 (reciting examples of record evidence showing that several companies sell both beer (and/or wine) and liquor under the same mark). Thus, the Board’s finding of relatedness is supported by substantial evidence.

Second, the Board’s findings that the trade channels and classes of consumers overlap under the third and fourth *DuPont* factors are also supported by substantial evidence. Neither the application nor the registration limits trade channels or prospective purchasers, allowing the Board to properly presume that the goods travel through all usual channels to all normal purchasers. *Decision*, J.A. 18–19; *see, e.g.*, *Detroit Athletic*, 903 F.3d at 1308. Beyond the presumption of overlap, the Board found that the evidence of relatedness also showed that both sets of goods are sold to the general public at the producing establishments, *e.g.*, breweries, wineries, and distilleries, as part of restaurant, bar, or event services. *Decision*, J.A. 19. The Board further cited other cases that found that beer and other alcoholic beverages share many trade channels, including retail outlets such as liquor stores, supermarkets, restaurants, and bars. *Id.* (citing *In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 1316 (Fed Cir. 2003)). In fact, Amoss appears to concede that the parties’ trade channels overlap, alleging that “the evidence largely demonstrates that the companies / establishments which sell both liquor and another type of alcohol, often do so only at their facility, the brewery or distillery[.]” Amoss Op. Br. 29. Thus, the Board’s finding of likelihood of confusion under the third and fourth *Dupont* factors is supported by substantial evidence.

Third, the Board's finding that the third-party registration and use evidence that Amoss offered, bearing on the conceptual and commercial strength of the cited mark under the sixth *DuPont* factor, was insufficient is supported by substantial evidence. The Board evaluated eight third-party registrations using "BASIN" with beer or liquor and four third-party uses of "BASIN" for beer.[6] *Decision*, J.A. 20–21. The Board found that, consistent with our case law, such a showing was not so "ubiquitous" or "considerable" as to demonstrate that "BASIN" is "weakened to the extent that would narrow the scope of protection afforded [to] "NEW BASIN DISTILLING COMPANY." *Id.* at 21; *see i.am.symbolic*, 866 F.3d at 1329 (distinguishing its record evidence from other cases because it found that its evidence of third-party use "f[ell] short of the ubiquitous or considerable use of the mark components present in [the other] case[s]" (citation modified)).

The Board further explained that the third-party marks were not as close to the cited mark as the applicant's mark because many include additional wording or design elements (*e.g.*, JEWEL BASIN, BASIN & RANGE, BASIN OF ATTRACTION, the design in KLAMATH BASIN BREWING). *Decision*, J.A. 21–22 (citing *Specialty Brands*, 748 F.2d at 675 (discounting third-party marks alleged to show weakness of the cited mark because the third-party marks were more dissimilar from the marks at issue than the marks at issue were from each other)). Thus, the Board's finding that the sixth *Dupont* factor is neutral, or at most slightly favors no confusion, is supported by substantial evidence and not contrary to law.

---

[6] Amoss submitted twelve marks containing "BASIN" for alcoholic beverages and drink mixes, but the Board declined to consider four of the submitted marks for various reasons. *See* J.A. 21 n.26.

Appellant advances several challenges to the Board's finding, *see* Amoss Op. Br. at 20–24, none of which demonstrate that the Board erred. "At bottom, [Amoss] asks us to reweigh the evidence considered by the Board, which is not the role of this court." *See In re Charger Ventures LLC*, 64 F.4th 1375, 1381 (Fed. Cir. 2023) (citation omitted).

Finally, the Board's finding that the marks are similar under the first *DuPont* factor is supported by substantial evidence. As it did for the International Class 30 refusal, the Board compared the marks in their entireties and provided logical reasons for giving more weight to their dominant features, "BASIN" in Amoss's mark and "NEW BASIN" in the registered mark, and then discounted the entity designations in the marks. *Decision*, J.A. 22; *see, e.g.*, *In re Chatam*, 380 F.3d at 1342–1344. The Board also found that the "adjective 'NEW' in the cited registration serves only to direct attention to the term BASIN, which immediately follows." *Decision*, J.A. 22 (citing *Palisades Pageants, Inc. v. Miss Am. Pageant*, 442 F.2d 1385, 1388 (CCPA 1971) ("[M]erely adding [the] adjective [LITTLE] to the beginning [of MISS AMERICA] . . . directs attention to the words which follow." (internal quotation marks omitted))).

Amoss once again argues that the Board improperly dissected the marks and that the disclaimed wording ("Distilling Company") in the cited mark impacted its commercial impression. But "while the Board must consider the disclaimed term, an additional word or component may technically differentiate a mark but do little to alleviate confusion." *Charger*, 64 F.4th at 1382. Thus, the Board reasonably determined that certain elements in the marks are dominant and that the similarities in those features outweigh any other minor differences between the marks when viewed in their entirety. Amoss attempts to persuade us to reweigh the evidence, which, again, "is not the role of this court." *Id.* at 1381.

Because substantial evidence supports the Board's findings regarding the relevant *DuPont* factors, and because the majority of those factors favored a likelihood of confusion, the Board did not err in concluding that, on balance, consumer confusion is likely.

## CONCLUSION

We have considered Amoss's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

**AFFIRMED**